1  GIPSON HOFFMAN & PANCIONE
   A Professional Corporation
2  GREGORY A. FAYER (State Bar No. 232303)
   GFayer@ghplaw.com
3  ELLIOT B. GIPSON (State Bar No. 234020)
   EGipson@ghplaw.com
4  1901 Avenue of the Stars, Suite 1100
   Los Angeles, California 90067-6002
5  Telephone: (310) 556-4660
   Facsimile:  (310) 556-8945
6
7  Attorneys for Plaintiff
   CYBERsitter, LLC d/b/a Solid Oak Software

8            UNITED STATES DISTRICT COURT

9      CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

10

11
   CYBERsitter, LLC, a California limited
12 liability company, d/b/a Solid Oak Software,

13          Plaintiff,

14    v.

15 The People's Republic of China, a foreign
   state; Zhengzhou Jinhui Computer System
16 Engineering Ltd., a Chinese corporation;
   Beijing Dazheng Human Language
17 Technology Academy Ltd., a Chinese
   corporation; Sony Corporation, a Japanese
18 corporation; Lenovo Group Limited, a
   Chinese corporation; Toshiba Corporation, a
19 Japanese corporation; ACER Incorporated, a
   Taiwanese corporation; ASUSTeK
20 Computer Inc., a Taiwanese corporation;
   BenQ Corporation, a Taiwanese
21 corporation; Haier Group Corporation, a
   Chinese corporation; DOES 1-10, inclusive,
22
23          Defendants.

CASE NO.

CV10-0038 GAF (SHx)

COMPLAINT FOR
MISAPPROPRIATION OF TRADE
SECRETS; UNFAIR
COMPETITION; COPYRIGHT
INFRINGEMENT; AND CIVIL
CONSPIRACY

DEMAND FOR JURY TRIAL

24
25
26
27
28

**COMPLAINT**

04444\00001\68504.6

Plaintiff CYBERsitter, LLC d/b/a Solid Oak Software ("Solid Oak" or "Plaintiff") alleges, on information and belief, as follows:

## NATURE OF THE ACTION

1.    This action arises from one of the largest cases of software piracy in history, wherein two Chinese companies, backed by the Chinese government, stole approximately 3,000 lines of code from a small American company's software program, and disseminated it to tens of millions of end users in China with the willing participation of computer manufacturers who chose to turn a blind eye to the illegal and otherwise surreptitious nature of the pirated program in order to gain increased access to the vast Chinese market by participating in the Chinese government-led initiative to proliferate the illegal program throughout China (the "Green Dam Initiative").

2.    Solid Oak is a small family-owned software company based in Santa Barbara, California.  Solid Oak developed and marketed an award-winning Internet content filtering program called CYBERsitter, which was designed to help parents protect their children from viewing inappropriate pornographic and violent content on the Web.  CYBERsitter was the first commercially available Internet content filter, and it has been continuously published by Solid Oak for over 14 years.  Solid Oak now boasts over 2.4 million active CYBERsitter users worldwide, including thousands of businesses, individuals, and schools in China, and thousands more in other Chinese-speaking countries.

3.    The Defendants in this action include the People's Republic of China ("PRC"), two Chinese software development companies, and several of the largest computer manufacturers in the world.  As relevant here, the Chinese software developers, in collaboration with the Chinese government, purported to design an Internet content filtering program known as Green Dam Youth Escort ("Green Dam").  Like CYBERsitter, the Green Dam program was allegedly designed to block pornographic and violent Internet content from children.  Unlike CYBERsitter,

**COMPLAINT**

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

0444A\0000\168504.6

1  however, the Green Dam program was found to contain filters to block political and
2  religious content expressing views that differed from those of the Chinese
3  government.  The program was also found to have serious security vulnerabilities that
4  would allow third parties to monitor or take control of the computers on which it was
5  installed.  As a result, the Green Dam program and the Chinese government's efforts
6  to proliferate the program throughout China were met with stiff opposition from
7  human rights groups in China and around the world.  The central component of the
8  Green Dam Initiative was for the PRC to convince and incentivize computer
9  manufacturers to participate in the Initiative by including the Green Dam software
10  with their computers sold in China.  The Defendant computer manufacturers named
11  herein willingly participated in this plan.

12      4.    In June 2009, a group of independent researchers at the University of
13  Michigan confirmed that the Green Dam developers had copied verbatim nearly 3,000
14  lines of code from the CYBERsitter program and incorporated it into the Green Dam
15  program.  The stolen materials include the heart of the CYBERsitter software:  its
16  proprietary content filters.  The Chinese government has issued Green Dam usage
17  figures reporting – as of early June 2009 – that over 53 million computers marketed
18  for home use had been sold with the Green Dam program, that the Green Dam
19  program had been installed on more than half a million computers in Chinese schools,
20  and that Green Dam had been downloaded by users from the Internet an additional
21  3.27 million times.

22      5.    The Defendants in this action have conspired together to steal Solid Oak's
23  proprietary software, and to disseminate the illegal product to tens of millions of end
24  users in China and elsewhere.  The Defendants met together at a PRC-sponsored
25  Green Dam Symposium at the Beijing offices of the PRC's Ministry of Industry and
26  Information Technology ("MIIT") in March 2009 to develop their common plan.  The
27  Defendants' common scheme – the Green Dam Initiative – involved two overlapping
28  components which eventually became indistinguishable from each other: participation

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

2

**COMPLAINT**

in the Chinese government's seemingly legal (albeit surreptitious) plan to proliferate the Green Dam program throughout China, and the illegal theft, infringement, exploitation and distribution of Plaintiff's intellectual property.    Each of the Defendants herein willingly participated in this common scheme both before and after the illegal aspects of the scheme became apparent.

6.    Defendant computer manufacturers derive significant financial benefits from their unauthorized distribution of Plaintiff's intellectual property to the vast Chinese market, and have willingly participated in the scheme of the Defendant developers and the Chinese government to proliferate the illegal Green Dam product throughout China and elsewhere.  The Defendant computer manufacturers had the right, ability, legal obligation and knowledge to prevent unauthorized copies of Plaintiff's works from being distributed on their computers.  But although the Defendant computer manufacturers vigorously defend their own intellectual property in the courts and in the press, they chose to turn a blind eye to the theft and infringement at issue here in order to continue to reap the financial rewards of exploiting the vast Chinese computer market.

7.    By their actions alleged herein, Defendants have conspired together to misappropriate Plaintiff's trade secrets under California law, have violated federal prohibitions on theft of trade secrets and economic espionage (constituting unlawful practices under California's Unfair Competition Law), and have violated Plaintiff's copyrights in the CYBERsitter program, both directly and indirectly, under applicable copyright laws of the United States, China, Japan and Taiwan.  Because each Defendant named herein willingly participated in the illegal elements of their common scheme, each Defendant is liable for the illegal acts of the others.

8.    As a result of Defendants' acts alleged herein, Plaintiff has been damaged in an amount to be determined at trial.    Plaintiff estimates its damages to be $2,257,175,000, representing the Chinese government's stated figures of more than 56.5 million unauthorized copies distributed in China alone as of early June 2009,

**COMPLAINT**

04444\00001\68504.6

multiplied by $39.95 per copy (the price of purchasing a legal copy of the CYBERsitter program from Solid Oak).

## JURISDICTION AND VENUE

9.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1330, 1331, 1332(a), 1338 and 1367. This action seeks relief, *inter alia*, for violations of the United States Copyright Act, 17 U.S.C. §§ 101, *et seq.*, and for unfair competition predicated on violations of the Economic Espionage Act, 18 U.S.C. §§ 1831-32 (theft of trade secrets and economic espionage). As stated in paragraphs 12 through 26 below, for purposes of diversity jurisdiction, Solid Oak is a citizen of the State of California, and Defendants are citizens of the People's Republic of China, Japan, and the Republic of China (Taiwan). The amount in controversy exceeds the sum of $75,000 exclusive of interest and costs.

10.    This Court has personal jurisdiction over Defendant PRC, Defendant Jinhui, and Defendant Dazheng because they have purposefully availed themselves of the benefits of this forum by doing business in this District, by committing wrongful acts in whole or in part within this District, and/or by committing wrongful acts which have had direct effects in this District. Because Defendant PRC's wrongful acts alleged herein arise in connection with a commercial activity that causes a direct effect in the United States, Defendant PRC comes within an express exception to the Foreign Sovereign Immunities Act, *viz.*, 28 U.S.C. § 1605(a)(2). This Court has personal jurisdiction over the remaining Defendants because they conduct significant business in this District, and sell their computers throughout the United States in their own capacity and through their wholly-owned subsidiaries.

11.    Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(b)(2).

## THE PARTIES

12.    Plaintiff Solid Oak is a limited liability company organized and existing under the laws of the State of California, with its principal place of business in Santa

**COMPLAINT**

0a4441\0001\168504 6

Barbara, California.  Solid Oak is engaged in the business of software development and sales.  As relevant here, Solid Oak developed and sells an Internet content filtering program known as "CYBERsitter."

13.     Defendant People's Republic of China ("PRC") is a foreign state.  As relevant here, PRC has engaged in the purely economic conduct of licensing, sublicensing, distributing and promoting the software program known as Green Dam at issue in this litigation.  PRC may not claim jurisdictional immunity from this suit as its conduct arises from commercial activity that "causes a direct effect in the United States" as described in 28 U.S.C. § 1605(a)(2) in the form of damaging Solid Oak, a California company, by PRC's unauthorized taking and use of Solid Oak's intellectual property.   The PRC's actions alleged herein are purely economic because PRC purchased a one-year license to exploit the software program at issue for approximately 6.9 million U.S. dollars, and then promoted the program and sublicensed the program to computer manufacturers, for which it received substantial sums.

14.     Defendant Zhengzhou Jinhui Computer System Engineering Ltd. ("Jinhui") is a corporation organized and existing under the laws of the People's Republic of China, with its principal place of business in Zhengzhou, China.  As relevant here, Jinhui is in the business of developing and distributing software products – in particular, the Green Dam program at issue in this litigation.

15.     Defendant Beijing Dazheng Human Language Technology Academy Ltd. ("Dazheng") is a corporation organized and existing under the laws of the People's Republic of China, with its principal place of business in Beijing, China.  As relevant here, Dazheng is in the business of developing and distributing software products – in particular, the Green Dam program at issue in this litigation.

16.     Defendant Sony Corporation ("Sony") is a corporation organized and existing under the laws of Japan, with its principal place of business in Tokyo, Japan.  As relevant here, Sony is engaged in the business of manufacturing and distributing

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

0444410000168504.6

1   personal computers and related products, in the United States, China, and elsewhere

2   around the world.   Sony operates and does business throughout the United States

3   through its wholly-owned subsidiary, Sony Corporation of America.   Sony has taken a

4   strong public stance on the importance of the protection and vigorous enforcement of

5   its own intellectual property rights.

6        17.    Defendant Lenovo Group Limited ("Lenovo") is a corporation organized

7   and existing under the laws of the People's Republic of China, with its principal place

8   of business in Beijing, China.   As relevant here, Lenovo is engaged in the business of

9   manufacturing and distributing personal computers and related products, in the United

10  States, China, and elsewhere around the world.   Lenovo operates and does business

11  throughout the United States.    In May 2005, Lenovo purchased IBM's Personal

12  Computing Division.   As part of this purchase, Lenovo agreed to relocate its PC

13  business headquarters from Beijing to the United States.   Lenovo's principal office is

14  currently located in Morrisville, North Carolina.

15       18.    Defendant Toshiba Corporation ("Toshiba") is a corporation organized

16  and existing under the laws of Japan, with its principal place of business in Tokyo,

17  Japan.   As relevant here, Toshiba is engaged in the business of manufacturing and

18  distributing personal computers and related products, in the United States, China, and

19  elsewhere around the world.    Toshiba operates and does business throughout the

20  United States through its wholly-owned subsidiary, Toshiba America, Inc.

21       19.    Defendant ACER Incorporated ("Acer") is a corporation organized and

22  existing under the laws of the Republic of China, commonly known as Taiwan

23  ("Taiwan"), with its principal place of business in Taipei, Taiwan.   As relevant here,

24  Acer is engaged in the business of manufacturing and distributing personal computers

25  and related products, in the United States, China, and elsewhere around the world.

26  Acer operates and does business throughout the United States through its wholly-

27  owned subsidiaries, Acer America Corporation and Gateway, Inc.

28

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

6
**COMPLAINT**

0444\00001\68504.6

20.    Defendant ASUSTeK Computer Inc. ("Asus") is a corporation organized and existing under the laws of Taiwan, with its principal place of business in Taipei, Taiwan.    As relevant here, Asus is engaged in the business of manufacturing and distributing personal computers and related products, in the United States, China, and elsewhere around the world.    Asus operates and does business throughout the United States through its wholly-owned subsidiary, Asus Computer International.

21.    Defendant BenQ Corporation ("BenQ") is a corporation organized and existing under the laws of Taiwan, with its principal place of business in Taipei, Taiwan.    As relevant here, BenQ is engaged in the business of manufacturing and distributing personal computers and related products, in the United States, China, and elsewhere around the world.    BenQ operates and does business throughout the United States, including under the marks "BenQ," "Joybook," and "Joybee."

22.    Defendant Haier Group Corporation ("Haier") is a corporation organized and existing under the laws of the People's Republic of China, with its principal place of business in Quingdao, China.    As relevant here, Haier is engaged in the business of manufacturing and distributing personal computers and related products, in the United States, China, and elsewhere around the world.    Haier operates and does business throughout the United States through its wholly-owned subsidiary, Haier America.

23.    The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants sued herein as Does 1 through 10, inclusive, are unknown at the present time and Plaintiff therefore sues said Does and each of them by such fictitious names.    If necessary, Plaintiff will seek leave of Court to amend this complaint to allege their true names and capacities when they are ascertained.

24.    Unless otherwise indicated herein, on information and belief, each of Does 1 through 10, inclusive, participated in the activities described herein and rendered material assistance to the other Defendants in the actions alleged herein, conspired and agreed with and aided and abetted one or more of the other Defendants, and at all relevant times each of the Defendants was the principal or agent, alter ego,

7

**COMPLAINT**

0444A\00001\68504.6

partner, joint venturer, co-venturer, co-conspirator, independent contractor, servant and/or employee of at least one other of the other Defendants, and all of the acts performed by them or omissions alleged herein were made in the course and scope of their employment, agency, partnership, joint venture, conspiracy or other such relationship and with knowledge, consent, approval and/or ratification of the principals, and each of them. Unless otherwise indicated herein, each of the parties herein named as Does 1 through 10 are responsible in some manner or fashion, and are by contract or otherwise, the successor, assign, joint venturer, co-venturer, co-conspirator, partner or alter ego of one or more of the Defendants, or was otherwise involved with the other Defendants in the wrongdoing alleged herein, and by virtue of such capacity, assumed the obligations herein owed by Defendants, and is liable and responsible for the damages on the facts alleged herein and for all the relief sought.

25. Unless otherwise indicated herein, on information and belief, there has existed at all relevant times, a unity of interest and ownership between each of the Does 1 through 10 named herein, and at least one or more of the Defendants, such that any individuality and separateness between them has ceased and each is the "alter ego" of the other, and that adherence to the fiction of the separate existence of each Doe Defendant as an entity or individual distinct from one or more of the Defendants would therefore permit an abuse of the corporate privilege and would sanction fraud and promote injustice.

26. Unless otherwise indicated herein, on information and belief, there has existed at all relevant times a joint venture between each of the Does 1 through 10 named herein, and at least one or more of the Defendants, such that each of the Does 1 through 10 and at least one or more of the Defendants shared a common business interest, shared control, profits and losses arising from such common business interests, and therefore are liable and responsible for the damages on the facts alleged herein and for all relief sought.

**COMPLAINT**

0a444\00001\68504.6

# GENERAL ALLEGATIONS

## Solid Oak's CYBERsitter

27.     Solid Oak is a family-owned software company based in Santa Barbara, California, that manufactures an Internet filtering software program known as "CYBERsitter." This product was designed to help parents protect their children from viewing inappropriate pornographic and violent content on the Web. CYBERsitter was the first commercially available Internet filter. It has been continuously published by Solid Oak for over 14 years. CYBERsitter has won numerous awards, including winning *PC Magazine*'s prestigious Editor's Choice Award five times. Solid Oak now boasts over 2.4 million active CYBERsitter users worldwide, including thousands of businesses, individuals, and schools in China, and thousands more in other Chinese-speaking countries. CYBERsitter is sold on Solid Oak's website, www.CYBERsitter.com, for $39.95 per copy.

28.     CYBERsitter operates by using a complex and unique series of Internet content filters. These content filters (also referred to herein as "Trade Secrets") are proprietary code, which is encrypted in order to prevent its disclosure to third parties and competitors. They have been developed and refined by Solid Oak over many years, and are the key to the Internet filtering aspect of the program. Solid Oak's filters are constantly updated, and updates are made available at no cost to those who have purchased the CYBERsitter program. This Internet filtering component is the centerpiece of the program.

29.     Designing a content filter is an art and involves significant creativity. There are many distinctive ways for different programmers to construct these filters in order to achieve the same function. CYBERsitter's content filters are Solid Oak's unique expression, and any copying of these filters goes to the heart of the program and takes the central expressive feature that distinguishes CYBERsitter from its competitors.

9

**COMPLAINT**

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>Green Dam and Its Developers</u>

30.    Green Dam Youth Escort, like CYBERsitter, is an Internet content management program that uses content filters to block undesired content. Green Dam was developed by two Chinese companies: Zhengzhou Jinhui Computer System Engineering Ltd. and Beijing Dazheng Human Language Technology Academy Ltd. Green Dam was developed with the backing and support of the Chinese government. In 2004, the Green Dam project received 3 million Yuan in government investment funds.

31.    Jinhui was founded in 1997. Jinhui is officially listed as a private company, but its principal shareholders include government-backed corporations and its researchers have close ties with the military research division of the Information Engineering University ("IEU"), one of a handful of military academies run by the People's Liberation Army.

32.    Dazheng was founded in 2000. Dazheng (which also operates under the name "HNC Institute") is officially listed as a private company, but works closely with several Chinese government Ministries and Commissions. In 2003, Dazheng developed its first publicly-announced software program called the "Falun Gong Concept Censorship System." As the name suggests, the program was designed to censor Internet content related to the Falun Gong, a religious group banned by the Chinese government. The program was found to have serious flaws that caused constant crashing on the computers on which it was installed.

<u>The Green Dam Initiative</u>

33.    On January 21, 2008, the PRC announced an "open bidding" process for companies purportedly to compete for a one-year contract for content-filtering software to be used by the PRC. On January 25 – just four days after the bidding began – the bidding process was abruptly closed. The PRC then allowed Jinhui and Dazheng, the makers of Green Dam, to set the standards for evaluating the software

**COMPLAINT**

0444410000168504 6

1  bids, and to conduct the testing of the competing software products. Not surprisingly,

2  the winner of this "open bidding" process was Green Dam. The PRC initially paid

3  Jinhui and Dazheng a sum of 47.1 million Yuan (approximately 6.9 million U.S.

4  dollars) for a one-year license to distribute the Green Dam program. The PRC then

5  charged substantial license fees to computer manufacturers and others for use of the

6  Green Dam program.

7      34.    Pursuant to this license, Defendant PRC has made the Green Dam

8  program available for free downloading worldwide on the Internet, including on its

9  own official site, as well as on many other privately owned Internet sites. Defendants

10  Jinhui and Dazheng also made the program available for download from websites that

11  they own or control. The PRC has encouraged downloading of the program by

12  Chinese speakers worldwide, including through propaganda. The Chinese

13  government's official Green Dam site contains or contained links targeting users in

14  "San Francisco" and "New York" – the locations of the two largest Chinese-speaking

15  populations in the United States.

16      35.    On February 1, 2009, the PRC expanded an existing program known as

17  the "Rural Subsidy Program" ("Program") – which was originally designed to make

18  household items such as televisions, refrigerators, and cell phones available to rural

19  Chinese families at significantly below market price – to include home computers

20  made by certain designated suppliers. In order to participate in the Program, computer

21  suppliers were required to submit an application to the PRC and agree to abide by all

22  of the terms and preconditions of the Program. In return, the PRC has made available

23  a vast and captive market of over 800 million rural residents to the Program's

24  exclusive designated suppliers. As a precondition of participation in the Program, the

25  government required that computers sold in the Program must have Green Dam pre-

26  installed on them, or must be accompanied by a disk containing the Green Dam

27  software. Defendants Lenovo, Acer, Asus, BenQ and Haier are among the select

28

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

11

**COMPLAINT**

1  group of computer manufacturers that applied and were accepted as designated

2  suppliers for the Program.

3  36.   On May 19, 2009, the PRC's MIIT issued a directive mandating that by

4  July 1, 2009 every computer shipped to or sold in China must have the Green Dam

5  software pre-installed on or packaged with the computer.  The stated purpose of the

6  directive was to "build a healthy and harmonious online environment that does not

7  poison young people's minds."  The directive also required computer suppliers to

8  report sales information to the MIIT, including the number of computers sold or

9  shipped with the Green Dam software.  Also in May 2009, MIIT ordered Green Dam

10  to be installed on every computer in every primary and secondary school in China.

11  37.   The Green Dam Initiative was met with condemnation from international

12  human rights groups and activists within China.  These groups, while agreeing with

13  the stated goal of keeping pornography away from minors (as the CYBERsitter filters

14  were designed to do), viewed the Green Dam Initiative as a thinly-veiled attempt to

15  expand political and religious censorship.  Researchers in China reported that Green

16  Dam contains over 6,500 political keyword filters, including keywords related to the

17  Chinese occupation of Tibet, the 1989 Tiananmen Square massacre, and the

18  government-banned Falun Gong religious group.  This is more than double the

19  number of pornography-related keyword filters in the program.

20  38.   On June 30, 2009 – the day before the mandate was to take effect – the

21  MIIT announced that it was delaying implementation of the mandatory pre-installation

22  of Green Dam on computers.  On August 12, 2009, China issued a statement saying

23  that it did not intend to reinstate the mandate.  Nevertheless, Green Dam continues to

24  be distributed throughout China and to Chinese speakers throughout the world, and

25  the PRC continues to promote proliferation of the Green Dam program by both formal

26  and informal means.

27

28

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

**COMPLAINT**

04444\000001\68504.6

Unauthorized Copying and Exploitation of CYBERsitter Content Filters

39.    On June 11, 2009, an independent team of researchers in the computer science department at the University of Michigan issued a report analyzing the Green Dam program ("Michigan Report").  In less than 12 hours of testing, the Michigan team found "serious security vulnerabilities" in the Green Dam program, including "remotely-exploitable vulnerabilities" whereby "[a]ny website a Green Dam user visits can take control of the PC."  Researchers also found that the program makes possible remote monitoring of a computer user's activities, not limited to activities on the Internet.

40.    The Michigan Report also concluded that Green Dam had copied verbatim portions of Solid Oak's CYBERsitter program.  The most significant and troubling aspect of this copying was the copying of CYBERsitter's proprietary content filters.

41.    In addition to the verbatim copying of the CYBERsitter content filters, researchers also discovered a "smoking gun" file.  The smoking gun file is a file containing two CYBERsitter announcements, dated May 4 and May 10, 2004, respectively.   The first is a simple announcement to CYBERsitter customers: "CYBERsitter Version 9 released.   This is a free upgrade and is available at: http://www.getcybersitter.com."  The second warns CYBERsitter users of the dangers of Spyware.  It urges users to install a Spyware checker, and directs users to the CYBERsitter website for further information on this issue.  This smoking gun file was apparently copied because it has a file extension similar to that of the content filters. Despite the fact that this file obviously has no functional role in the Green Dam program, it was directly copied from the CYBERsitter program and incorporated into the Green Dam program along with the CYBERsitter content filters.

42.    In total, the version of Green Dam tested by researchers at the University of Michigan contains 2,972 lines of code identical to CYBERsitter code.

**COMPLAINT**

04444\00001\68504.6

43.     Numerous subsequent versions of and updates to Green Dam have been released since the Michigan Report.  Testing of subsequent versions and updates to Green Dam show that the CYBERsitter filters remain active, and the most current version of Green Dam makes active use of CYBERsitter's content filters.  Subsequent testing also indicates that the removal of the CYBERsitter content filters from the program (as opposed to merely deactivating them) causes Green Dam to lose content-filtering capability altogether, rendering it possible for users to access even the most well-known pornographic websites.  This suggests that CYBERsitter files are integral to the basic functioning of the Green Dam program and its ability to filter content.

Green Dam Facts and Figures

44.     Green Dam continues to be aggressively marketed and disseminated throughout China by the PRC and the Chinese software developers, both by formal and informal means.  As of June 8, 2009, the PRC reported that from the end of March 2009 through early June 2009 over 53 million computers marketed for home use had been sold in China with the Green Dam program.  The government also reported that more than 2,000 schools in China had installed Green Dam on more than half a million computers during that period.  By some estimates, the number of computers equipped with Green Dam in Chinese schools was expected to top 4 million by the end of June 2009.  In addition, as of early June 2009, Green Dam had been downloaded from Internet sites over 3 million times.

45.     The PRC paid the developers of Green Dam the equivalent of 6.9 million U.S. dollars for a one-year license to distribute the software.  Using the PRC's figures for less than three months of distribution on home computers alone, this would amount to a mere 13 cents per copy.  This figure does not represent a fair market price for a commercial software license arrived at through an arms-length bargaining process.  Moreover, the license price does not account for the substantial additional financial benefits that Jinhui and Dazheng expected to reap from the PRC-promoted

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

1  proliferation of the program.  Indeed, due to update fees and other fees that the makers

2  expected to collect for the continued use of Green Dam after expiration of the one-

3  year governmental license period, Jinhui stated publicly that it expected its revenues

4  from the program to top 3 billion Yuan (nearly half a billion U.S. dollars) in 2010.  In

5  addition, the PRC has collected substantial sums, in an amount to be determined at

6  trial, in sublicensing fees from computer manufacturers and others.

7         46.    The proliferation of Green Dam is not limited to China.  It is available for

8  free download to Chinese speakers through the world.  On information and belief,

9  many thousands of downloads of Green Dam have occurred in the United States,

10  including thousands of downloads in the state of California.  Defendants PRC, Jinhui,

11  and Dazheng have made the Green Dam program available for download on their

12  official websites, and have authorized numerous other Internet sites to offer the

13  program for download.  Chinese speakers outside of China, including in the United

14  States, have been encouraged to download the program through propaganda, including

15  in promotional materials on the PRC's website.  As stated above, the PRC's official

16  Green Dam site contains or contained links specifically targeting users in San

17  Francisco and New York.

18         <u>Unlawful Attempts to Gain Access to Solid Oak Servers and Computers</u>

19         47.    In addition to the illegal copying and distribution of Solid Oak's

20  intellectual property, there have been numerous unlawful attempts to gain access to

21  Solid Oak's computers and servers originating from within China.  Solid Oak has

22  discovered several thousand individual attempts to gain administrative access to Solid

23  Oak's servers originating from China.  Each of these intrusions involved between 20

24  and 3,000 attempts at access per session.  If successful, gaining administrative access

25  would allow a perpetrator to access all of Solid Oak's information stored on its servers

26  (including its content filters), and to appropriate and alter or delete this information.

27  At least one such intrusion, on May 31, 2009, originated from within the PRC

28

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

15
**COMPLAINT**

0a44a\00001\68504.6

Ministry of Health in China, and involved more than 2,500 attempts over the course of 27 minutes.

48.    On or about June 20, 2009, Solid Oak employees received a series of individually customized Trojan emails originating from sources in China posing as Solid Oak employees. These emails were designed to retrieve information stored on Solid Oak's computers and send it back to their source, and to install foreign items on Solid Oak's computers. Solid Oak is still investigating whether any of these attempts was successful, and what information may have been compromised.

The Common Scheme

49.    As stated above, Defendants Jinhui and Dazheng (collectively, "Defendant Developers") entered into an agreement with Defendant PRC providing PRC with a one-year license to distribute the Green Dam software. Defendant PRC then entered into agreements with Defendants Sony, Lenovo, Toshiba, Acer, Asus, BenQ, Haier and Does 1 through 10 (collectively, "Defendant Manufacturers") providing for the distribution of Green Dam by Defendant Manufacturers in China (including as part of the Rural Subsidy Program). On information and belief, Defendant PRC has charged substantial fees to the Defendant Manufacturers for use of the Green Dam program.

50.    In addition, Defendant Manufacturers entered into contracts with Defendant Developers, pursuant to which said Defendant Manufacturers have been designated as official distributors of the Green Dam product and Defendant Developers are their designated suppliers of content-filtering software. Defendant Manufacturers have requested and obtained indemnity for violations of law relating to the Green Dam program from Defendant Developers. Such indemnity, however, has no bearing on Defendant Manufacturers' liability for violations of law relating to the Green Dam program.

51.    On or about March 11, 2009, Defendant PRC held a symposium on the Green Dam program at MIIT headquarters in Beijing ("Green Dam Symposium"). In

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

16

**COMPLAINT**

0444A\00001\68504.6

addition to the MIIT, participants included the Defendant Developers and representatives of each of the major computer manufacturers (including Defendant Manufacturers).   The meeting agenda was to finalize a working plan for the proliferation of the Green Dam program and to discuss plans for installing Green Dam on computers throughout China.

52.   Each of the Defendant Manufacturers has willingly participated in the PRC and Defendant Developers' scheme to proliferate the illegal software throughout China.

53.   Each of the Defendant Manufacturers commenced distribution of the Green Dam software no later than on or about March 1, 2009.

54.   Each of the Defendants has had actual knowledge of the violations at issue herein since early-June 2009 at the latest, when the highly publicized infringement of Plaintiff's software by the Green Dam program was reported extensively in the press.

55.   On June 15, 2009, Plaintiff sent cease and desist letters giving express notice of the ongoing infringements to the following Defendants:   Sony, Lenovo, Toshiba, Acer, Asus and BenQ.

56.   On information and belief, each of the Defendant Manufacturers continued to distribute the Green Dam program even after the widespread press reports of infringement in early June and (where applicable) even after being sent the June 15, 2009 cease and desist letter.   According to press reports, most or all of the Defendant Manufacturers had ceased distributing the Green Dam program by mid to late September 2009.

## FIRST CLAIM FOR RELIEF

## MISAPPROPRIATION OF TRADE SECRETS

## (violation of Cal. Civ. Code § 3426.1)

## [Against All Defendants]

57.   Plaintiff repeats and realleges the allegations made in paragraphs 1

0a4444\00001\68504.6

1 | through 56 as if fully set forth herein.

2 |      58.    Each and every Defendant, and Does 1 through 10, inclusive, have acted
3 | in concert, conspired together, and engaged in conduct constituting misappropriation
4 | of trade secrets pursuant to California's Uniform Trade Secrets Act, Cal. Civ. Code §
5 | 3426, *et seq.*

6 |      59.    Plaintiff's Trade Secrets embedded in the CYBERsitter computer
7 | program constitute valuable information from which Plaintiff derives independent
8 | economic value because such Trade Secrets are not generally known to the public, and
9 | are not readily ascertainable through proper means by the public.  The Trade Secrets
10 | include CYBERsitter's proprietary content filters, which are encrypted so as to prevent
11 | their disclosure to third parties and competitors.

12 |      60.    Defendants Jinhui and Dazheng obtained Plaintiff's Trade Secrets
13 | through improper means.  Defendant PRC knew of and gave support to Defendants
14 | Jinhui and Dazheng in their unauthorized misappropriation and exploitation of
15 | Plaintiff's Trade Secrets.

16 |      61.    Each of the Defendant Manufacturers acquired Plaintiff's Trade Secrets
17 | through Defendants Jinhui, Dazheng and/or PRC.  Defendant Manufacturers had
18 | actual or constructive knowledge no later than early-June 2009 that Jinhui and
19 | Dazheng had acquired the Trade Secrets through improper means and without
20 | Plaintiff's authorization.  Each and every Defendant Manufacturer used the Trade
21 | Secrets by distributing the Green Dam software.  At the time that each Defendant
22 | Manufacturer distributed the Green Dam software, it knew or had reason to know that
23 | the Trade Secrets were obtained through the unauthorized decryption of the
24 | CYBERsitter program.

25 |      62.    Defendants each possessed knowledge that Plaintiff is and was a United
26 | States company and that their illegal acts would therefore cause injury within the
27 | United States and within California.  Plaintiff's Trade Secrets were misappropriated
28 |

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

0A444\00001\68504.6

from within the United States and/or downloaded from servers within the United States.

63. As a direct and proximate result of Defendants' unlawful misappropriation of Plaintiff's Trade Secrets, Plaintiff has been deprived of money, such as licensing fees for the use of Plaintiff's Trade Secrets that would otherwise have been due to Plaintiff, and Defendants have been unjustly enriched by their misappropriation of Plaintiff's Trade Secrets. Plaintiff is thus entitled to damages for its losses and restitution of Defendants' profits attributable to the misappropriation of Plaintiff's Trade Secrets, in amounts to be proven at trial which are not currently ascertainable. Cal. Civ. Code. § 3426.3(a). In the alternative, Plaintiff is entitled to a "reasonable royalty" for Defendant's use of Plaintiff's Trade Secrets, in an amount to be proven at trial which is not currently ascertainable. *Id.* If necessary, Plaintiff will seek leave to amend this complaint to state the full amount of such sums when such amounts have been ascertained.

64. As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Plaintiff is informed and believes and on that basis avers that unless enjoined and restrained by this Court, Defendants will continue to engage in conduct violative of the Uniform Trade Secrets Act. Plaintiff is entitled to preliminary and permanent injunctive relief.

## SECOND CLAIM FOR RELIEF
## UNFAIR COMPETITION
### (In Violation of California Business and Professions Code §§ 17200 et seq. and 18 U.S.C. §§ 1831, 1832)
### [Against All Defendants]

65. Plaintiff repeats and realleges the allegations made in paragraphs 1 through 64 as if fully set forth herein.

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

0a4440000168504 6

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

66.    Each and every Defendant and Does 1 through 10, inclusive, have acted in concert, conspired together, and engaged in conduct constituting an illegal business practice prohibited by the California Unfair Competition Law, California Business and Professions Code §§ 17200, *et seq*. (the "UCL"), by and through their violations of Section 1832 of the federal Economic Espionage Act, entitled "Theft of Trade Secrets" (18 U.S.C. § 1832).   Section 1832 of the Act makes certain types of trade secret theft a federal crime.   While the Act does not, by itself, create a private cause of action, violations of the Economic Espionage Act may serve as predicate acts giving rise to a private right of action for unlawful business practices under the UCL.   *See* Cal. Bus. & Prof. Code §§ 17200, *et seq*.

67.    In addition, each and every Defendant and Does 1 through 10, inclusive, have acted in concert, conspired together, and engaged in conduct constituting an illegal business practice prohibited by the UCL by and through their violations of Section 1831 of the federal Economic Espionage Act, entitled "Economic Espionage" (18 U.S.C. § 1831).   Section 1831 of the Act makes certain types of trade secret theft benefitting a foreign government, instrumentality, agent or power a federal crime. While the Act does not, by itself, create a private cause of action, violations of the Economic Espionage Act may serve as predicate acts giving rise to a private right of action for unlawful business practices under the UCL. *See* Cal. Bus. & Prof. Code §§ 17200, *et seq*.

68.    Plaintiff's computer program, CYBERsitter, is produced for and placed in interstate commerce and foreign commerce.

69.    Plaintiff's Trade Secrets embedded in the CYBERsitter computer program constitute valuable information from which Plaintiff derives independent economic value because such Trade Secrets are not generally known to the public, and are not readily ascertainable through proper means by the public.   The Trade Secrets include CYBERsitter's content filters, which are encrypted to prevent their disclosure to third parties and competitors.

0a444\00001\68504.6

70.   All Defendants obtained Plaintiff's Trade Secrets through wrongful means without Plaintiff's authorization.   All Defendants knew or became aware that the Trade Secrets were obtained through wrongful means without Plaintiff's authorization, and that the use of the Trade Secrets by all Defendants was without Plaintiff's authorization.

71.   Defendants knew that the Trade Secrets were proprietary and belonged to Plaintiff.   Defendants nevertheless intended to convert the Trade Secrets for their own economic benefit.   Defendants knew that such conversion of Plaintiff's Trade Secrets would injure Plaintiff.   Defendants nevertheless used and exploited Plaintiff's Trade Secrets for their own economic benefit.

72.   All Defendants knew that their unauthorized possession, exploitation, copying and dissemination of Plaintiff's Trade Secrets would benefit a foreign government, namely Defendant PRC.   Defendant Manufacturers, Jinhui, Dazheng and Does 1 through 10 conspired together with Defendant PRC to misappropriate and exploit Plaintiff's Trade Secrets without Plaintiff's authorization.   Indeed, Plaintiff is informed and believes that Defendant Manufacturers paid substantial sums to Defendant PRC to exploit Plaintiff's Trade Secrets.

73.   The aforementioned illegal acts occurred in part within the territorial boundaries of the United States and/or its territories.   Plaintiff's Trade Secrets were taken from within the United States and/or downloaded from servers within the United States.   In addition, Defendants each possessed knowledge that Plaintiff is and was a United States company and that their illegal acts would therefore cause injury within the United States and within California.

74.   Defendants' unlawful, unfair, and/or deceptive acts were willful, in disregard of and with indifference to Plaintiff's rights.

75.   As a direct and proximate result of Defendants' unlawful acts and practices, Plaintiff has been deprived of money, such as licensing fees for the use of Plaintiff's Trade Secrets that would otherwise have been due to Plaintiff.   Plaintiff is

**COMPLAINT**

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

1    thus entitled to restitution of such sums as would otherwise have been owed or paid to

2    Plaintiff, in amounts to be proven at trial which are not currently ascertainable.  If

3    necessary, Plaintiff will seek leave to amend this complaint to state the full amount of

4    such sums when such amounts have been ascertained.

5         76.    As a direct and proximate result of the foregoing acts and conduct,

6    Plaintiff has sustained and will continue to sustain substantial, immediate, and

7    irreparable injury, for which there is no adequate remedy at law.  Plaintiff is informed

8    and believes and on that basis avers that unless enjoined and restrained by this Court,

9    Defendants will continue to engage in conduct violative of California Business and

10   Professions Code, Section 17200.  Plaintiff is entitled to preliminary and permanent

11   injunctive relief.

### THIRD CLAIM FOR RELIEF

### COPYRIGHT INFRINGEMENT

#### (In Violation of the Copyright Act of the United States)

#### [Against Defendants PRC, Jinhui, Dazheng, and Does 1-10]

16        77.    Plaintiff repeats and realleges the allegations made in paragraphs 1

17   through 76 as if fully set forth herein.

18        78.    Plaintiff's CYBERsitter program and the various versions thereof are

19   copyrighted works ("Copyrighted Works").  Plaintiff has applied for and obtained

20   Certificates of Copyright Registration duly issued by the Register of Copyright for the

21   Copyrighted Works.  Under the U.S. Copyright Act, Plaintiff has the exclusive rights,

22   *inter alia*, to reproduce the Copyrighted Works, to prepare derivative works based

23   upon the Copyrighted Works, and to distribute copies of the Copyrighted Works to the

24   public. *See* 17 U.S.C. §§ 106(1), (2), (3).

25        79.    Through their conduct averred herein, Defendants PRC, Jinhui, Dazheng,

26   and Does 1 through 10 have directly infringed Plaintiff's copyrights in the

27   Copyrighted Works by reproducing, adapting, and/or distributing works embodying

28   the Copyrighted Works without authorization in violation of the Copyright Act. *See*

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

22

**COMPLAINT**

0a4441\00001\68504.6

1   17 U.S.C. §§ 106, 501.  Defendants PRC, Jinhui, Dazheng, and Does 1 through 10
2   have caused copies Plaintiff's Copyrighted Works to be distributed within the United
3   States, including via the Internet.

4      80.   Defendants PRC, Jinhui, Dazheng, and Does 1 through 10 have the right
5   and ability to supervise and control ongoing infringements by third parties, including
6   infringements by those who – with the authorization, approval, and consent of said
7   Defendants – distribute and cause copies to be made of Plaintiff's Copyrighted Works
8   via the Internet in the United States and elsewhere.  Said Defendants have refused and
9   failed to exercise supervision and control over said third parties, and said Defendants
10  also reap a direct pecuniary benefit from the infringement.  As a direct and proximate
11  result of said Defendants' actions, third parties have infringed Plaintiff's copyrights in
12  the Copyrighted Works, including by reproducing, adapting, distributing, and publicly
13  displaying the Copyrighted Works.

14     81.   In addition, Defendants PRC, Jinhui, Dazheng, and Does 1 through 10
15  have knowingly facilitated the unauthorized copying and dissemination of Plaintiff's
16  Copyrighted Works.  Said Defendants have materially contributed to the infringing
17  conduct of third parties, *inter alia*, because said Defendants have knowingly
18  authorized, approved of, and consented to third party distribution and copying of
19  Plaintiff's Copyrighted Works via the Internet in the United States and elsewhere, and
20  said Defendants each possessed actual or constructive knowledge of the violations at
21  issue.

22     82.   The aforementioned infringing acts occurred in whole or in part within
23  the territorial boundaries of the United States and/or its territories.

24     83.   Each infringement by Defendants in and to the Copyrighted Works
25  constitutes a separate and distinct act of infringement.

26     84.   Defendants' acts of infringement were knowing, willful, negligent, in
27  disregard of and with indifference to the rights of Plaintiff.

28

**COMPLAINT**

0A444\00001\68504.6

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

85.   As a direct and proximate result of the infringements by Defendants, Plaintiff is entitled to its damages and Defendants' profits, each in amounts to be proven at trial.

86.   Alternatively, Plaintiff is entitled to the maximum statutory damages in the amount of $150,000 with respect to each work infringed, or for such other amounts as may be proper. *See* 17 U.S.C. § 504(c).

87.   Plaintiff is further entitled to its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

88.   As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.  Plaintiff is informed and believes and on that basis avers that unless enjoined and restrained by this Court, Defendants will continue to infringe Plaintiff's rights in the Copyrighted Works. Plaintiff is entitled to preliminary and permanent injunctive relief.

### FOURTH CLAIM FOR RELIEF

### COPYRIGHT INFRINGEMENT

#### (In Violation of the Copyright Laws of the People's Republic of China)

#### [Against All Defendants]

89.   Plaintiff repeats and realleges the allegations made in paragraphs 1 through 88 as if fully set forth herein.

90.   Plaintiff's Copyrighted Works are protected under the Copyright Law of the People's Republic of China ("PRC Copyright Law") and the Regulations for the Protection of Computer Software of the People's Republic of China ("PRC Software Regulations").  Plaintiff is the owner of the Copyrighted Works under Chinese law. *See* PRC Copyright Law, Arts. 9, 11; PRC Software Regulations, Art. 13.  The People's Republic of China is a signatory to the Berne Convention and has adopted laws that comply with the minimum standards set by the Berne Convention. Accordingly, because Plaintiff's Copyrighted Works are foreign works under Chinese

**COMPLAINT**

04444\00001\68504.6

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

copyright law, those works are entitled to full protection of the Chinese copyright laws from the moment they are created without any need for registration in China (or elsewhere). *See* PRC Copyright Law, Art. 2; PRC Software Regulations, Arts. 5, 7, 14.

91.     Chinese copyright law protects both the economic rights and moral rights of the owner of copyrighted works, including computer software and written works. *See* PRC Copyright Law, Art. 3; PRC Software Regulations, Art. 1.  Under Chinese copyright law (including both the PRC Copyright Law and the PRC Software Regulations), Plaintiff has the exclusive rights, *inter alia*, to reproduce, publish, distribute, disseminate on information networks, lease, and make available to the public the Copyrighted Works, as well as the moral right to attribution of authorship of the Copyrighted Works. *See* PRC Software Regulations, Art. 8; PRC Copyright Law, Art. 10 (rights), Arts. 46-47 (infringing acts).

92.     Through their conduct averred herein, Defendants have infringed Plaintiff's copyrights in the Copyrighted Works by reproducing, publishing, distributing, disseminating on information networks, leasing, and making available to the public works embodying the Copyrighted Works without authorization, and have not attributed authorship of the Copyrighted Works to Plaintiff, all in violation of Plaintiff's rights under Chinese copyright law. *See* PRC Copyright Law, Arts. 46-47; PRC Software Regulations, Arts. 23-24.

93.     Through their conduct averred herein, Defendants are jointly liable under Chinese law for the infringing acts of third parties to which they have materially contributed and/or caused, including the infringement of Plaintiff's copyrights in the Copyrighted Works by reproducing, publishing, distributing, disseminating on information networks, leasing, and making available to the public works embodying the Copyrighted Works without authorization, and by failing to attribute authorship of the Copyrighted Works to Plaintiff, all in violation of Plaintiff's rights under Chinese copyright law. *See* PRC Copyright Law, Arts. 46-47; PRC Software Regulations,

**COMPLAINT**

Arts. 23-24; *see also Shanghai Push Sound Music & Entertainment Co., Ltd. v. Beijing Kuro Music Software Development Co., Ltd., et al.*, Case No. 13739 (Beijing Second Interm. Ct., Dec. 19, 2006) (holding a Napster-like peer-to-peer file sharing service liable under traditional joint liability principles) available at http://bjgy.chinacourt.org/public/detail.php?id=43572&k_w. As a direct and proximate result of Defendants' actions, third parties have infringed Plaintiff's copyrights in the Copyrighted Works, and Defendants have caused third parties to infringe Plaintiff's copyrights in the Copyrighted Works in the manner stated above in violation of Chinese copyright law. *See* PRC Copyright Law, Arts. 46-47; PRC Software Regulations, Arts. 23-24.

94.    Defendants have acted in concert with third parties to violate Plaintiff's rights. Defendants have the right and ability to supervise and control ongoing infringements by third parties, including: (a) infringements by those who – with the authorization, approval, direction and consent of Defendants PRC, Jinhui, Dazheng, and Does 1-10 – distribute and cause copies to be made of Plaintiff's Copyrighted Works via the Internet in China and elsewhere, and (b) infringements by those who – with the authorization, approval, direction and consent of Defendants – make, package, install, or otherwise distribute unauthorized copies of Plaintiff's Copyrighted Works with Defendant Manufacturers' computers (*viz.*, Sony, Lenovo, Toshiba, Acer, Asus, BenQ, Haier and Does 1-10). Defendants have refused and failed to exercise supervision and control over said third parties, and Defendants reap a direct pecuniary benefit from the infringement of said third parties. Defendant Manufacturers have a duty to ensure that the programs that are sold and distributed with their computers are not stolen in violation of the copyrights of others. Defendants failed to meet this obligation here and instead turned a blind eye to third party violations that they could reasonably anticipate would occur. In addition, while knowledge is not required for a violation of Chinese copyright law, each of the Defendants has had knowledge of the violations at issue since early-June 2009 at the latest.

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

95.   Through their conduct averred herein, Defendants PRC, Jinhui, Dazheng and Does 1 through 10 have infringed Plaintiff's rights in its Copyrighted Works by "intentionally circumventing or destroying technological measures [*viz.*, Plaintiff's encryption methods] taken by a right holder for protecting the copyright or copyright-related rights in his work … without the permission of the copyright owner, or the owner of the copyright-related rights" in violation of Chinese Copyright Law. *See* PRC Copyright Law, Art. 47(6).

96.   The aforementioned infringing acts occurred in whole or in part within the territorial boundaries of the People's Republic of China and/or its territories.

97.   Each infringement by Defendants in and to the Copyrighted Works constitutes a separate and distinct act of infringement.

98.   Defendants' acts of infringement were knowing, willful, negligent, in disregard of and with indifference to the rights of Plaintiff.

99.   As a direct and proximate result of the infringements by Defendants, Plaintiff is entitled to its damages or to Defendants' profits, each in amounts to be proven at trial. *See* PRC Copyright Law, Art. 48; PRC Software Regulations, Art. 25.

100.   Alternatively, Plaintiff is entitled to the maximum statutory damages in the amount of 500,000 Yuan (approximately 73,000 U.S. dollars) per infringement, or for such other amounts as may be proper under the PRC Copyright Law and PRC Software Regulations. *See* PRC Copyright Law, Art. 48; PRC Software Regulations, Art. 25.

101.   Plaintiff is further entitled to its attorneys' fees and costs.

102.   As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Plaintiff is informed and believes and on that basis avers that unless enjoined and restrained by this Court, Defendants will continue to infringe Plaintiff's rights in the Copyrighted Works.

**COMPLAINT**

0a444\00001\68504.6

1   Plaintiff is entitled to preliminary and permanent injunctive relief.   *See* PRC

2   Copyright Law, Art. 49; PRC Software Regulations, Art. 26.

### FIFTH CLAIM FOR RELIEF

### COPYRIGHT INFRINGEMENT

### (In Violation of the Copyright Laws of Japan)

### [Against Defendants PRC, Jinhui, Dazheng, Sony, Toshiba, and Does 1-10]

7   103.   Plaintiff repeats and realleges the allegations made in paragraphs 1

8   through 102 as if fully set forth herein.

9   104.   Plaintiff's Copyrighted Works are protected under Japan's Copyright Act

10   ("JCA").   Plaintiff is the owner of the Copyrighted Works, which constitute "works of

11   authorship" – in particular, "computer program works" – protected under Japanese

12   law.   JCA, Arts. 10(1), 6(3), 14-15; *see also* Art. 2(1) (defining "computer program"

13   as "an expression of a combination of instructions to cause a computer to function in

14   order to be able to obtain a certain result").   Japan is a signatory to the Berne

15   Convention and has adopted laws that comply with the minimum standards set by the

16   Berne Convention.   Accordingly, because Plaintiff's Copyrighted Works are foreign

17   works under Japanese copyright law, those works are entitled to full protection of the

18   Japanese copyright laws from the moment they are created without any need for

19   registration in Japan (or elsewhere).   *See* JCA, Arts. 17(2), 51(1).

20   105.   Japanese copyright law protects both the economic rights and moral

21   rights of the author of copyrighted works, including "computer program works" and

22   "literary works."   *See* JCA, Arts. 10, 18-28.   Under Japanese copyright law, Plaintiff

23   has the exclusive rights, *inter alia*, to reproduce, distribute, transfer ownership, rent,

24   adapt, offer and make available to the public the Copyrighted Works, as well as the

25   moral right to attribution of authorship and to maintain the integrity of the

26   Copyrighted Works.   *See* JCA, Arts. 18-28.

27   106.   Through their conduct averred herein, Defendants PRC, Jinhui, Dazheng,

28   Sony, Toshiba and Does 1 through 10 have infringed Plaintiff's copyrights in the

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

28

**COMPLAINT**

Copyrighted Works by reproducing, distributing, transferring ownership, renting, adapting, and offering and making available to the public works embodying the Copyrighted Works without authorization, and have not attributed authorship or maintained the integrity of the Copyrighted Works to Plaintiff, all in violation of Plaintiff's rights under Japanese copyright law. *See* JCA, Arts. 18-28.

107.   Through their conduct averred herein, said Defendants are jointly liable under Japanese law for the infringing acts of third parties to which they have materially contributed and/or caused, including the infringement of Plaintiff's copyrights in the Copyrighted Works by reproducing, distributing, transferring ownership, renting, adapting, and offering and making available to the public works embodying the Copyrighted Works without authorization, and by failing to attribute authorship of the Copyrighted Works to Plaintiff and to maintain their integrity, all in violation of Plaintiff's rights under Japanese copyright law. *See* JCA, Arts. 18-28. As a direct and proximate result of said Defendants' actions, third parties have infringed Plaintiff's copyrights in the Copyrighted Works, and said Defendants have caused third parties to infringe Plaintiff's copyrights in the Copyrighted Works in the manner stated above in violation of Japanese copyright law. *See* JCA, Arts. 18-28.

108.   The aforementioned infringing acts occurred in whole or in part within the territorial boundaries of Japan.

109.   Each infringement by said Defendants in and to the Copyrighted Works constitutes a separate and distinct act of infringement.

110.   Said Defendants' acts of infringement were knowing, willful, negligent, in disregard of and with indifference to the rights of Plaintiff.

111.   As a direct and proximate result of the infringements by said Defendants, Plaintiff is entitled to its damages and/or to said Defendants' profits and/or to a reasonable royalty, each in amounts to be proven at trial. *See* JCA, Arts. 114(1)-(3), 114-5.

112.   Plaintiff is further entitled to its attorneys' fees and costs.

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

29
**COMPLAINT**

0a444\00001\68504.6

113.   As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.  Plaintiff is informed and believes and on that basis avers that unless enjoined and restrained by this Court, said Defendants will continue to infringe Plaintiff's rights in the Copyrighted Works. Plaintiff is entitled to preliminary and permanent injunctive relief.  *See* JCA, Arts. 112, 115.

### SIXTH CLAIM FOR RELIEF
### COPYRIGHT INFRINGEMENT
### (In Violation of the Copyright Laws of Taiwan)
### [Against Defendants PRC, Jinhui, Dazheng, Acer, Asus, BenQ, and Does 1-10]

114.   Plaintiff repeats and realleges the allegations made in paragraphs 1 through 113 as if fully set forth herein.

115.   Plaintiff's Copyrighted Works are protected under the Taiwan Copyright Act ("TCA").  Plaintiff is the author of the Copyrighted Works under Taiwanese law. *See* TCA, Arts. 3, 11-12.   While Taiwan is a not a formal signatory to the Berne Convention, it has adopted laws that comply with the minimum standards set by the Berne Convention.  Plaintiff's Copyrighted Works are foreign works under Taiwanese copyright law, entitled to full protection of the Taiwanese copyright laws from the moment they are created without any need for registration in Taiwan (or elsewhere). *See* TCA, Arts. 4, 10.

116.   Taiwanese copyright law protects both the economic rights and moral rights of the owner of copyrighted works, including "computer programs" and "literary works."  *See* TCA, Art. 5.  Under Taiwanese copyright law, Plaintiff has the exclusive rights, *inter alia*, to reproduce, distribute, publicly transmit, adapt, and lease the Copyrighted Works, as well as the moral rights to attribution of authorship, public release, and prevention of alteration of the Copyrighted Works.  *See* TCA, Arts. 15-17 (moral rights), Arts. 22-29 (economic rights).

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

**COMPLAINT**

0444A\00001\68504.6

1    117.   Through their conduct averred herein, Defendants PRC, Jinhui, Dazheng,

2    Acer, Asus, BenQ, and Does 1 through 10 have infringed Plaintiff's copyrights in the

3    Copyrighted Works by reproducing, distributing, publicly transmitting, adapting and

4    leasing works embodying the Copyrighted Works without authorization, and have

5    publicly released, have not attributed authorship and have altered without

6    authorization the Copyrighted Works to Plaintiff, all in violation of Plaintiff's rights

7    under Taiwanese copyright law.  *See* TCA, Arts. 15-17 (moral rights), Arts. 22-29

8    (economic rights).

9    118.   Through their conduct averred herein, said Defendants are jointly liable

10   under Taiwanese law for the infringing acts of third parties to which they have

11   materially contributed and/or caused, including the infringement of Plaintiff's

12   copyrights in the Copyrighted Works by reproducing, distributing, publicly

13   transmitting, adapting and leasing works embodying the Copyrighted Works without

14   authorization, and by publicly releasing, failing to attribute authorship, and altering

15   without authorization the Copyrighted Works to Plaintiff, all in violation of Plaintiff's

16   rights under Taiwanese copyright law.  *See* TCA, Arts. 15-17 (moral rights), Arts. 22-

17   29 (economic rights).   As a direct and proximate result of said Defendants' actions,

18   third parties have infringed Plaintiff's copyrights in the Copyrighted Works, and said

19   Defendants have caused third parties to infringe Plaintiff's copyrights in the

20   Copyrighted Works in the manner stated above in violation of Chinese copyright law.

21   *See id.*

22   119.   The aforementioned infringing acts occurred in whole or in part within

23   the territorial boundaries of Taiwan.

24   120.   Each infringement by said Defendants in and to the Copyrighted Works

25   constitutes a separate and distinct act of infringement.

26   121.   Said Defendants' acts of infringement were knowing, willful, negligent,

27   in disregard of and with indifference to the rights of Plaintiff.

28

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

31

**COMPLAINT**

122.   As a direct and proximate result of the infringements by said Defendants, Plaintiff is entitled to its damages and to said Defendants' profits, each in amounts to be proven at trial.

123.   Plaintiff is further entitled to its attorneys' fees and costs.

124.   As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.  Plaintiff is informed and believes and on that basis avers that unless enjoined and restrained by this Court, said Defendants will continue to infringe Plaintiff's rights in the Copyrighted Works. Plaintiff is entitled to preliminary and permanent injunctive relief.

## SEVENTH CLAIM FOR RELIEF
## CIVIL CONSPIRACY
### [Against All Defendants]

125.   Plaintiff repeats and realleges the allegations made in paragraphs 1 through 124 as if fully set forth herein.

126.   Defendant Manufacturers and Does 1 through 10, inclusive, conspired, colluded, agreed with, and aided and abetted Defendants PRC, Jinhui, and Dazheng at all relevant times. Through their actions and participation in furtherance of the Green Dam Initiative, Defendant Manufacturers, Defendant Jinhui, Defendant Dazheng, and Defendant PRC implicitly and/or explicitly agreed to participate and did participate in an unlawful plan which included misappropriation and theft of trade secrets, violation of unfair competition laws, and copyright infringement.

127.   Defendants' common scheme – *viz.*, the Green Dam Initiative – involved two overlapping components which eventually became indistinguishable from each other:  participation in the PRC's seemingly legal (albeit surreptitious) plan to have Green Dam installed on every computer in China, and the illegal infringement, theft and distribution of Plaintiff's intellectual property and trade secrets.  Defendant Manufacturers, Defendant Suppliers, and Defendant PRC all willingly participated in

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

0a53252c9ad0f84d

this common scheme both before and after the illegal aspects of the scheme became apparent.

128.   In March 2009, Defendant PRC sponsored a Green Dam Symposium at MIIT offices in Beijing.   The express purpose of the Symposium was to develop a plan to proliferate the Green Dam program on computers throughout China. Representatives of Defendant Manufacturers, Defendant Developers and Defendant PRC all attended and participated in the Green Dam Symposium.

129.   Defendant PRC, Defendant Jinhui, Defendant Dazheng and Defendant Manufacturers also entered into contractual agreements with each other in furtherance of the common scheme, providing for the distribution of the Green Dam program throughout China and elsewhere.

130.   During their initial participation in the Green Dam Initiative, the Defendant Manufacturers may have been unaware that the Green Dam Initiative had an illegal component:  the illegal theft, misappropriation and proliferation of Plaintiff's intellectual property and trade secrets.   But while at first the illegal theft and infringement of Plaintiff's CYBERsitter software may have been limited to the Defendant Developers and the PRC, no later than early June 2009, Defendant Manufacturers had knowledge of the illegal components of the common scheme and, despite this knowledge, thereafter continued to copy and distribute Green Dam and otherwise promote and participate in the Green Dam Initiative.  At this point, the legal and illegal aspects of the common scheme merged and became indistinguishable.

131.   As a result of the foregoing, each of the Defendants is liable for the illegal acts (as alleged herein) of each of the other Defendants in furtherance of their common plan and scheme to proliferate the illegal Green Dam program throughout China.

**COMPLAINT**

04444\00001\68504.6

## PRAYER FOR RELIEF

WHEREFORE, Solid Oak respectfully requests that the Court enter judgment against Defendants as follows:

A.     For an award of Plaintiff's damages and unjust enrichment for Defendant's misappropriation of trade secrets in an amount to be ascertained at trial pursuant to Cal. Civ. Code § 3426.3(a), or in the alternative for a reasonable royalty in an amount to be ascertained at trial, but in no event less than $2,257,175,000, representing the Chinese government's stated figures of more than 56.5 million unlicensed copies distributed on computers, in schools, and on the Internet (as of early June 2009) multiplied by $39.95 per copy, pursuant to Cal. Civ. Code § 3426.3(b).

B.     For an award of Plaintiff's damages under the copyright laws of the United States, China, Japan and Taiwan, in an amount to be ascertained at trial, but in no event less than $2,257,175,000, and in addition or in the alternative for the following:

   a. For an award of Plaintiff's damages and Defendants' profits, each in amounts to be ascertained at trial, or, alternatively, for maximum statutory damages in the amount of $150,000 with respect to each copyrighted work infringed either directly or indirectly, and/or for such other amounts as may be proper under the Copyright Act of the United States;

   b. For an award of Plaintiff's damages or Defendants' profits, each in amounts to be ascertained at trial, or, alternatively, for maximum statutory damages in the amount of 500,000 Yuan (or approximately 73,000 U.S. dollars) per direct or indirect infringement, and/or for such other amounts as may be proper under the Copyright Law and Software Regulations of the People's Republic of China.

   c. For an award of Plaintiff's damages and/or Defendants' profits and/or a reasonable royalty, each in amounts to be ascertained at trial, and/or for

34

**COMPLAINT**

1    such other amounts as may be proper under the Copyright Act of Japan.

2        d.  For an award of Plaintiff's damages and/or for Defendants' profits, each

3            in amounts to be ascertained at trial, and/or for such other amounts as

4            may be proper under the Copyright Act of the Republic of China,

5            commonly known as Taiwan.

6        C.    For restitution of such sums as would otherwise have been owed or paid

7    to Plaintiff absent Defendants' violations of law, in an amount to be ascertained at

8    trial;

9        D.    For exemplary damages against Defendant PRC and Defendant

10   Developers and in favor of Plaintiff pursuant to Cal. Civ. Code § 3426.3(c) in the sum

11   of twice the amount awarded for restitution or a reasonable royalty by reason of

12   Defendants' willful and malicious improper appropriation of Plaintiff's Trade Secrets;

13       E.    For preliminary and permanent injunctive relief;

14       F.    For prejudgment interest;

15       G.    For Plaintiff's attorneys fees and costs of suit incurred in this action; and

16       H.    For such other and further relief as the Court may deem just and proper.

17

18   DATED:  January 5, 2010          GIPSON HOFFMAN & PANCIONE
                                      A Professional Corporation
19                                    GREGORY A. FAYER
                                      ELLIOT B. GIPSON
20

21

22                                    By _____
23                                         GREGORY A. FAYER
                                      Attorneys for Plaintiff CYBERsitter, LLC
24                                    d/b/a Solid Oak Software

25

26

27

28

35
**COMPLAINT**

1

**DEMAND FOR JURY TRIAL**

2      Plaintiff hereby requests a trial by jury.

3

4  DATED:  January 5, 2010                    GIPSON HOFFMAN & PANCIONE

5                                             A Professional Corporation
                                              GREGORY A. FAYER
                                              ELLIOT B. GIPSON
6

7

8                                             By

9                                                GREGORY A. FAYER
                                              Attorneys for Plaintiff CYBERsitter, LLC
10                                            d/b/a Solid Oak Software

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

36

**COMPLAINT**

01111\00001\68504.6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Gary A. Feess and the assigned discovery Magistrate Judge is Stephen J. Hillman.

The case number on all documents filed with the Court should read as follows:

## CV10- 38 GAF (SHx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=====================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X]  Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | **[_]  Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | **[_]  Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CYBERsitter, LLC, a California limited liability company, d/b/a Solid Oak Software<br><br>PLAINTIFF(S)<br><br>v.<br><br>The People's Republic of China, a foreign state; Zhengzhou Jinhui Computer System Engineering Ltd., a Chinese corporation; Beijing Dazheng Human Language Technology Academy Ltd., a Chinese corporation; Sony Corporation, a Japanese corporation; Lenovo Group Limited, a Chinese corporation; Toshiba Corporation, a Japanese corporation; ACER Incorporated, a Taiwanese corporation; ASUSTeK Computer Inc., a Taiwanese corporation; BenQ Corporation, a Taiwanese corporation; Haier Group<br><br>DEFENDANT(S) .<br>Corporation, a Chinese corporation; and DOES 1-10, Inclusive | CASE NUMBER<br><br>CV10-0038 GAF (SHx)<br><br><br>**SUMMONS** |

TO:   DEFENDANT(S): _____

A lawsuit has been filed against you.

Within __2&__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached [X] complaint [ ] _____ amended complaint [ ] counterclaim [ ] cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, Gregory A. Fayer, Esq. _____ , whose address is Gipson Hoffman & Pancione, 1901 Avenue of the Stars, #1100, Los Angeles, CA 90067-6002 . If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.


Clerk, U.S. District Court


Dated:   **- 5 JAN 2010**   _____

By: _____
Deputy Clerk

*(Seal of the Court)*


*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| CYBERsitter, LLC, a California limited liability company, d/b/a Solid Oak Software | The People's Republic of China, a foreign state; et al. |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| GREGORY A. FAYER (S.B. 232303) ELLIOT B. GIPSON (S.B. 234020) GIPSON HOFFMAN & PANCIONE, APC 1901 Avenue of the Stars, Suite 1100 Los Angeles, CA 90067-6002 TEL: (310) 556-4660 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  
☒ 3 Federal Question (U.S. Government Not a Party)  
☐ 2 U.S. Government Defendant  
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding  
☐ 2 Removed from State Court  
☐ 3 Remanded from Appellate Court  
☐ 4 Reinstated or Reopened  
☐ 5 Transferred from another district (specify):  
☐ 6 Multi-District Litigation  
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No   ☒ MONEY DEMANDED IN COMPLAINT: $ 2,257,175,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Misappropriation of Trade Secrets; Unfair Competition; Copyright Infringement; and Civil Conspiracy. This action seeks relief, inter alia, for violations of the United States Copyright Act, 17 U.S.C. §§ 101 et seq., and for unfair competition predicated on violations of the Economic Espionage Act, 18 U.S.C. §§ 1831-32. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1330, 1331, 1332(a), 1338 and 1367.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE/PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☒ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Accommodations | ☐ 630 Liquor Laws | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety/Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | | | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS - Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

FOR OFFICE USE ONLY:   Case Number: _____

CV10-0038

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

CIVIL COVER SHEET

**VIII(a).   IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? [X] No   [ ] Yes

If yes, list case number(s): _____

**VIII(b).   RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? [X] No   [ ] Yes

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   [ ]   A. Arise from the same or closely related transactions, happenings, or events; or

[ ]   B. Call for determination of the same or substantially related or similar questions of law and fact; or

[ ]   C. For other reasons would entail substantial duplication of labor if heard by different judges; or

[ ]   D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX.   VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

[ ]   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| SANTA BARBARA COUNTY:   CYBERsitter, LLC | |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

[ ]   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | CHINA: People's Republic of China, Zhengzhou Jinhui, Beijing Dazheng, Haier, Lenovo; TAIWAN: ACER, ASUSTeK;   JAPAN: Sony and Toshiba |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.

**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Santa Barbara County | China, Japan, Taiwan |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties

Note: In land condemnation cases, use the location of the tract of land involved

**X.   SIGNATURE OF ATTORNEY (OR PRO PER):** _Gregory A. Fayer_   Date _January 5, 2010_

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |