GIPSON HOFFMAN & PANCIONE
A Professional Corporation
GREGORY A. FAYER (State Bar No. 232303)
GFayer@ghplaw.com
ELLIOT B. GIPSON (State Bar No. 234020)
EGipson@ghplaw.com
1901 Avenue of the Stars, Suite 1100
Los Angeles, California 90067-6002
Telephone: (310) 556-4660
Facsimile: (310) 556-8945

Attorneys for Plaintiff
CYBERsitter, LLC d/b/a Solid Oak Software

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| CYBERsitter, LLC, a California limited liability company, d/b/a Solid Oak Software,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>The People's Republic of China, a foreign state; Zhengzhou Jinhui Computer System Engineering Ltd., a Chinese corporation; Beijing Dazheng Human Language Technology Academy Ltd., a Chinese corporation; Sony Corporation, a Japanese corporation; Lenovo Group Limited, a Chinese corporation; Toshiba Corporation, a Japanese corporation; ACER Incorporated, a Taiwanese corporation; ASUSTeK Computer Inc., a Taiwanese corporation; BenQ Corporation, a Taiwanese corporation; Haier Group Corporation, a Chinese corporation; DOES 1-10, inclusive,<br><br>　　　　Defendants. | CASE NO. CV 10-00038 GAF(SHx)<br><br>**PLAINTIFF'S OPPOSITION TO TAIWANESE DEFENDANTS'** ***EX PARTE*** **APPLICATION TO EXTEND TIME TO RESPOND TO INITIAL COMPLAINT AND TO SET STATUS CONFERENCE**<br><br>Judge:　　　Hon. Gary A. Feess<br>Ctrm:　　　740<br><br>Hearing Date:　　　None Set<br>Hearing Time:　　　None Set<br><br>Discovery Cutoff:　　None Set<br>Pretrial Conference:　None Set<br>Trial Date:　　　None Set |

**PLAINTIFF'S OPPOSITION TO *EX PARTE* APPLICATION**

04444\00001\155051.1

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff CYBERsitter, LLC d/b/a Solid Oak Software ("Solid Oak" or "Plaintiff") submits this memorandum of points and authorities in opposition to the *ex parte* application of defendants ACER Incorporated ("Acer"), ASUSTeK Computer Inc. ("Asus"), and BenQ Corporation ("BenQ") (collectively, "Taiwanese Defendants").[1]

### I. INTRODUCTION

There is no good cause for the Taiwanese Defendants' request for a further extension of their time to respond to the Complaint, much less their request for an indefinite extension. The Complaint was served on the Taiwanese Defendants on April 28, 2010. Their current response date – after the multiple extensions agreed to by Plaintiff – is now July 1, 2010 – over 2 months after they were served. Nor, as explained below and in the accompanying Declaration of Elliot B. Gipson ("Gipson Decl."), is there any reason at this juncture to hold a status conference to discuss the status of the service of the non-Taiwanese defendants, or any basis for a request for *ex parte* relief on this matter. The *ex parte* application should be denied in its entirety.

There will be no prejudice, much less "irreparable prejudice," from requiring the Taiwanese Defendants to respond to the Complaint by their current deadline of July 1, 2010. Indeed, the Taiwanese Defendants' application for *ex parte* relief is *not even supported by a declaration or other evidence that would support their claims of prejudice*. These unsupported assertions of prejudice in the Taiwanese Defendants' brief are further undermined by the fact that Plaintiff has already extended the Taiwanese Defendants' response time twice – first by 30 days, and then by an additional 14 days, for a total of 44 days. Gipson Decl. Exhibits A and D. The Taiwanese Defendants have thus had a total of 65 days to prepare their response to the

---

[1] The only indication that Asus and BenQ have joined in this application is a statement by Acer's counsel in its notice. However, Acer's counsel cannot speak for the other defendants, and Asus and BenQ have not filed papers or declarations supporting claims of prejudice as to them.

Complaint. No further time is necessary.

Plaintiff has been patient and accommodating of the Taiwanese Defendants' requests for extensions, but Plaintiff cannot continue to grant extensions indefinitely. This is particularly true given the international nature of this case and the difficulties and uncertainty involved in serving the Chinese and Japanese defendants. As set forth in the accompanying Gipson Declaration, Plaintiff has been diligently attempting to serve each of the defendants since the case was filed. *Id.* at ¶¶ 2-4. However, with respect to the Chinese defendants, Plaintiff's attempts to serve under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330 *et seq.* ("FSIA"), (with respect to the PRC) and under the Hague Service Convention (with respect to the other Chinese defendants) have encountered extraordinary delays in processing that appear to indicate an unwillingness on the part of the Chinese authorities to comply with their service obligations under applicable international treaties. *Id.* at ¶¶ 2-3. With respect to the Japanese defendants, Plaintiff recently received notice that Japanese authorities inexplicably attempted service under the voluntary service provisions of section 5(c) of the Hague Service Convention (and service was predictably refused), rather than under the mandatory provisions of section 5(a) as clearly directed in Plaintiff's service request. *Id.* at ¶¶ 9-10; 13-14. Plaintiff is still attempting to ascertain the basis for Japan's failure to follow the requirements of the Hague Convention in this case and has requested that the documents be re-served immediately under section 5(a). *Id.* at ¶¶ 21-22. In short, the Taiwanese Defendants' allegations of foot-dragging in serving the other defendants (*see* Defs. Memorandum at 5-6) are nonsense.

The ordinary practice in cases involving multiple defendants is that the case will proceed as to the appearing defendants while service issues are resolved as to non-appearing defendants. The Taiwanese Defendants have shown no reason for departing from the ordinary practice here. On the contrary, if the *ex parte* is granted, the prosecution of Plaintiff's case could be delayed for many months or even years if issues arise with respect to the service of *even one* of the defendants. Service of

international defendants under the FSIA and the Hague Convention is notoriously complex and time-consuming, but it is particularly so in cases such as this where at least one of the defendants (indeed, the one that is responsible for serving four of the others) is apparently attempting to avoid service. And apart from this indefinite delay of the proceedings, if and when all defendants are finally served, the Taiwanese Defendants contemplate that "*multiple responsive motions may be filed by each [defendant]*." Defs. Memorandum at 4 (emphasis added). If the Taiwanese Defendants have their way, apparently there will be 11 defendants each making multiple motions at one time. This would clearly inundate both the Court and Plaintiff's counsel. It would result in injustice for Plaintiff and a downright mess for the Court.

On the other hand, proceeding in the ordinary manner would serve the ends of both judicial economy and the expeditious and orderly resolution of the claims at issue. To the extent that the factual and legal issues presented in the defendants' motions differ, they will each have the opportunity to raise those issues as they are served, and doing so would avoid the inundation that would result from briefing and hearing them simultaneously. And to the extent that, as the Taiwanese Defendants suggest, "these motions will present common legal and factual issues" (Defs. Memorandum at 4), the Court will have the opportunity to clear up some of those common issues at the outset of the case, allowing for the orderly and expeditious resolution of the claims.

Finally, as explained below, any "emergency" that would justify the bringing of the instant application on an *ex parte* basis is entirely of the Taiwanese Defendants own making, and, as a result, the application should be denied on this basis as well.

For these reasons and those stated below, Plaintiff respectfully requests that the Court deny the Taiwanese Defendants' *ex parte* application and allow the action to proceed apace.

3

**PLAINTIFF'S OPPOSITION TO *EX PARTE* APPLICATION**

## II.  FACTUAL BACKGROUND

This action arises from one of the largest cases of software piracy in history, wherein numerous international computer manufacturers – including the Taiwanese Defendants – knowingly made and distributed over 50 million illegal copies of the Chinese censorware program known as Green Dam Youth Escort.  These companies willingly participated in a conspiracy to disseminate the illegal program initiated by the Chinese government and two government-backed Chinese companies who stole approximately 3,000 lines of code from Plaintiff's software program.  The Taiwanese Defendants were among the worst offenders in these events, as they continued to distribute millions of copies of the illegal program even after the illegal nature of the program was revealed to the public by academics and the press.  Indeed, they continued to distribute the illegal program for months after the Chinese government had withdrawn its official mandate regarding the program.

Plaintiff filed its Complaint on January 5, 2010.  The Complaint asserts violations of U.S. federal and state law, as well as violations of the copyright laws of foreign nations, and asserts that the Taiwanese Defendants (and other computer manufacturers) knowingly participated in a conspiracy that directly targeted the U.S. company (*viz.*, CYBERsitter) whose intellectual property they had knowingly misappropriated.  In short, the Taiwanese Defendants are not, as they allege, "tertiary defendants, at best."  Defs. Memorandum at 2.

The remainder of the operative facts relevant to the Taiwanese Defendants' application are set forth in the accompanying Declaration of Elliot B. Gipson and are discussed below.

## III.  LEGAL STANDARD

*Ex parte* applications are solely for extraordinary relief and are rarely granted. *See Mission Power Engineering Co. v. Continental Casualty Co.*, 883 F. Supp. 488 (C.D. Cal. 1995).

4

**PLAINTIFF'S OPPOSITION TO *EX PARTE* APPLICATION**

04444\00001\155051.1

## IV. ARGUMENT

There is no good cause for the Taiwanese Defendants' request for a further extension of their time to respond to the Complaint, much less their request for an indefinite extension.

### A. The Taiwanese Defendants Have Failed to Present Evidence Demonstrating Prejudice As Necessary to Sustain Their Application

There will be no prejudice, much less "irreparable prejudice," from requiring the Taiwanese Defendants to respond to the Complaint by their current deadline of July 1, 2010.  More fundamentally, the Taiwanese Defendants' application for *ex parte* relief is *not even supported by a declaration or other evidence that would support their claims of prejudice*.  These unsupported assertions of prejudice in the Taiwanese Defendants' brief are further undermined by the fact that Plaintiff has already extended the Taiwanese Defendants' response time twice – first by 30 days, and then by an additional 14 days, for a total of 44 days.  Gipson Decl. Exhibits A and D.  The Taiwanese Defendants have thus had a total of 65 days to prepare their responses to the Complaint.  Further, when notified of their intent to bring this *ex parte* application, Plaintiff offered, as a compromise, to extend the Taiwanese Defendants' response date by an additional 21 days, provided only that they agree to finally respond by that date rather than seeking additional extensions.  *Id.* at ¶¶ 16-18, Exhibit G.  They refused. *Id.* at ¶¶ 16-18. No further time is necessary.[2]

The only excuse for further delay cited by the Taiwanese Defendants is that they would somehow be prejudiced if the non-Taiwanese defendants are allowed to

---

[2] The Taiwanese Defendants ask to have their cake and eat it too, insinuating that Plaintiff's compromise offer should effectively be enforced even though it was rejected and they chose to seek *ex parte* relief instead.  Defs. Memorandum at 5.  That is nonsense.  Plaintiff offered a 21-day extension solely as an offer of compromise in an attempt to avoid the need for an emergency application.  Since the Taiwanese Defendants chose to proceed with their request for emergency relief, that compromise proposal is now off the table.  The compromise offer is evidence of Plaintiff's willingness to attempt to work with the defendants, but is certainly no indication of lack of prejudice to Plaintiff from further extensions.   No further delay in the proceedings is warranted.

5

**PLAINTIFF'S OPPOSITION TO *EX PARTE* APPLICATION**

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

respond after them. But it is hardly conceivable how the simultaneous filing of motions and/or answers by other defendants would even affect the Taiwanese Defendants' response to the Complaint, much less prejudice that response. Apart from the potentially massive delay in the proceedings that would almost certainly result from proceeding in this manner, the only conceivable benefit that the Taiwanese Defendants would reap from such a course of action would be to overwhelm Plaintiff's counsel and the Court with numerous simultaneous motions. Neither delay nor overwhelming Plaintiff's counsel constitutes good cause for extending a defendant's time to respond.

### B. Plaintiff Would Be Greatly Prejudiced By the Taiwanese Defendants' Request for Delay, Particularly in Light of the Uncertainties and Difficulties of Effecting Service Internationally on The Non-Taiwanese Defendants

Plaintiff has been diligently attempting to serve each of the defendants since the case was filed. Gipson Decl. ¶¶ 2-4. Given the international nature of this case and the difficulties and uncertainty involved in serving the Chinese and Japanese defendants, Plaintiff would be greatly prejudiced by the Taiwanese Defendants' requested delay.

With respect to the Chinese defendants, Plaintiff must serve defendant PRC under the Foreign Sovereign Immunity Act. *See* 28 U.S.C. § 1608(a) (providing the procedures for service of foreign governments). The FSIA prescribes a series of four steps (allowing for response time in between the steps) that must be taken before taking the default of a foreign government. *Id*.; Gipson Decl. at ¶ 3. Plaintiff has taken two of the four steps required and plans to proceed with the third step soon. Gipson Decl. at ¶ 3. The first step involves voluntary service by special arrangement on the foreign government; if there is no special arrangement, the second step involves attempting service under the Hague Convention; the third step involves sending a request to accept service to the Chinese Ministry of Foreign Affairs; and (after a

statutory 30-day waiting period) the fourth step involves a process similar to service by means of "letters rogatory" (see below). 28 U.S.C. § 1608(a). With respect to the other Chinese defendants, Plaintiff sent its request for service under the Hague Convention on or about January 22, 2010. *Id.* at ¶ 2. Although the process to complete service under the Hague Convention generally takes two to four months, Plaintiffs have had no response from the Chinese authorities for nearly five months now. *Id.* at ¶ 3. Such delays in processing are extraordinary, and appear to indicate an unwillingness on the part of the Chinese authorities to serve the Chinese entities as required under the treaty provisions. This delay is particularly puzzling given that the Hague Convention was enacted in order to provide more expeditious service of foreign defendants than the arcane "letters rogatory" procedures, yet the Taiwanese Defendants were served far more expeditiously under the old arcane procedures (Taiwan is not a signatory to the Hague Convention).

With respect to the Japanese defendants, Plaintiff received notice in late May and mid June that Japan had inexplicably attempted service under the voluntary service provisions of section 5(c) of the Hague Service Convention (and service was predictably refused), rather than under the mandatory provisions of section 5(a) as clearly directed in Plaintiff's service request. *Id.* at ¶¶ 9, 13. Since that time Plaintiff has repeatedly contacted the Japanese authorities – both the Japanese Consulate in the United States and the Ministry of Foreign Affairs in Japan – attempting to ascertain the basis for Japan's failure to follow the requirements of the Hague Convention in this case. *Id.* at ¶¶ 19-22. To date, the Japanese authorities have failed to give any adequate explanation of their treatment of service in this case. *Id.* Plaintiff has accordingly requested that the documents be re-served immediately under section 5(a), and is waiting for further response from the Japanese authorities. *Id.* at ¶¶ 9-10, 13-14. Clearly, the Taiwanese Defendants' allegations of foot-dragging in serving the other defendants (*see* Defs. Memorandum at 5-6) are wholly unsupported.

In light of the difficulties attendant in serving international defendants under the

7

**PLAINTIFF'S OPPOSITION TO *EX PARTE* APPLICATION**

04444\00001\155051.1

FSIA and Hague Convention, particularly under the circumstances presented here, it could be many months or even years before service issues are finally resolved and/or litigated with respect to every defendant.  As a result, to grant the Taiwanese Defendant's request to delay the proceedings indefinitely until all defendants have been served or found in default is unwarranted and would result in grave injustice by depriving Plaintiff of the ability to effectively prosecute its case for many months or even years while these issues are resolved.

In addition to this potentially massive delay, the Taiwanese Defendants contemplate that if and when the time finally comes for the defendants to respond, "*multiple responsive motions may be filed by each [defendant]*."  Defs. Memorandum at 4 (emphasis added).  If the Taiwanese Defendants have their way, apparently there will be 11 defendants each making multiple motions at one time.  This would clearly inundate both the Court and Plaintiff's counsel.  It would result in injustice for Plaintiff and a downright mess for the Court.

The Taiwanese Defendants' request is particularly unwarranted where, as here, proceeding with each defendant as it is served would result in a more orderly and efficient prosecution of the case.  As the Taiwanese Defendants' counsel and certainly the Court are well aware, the ordinary course of proceeding with civil cases involving multiple defendants is that the case moves forward with the appearing defendants while service and default issues are resolved with respect to the other defendants.  This practice is particularly important in furthering the ends and policy favoring the expeditious resolution of claims in cases such as this involving service abroad of multiple defendants, and, indeed, one foreign government.

The Taiwanese Defendants identify no reason for departing from the ordinary practice here, and identify no prejudice to their interests that would arise from proceeding as such.  To the extent that the factual and legal issues presented in the defendants' motions differ, they will each have the opportunity to raise those issues as they are served, and doing so would avoid the inundation that would result from

briefing and hearing them simultaneously. And to the extent that, as the Taiwanese Defendants suggest, "these motions will present common legal and factual issues" (Defs. Memorandum at 4), the Court will have the opportunity to clear up some of those common issues at the outset of the case, allowing for the orderly and expeditious resolution of the issues.

There is, moreover, no legal authority for the Taiwanese Defendants' odd assertion that "any Scheduling Conference and Schedule would have to await completion of service [on all defendants]," (*id.* at 5), or for the proposition that a litigant must complete service on every party or take their default before moving forward with the prosecution of the case. Again, the ordinary practice is to move forward with the case while issues with the service of non-appearing defendants are resolved, particularly in cases such as this.

Finally, with respect to the Taiwanese Defendants' request for a less than indefinite delay – namely, their request for an extension until August 2, 2010 – there is no good cause for such a request. Again, the Taiwanese Defendants have already had 65 days to respond to the Complaint and no reason appears why they need an additional 32 days. And again, it is notable that the Taiwanese Defendants' application is not even supported by a declaration to support their claims of prejudice.

For all of these reasons, the Taiwanese Defendants' request for an extension of their response date should be denied.

**C. The Taiwanese Defendants Have Not Established A Need For A Status Conference on Service Issues, Much Less That A Request For Emergency Relief Is Warranted In This Regard**

Given that service is proceeding as expeditiously as possible under the circumstances – as evidenced by Plaintiff's declaration and exhibits – there is no good cause for the Taiwanese Defendants' request to hold a status conference at this time to discuss the status of the service of the non-Taiwanese defendants. Furthermore, there is no basis for the Taiwanese Defendants to request such a conference on an *ex parte*

9

**PLAINTIFF'S OPPOSITION TO *EX PARTE* APPLICATION**

04444\00001\155051.1

basis.

### D. Emergency Relief Is Unwarranted Under the Circumstances

It is difficult to discern any "emergency" that would justify the need to bring this application on an *ex parte* basis. The Taiwanese Defendants have had over two months to prepare their response to the Complaint – including 44 days in extensions that Plaintiff has granted. Plaintiff made clear at the time when the Taiwanese Defendants made their first request for an extension that Plaintiff would not agree to an indefinite extension of the Taiwanese Defendants' response time until all of the defendants were served, as the Taiwanese Defendants requested at the outset. Gipson Decl. ¶ 8. And when the Taiwanese Defendants made their second request for extension, Plaintiff agreed to grant a 14-day courtesy extension, but made clear that this would be the last extension to which Plaintiff would agree. *Id.* at ¶ 12. Had the Taiwanese Defendants brought their request for an indefinite extension or a status conference at the outset (when they first became aware that Plaintiff would not agree to their request), the request could have easily been litigated on a noticed motion timetable, and Plaintiff would have been happy to accommodate the scheduling of such a motion. But as it stands, any emergency is the result of the Taiwanese Defendants' own delay, and Plaintiff's right to expeditiously prosecute this case should not be prejudiced on an *ex parte* basis based on a purported emergency of the Taiwanese Defendants' own making.

### V. CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that the Court deny the *ex parte* application of the Taiwanese Defendants.

DATED: June 25, 2010

GIPSON HOFFMAN & PANCIONE
A Professional Corporation
GREGORY A. FAYER
ELLIOT B. GIPSON

By   /s/  Gregory A. Fayer
GREGORY A. FAYER
Attorneys for Plaintiff CYBERsitter, LLC
d/b/a Solid Oak Software

10

**PLAINTIFF'S OPPOSITION TO *EX PARTE* APPLICATION**

04444\00001\155051.1