GIPSON HOFFMAN & PANCIONE
A Professional Corporation
GREGORY A. FAYER (State Bar No. 232303)
GFayer@ghplaw.com
ELLIOT B. GIPSON (State Bar No. 234020)
EGipson@ghplaw.com
1901 Avenue of the Stars, Suite 1100
Los Angeles, California 90067-6002
Telephone: (310) 556-4660
Facsimile: (310) 556-8945

Attorneys for Plaintiff
CYBERsitter, LLC d/b/a Solid Oak Software

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| CYBERsitter, LLC, a California limited liability company, d/b/a Solid Oak Software,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>The People's Republic of China, a foreign state; Zhengzhou Jinhui Computer System Engineering Ltd., a Chinese corporation; Beijing Dazheng Human Language Technology Academy Ltd., a Chinese corporation; Sony Corporation, a Japanese corporation; Lenovo Group Limited, a Chinese corporation; Toshiba Corporation, a Japanese corporation; ACER Incorporated, a Taiwanese corporation; ASUSTeK Computer Inc., a Taiwanese corporation; BenQ Corporation, a Taiwanese corporation; Haier Group Corporation, a Chinese corporation; DOES 1-10, inclusive,<br><br>　　　　Defendants. | CASE NO. CV 10-00038 GAF(SH)<br><br>**DECLARATION OF ELLIOT B. GIPSON IN SUPPORT OF PLAINTIFF'S OPPOSITION TO TAIWANESE DEFENDANTS'** *EX PARTE* **APPLICATION TO EXTEND TIME TO RESPOND TO INITIAL COMPLAINT AND TO SET STATUS CONFERENCE**<br><br>Judge:　　Hon. Gary A. Feess<br>Ctrm:　　740<br><br>Hearing Date:　　None Set<br>Hearing Time:　　None Set<br><br>Discovery Cutoff:　　None Set<br>Pretrial Conference:　　None Set<br>Trial Date:　　None Set |

DECLARATION OF ELLIOT B. GIPSON

# DECLARATION OF ELLIOT B. GIPSON

I, Elliot B. Gipson, declare as follows:

1.   I am a member in good standing of the bar of the State of California and I have been admitted to practice in this Court.  I am an attorney at the law firm of Gipson Hoffman & Pancione, counsel of record for plaintiff CYBERsitter, LLC d/b/a Solid Oak Software ("CYBERsitter" or "Plaintiff").  Except as otherwise stated, I have personal knowledge of the facts set forth herein, and, if called upon as a witness, I could and would competently testify thereto.

2.   On or about January 22, 2010, I sent the Ministry of Justice of the People's Republic of China (the "PRC"), Department of Judicial Assistance and Foreign Affairs, Division of Judicial Assistance, packets of documents to serve on the PRC, Zhengzhou Jinhui Computer System Engineering Ltd., Beijing Dazheng Human Language Technology Academy Ltd., Lenovo Group Limited, and Haier Group Corporation pursuant to Article 5 subsection (a) of the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention"), to which the PRC is a signatory. These documents included: the Request for Service Abroad of Judicial or Extrajudicial Documents form (the "Request Form") and the Summons and Complaint along with Japanese Translations of each of the Summons and Complaint.  These documents were delivered via Federal Express and certification was made of their delivery.

3.   The Foreign Sovereign Immunities Act ("FSIA") dictates the service requirements upon a foreign sovereign.  The FSIA requires that a litigant proceed through a sequential number of steps in order to attempt to effectuate service.  There are four steps. 28 U.S.C. § 1608.  Each step must be exhausted before attempting the next step. *Id*.  CYBERsitter has completed the first two steps, including requesting service under the Hague Convention.  To date CYBERsitter has not received any response from Ministry of Justice of the PRC or from any other governmental or non-governmental entity associated with the PRC concerning service of those documents

1

DECLARATION OF ELLIOT B. GIPSON

through the Hague Convention process. Because of the Ministry of Justice's silence to date, CYBERsitter anticipates attempting service through the third and fourth steps of the FSIA within the next ninety (90) days.

4. On or about February 2, 2010, I sent the Ministry of Foreign Affairs of Japan packets of documents to serve on Sony Corporation and Toshiba Corporation pursuant to Article 5 subsection (a) of the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention"), to which Japan is a signatory. These documents included: the Request for Service Abroad of Judicial or Extrajudicial Documents form (the "Request Form") and the Summons and Complaint along with Japanese Translations of each of the Summons and Complaint. These documents were delivered via Federal Express and certification was made of their delivery.

5. On May 12, 2010, at approximately 9:45 a.m., I spoke with Mr. Robert Dickerson, counsel for Defendant ACER Incorporated ("ACER") regarding the above captioned case. He informed me that he had just gotten back from a trip to Asia and did not really have a handle on the details of the case yet. He inferred that his law firm, Orrick, Herrington & Sutcliffe LLP ("Orrick"), had just become involved in the case recently. He said that although Orrick represented ACER, for the purposes of this particular call he also represented the other Taiwanese defendants, ASUSTeK and BenQ (together with ACER, the "Taiwanese Defendants") for the limited purpose of requesting an extension of time to respond to the Complaint.

6. I asked Mr. Dickerson what the current due dates were for the Taiwanese Defendants to respond to the Complaint. He said he did not know but he thought that it was May 18 for ACER, and May 23 and 28 for the other two Taiwanese Defendants. He proposed a common response date of June 17, which would be a 30 day extension from when ACER's response was due. I indicated to Mr. Dickerson that we would be amenable to granting the Taiwanese Defendants an extension until June 17, provided that the Taiwanese Defendants were amenable to granting

2

DECLARATION OF ELLIOT B. GIPSON

1  CYBERsitter an extra 30 days with which to respond to any motion filed.  He said that
2  he would agree to that as far as ACER is concerned, but would have to contact the
3  lawyers for the other parties to see if they would also agree to this.

4       7.    Mr. Dickerson called me back around 2:00 p.m. that same day.  He asked
5  when Sony Corporation ("Sony") and Toshiba Corporation ("Toshiba") had been
6  served.  I indicated that we had not yet received confirmation of service as we used
7  the Hague Convention process for those defendants rather than the letters rogatory
8  process which we used for the Taiwanese defendants.  He then said that the other
9  Taiwanese Defendants wanted to wait to be able to respond at the same time responses
10 were due from Sony and Toshiba.  I told him I would think about it and we would get
11 back to him.

12      8.    I called Mr. Dickerson back at approximately 3:00 p.m.  I told him we
13 could not agree to an indefinite extension as we did not know when Sony and Toshiba
14 would be served.  However, we agreed on a thirty (30) day for the Taiwanese
15 Defendants provided that CYBERsitter would also receive a thirty (30) day extension
16 to respond to any motion filed at the same time of or in lieu of an answer. Orrick
17 drafted the stipulation.  Attached as Exhibit A is a true and correct copy of the filed
18 stipulation.

19      9.    On or about May 24, 2010, I received a response from the Consulate
20 General of Japan concerning the service of Toshiba dated May 20, 2010.  The
21 response included a cover letter which indicated that Japan did not follow the
22 procedures mandated under Article 5 subsection (a).  Instead, the letter said that "the
23 service of the documents did not go into effect because of the following reason:
24 Although the addressee had been notified that, by April 13, either to appear in person
25 at the court to receive the service documents or to make the request for having them
26 mailed, there was no response from the addressee by said date."  Attached as Exhibit
27 B is a true and correct copy of the May 20 cover letter.

3
DECLARATION OF ELLIOT B. GIPSON

04444\00001\155193.1

10. We had requested service of the documents on Toshiba through the Request for Service Abroad of Judicial or Extrajudicial Documents form (the "Request Form") via Article 5 subsection (a), which requires service on the addressee by Japanese officials. However, the returned Request Form has our selection for Article 5 subsection (a) service crossed out and instead circled Article 5 subsection (c), which is a method allowing for voluntary service on the part of the addressee. Above subsection (c) on the returned Request Form, someone wrote the phrase "lack of translations." However, the indication that translations are lacking is contradicted by the list of documents on the Request Form, which indicates "Japanese Translations" of the relevant documents, and by the fact that the translated versions of the entirety of the Summons and Complaint (totaling 37 pages of Japanese translations) were returned to us by the office of the Consulate General. Attached as Exhibit C is a true and correct copy of the returned Request Form regarding Toshiba. I called Mr. Yasushi Toyoda, Vice Consul of the Consulate General of Japan, to discuss the service of documents on Toshiba, on the morning of Tuesday, June 1. He was not in the office so I left a voice message. I called Mr. Toyoda again on the morning of Wednesday, June 3. He was not in so I left another voice message. That afternoon, I received a call from a Mr. Yasumora of the Consulate General of Japan's office. I asked him why the documents had not been served under Article 5 subsection (a). He said he did not know and could only tell me what the cover letter said: that the documents had not been served because Toshiba had not picked them up. Mr. Yasumora could not tell me why the Ministry of Foreign Affairs chose to attempt voluntary service under Article 5 (c) rather than mandatory service under Article 5(a).

11. On June 8, Ms. Alyssa Caridis of Orrick called me. We spoke about the service of process situation with respect to the other defendants. I informed her that we had received a response from the Japanese government regarding Toshiba but that we were still evaluating what the Japanese government's response meant. I informed

4

DECLARATION OF ELLIOT B. GIPSON

04444\00001\155193.1

1 her that we had not heard back from Japan regarding service on Sony Corporation. Ms. Caridis then requested another 30 day extension. I told her that we would think about it and get back to her by Friday, June 11.

12.   On June 10, Ms. Caridis and I spoke via telephone. I informed her that CYBERsitter would grant the Taiwanese Defendants a 14 day extension as a matter of courtesy but that we couldn't agree to an additional 30 days on account of the other defendants not having been served yet because we could not control how quickly the other international defendants were served given the lengthy Hague Convention process. Ms. Caridis accepted the courtesy 14 day extension. Orrick drafted the stipulation. Attached as Exhibit D is a true and correct copy of the filed stipulation.

13.   On or about June 12, 2010, I received a response from the Consulate General of Japan concerning the service of Sony, dated June 9, 2010. The response included a cover letter sent by a Mr. Toyoda from the Consulate, which indicated that Japan did not follow the procedures mandated under Article 5 subsection (a). Instead, the letter said that "the service of the documents did not go into effect because of the following reason: Although the addressee had been notified that, by April 13, either to appear in person at the court to receive the service documents or to make the request for having them mailed, there was no response from the addressee by said date." Attached as Exhibit E is a true and correct copy of the letter.

14.   We had requested service of the documents on Sony through the Request Form via Article 5 subsection (a), which requires service on the addressee by Japanese officials. However, the returned Request Form has our selection for Article 5 subsection (a) service crossed out and instead circled Article 5 subsection (c), which is a method allowing for voluntary service on the part of the addressee. Above subsection (c) on the returned Request Form, someone wrote the phrase "lack of translations." However, the indication that translations are lacking is contradicted by the list of documents on the Request Form, which indicates "Japanese Translations" of the relevant documents, and by the fact that the translated versions of the entirety of

5
DECLARATION OF ELLIOT B. GIPSON

04444\00001\155193.1

the Summons and Complaint (totaling 37 pages of Japanese translations) were returned to us by the office of the Consulate General. Attached as Exhibit F is a true and correct copy of the returned Request Form regarding Sony.

15. On June 23, at approximately 10:15 a.m., Ms. Caridis called me and asked for a status update on the service of the other defendants. I told her that we had received another response from the Japanese government, this time regarding Sony, and that we were still contemplating what it meant. I told her that we had not heard anything further regarding the service of the Chinese entities. She then requested an additional extension. I told her that we were not inclined to grant such an extension as we wanted to move the case along. She said that she had an ex parte motion ready to be filed the next day which would ask the court to extend the response time until all named defendants were served and then to schedule the anticipated Rule 12 motions. I told her that we were not likely to grant her request as we want to move the case forward and we are worried that the case will drag on if we have to wait until each defendant was served. That being said, I told her we would consider the proposal and try to get back to her by close of business that same day.

16. After consulting with co-counsel, we decided to offer the Taiwanese Defendants a 14 day extension provided they agree to serve their motions by then and not move for extra time. On that same morning (June 23), at approximately 10:45 a.m., I called Ms. Caridis and conveyed this offer and asked her to get back to us as soon as she could but in no event later than close of business that day. Ms. Caridis called me back at approximately 3:15 p.m. and proposed a 30 day extension, with responses due on August 2, as well as a status conference to be held on July 19 to discuss the service of the Japanese defendants, the response dates to the complaint, and whether further extensions were warranted. I told her we would think consider the proposal and get back to her.

17. After consulting with co-counsel, I called Ms. Caridis back at approximately 4:10 p.m. and rejected her offer. Instead, we offered the Taiwanese

6
DECLARATION OF ELLIOT B. GIPSON

1 Defendants a final 21-day extension provided that the Taiwanese Defendants answer
2 or file their motions at the end of the 21 days.  I followed this offer up with an email
3 reiterating its outlines after the phone call.   Attached as Exhibit G is a true and
4 correct copy of that email.  Ms. Caridis said she may not be able to get back to me
5 until tomorrow morning as her supervisor was in a deposition.  I told her that was fine.

6 18.  As I had not yet heard back from her, I called Ms. Caridis on June 24,
7 2010, at approximately 12:10 p.m., to see whether the Taiwanese Defendants would
8 be accepting our offer.  She was not in so I left a voice message inquiring about what
9 they were going to do.  Ms. Caridis called me at approximately 12:30 p.m. and left a
10 message indicating that the Taiwanese Defendants were not accepting CYBERsitter's
11 final additional 21-day extension offer and would instead be filing an ex parte later in
12 the afternoon.

13 19.  On June 24, 2010, I sent a letter to the Consulate General of Japan
14 requesting an explanation for the irregularities surrounding the Ministry of Foreign
15 Affairs' handling of the Request Forms for Toshiba.  Attached as Exhibit H is a true
16 and correct copy of such letter.

17 20.  On June 24, 2010, I sent a letter to the Consulate General of Japan
18 requesting an explanation for the irregularities surrounding the Ministry of Foreign
19 Affairs' handling of the Request Forms for Sony.  Attached as Exhibit I is a true and
20 correct copy of such letter.

21 21.  On June 24, 2010, I sent a letter to Japan's Ministry of Foreign Affairs
22 requesting that it serve Toshiba effective immediately pursuant to Article 5(a) of the
23 Hague Convention.  Attached as Exhibit J is a true and correct copy of such letter.
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

22. On June 24, 2010, I sent a letter to Japan's Ministry of Foreign Affairs requesting that it serve Sony effective immediately pursuant to Article 5(a) of the Hague Convention. Attached as Exhibit K is a true and correct copy of such letter.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct. Executed on June 25, 2010, at Los Angeles, California.

_____
Elliot B. Gipson