1  KARIN G. PAGNANELLI (SBN 174763)
   kgp@msk.com
2  MARC E. MAYER (SBN 190969)
   mem@msk.com
3  MITCHELL SILBERBERG & KNUPP LLP
   11377 West Olympic Boulevard
4  Los Angeles, California 90064-1683
   Telephone:  (310) 312-2000
5  Facsimile:   (310) 312-3100

6  Attorneys for Defendant
   SONY CORPORATION, a Japanese
7  Corporation

8

9                    UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11                         WESTERN DIVISION

12

13  CYBERsitter, LLC, a California limited     | Case No. CV 10-0038 JST (SHx)
    liability company, d/b/a Solid Oak
14  Software,                                  | The Honorable Josephine Staton Tucker

15                   Plaintiff,                | **NOTICE OF MOTION AND
                                                 MOTION OF DEFENDANT SONY
16           v.                                  CORPORATION TO DISMISS THE
                                                 ACTION ON GROUNDS OF *FORUM
17  THE PEOPLE'S REPUBLIC OF                     NON CONVENIENS***
    CHINA, a foreign state; ZHENGZHOU
18  JINHUI COMPUTER SYSTEM                     | **MEMORANDUM OF POINTS AND
    ENGINEERING LTD., a Chinese                 AUTHORITIES AND
19  corporation; BEIJING DAZHENG                DECLARATIONS OF TAKASHI
    HUMAN LANGUAGE                              HAGIWARA, RYOSUKE
20  TECHNOLOGY ACADEMY LTD., a                  AKAHANE, JACQUES DELISLE,
    Chinese corporation; SONY                   AND MARC E. MAYER IN
21  CORPORATION, a Japanese                     SUPPORT**
    corporation; LENOVO GROUP
22  LIMITED, a Chinese corporation;           | **[PROPOSED] ORDER LODGED
    TOSHIBA CORPORATION, a Japanese             CONCURRENTLY HEREWITH**
23  corporation; ACER INCORPORATED,
    a Taiwanese corporation; ASUSTeK          | DATE:    November 8, 2010
24  COMPUTER INC., a Taiwanese                  TIME:     10:00 a.m.
    corporation; BenQ CORPORATION, a           CTRM.:   10A (Santa Ana Courthouse)
25  Taiwanese corporation; HAIER GROUP
    CORPORATION, a Chinese
26  corporation; DOES 1-10, inclusive,

27                   Defendants.

28

Mitchell
Silberberg &
Knupp LLP

2897785.1

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on November 8, 2010, in the courtroom of the Honorable Josephine Staton Tucker of the United States District Court for the Central District of California, 411 West Fourth Street, Room 10A, Santa Ana, CA 92701-4516, at 10:00 a.m., or as soon thereafter as the matter may be heard, Defendant Sony Corporation shall, and hereby does, move the Court to dismiss the action on the grounds of *forum non conveniens*.

This Motion is made on the grounds that California is an inconvenient forum and that, in the interest of substantial justice, the parties' dispute should be heard at the relevant court in China[1], including because (1) the court in China is an adequate available alternative forum, and (2) the "public" and "private" *forum non conveniens* factors overwhelmingly favor litigation of this dispute in a court in China.  Lockman Found. v. Evangelical Alliance Mission, 930 F.2d 764, 767 (9th Cir. 1991).  Among other things, (a) the events alleged to give rise to this action took place in China; (b) the action arises largely under Chinese, Taiwanese, and Japanese law (and not under the laws of the United States); (c) the dispute arises out of a mandate issued by a ministry of the People's Republic of China; (d) the state of the People's Republic of China is a Defendant and has a significant interest in this lawsuit; (e) the relevant witnesses are located in China; (f) the relevant documents are in China; (g) all of the defendants are located outside the United States, in China, Hong Kong, Taiwan, or Japan; and (h) the United States has little interest in this dispute.

---

[1]  For purposes of this Motion, "China" shall refer to the Mainland of the People's Republic of China, not including Hong Kong, Macau and Taiwan.

1    This Motion is based on this Notice of Motion and Motion; the attached

2 Memorandum of Points and Authorities; the Declarations of Takashi Hagiwara,

3 Ryosuke Akahane, Jacques deLisle, and Marc E. Mayer; all papers and pleadings

4 on file in the action; any reply papers; and any oral argument that the Court may

5 entertain at the hearing on this Motion.

6

7    This Motion is made following a conference of counsel pursuant to Local

8 Rule 7-3 which took place on September 3, 2010.

9

10 Dated:  September 13, 2010   KARIN G. PAGNANELLI

11            MARC E. MAYER
             MITCHELL SILBERBERG & KNUPP LLP

12

13           By:  _/s/ Marc E. Mayer_____

14            Marc E. Mayer
            Attorneys for Defendant

15            SONY CORPORATION

16

17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

2897785.1

2

# <u>TABLE OF CONTENTS</u>

**<u>Page</u>**

Introduction...................................................................................................... 1

I.      STATEMENT OF FACTS. ....................................................... 6

II.     THE ACTION SHOULD BE DISMISSED UNDER THE
DOCTRINE OF *FORUM NON CONVENIENS*........................................ 10

    A.    A Court In China Is An Adequate Alternative Forum....................... 11

    B.    The Private And Public Interest Factors Weigh Decidedly
In Favor Of Dismissal..................................................................... 15

        1.    The "Public Interest" Factors. ................................................. 16

        2.    The "Private Interest" Factors. ................................................ 21

Conclusion ...................................................................................................... 25

Mitchell
Silberberg &
Knupp LLP

2897785.1

i

# **TABLE OF AUTHORITIES**

**Page(s)**

## **CASES**

Altmann v. Republic of Austria,
    317 F.3d 954 (9th Cir. 2002) .......................................................................... 15

Blanco v. Banco Indus. de Venezuela,
    997 F.2d 974 (2d Cir. 1993) ............................................................................ 23

China Tire Holdings, Ltd. v. Goodyear Tire & Rubber Co.,
    91 F. Supp. 2d 1106 (N.D. Ohio 2000) ...................................... 14, 19, 23, 24

Contract Lumber Co. v. P.T. Moges Shipping Co.,
    918 F.2d 1446 (9th Cir. 1990) ......................................................................... 11

Creative Tech., Ltd. v. Aztech Sys. Pte, Ltd.,
    61 F.3d 696 (9th Cir. 1995) ................................................................. 13, 23, 24

Forsythe v. Saudi Arabian Airlines Corp.,
    885 F.2d 285 (5th Cir. 1989) ........................................................................... 14

Guimei v. General Elec. Co.,
    172 Cal. App. 4th 689 (2009) .......................................................................... 12

Gulf Oil Corp. v. Gilbert,
    330 U.S. 501 (1947) ................................................................................... 15, 21

In re Compania Naviera Joanna SA,
    569 F.3d 189 (4th Cir. 2009) ...................................................................... 4, 14

Intercontinental Dictionary Series v. Gruyter,
    822 F. Supp. 662 (C.D. Cal. 1993) .................................................................. 18

ITSI T.V. Prods., Inc. v. Cal. Auth. of Racing Fairs,
    785 F. Supp. 854 (E.D. Cal. 1992) ................................................................. 16

Jose v. M/V Fir Grove,
    801 F. Supp. 349 (D. Or. 1991) ...................................................................... 22

Lockman Foundation v. Evangelical Alliance Mission,
    930 F.2d 764 (9th Cir. 1991) ....................................................................passim

London Film Prods. Ltd. v. Intercontinental Commc'ns, Inc.,
    580 F. Supp. 47 (S.D.N.Y. 1984) ................................................................... 20

Lueck v. Sundstrand Corp.,
    236 F.3d 1137 (9th Cir. 2001) ..................................................................passim

Mitchell
Silberberg &
Knupp LLP

2897785.1

ii

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

Moletech Global Hong Kong Ltd. v. Pojery Trading Co.,
   No. 09-00027, 2009 U.S. Dist. LEXIS 88531
   (N.D. Cal. Sept. 25, 2009)................................................................ 16

Monegasque De Reassurances S.A.M. (monde Re) v. Nak
   Naftogaz of Ukr.,
   311 F.3d 488 (2d Cir. 2002)............................................................ 14

Morris v. The People's Republic of China,
   478 F. Supp. 2d 561 (S.D.N.Y. 2007)............................................. 11

Murray v. British Broad. Corp.,
   906 F. Supp. 858 (S.D.N.Y. 1995)................................... 16, 17, 23, 24

Nai-Cho v. Boeing Co.,
   555 F. Supp. 9 (N.D. Cal. 1982) ................................... 17, 20, 24

Piper Aircraft Co. v. Reyno,
   454 U.S. 235 (1981) ......................................... 10, 11, 17, 19

Saudi Arabia v. Nelson,
   507 U.S. 349 (1993) ...................................................................... 11

Silvaco Data Sys. v. Intel Corp.,
   184 Cal. App. 4th 210 (2010)......................................................... 20

Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.,
   549 U.S. 422 (2007)................................................................... 4, 14

Tang v. Synutra Int'l, Inc.,
   No. 09-0088, 2010 WL 1375373 (D. Md. Mar. 29, 2010) ........ 14, 15, 16, 22

Vanity Fair Mills, Inc. v. T. Eaton Co.,
   234 F.2d 633 (2d Cir. 1956)........................................................... 18

Villar v. Crowley Mar. Corp.,
   782 F.2d 1478 (9th Cir. 1986)........................................................ 16

Voda v. Cordis Corp.,
   476 F.3d 887 (Fed. Cir. 2007)........................................................ 18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Mitchell
Silberberg &
Knupp LLP

2897785.1

iii

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

**OTHER AUTHORITIES**

1 M. Nimmer & P. Geller, International Copyright Law and Practice
 § 8[3][a] (2009 rev.).............................................................. 12

Agreement on Trade Related Aspects of
 Intellectual Property Rights (TRIPS)............................................ 13

Berne Convention for the Protection of Literary and Artistic Works.................... 13

Federal Rule of Civil Procedure 26 ................................................ 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Mitchell
Silberberg &
Knupp LLP

2897785.1

## MEMORANDUM OF POINTS AND AUTHORITIES

### Introduction

This is precisely the type of case that the doctrine of *forum non conveniens* was developed to address.  The claims in this action consist almost entirely of copyright infringement claims arising under foreign law, based on alleged conduct in China, against nine foreign companies and the foreign state of the People's Republic of China ("PRC").  All of the relevant events took place abroad (largely in China), virtually all of the witnesses and documents are in China, and all of the defendants are in China, Hong Kong, Taiwan, or Japan.  And, if the foregoing alone was not sufficient, all of the alleged conduct at issue in this action was undertaken pursuant to a mandate issued by a ministry of the PRC concerning the sales of computers in China.  Thus, the issues presented in this action involve (and require adjudication of) matters of great interest to the PRC and the Chinese public, while they bear little, if any, connection to the United States (which is not home to any of the defendants and is not the site of the conduct alleged in the Complaint) or to this Court.

At the heart of this action is a May 19, 2009 Mandate (the "Green Dam Mandate") issued by the Ministry of Industry and Information Technology ("MIIT") of the PRC, requiring that as of July 1, 2009, all personal computers ("PCs") sold in China be pre-installed or packaged with certain internet filtering software known as the "Green Dam Youth Escort" ("Green Dam").  See Declaration of Marc E. Mayer ("Mayer Decl."), Exs. A & B.  Green Dam allegedly was created, developed and licensed by two Chinese companies, Zhengzhou Jinhui Computer System Engineering Ltd. ("Jinhui") and Beijing Dazheng Human Language Technology Academy Ltd. ("Dazheng") (collectively, the "Chinese Developers"), in cooperation with the PRC.  Plaintiff's claims in this action arise from the alleged conduct of the PRC and the two Chinese Developers, which Plaintiff alleges collectively infringed its copyright in its software filtering

1  program known as CYBERsitter by using portions of CYBERsitter in Green Dam

2  without authorization.  Although this case has been pending for more than eight

3  months, none of these Chinese entities has been served with the Complaint or has

4  appeared in this action.

5      In an effort to sidestep complex issues of sovereign immunity and

6  international comity, and knowing that the PRC and the Chinese Developers are

7  unlikely to appear in this action (and in fact are unlikely to be subject to

8  jurisdiction in the United States), Plaintiff also has sued seven foreign computer

9  manufacturers (the "Foreign Manufacturers").  Of these Foreign Manufacturers,

10 two (Sony Corporation and Toshiba Corporation) are Japanese corporations, one

11 (Lenovo Group Limited) is a Hong Kong corporation, one (Haier Group

12 Corporation) is a Chinese corporation, and three (AsusTek Computer, Inc., BenQ

13 Corporation, and Acer Incorporated) are Taiwanese corporations.  Not one of the

14 Foreign Manufacturers – or any other defendant in this case – is a United States

15 entity.

16     Plaintiff acknowledges that the Foreign Manufacturers (including Sony

17 Corporation) did not participate in the development of Green Dam (Complaint,

18 ¶ 30) or in the issuance of the Green Dam Mandate (Complaint, ¶ 36),[2] and none is

19 alleged to have engaged in any allegedly infringing activity (or, for that matter, any

20 conduct at all) within the United States.  Instead, each of the Foreign

21 Manufacturers has been sued under Chinese (and Japanese or Taiwanese)

22 copyright law (**not** under U.S. copyright law) based on allegations that they

23 distributed, **in China**, PCs pre-installed or packaged with Green Dam as required

24 by the PRC's Green Dam Mandate.

25     As a threshold matter, Sony Corporation has no place in this lawsuit.  In

26 addition to the fact that Sony Corporation did not develop (or participate in

27

28

---

[2]  Plaintiff's President, Brian Milburn, publicly acknowledged that the computer companies that distributed Green Dam "are not really the bad guys here."  Mayer Decl., Ex. C.

1  developing) Green Dam, Sony Corporation is a Japanese company that does not

2  distribute or sell PCs in China (including the PCs at issue in this action).  Rather,

3  the distribution and sale of Sony PCs in China is overseen and undertaken by a

4  separate legal entity, Sony (China) Limited ("Sony China"), an indirect subsidiary

5  of Sony Corporation that is headquartered in Beijing, China.  Sony China is not

6  subject to personal jurisdiction in the United States, has not been named as a

7  defendant in this action, and has never received any correspondence from Plaintiff

8  concerning its claims in this action.

9       The foregoing aside, for the following reasons (among others), this case does

10 not belong in this Court:

11      •      Each of the Defendants is a foreign entity, located and/or with its

12 principal place of business outside the United States.  This includes the Chinese

13 Developers, which are located in China, and upon whose conduct the alleged

14 liability of the Foreign Manufacturers is premised.

15      •      All of the conduct at issue – namely, the creation of Green Dam and

16 its distribution in China – took place outside the United States, and, in fact,

17 exclusively in China.  Likewise, all of Plaintiff's claimed damages are premised on

18 alleged profits obtained, or licensing fees lost, in China.

19      •      All of Plaintiff's infringement claims in this action against the Foreign

20 Manufacturers arise not under United States law, but under Chinese (and, to a

21 lesser extent, Japanese or Taiwanese) law.  Thus, to adjudicate this action, this

22 Court (and a California jury) would be required to analyze and interpret three sets

23 of foreign copyright laws, as well as the relationship between these foreign laws

24 and the Green Dam Mandate and the scope of sovereign immunities under these

25 laws.

26      •      Virtually every witness with knowledge of the distribution of Sony

27 personal computers in China is located in China (with a few witnesses potentially

28 located in Japan).  Likewise, relevant documents – including any documents

Mitchell
Silberberg &
Knupp LLP

2897785.1

3

1  reflecting communications between Sony China and the PRC or the distribution

2  and sale of computers in China – are located in China and are written largely in

3  Chinese.

4      •    Third party witnesses and documents will be largely or entirely

5  inaccessible if this case proceeds in California.

6      By contrast, a court in China is an adequate, available, and, indeed, a far

7  more appropriate forum for this dispute.  Sony Corporation (even though not a

8  proper party) will not contest jurisdiction in China if Plaintiff files a lawsuit in this

9  matter, nor will the Taiwanese defendants or Toshiba.[3]  Similarly, while the PRC

10  and the Chinese Developers have not been served in this action (and claims against

11  the PRC likely are barred by the Sovereign Immunities Act), each of these

12  defendants is present in China and almost certainly subject to jurisdiction there (as

13  is Sony China).  Perhaps most critically, because all of the Foreign Manufacturers'

14  alleged conduct was undertaken pursuant to the Green Dam Mandate and with the

15  authorization of (and, indeed, as required by) the MIIT, a ministry of the PRC, the

16  case inevitably will require interpretation and application of Chinese law, including

17  the relationship between the MIIT's decrees and Chinese copyright law.  Thus,

18  China's interest in this action is significant, while this Court's interest is nominal,

19  at best.

20      In circumstances such as this, U.S. courts do not hesitate to dismiss lawsuits

21  in favor of litigation in China.  See, e.g., Sinochem Int'l Co. v. Malaysia Int'l

22  Shipping Corp., 549 U.S. 422, 435-36 (2007); In re Compania Naviera Joanna SA,

23  569 F.3d 189, 205 (4th Cir. 2009).  In fact, the Ninth Circuit has held dismissal of

24  analogous copyright claims on *forum non conveniens* grounds to be appropriate in

25  far less compelling circumstances.  In Lockman Foundation v. Evangelical

26
27  [3]  Of course, Sony Corporation and the other defendants reserve their rights to raise all other defenses and arguments in any lawsuit filed in China by Plaintiff in this matter, including that they are not proper parties.  Furthermore, for the sake of clarity, the agreement not to contest jurisdiction in this matter does not extend to any other lawsuits that may be filed in China.

28

Mitchell
Silberberg &
Knupp LLP

2897785.1

4

1   Alliance Mission, 930 F.2d 764, 769-70 (9th Cir. 1991), the Court found that

2   copyright claims arising from the alleged unauthorized distribution of the

3   plaintiff's copyrighted works in Japan were properly litigated in Japan, even

4   though the plaintiff was a California entity, because of Japan's significant interest

5   in its copyright laws, the burden on the parties of litigating in California, and the

6   nominal interest of the California courts in adjudicating infringement claims

7   arising from conduct in Japan.  But unlike Lockman, which involved a single

8   defendant located in the United States (which had a preexisting relationship with

9   the plaintiff), this case does not involve *any* U.S. defendants, but rather ten ***foreign***

10  defendants – including the PRC, a foreign state.  Moreover, the resolution of this

11  dispute will require analysis of a set of complicated and important questions of

12  Chinese law, including whether the Foreign Manufacturers can be held liable for

13  complying in China with official directives issued by the MIIT of the PRC.

14      The only connection between this action and this Court is that Plaintiff is

15  located in Southern California.  But because Plaintiff does not seek redress for

16  conduct committed by U.S. defendants or within U.S. borders, and does not seek to

17  vindicate any rights under United States copyright law against Sony Corporation or

18  the other Foreign Manufacturers, its choice of forum cannot outweigh the

19  enormous countervailing interests in having this dispute adjudicated by a court in

20  the jurisdiction where a government mandate gave rise to the conduct at issue,

21  where the allegedly infringing conduct occurred, and where the witnesses and

22  documents are located.  To force ten foreign defendants to incur the significant

23  expense of litigating in this Court under these circumstances would be

24  unprecedented, not to mention unfair.

25      For these reasons, as well as those set forth below, the Court should dismiss

26  the action on the grounds of *forum non conveniens*.

27

28

Mitchell
Silberberg &
Knupp LLP

2897785.1

5

# I.      STATEMENT OF FACTS.

**Sony Corporation and Sony China**.  Sony Corporation is a Japanese Corporation headquartered in Tokyo, Japan.  Sony Corporation produces and distributes personal computers (sold under the brand name VAIO), digital video cameras, digital still cameras, televisions, audio players, Blu-ray disc players, and a variety of other electronic devices and products.  Declaration of Ryosuke Akahane ("Akahane Decl."), ¶ 3.

Sony Corporation does not distribute personal computers for sale in China. Akahane Decl., ¶ 4.  Rather, the distribution of VAIO personal computers in China is undertaken and overseen by Sony China.  Id.  Sony China, an indirect subsidiary of Sony Corporation, is a Chinese corporation headquartered in Beijing, China.  Id. Sony China employed 1,751 people as of the end of June 2010, most of whom are Chinese nationals.  Declaration of Takashi Hagiwara ("Hagiwara Decl."), ¶ 3. Sony China is not a defendant in this action, has never been contacted by Plaintiff (Hagiwara Decl., ¶ 6), and is not subject to personal jurisdiction in the United States.

**The Green Dam Mandate.**  On or about May 19, 2009, the MIIT issued the Green Dam Mandate, which required that starting on July 1, 2009, all PCs manufactured or sold in China have Green Dam preloaded (either pre-installed on the computer's hard drive or enclosed on an optical disc attached to the computer). Mayer Decl., Exs. A & B.  Additionally, the Green Dam Mandate required computer manufacturers to "report to the Software Service Department of MIIT the previous month's computer sales volume at monthly basis within 2009."  Id.  See also Complaint, ¶ 36.[4]  Failure to comply with the Green Dam Mandate would result in penalties or "correction[al] measures."  Mayer Decl., Exs. A & B.

---

[4]  The Complaint alleges that on June 30, 2009, the day before it was scheduled to take effect, the MIIT announced that implementation of the Green Dam Mandate would be delayed.  Complaint, ¶ 38.  The Complaint also alleges that on August 12, 2009, the MIIT issued a statement that it did not intend to reinstate the Green Dam Mandate.  Id.

Mitchell
Silberberg &
Knupp LLP

2897785.1

6

1    Neither Sony Corporation nor Sony China had any involvement with, and

2    neither participated in, the creation or development of the Green Dam software.

3    Akahane Decl., ¶ 6; Hagiwara Decl., ¶ 5.  Additionally, neither Sony Corporation

4    nor Sony China had any involvement with or participation in the decision to

5    implement the Green Dam program or the timing of the Green Dam program.  Id.

6    **VAIO Computers in China.**  All VAIO computers sold in China in 2009

7    were manufactured in third party factories located in China or Japan.  Hagiwara

8    Decl., ¶ 7.  Any software contained on those computers at the time of sale was pre-

9    installed at the factory where the computer was manufactured (i.e., in China or

10   Japan), by employees of these factories (and not by Sony Corporation or Sony

11   China).  Id., ¶ 9.  After VAIO computers destined for sale in China are

12   manufactured, they are shipped to a warehouse in Shanghai, China.  Id., ¶ 7.  From

13   there, the computers are distributed by Sony China (not Sony Corporation) to

14   wholesalers, retailers, and consumers in China.  Id.; Akahane Decl., ¶ 5.

15   As a result of the foregoing, any relevant information concerning the

16   distribution of VAIO computers in China, Green Dam, or the Green Dam Mandate

17   likely is possessed by Sony China (or by third parties such as the factories where

18   the computers were manufactured), not Sony Corporation (whose documents, in

19   any event, are in Japan).  Akahane Decl., ¶¶ 7, 9; Hagiwara Decl., ¶ 9.  Any

20   documents possessed by Sony China pertaining to its distribution or sale of VAIO

21   computers in China or the Green Dam program are in China.  Hagiwara Decl., ¶¶

22   9-11.  Sony China does not distribute any computers to the United States, it does

23   not possess any factories, offices, or computer systems or servers in the United

24   States, and none of Sony China's employees, officers, or directors reside in the

25   United States.  Hagiwara Decl., ¶¶ 4, 8.

26   **The Lawsuit.**  Plaintiff is a California limited liability company that claims

27   to be engaged in developing and marketing an Internet filtering program known as

28   "CYBERsitter."  Complaint, ¶ 2.  On or about June 15, 2009, attorneys for Plaintiff

Mitchell
Silberberg &
Knupp LLP

2897785.1

7

1  sent a series of cease-and-desist letters (in English) to various computer

2  manufacturers, including Sony Corporation (but not to Sony China), claiming that

3  portions of CYBERsitter were infringed in Green Dam.[5]  Mayer Decl., Ex. D.

4       On August 11, 2009 (after the Green Dam Mandate had been initially

5  postponed and Green Dam had been updated), a different attorney for Plaintiff sent

6  a second letter to Sony Corporation and Sony Corporation of America ("SCA")

7  (but again, not to Sony China), containing a list of 17 separate demands.  Mayer

8  Decl., Ex. E.  On August 27, 2009, SCA confirmed that "no computers containing

9  Green Dam ever were manufactured or sold in the United States by any Sony

10  entity.  Nor was Green Dam ever installed on or copied to any computers in the

11  United States by any Sony entity."  Id., Ex. F.  SCA also advised Plaintiff that its

12  "threatened claims involve alleged conduct that took place entirely outside the

13  United States, by a foreign entity, and at the direction of a foreign sovereign" and

14  thus were not appropriately brought in the United States.  Id.

15       On January 5, 2010, Plaintiff filed its Complaint against the PRC, Jinhui,

16  Dazheng, and the seven Foreign Manufacturers.  (Docket No. 1).  The Complaint

17  alleges that the PRC, Jinhui, and Dazheng engaged in copyright infringement and

18  misappropriated Plaintiff's trade secrets by using portions of CYBERsitter in

19  Green Dam and then causing Green Dam to be distributed to the public.

20       Plaintiff's Complaint does not allege that the Foreign Manufacturers

21  participated in the development of Green Dam or engaged in any of the purported

22  trade secret misappropriation engaged in by the PRC, Jinhui, and Dazheng during

23  the development of Green Dam.  Instead, Plaintiff premises its claims of liability

24

25

26

27

28

[5]  On or about June 12, 2009, one of the Chinese Developers, Jinhui, released an update to Green Dam (ver. 3.173).  According to representatives of the Computer Science and Engineering Division of The University of Michigan (whose findings form the basis for Plaintiff's alleged infringement claims), "with the 3.173 update installed, Green Dam no longer appears to employ the blacklist files derived from CyberSitter.  Instead, it uses an updated version of the adwapp.dat blacklist.  This list does not seem to be based on CyberSitter: it is over 6000 lines long and contains only five lines in common with any of the CyberSitter blacklists."  Mayer Decl., Ex. G.

against the Foreign Manufacturers entirely upon allegations that each of the
Foreign Manufacturers entered into agreements with the PRC "providing for the
distribution of Green Dam by [the Foreign] Manufacturers in China" (Complaint,
¶ 49), were "designated as official distributors of the Green Dam product"
(Complaint, ¶ 50), and "commenced distribution of the Green Dam software no
later than on or about March 1, 2009" (Complaint, ¶ 53).

None of the Foreign Manufacturers is alleged to have violated United States
copyright law.  Instead, each has been sued under Chinese copyright law.
Additionally, Plaintiff has asserted claims against Sony Corporation and Toshiba
under Japanese copyright law and against Acer, ASUSTeK , and BenQ under
Taiwanese copyright law.  Each of these copyright claims arises from the identical
allegations that:

> Defendants…have infringed Plaintiff's copyrights in the Copyrighted
> Works by reproducing, publishing, distributing, disseminating on
> information networks, leasing, and making available to the public
> works embodying the Copyrighted Works without authorization, and
> have not attributed authorship of the Copyrighted Works to Plaintiff,
> all in violation of Plaintiff's rights under [Chinese, Japanese, or
> Taiwanese] copyright law.

Complaint, ¶¶ 92, 106.  Although the Foreign Manufacturers (including Sony
Corporation) are not alleged to have engaged in *any* conduct within the United
States, in an effort to manufacture a claim against them under United States law,
Plaintiff has named each of them in its First and Second Claims for
Misappropriation and Unfair Competition, premised on the legally and factually
specious allegations that they "acquired" Plaintiff's trade secrets when they were
provided with Green Dam by the Chinese Developers and "used" them by
"distributing the Green Dam software" (*in China*).  Complaint, ¶ 61.

**Status of the Litigation.**  At present, the only defendants that have appeared
in the action are the Taiwanese defendants (Acer, ASUSTek, and BenQ), which
answered the Complaint on July 1, 2010.  (Docket Nos. 19, 21, 23).  Sony

Mitchell
Silberberg &
Knupp LLP

2897785.1

9

1   Corporation is advised that the Taiwanese defendants and Toshiba will join this

2   Motion.  Toshiba (the only other Japanese defendant) also has given notice of its

3   intention to file a motion to dismiss the claims against it for lack of personal

4   jurisdiction.  The PRC, Jinhui, Dazheng, and the Chinese Foreign Manufacturers

5   have not been served in this action.  Rather, Plaintiff has confirmed that it has been

6   unable to serve these defendants.  Notwithstanding that service has not been

7   effectuated, on August 17, 2010, Plaintiff filed a motion for default (Docket No.

8   35) which Lenovo Group Limited opposed (Docket No. 39).  The default Motion

9   has been taken under submission.  (Docket No. 47).  No discovery has yet occurred

10  in this action, and the parties' Rule 26 conference has not yet taken place.

11

12  **II.    THE ACTION SHOULD BE DISMISSED UNDER THE DOCTRINE**

13  **OF *FORUM NON CONVENIENS*.**

14        Under the federal common law doctrine of *forum non conveniens*:

15        when an alternative forum has jurisdiction to hear the case, and when
         the trial in the chosen forum would establish . . . oppressiveness and
16        vexation to a defendant  . . . out of all proportion to plaintiff's
         convenience, … the court may, in the exercise of its sound discretion,
17        dismiss the case.

18

19  Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 (1981) (internal citations and

20  quotations omitted).

21        Courts will grant a *forum non conveniens* motion when the following two

22  criteria are met:  "(1) the existence of an adequate alternative forum, and (2) that

23  the balance of private and public interest factors favors dismissal."  Lockman, 930

24  F.2d at 767; Lueck v. Sundstrand Corp., 236 F.3d 1137, 1142 (9th Cir. 2001)

25  (same).  Both of these factors weigh overwhelmingly in favor of dismissal of

26  Plaintiff's complaint.

27

28

Mitchell
Silberberg &
Knupp LLP

2897785.1

10

**A.    A Court In China Is An Adequate Alternative Forum.**

"The first requirement for a forum non conveniens dismissal is that an adequate alternative forum is available to the plaintiff."  Lueck, 236 F.3d at 1143. An adequate alternative forum ordinarily exists when the defendant is amenable to service of process in the foreign forum.  See, e.g., Piper Aircraft, 454 U.S. at 254 n.22; Lockman, 930 F.2d at 768 ("Because the record shows that [defendant] has agreed to submit to Japanese jurisdiction, . . . the threshold test [of adequacy] is satisfied."); see also Contract Lumber Co. v. P.T. Moges Shipping Co., 918 F.2d 1446, 1450 (9th Cir. 1990) (forum adequate when dismissal conditioned on defendant's "consent to the jurisdiction of the Philippine courts, and that it waive any defense of statute of limitations").  Sony Corporation (although not a proper party even in China) will not contest jurisdiction with respect to this particular matter in China, and will agree to the tolling of the applicable statute of limitations as of January 5, 2010, when the Complaint was filed.  Sony Corporation is advised that Toshiba Corporation and the Taiwanese defendants will do so as well.

Indeed, while the Plaintiff can file a lawsuit in China against *all* relevant parties, if this action proceeds in this Court it is likely that many of the defendants will not be subject to service or jurisdiction here, and cannot be compelled to participate in the action.  As noted, Toshiba Corporation intends to contest personal jurisdiction.  The PRC, the Chinese Developers, and Lenovo and Haier have not been served at all.  Moreover, even if the PRC elected voluntarily to appear in this action (which is unlikely), it almost certainly is entitled to sovereign immunity and immune from suit in the United States.  See Morris v. People's Republic of China, 478 F. Supp. 2d 561, 566-71 (S.D.N.Y. 2007) (dismissing claims against PRC as barred by the Foreign Sovereign Immunities Act); see generally Saudi Arabia v. Nelson, 507 U.S. 349, 355 (1993) ("[A] foreign state is presumptively immune from the jurisdiction of United States courts...").  In the absence of these defendants – especially the PRC, Dazheng and Jinhui – complete

Mitchell
Silberberg &
Knupp LLP

2897785.1

11

relief is not available in this Court, and, irrespective of whether this action proceeds, Plaintiff will be required to pursue a separate action in China in order to obtain relief against these defendants.  Additionally, the Court will, in essence, be required to adjudicate the secondary copyright issues (i.e., the liability of the Foreign Manufacturers for distributing Green Dam), without being able to adjudicate or receive evidence on the primary issues, such as those relating to the creation and development of Green Dam and its source code.

There also is no practical or equitable reason why this action cannot be adjudicated in China.  It is well established, and beyond reasonable dispute, that China possesses a functioning and independent judiciary that is capable of adjudicating civil disputes such as this one.  See 1 M. Nimmer & P. Geller, International Copyright Law and Practice § 8[3][a] (2009 rev.) (discussing various tribunals available in China for copyright cases); Declaration of Jacques deLisle ("deLisle Decl."), ¶¶ 31-46 (discussing Chinese court system and procedure); see also Guimei v. General Elec. Co., 172 Cal. App. 4th 689, 701 (2009) (affirming finding that "Chinese courts… are in fact capable of adjudicating complex product liability claims.  The judges and attorneys are well educated and sophisticated, and they have experience in complex, multiparty litigation…").  Chinese courts possess a sophisticated set of rules and procedures governing the methods for obtaining, introducing, and handling evidence, including procedures to compel the production of evidence and for cross-examination.  deLisle Decl., ¶¶ 31-37.  Chinese courts also possess effective procedures for enforcing and reviewing judgments.  Id., ¶¶ 38-40.  Given the nature of this dispute, if filed in China it is likely that it would be heard by a specialized intellectual property panel of the intermediate or high court of Beijing, which are acknowledged to be among the best courts in China.  Id., ¶¶ 47-53.  These courts would fairly and effectively adjudicate this dispute, just as they adjudicate many other copyright and intellectual property matters, including those involving foreign plaintiffs.  Id., ¶¶ 53-57.

Mitchell
Silberberg &
Knupp LLP

2897785.1

12

There also is no dispute – and, in fact, by suing under Chinese law Plaintiff has acknowledged – that the Chinese legal system provides adequate remedies for Plaintiff's claims.  See Lockman, 930 F.2d at 768 (forum is adequate if it offers the plaintiffs "a remedy for their losses"); Creative Tech., Ltd. v. Aztech Sys. Pte, Ltd., 61 F.3d 696, 701 (9th Cir. 1995) ("We conclude that the Singapore Copyright Act offers Creative an adequate alternative remedy independent of United States copyright law.").  Plaintiff alleges in its Complaint that its works "are protected under the Copyright Law of the People's Republic of China" and that China possesses a robust set of copyright laws that "protect[] both the economic rights and moral rights of the owner of copyrighted works, including computer software and written works."  Complaint, ¶¶ 90, 91 (quoting extensively from Chinese copyright statutes).  In fact, the nature of protection and relief provided under Chinese copyright law largely parallels and is in many respects equivalent to that provided under United States law.  deLisle Decl., ¶¶ 13-21.  Plaintiff also recognizes that China is a signatory to the two major international agreements on intellectual property rights: the Berne Convention for the Protection of Literary and Artistic Works (which requires its member states to implement copyright laws that meet certain minimum standards) and the Agreement on Trade Related Aspects of Intellectual Property Rights (TRIPS).  Complaint, ¶ 90; see also deLisle Decl., ¶¶ 22-24.  Chinese courts have adjudicated (and are competent to adjudicate) complex copyright disputes and will impose liability against infringers when appropriate, including in cases brought by foreign plaintiffs.  deLisle Decl., ¶¶ 53-57.  Plaintiff admits as much, citing and quoting the Chinese judicial decision Shanghai Push Sound Music & Entertainment Co., Ltd. v. Beijing Kuro Music Software Development Co., Ltd., for support of its claims.  Complaint, ¶ 93.

For the foregoing reasons, virtually every court that has considered the issue – including the United States Supreme Court – consistently has found that courts in China provide an adequate alternative forum for *forum non conveniens* purposes.

Mitchell
Silberberg &
Knupp LLP

2897785.1

13

1   <u>See</u>, <u>e.g.</u>, <u>Sinochem</u>, 549 U.S. at 435 (dismissal in favor of Chinese forum was "a

2   textbook case for immediate *forum non conveniens* dismissal"); <u>Compania</u>

3   <u>Naveria</u>, 569 F.3d at 205 (dismissing action on *forum non conveniens grounds*

4   where Chinese forum provides "analogous" remedy to that provided by a U.S.

5   forum); <u>Tang v. Synutra Int'l, Inc.</u>, No. 09-0088, 2010 WL 1375373, at *9-11 (D.

6   Md. Mar. 29, 2010) (China is a proper forum, notwithstanding Plaintiffs' claims

7   that the Chinese courts were delaying the proceedings).  There is no reason for this

8   Court to depart from this line of authority.

9       Finally, the presence of the PRC or entities allegedly affiliated with the PRC

10   as defendants in the action is factually and legally irrelevant.  Chinese courts

11   routinely adjudicate matters involving state-owned enterprises or Chinese

12   governmental entities and, in fact, plaintiffs frequently prevail against such entities,

13   including in actions involving intellectual property.  deLisle Decl., ¶¶ 58-64.

14   Additionally, in light of the nature of this action and China's ongoing efforts to

15   meet its international intellectual property obligations, it is likely that this case will

16   be handled in a particularly careful and balanced manner.  <u>Id.</u>, ¶¶ 68-74.

17       United States courts frequently have held that the presence or involvement

18   of a foreign state (including the PRC) or state-owned enterprise in a lawsuit is

19   insufficient to render the courts in that foreign state "inadequate."  <u>See</u>, <u>e.g.</u>, <u>China</u>

20   <u>Tire Holdings, Ltd. v. Goodyear Tire & Rubber Co.</u>, 91 F. Supp. 2d 1106, 1111

21   (N.D. Ohio 2000) (dismissing action in favor of Chinese forum where "the case

22   involves alleged statements made to officials of the PRC" and concerns Chinese

23   government contracts); <u>see also</u>, <u>e.g.</u>, <u>Monegasque De Reassurances S.A.M.</u>

24   <u>(monde Re) v. Nak Naftogaz of Ukr.</u>, 311 F.3d 488, 499 (2d Cir. 2002) ("It is

25   hardly unusual, considering the number of state-owned business entities

26   throughout the world, for a finding of forum non conveniens to be made in favor of

27   the forum of a state whose entity is a party litigant."); <u>Forsythe v. Saudi Arabian</u>

28   <u>Airlines Corp.</u>, 885 F.2d 285, 291 (5th Cir. 1989) (dismissing action against state-

Mitchell
Silberberg &
Knupp LLP

2897785.1

14

1  owned corporation in favor of Saudi Arabian forum).  To the contrary, "courts

2  have rightly been reluctant to cast [] aspersions on foreign judicial systems absent a

3  **substantial** showing of a lack of procedural safeguards."  <u>Tang</u>, 2010 WL 1375373

4  at *9 (emphasis added).  Indeed, as further discussed below, the presence of the

5  PRC in this action weighs in favor of transfer, so that issues that impact the PRC

6  (including issues of sovereign immunity and the interplay of its ministry policies

7  and the civil law) can be decided by a Chinese court familiar with such principles.[6]

8      **B.**   **The Private And Public Interest Factors Weigh Decidedly In**

9         **Favor Of Dismissal.**

10        Because China is an adequate alternative forum, dismissal is warranted if the

11  balance of conveniences and the public interests involved weigh in favor of

12  dismissal.  <u>See</u> <u>Altmann</u>, 317 F.3d at 973.  These include:

13        both the "private interest" factors affecting the convenience of the
   litigants, including all "practical problems that make trial of a case

14        easy, expeditious and inexpensive," as well as the "public interest"

15        factors affecting the convenience of the forum, which include the
   administrative difficulties flowing from court congestion; the local

16        interest in having localized controversies resolved at home; the

17        interest in having the trial of a diversity case in a forum that is
   familiar with the law that must govern the action; the avoidance of

18        unnecessary problems in conflicts of law, or in application of foreign

19        law; and the unfairness of burdening citizens in an unrelated forum
   with jury duty.

20

21  <u>Id.</u>, quoting <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S. 501, 508 (1947).  While no single

22  factor is dominant and all factors should be weighed together, <u>Lueck</u>, 236 F.3d at

23  1145-46, in this case **every one** of the private and public interest factors

24  overwhelmingly favors dismissal.

25

26  [6]  In light of the robust and sophisticated legal system in China, whether there are
   some procedural differences between the Chinese and U.S. legal systems is

27  irrelevant.  <u>Altmann v. Republic of Austria</u>, 317 F.3d 954, 972 (9th Cir. 2002);
   <u>Lockman</u>, 930 F.2d at 768 (Japan was an adequate alternative forum even though

28  Japan does not conduct jury trials or pretrial discovery, gives appellate courts de
   novo review of facts, and does not recognize RICO or Lanham Act claims).

Mitchell
Silberberg &
Knupp LLP

2897785.1

15

1          **1.      The "Public Interest" Factors.**

2          This case concerns alleged conduct engaged in by foreign entities entirely

3    outside the United States, and the claims thus arise almost entirely under foreign

4    law.  As a result, this Court has very little, if any, connection to the underlying

5    dispute and little interest in any of the legal principles implicated.  See Lockman,

6    930 F.2d at 771 (controversy had "a large connection to Japan and little connection

7    to California because all claims were related to the translation and distribution of

8    Bibles in Japan"); Villar v. Crowley Mar. Corp., 782 F.2d 1478, 1483 (9th Cir.

9    1986) (affirming dismissal of action arising from shipping accident that occurred in

10   Saudi Arabian waters, because "American jurors and court personnel have little

11   interest in this controversy"); Murray v. British Broad. Corp., 906 F. Supp. 858,

12   865-66 (S.D.N.Y. 1995) (dismissing copyright infringement action where events

13   giving rise to the litigation occurred in England).

14         In contrast to the nominal interest that this Court possesses in this

15   controversy, the burden that would be imposed on this Court in litigating this

16   action is substantial.  Key documents are in Chinese or Japanese and key witnesses

17   are native Chinese or Japanese speakers who reside in China (and, to a lesser

18   extent Taiwan or Japan).  Thus, extensive translation of documents and testimony

19   would be required.  Additionally, the gravamen of this case arises under Chinese

20   law, and, in fact, although Plaintiff also has made claims under Taiwanese and

21   Japanese copyright law, none of the Foreign Manufacturers has been sued under

22   United States copyright law.  See Tang, 2010 WL 1375373 at *13 (dismissing case

23   where court would be required to apply Chinese law); Moletech Global Hong

24   Kong Ltd. v. Pojery Trading Co., No. 09-00027, 2009 U.S. Dist. LEXIS 88531, at

25   *14-16 (N.D. Cal. Sept. 25, 2009) (need to apply Taiwanese law weighed "heavily

26   in favor of dismissal"); ITSI T.V. Prods., Inc. v. Cal. Auth. of Racing Fairs, 785 F.

27   Supp. 854, 866-67 n.20 (E.D. Cal. 1992) (the "exercise of jurisdiction over such a

28   claim would work an extreme hardship on the court in discerning and applying

Mitchell
Silberberg &
Knupp LLP

2897785.1

16

1  Mexican law"), rev'd on other grounds sub nom ITSI T.V. Prods., Inc. v. Agric.

2  Ass'ns, 3 F.3d 1289 (9th Cir. 1993); Nai-Cho v. Boeing Co., 555 F. Supp. 9, 21

3  (N.D. Cal. 1982) ("[T]his court finds it quite possible that Chinese law would be

4  applied to this action, and thus that the action is more appropriately tried by a court

5  familiar with Chinese law."); see generally Piper Aircraft, 454 U.S. at 260

6  (collecting cases granting dismissal where foreign law involved).  Analysis and

7  application of Chinese law (in addition to Japanese and Taiwanese law) would

8  require expert witnesses, extensive translation of relevant laws and statutes, and,

9  potentially, translators for each expert witness.  To require this Court, and a

10  California jury, to make decisions under these foreign laws – in a case where all of

11  the relevant events occurred overseas and all of the defendants are in Asia – makes

12  little sense, especially where an alternative forum exists that is familiar with the

13  legal principles involved.  See Murray, 906 F. Supp. at 865 (where events occurred

14  abroad and forum was unrelated to the dispute, "the need to apply foreign law []

15  militates in favor of dismissal").

16      Perhaps most importantly, China has a very strong interest – and, in fact, a

17  direct stake – in this dispute:  the PRC and several Chinese companies (as well as

18  companies that do business in China) are defendants in the action, and Plaintiff's

19  claims are premised entirely on software commissioned by the PRC, allegedly

20  created by Chinese companies, and distributed in China pursuant to the Green Dam

21  Mandate.  China, of course, has a significant interest in developing, applying, and

22  interpreting its own laws.  See Lockman, 930 F.2d at 771 ("Japan [has an] interest

23  in matters relating to Japanese copyrights."); see also deLisle Decl., ¶¶ 75-79.  This

24  is especially true in this case, as adjudication of this dispute involves a number of

25  complex and important Chinese legal issues such as:

26      •    The relationship between the Green Dam Mandate and Chinese

27  copyright law, including whether a party can be held to violate Chinese copyright

28  law when it is following a mandate issued by the Chinese government.

Mitchell
Silberberg &
Knupp LLP

2897785.1

17

- Whether the PRC is entitled to sovereign immunity from claims of copyright infringement under Chinese law.  If so, it must be determined whether that immunity applies in this case and whether it may apply to limit the liability of private entities acting pursuant to an administrative mandate of the Chinese government.

- The manner in which potential conflicts between Chinese law, on the one part, and Japanese and Taiwanese law, on the other part, are to be addressed, including in circumstances where conduct authorized under Chinese law is alleged to violate those countries' copyright laws.

- The scope of damages (and indemnification for such damages) for claims of copyright infringement arising from the development or distribution of allegedly infringing works with the express authorization of, or license from, the PRC or other Chinese governmental entities.

These important issues of Chinese law and sovereignty are best adjudicated in a Chinese court, with input from the Chinese defendants.  See Voda v. Cordis Corp., 476 F.3d 887, 901-03 (Fed. Cir. 2007) (declining to adjudicate foreign law claims where doing so "could prejudice the rights of the foreign governments" and "disrupt their foreign procedures"); Vanity Fair Mills, Inc. v. T. Eaton Co., 234 F.2d 633, 646 (2d Cir. 1956) (declining to exercise supplemental jurisdiction over claim questioning validity of foreign trademark registration); Intercontinental Dictionary Series v. Gruyter, 822 F. Supp. 662, 680 (C.D. Cal. 1993) (public interest favored Australian forum where complaint alleged Australian government funded infringing works).  This is especially true given the absence of the key players (including the PRC) and the absence of any U.S. conduct or U.S. defendant.  See Vanity Fair Mills, 234 F.2d at 646 (judicial "power should be exercised with great reluctance when…the exercise of such power is fraught with possibilities of discord and conflict with the authorities of another country.").

Mitchell
Silberberg &
Knupp LLP

2897785.1

28

18

1    In <u>China Tire</u>, 91 F. Supp. 2d at 1106, the court considered similar issues in

2  a dispute between two tire companies concerning their competing efforts to do

3  business with a government-controlled Chinese tire manufacturer for the sale of

4  products in China.  The plaintiff filed a lawsuit in the Central District of California,

5  claiming that the defendant had engaged in a variety of unfair and unlawful

6  business practices, including giving improper gifts to Chinese government officials

7  and their families in order to influence the manufacturer.  The Court dismissed the

8  action on the grounds of *forum non conveniens*.  While plaintiff's appeal was

9  pending, it filed a second action in the Northern District of Ohio.  The Ohio district

10  court also dismissed the action, finding that the earlier decision was correct and

11  entitled to preclusive effect.  In so doing, the Ohio district court (quoting this

12  Court) highlighted the relative interests of the United States and China in the

13  dispute:

14  > This case involves alleged statements made to officials of the
15  > PRC…government about a Bermuda corporation with its
   > headquarters in Hong Kong in an attempt to obtain a PRC
16  > government contract.  The interest of a Chinese court to adjudicate
   > matters regarding its own government contracts far outweighs the
17  > small interest that American courts have in adjudicating this matter.

18  <u>Id.</u> at 1111.

19
20  Plaintiff's only apparent justification for filing its lawsuit in the United

21  States is that Plaintiff is located here.  But this fact alone "should not be given

   dispositive weight."  <u>Piper Aircraft</u>, 454 U.S. at 255 n.23; <u>Lockman</u>, 930 F.2d at
22
   767 ("We have recognized that the presence of American plaintiffs…is not in and
23
   of itself sufficient to bar a district court from dismissing a case on the ground of
24
   *forum non conveniens*….  In practice, the cases demonstrate that defendants
25
   frequently rise to the challenge of showing an alternative forum is the more
26
   convenient one.").  Plaintiff's residence by itself cannot suffice to require ten
27
   foreign entities to defend in a United States court, before a U.S. jury, claims for
28
   violation of foreign laws arising from conduct allegedly undertaken by these

Mitchell
Silberg &
Knupp LLP

2897785.1

19

1   entities outside of the United States pursuant to the PRC's Green Dam Mandate.[7]

2   <u>See</u> <u>Nai-Cho</u>, 555 F. Supp. at 21 ("The federal courts have not felt constrained to

3   retain jurisdiction over predominantly foreign cases involving American plaintiffs

4   where an examination of the [public and private interest] factors demonstrated that

5   the action is more appropriately brought in a foreign forum.").

6          Finally, Plaintiff cannot manufacture a connection between this Court and its

7   claims in this action merely by alleging that the Foreign Manufacturers "used"

8   Plaintiff's trade secrets (and thereby purportedly violated California law) when

9   they distributed ***in China*** personal computers pre-installed with Green Dam or by

10  asserting specious claims against certain defendants (not Sony Corporation or the

11  other Foreign Manufacturers) under the United States Copyright Act.  Because all

12  of the conduct alleged to give rise to Plaintiff's claims took place outside the

13  United States, this Court (and a California jury) have no more interest in the trade

14  secret or unfair competition claims than in the foreign copyright claims.  In

15  addition, the trade secret claims are legally meritless, and for that reason as well

16  should be accorded little, if any, weight.  <u>See</u> <u>Silvaco Data Sys. v. Intel Corp.</u>, 184

17  Cal. App. 4th 210, 224 (2010) ("Strong considerations of public policy reinforce

18  the common-sense conclusion that using a product does not constitute a 'use' of

19  trade secrets employed in its manufacture.  If merely running finished software

20  constituted a use of the source code from which it was compiled, then every

21  purchaser of software would be exposed to liability if it were later alleged that the

22  software was based in part upon purloined source code.").  As for the claims under

23  
24  [7] If Plaintiff's residence alone were sufficient to require the Court to exercise its jurisdiction, then United States courts would be compelled to adjudicate ***every***
25  instance in which a copyright owned by a U.S. citizen was infringed abroad.  On the contrary, United States plaintiffs (including, for example, the Walt Disney Co. and Starbucks Corp.) routinely litigate copyright infringement matters in China.
26  deLisle Decl., ¶¶ 53-56.  United States courts permit only the most extraordinary foreign copyright disputes to be adjudicated in the United States – for example,
27  those in which there is "***no*** foreign forum in which defendant is the subject of personal jurisdiction."  <u>London Film Prod.s Ltd. v. Intercontinental Commc'ns,</u>
28  <u>Inc.</u>, 580 F. Supp. 47, 50 (S.D.N.Y. 1984) (emphasis added).

Mitchell
Silberberg &
Knupp LLP

2897785.1

20

1  the United States Copyright Act, they are asserted only against the PRC and the

2  Chinese Developers.  None of these parties has appeared in the action, and it is

3  unlikely that these claims (to the extent they are even properly brought) will be

4  actually litigated.

5            **2.      The "Private Interest" Factors.**

6       The "private interest" factors include "(1) the residence of the parties and the

7  witnesses; (2) the forum's convenience to the litigants; (3) access to physical

8  evidence and other sources of proof; (4) whether unwilling witnesses can be

9  compelled to testify; (5) the cost of bringing witnesses to trial; (6) the

10 enforceability of the judgment; and (7) 'all other practical problems that make trial

11 of a case easy, expeditious and inexpensive.'" Lueck, 236 F.3d at 1145, quoting

12 Gulf Oil, 330 U.S. at 508.  Additionally, where the Court cannot compel the

13 production of relevant evidence from the alternative forum, that weights heavily in

14 favor of dismissal on *forum non conveniens* grounds.  See Lueck, 236 F.3d at

15 1147.  Each of the "private interest" factors weighs in favor of dismissal here.

16      **Location of the Parties.**  Each of the ten defendants is located, and has its

17 principal place of business, in China, Japan, or Taiwan.  As noted above, five of

18 these defendants (the PRC, the two Chinese Developers, Lenovo, and Haier) have

19 yet to be served.  Only Plaintiff resides in the United States.

20      **Location of the Witnesses.** All of the witnesses relevant to Sony

21 Corporation's defense of this action, including all of the representatives of Sony

22 China, are located in China or Japan.  This includes a number of third-party

23 witnesses, such as:

24      •      Employees of the factories where computers alleged to have been pre-

25 installed or otherwise shipped with Green Dam were manufactured.  Hagiwara

26 Decl., ¶ 7.

27

Mitchell
Silberberg &
Knupp LLP   28

2897785.1

21

1      •      Independent retailers and wholesalers who distributed computers

2      manufactured and sold by Sony China or the Foreign Manufacturers.  Hagiwara

3      Decl., ¶ 7.

4      •      Representatives of the MIIT responsible for the issuance of the Green

5      Dam Mandate.

6      These third-party witnesses are outside the subpoena power of this Court,

7      and thus cannot be compelled to testify in the United States.  See Tang, 2010 WL

8      1375373 at *12 ("[T]he Chinese forum would have the power to compel the

9      testimony of unwilling witnesses and the cost of producing willing witnesses

10     would be significantly reduced there.  The present forum, by contrast, could not

11     compel the testimony of Chinese witnesses and would pose substantial expense

12     and inconvenience."); see also Lueck, 236 F.3d at 1146-47 ("[M]any of the New

13     Zealand documents and witnesses are under the control of the New Zealand

14     government or Ansett.  The district court does not have the power to order the

15     production or appearance of such evidence and witnesses."); Lockman, 930 F.2d at

16     770 (defendant "cannot force [witnesses in Japan] to testify in the United States").

17     Further, deposing representatives of any of the Chinese, Japanese, or Taiwanese

18     defendants would require compliance with the Hague Convention on Taking

19     Evidence Abroad, which is a time-consuming and burdensome process.  See

20     deLisle Decl., ¶¶ 82-84.

21     **Burden on the Witnesses and Parties.**  It would be extremely costly and

22     burdensome for representatives of Sony Corporation or Sony China to travel to the

23     United States for this lawsuit.  Akahane Decl., ¶ 8; Hagiwara Decl., ¶ 12.  Travel to

24     California from China (and Taiwan) requires a more than 15 hour plane flight (and

25     the flight from Japan is only slightly less).  Any witnesses from China (including

26     representatives of Sony China) also would need to obtain the proper (B1) visa

27     before traveling to the United States, which can be an expensive and time-

28     consuming task.  Hagiwara Decl., ¶ 12.  Jose v. M/V Fir Grove, 801 F. Supp. 349,

Mitchell
Silberberg &
Knupp LLP

2897785.1

22

1  352-53 (D. Or. 1991) (in considering private interest factors in employment-related

2  action, court gave weight to fact that individuals "may not be able to obtain visas

3  to come to the United States for trial").  Even assuming the appropriate visas could

4  be obtained for all of the Chinese witnesses (which is far from a certainty), the cost

5  of bringing these witnesses to the United States would be significant, and would

6  include plane fare, meals and lodging, transportation, and English translators.  See

7  Blanco v. Banco Indus. de Venezuela, 997 F.2d 974, 982 (2d Cir. 1993) (private

8  interest factors favor dismissal where most witnesses and physical and

9  documentary evidence are located in other forum).

10     Between the three Taiwanese and two Japanese defendants alone, it is likely

11  that no fewer than 15 or 20 witnesses and party representatives (3 or 4 for each

12  defendant) would be required to travel to the United States for trial.  That is in

13  stark contrast to the Plaintiff's much lesser burden if the case were litigated in

14  China, which likely would be limited to the transportation of a company

15  representative and, at most, one or two witnesses concerning its copyright

16  ownership and certain technical issues.  See China Tire, 91 F. Supp. 2d at 1111

17  ("Bringing [Chinese] witnesses into a Chinese forum will be far easier and less

18  expensive than would be bringing them to the United States for trial.").

19     **Location of the Evidence.**  All of the evidence concerning the distribution

20  and sale of VAIO computers in China is located in China.  Hagiwara Decl., ¶ 12.

21  Most of the evidence concerning the creation and development of Green Dam, the

22  licensing of Green Dam to the Foreign Manufacturers, and Plaintiff's damages

23  (which is likely to require evidence of the reasonable value of a license for

24  CYBERsitter in China and the number of units of Green Dam distributed in China)

25  also is located in China.  Thus, this factor weighs strongly in favor of dismissal.

26  See Lockman, 930 F.2d at 770 (where evidence required to defend against

27  copyright claim was in Japan, dismissal granted); see also Murray, 906 F. Supp. at

28  863 ("[A]ll of the physical and documentary evidence is in England."); Creative,

Mitchell
Silberberg &
Knupp LLP

2897785.1

23

1   61 F.3d at 703 (affirming dismissal where "all of the records and the majority of

2   witnesses involved in the manufacture of the alleged [infringing products] are

3   located in Singapore").  The only relevant evidence located in the United States is

4   evidence pertaining to Plaintiff's ownership of the CYBERsitter software.  That

5   issue is not likely to be heavily contested.  In any event, proving such ownership

6   would require only minimal testimony (e.g., copyright registrations or chain-of-

7   title documents) that easily can be transported to China.

8          **Prejudice to the Parties.**  The prejudice to Sony Corporation (and, indeed,

9   to all of the defendants, especially the Foreign Manufacturers) if this case were to

10  remain in the United States is obvious and manifest.  Sony Corporation's trial

11  presentation (and that of the other Foreign Manufacturers) would be seriously

12  impaired if it could not present evidence through live witness testimony, either

13  because third-party witnesses would not be subject to the subpoena power of this

14  Court (or were not able to obtain visas timely or at all) or because the Chinese

15  defendants have not appeared in the action.  See Nai-Cho, 555 F. Supp. at 18

16  ("compelling the litigants to try their case without the benefit of live testimony

17  from important witnesses would impose a serious hardship upon them and upon

18  this Court"); Murray, 906 F. Supp. at 864 ("live presentation will be crucial to

19  allow the jury to evaluate the credibility of witnesses whose testimony conflicts.")

20  More critically, if the case proceeds in this Court it is likely that Sony Corporation

21  (and the other Foreign Manufacturers) will be completely unable to obtain (far less

22  present at trial) critical documentary and testimonial evidence, including evidence

23  concerning the creation of Green Dam, the role of the MIIT and PRC in connection

24  with the creation and distribution of Green Dam, and the nature of the technical

25  changes made to Green Dam during May and June 2009 (including in response to

26  claims made by Plaintiff in June 2009).  deLisle Decl., ¶ 82.  China Tire, 91 F.

27  Supp. 2d at 1111 ("[D]iscovery by American attorneys in the PRC may prove to be

28  impossible").   Any prejudice to Plaintiff if this Motion is granted is far

Mitchell
Silberberg &
Knupp LLP

2897785.1

24

1   outweighed by the collective prejudice to the Foreign Manufacturers if this case

2   remains in this Court.

3

4                              **Conclusion**

5          For the foregoing reasons, Sony Corporation respectfully requests that the

6   Court grant this Motion and dismiss the action in its entirety on the grounds of

7   *forum non conveniens*.

8

9   Dated:  September 13, 2010          KARIN G. PAGNANELLI

10                                       MARC E. MAYER
                                         MITCHELL SILBERBERG & KNUPP LLP

11

12                                       By:  __/s/ Marc E. Mayer_____

13                                             Marc E. Mayer
                                               Attorneys for Defendant
14                                             SONY CORPORATION

15

16

17

18

19

20

21

22

23

24

25

26

27

28