1  GIPSON HOFFMAN & PANCIONE
   A Professional Corporation
2  GREGORY A. FAYER (State Bar No. 232303)
   GFayer@ghplaw.com
3  ELLIOT B. GIPSON (State Bar No. 234020)
   EGipson@ghplaw.com
4  1901 Avenue of the Stars, Suite 1100
   Los Angeles, California 90067-6002
5  Telephone:  (310) 556-4660
   Facsimile:  (310) 556-8945
6
7  Attorneys for Plaintiff
   CYBERsitter, LLC d/b/a Solid Oak Software

8
                UNITED STATES DISTRICT COURT
9
      CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION
10

11

12 | CYBERsitter, LLC, a California limited    | CASE NO. CV10-0038 JST(SHx)
   | liability company, d/b/a Solid Oak Software,
13 |
   |              Plaintiff,
14 |                                            | **FIRST AMENDED COMPLAINT
   |                                            | FOR MISAPPROPRIATION OF
15 |     v.                                     | TRADE SECRETS; UNFAIR
   |                                            | COMPETITION; COPYRIGHT
16 | The People's Republic of China, a foreign  | INFRINGEMENT; AND CIVIL
   | state; Zhengzhou Jinhui Computer System    | CONSPIRACY**
17 | Engineering Ltd., a Chinese corporation;
   | Beijing Dazheng Human Language             | **DEMAND FOR JURY TRIAL**
18 | Technology Academy Ltd., a Chinese
   | corporation; Sony Corporation, a Japanese
19 | corporation; Lenovo Group Limited, a
   | Chinese corporation; Toshiba Corporation, a
20 | Japanese corporation; ACER Incorporated, a
   | Taiwanese corporation; ASUSTeK
21 | Computer Inc., a Taiwanese corporation;
   | BenQ Corporation, a Taiwanese
22 | corporation; Haier Group Corporation, a
   | Chinese corporation; DOES 1-10, inclusive,
23 |
   |              Defendants.

24

25

26

27

28

---

**FIRST AMENDED COMPLAINT**

04444\00001\166919.1

Plaintiff CYBERsitter, LLC d/b/a Solid Oak Software ("Solid Oak" or "Plaintiff") alleges, on information and belief, as follows:

## NATURE OF THE ACTION

1.     This action arises from one of the largest cases of software piracy in history, wherein two Chinese companies, backed by the Chinese government, stole approximately 3,000 lines of code from a small American company's software program, and disseminated it to tens of millions of end users in China with the willing participation of computer manufacturers who chose to turn a blind eye to the illegal and otherwise surreptitious nature of the pirated program in order to gain increased access to the vast Chinese market by participating in the Chinese government-led initiative to proliferate the illegal program throughout China (the "Green Dam Initiative").

2.     Solid Oak is a small family-owned software company based in Santa Barbara, California.  Solid Oak developed and marketed an award-winning Internet content filtering program called CYBERsitter, which was designed to help parents protect their children from viewing inappropriate pornographic and violent content on the Web.  CYBERsitter was the first commercially available Internet content filter, and it has been continuously published by Solid Oak for over 14 years.  Solid Oak now boasts over 2.4 million active CYBERsitter users worldwide, including thousands of businesses, individuals, and schools in China, and thousands more in other Chinese-speaking countries.

3.     The Defendants in this action include the People's Republic of China ("PRC"), two Chinese software development companies, and several of the largest computer manufacturers in the world.  As relevant here, the Chinese software developers, in collaboration with the Chinese government, purported to design an Internet content filtering program known as Green Dam Youth Escort ("Green Dam").  Like CYBERsitter, the Green Dam program was allegedly designed to block pornographic and violent Internet content from children.  Unlike CYBERsitter,

**FIRST AMENDED COMPLAINT**

1    however, the Green Dam program was found to contain filters to block political and
2    religious content expressing views that differed from those of the Chinese
3    government.  The program was also found to have serious security vulnerabilities that
4    would allow third parties to monitor or take control of the computers on which it was
5    installed.  As a result, the Green Dam program and the Chinese government's efforts
6    to proliferate the program throughout China were met with stiff opposition from
7    human rights groups in China and around the world.  The central component of the
8    Green Dam Initiative was for the PRC to convince and incentivize computer
9    manufacturers to participate in the Initiative by including the Green Dam software
10   with their computers sold in China.  The Defendant computer manufacturers named
11   herein willingly participated in this plan.

12        4.    In June 2009, a group of independent researchers at the University of
13   Michigan confirmed that the Green Dam developers had copied verbatim nearly 3,000
14   lines of code from the CYBERsitter program and incorporated it into the Green Dam
15   program.  The stolen materials include the heart of the CYBERsitter software:  its
16   proprietary content filters.  The Chinese government has issued Green Dam usage
17   figures reporting – as of early June 2009 – that over 53 million computers marketed
18   for home use had been sold with the Green Dam program, that the Green Dam
19   program had been installed on more than half a million computers in Chinese schools,
20   and that Green Dam had been downloaded by users from the Internet an additional
21   3.27 million times.

22        5.    The Defendants in this action have conspired together to steal Solid Oak's
23   proprietary software, and to disseminate the illegal product to tens of millions of end
24   users in China and elsewhere.  The Defendants met together at a PRC-sponsored
25   Green Dam Symposium at the Beijing offices of the PRC's Ministry of Industry and
26   Information Technology ("MIIT") in March 2009 to develop their common plan.  The
27   Defendants' common scheme – the Green Dam Initiative – involved two overlapping
28   components which eventually became indistinguishable from each other: participation

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

2
**FIRST AMENDED COMPLAINT**

044441\0001\166019.1

in the Chinese government's seemingly legal (albeit surreptitious) plan to proliferate the Green Dam program throughout China, and the illegal theft, infringement, exploitation and distribution of Plaintiff's intellectual property.   Each of the Defendants herein willingly participated in this common scheme both before and after the illegal aspects of the scheme became apparent.

6.   Defendant computer manufacturers derive significant financial benefits from their unauthorized distribution of Plaintiff's intellectual property to the vast Chinese market, and have willingly participated in the scheme of the Defendant developers and the Chinese government to proliferate the illegal Green Dam product throughout China and elsewhere.   The Defendant computer manufacturers had the right, ability, legal obligation and knowledge to prevent unauthorized copies of Plaintiff's works from being distributed on their computers.   But although the Defendant computer manufacturers vigorously defend their own intellectual property in the courts and in the press, they chose to turn a blind eye to the theft and infringement at issue here in order to continue to reap the financial rewards of exploiting the vast Chinese computer market.

7.   By their actions alleged herein, Defendants have conspired together to misappropriate Plaintiff's trade secrets under California law, have violated federal prohibitions on theft of trade secrets and economic espionage (constituting unlawful practices under California's Unfair Competition Law), and have violated Plaintiff's copyrights in the CYBERsitter program, both directly and indirectly, under applicable copyright laws of the United States, China, Japan and Taiwan.   Because each Defendant named herein willingly participated in the illegal elements of their common scheme, each Defendant is liable for the illegal acts of the others.

8.   As a result of Defendants' acts alleged herein, Plaintiff has been damaged in an amount to be determined at trial.   Plaintiff estimates its damages to be $2,257,175,000, representing the Chinese government's stated figures of more than 56.5 million unauthorized copies distributed in China alone as of early June 2009,

**FIRST AMENDED COMPLAINT**

04444\00001\166919.1

1    multiplied by $39.95 per copy (the price of purchasing a legal copy of the

2    CYBERsitter program from Solid Oak).

3    **JURISDICTION AND VENUE**

4    9.    This Court has subject matter jurisdiction over this action pursuant to 28

5    U.S.C. §§ 1330, 1331, 1332(a), 1338 and 1367.  This action seeks relief, *inter alia*,

6    for violations of the United States Copyright Act, 17 U.S.C. §§ 101, *et seq*., and for

7    unfair competition predicated on violations of the Economic Espionage Act, 18 U.S.C.

8    §§ 1831-32 (theft of trade secrets and economic espionage).  As stated in paragraphs

9    12 through 26 below, for purposes of diversity jurisdiction, Solid Oak is a citizen of

10    the State of California, and Defendants are citizens of the People's Republic of China,

11    Japan, and Taiwan.  The amount in controversy exceeds the sum of $75,000 exclusive

12    of interest and costs.

13    10.    This Court has personal jurisdiction over Defendant PRC, Defendant

14    Jinhui, and Defendant Dazheng because they have purposefully availed themselves of

15    the benefits of this forum by doing business in this District, by committing wrongful

16    acts in whole or in part within this District, and/or by committing wrongful acts which

17    have had direct effects in this District.  Because Defendant PRC's wrongful acts

18    alleged herein arise in connection with a commercial activity that causes a direct

19    effect in the United States, Defendant PRC comes within an express exception to the

20    Foreign Sovereign Immunities Act, *viz.*, 28 U.S.C. § 1605(a)(2).  This Court has

21    personal jurisdiction over the remaining Defendants because they conduct significant

22    business in this District, and sell their computers throughout the United States in their

23    own capacity and through their wholly-owned subsidiaries.

24    11.    Venue is proper in the Central District of California pursuant to 28

25    U.S.C. § 1391(b)(2).

26    **THE PARTIES**

27    12.    Plaintiff Solid Oak is a limited liability company organized and existing

28    under the laws of the State of California, with its principal place of business in Santa

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

4

**FIRST AMENDED COMPLAINT**

04444\00001\166919.1

Barbara, California. Solid Oak is engaged in the business of software development and sales. As relevant here, Solid Oak developed and sells an Internet content filtering program known as "CYBERsitter."

13.    Defendant People's Republic of China ("PRC") is a foreign state. As relevant here, PRC has engaged in the purely economic conduct of licensing, sublicensing, distributing and promoting the software program known as Green Dam at issue in this litigation. PRC may not claim jurisdictional immunity from this suit as its conduct arises from commercial activity that "causes a direct effect in the United States" as described in 28 U.S.C. § 1605(a)(2) in the form of damaging Solid Oak, a California company, by PRC's unauthorized taking and use of Solid Oak's intellectual property. The PRC's actions alleged herein are purely economic because PRC purchased a one-year license to exploit the software program at issue for approximately 6.9 million U.S. dollars, and then promoted the program and sublicensed the program to computer manufacturers, for which it received substantial sums.

14.    Defendant Zhengzhou Jinhui Computer System Engineering Ltd. ("Jinhui") is a corporation organized and existing under the laws of the People's Republic of China, with its principal place of business in Zhengzhou, China. As relevant here, Jinhui is in the business of developing and distributing software products – in particular, the Green Dam program at issue in this litigation.

15.    Defendant Beijing Dazheng Human Language Technology Academy Ltd. ("Dazheng") is a corporation organized and existing under the laws of the People's Republic of China, with its principal place of business in Beijing, China. As relevant here, Dazheng is in the business of developing and distributing software products – in particular, the Green Dam program at issue in this litigation.

16.    Defendant Sony Corporation ("Sony") is a corporation organized and existing under the laws of Japan, with its principal place of business in Tokyo, Japan. As relevant here, Sony is engaged in the business of manufacturing and distributing

**FIRST AMENDED COMPLAINT**

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

04444\00001\166910.1

personal computers and related products, in the United States, China, and elsewhere around the world.   Sony operates and does business throughout the United States through its wholly-owned subsidiary, Sony Corporation of America.   Sony has taken a strong public stance on the importance of the protection and vigorous enforcement of its own intellectual property rights.

17.   Defendant Lenovo Group Limited ("Lenovo") is a corporation organized and existing under the laws of the People's Republic of China, with its principal place of business in Beijing, China.   As relevant here, Lenovo is engaged in the business of manufacturing and distributing personal computers and related products, in the United States, China, and elsewhere around the world.   Lenovo operates and does business throughout the United States.   In May 2005, Lenovo purchased IBM's Personal Computing Division.   As part of this purchase, Lenovo agreed to relocate its PC business headquarters from Beijing to the United States.   Lenovo's principal office is currently located in Morrisville, North Carolina.

18.   Defendant Toshiba Corporation ("Toshiba") is a corporation organized and existing under the laws of Japan, with its principal place of business in Tokyo, Japan.   As relevant here, Toshiba is engaged in the business of manufacturing and distributing personal computers and related products, in the United States, China, and elsewhere around the world.   Toshiba operates and does business throughout the United States through its wholly-owned subsidiary, Toshiba America, Inc.

19.   Defendant ACER Incorporated ("Acer") is a corporation organized and existing under the laws of Taiwan, with its principal place of business in Taipei, Taiwan.   As relevant here, Acer is engaged in the business of manufacturing and distributing personal computers and related products, in the United States, China, and elsewhere around the world.  Acer operates and does business throughout the United States through its wholly-owned subsidiaries, Acer America Corporation and Gateway, Inc.

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

6

**FIRST AMENDED COMPLAINT**

04444\00001\166010.1

20. Defendant ASUSTeK Computer Inc. ("Asus") is a corporation organized and existing under the laws of Taiwan, with its principal place of business in Taipei, Taiwan. As relevant here, Asus is engaged in the business of manufacturing and distributing personal computers and related products, in the United States, China, and elsewhere around the world. Asus operates and does business throughout the United States through its wholly-owned subsidiary, Asus Computer International.

21. Defendant BenQ Corporation ("BenQ") is a corporation organized and existing under the laws of Taiwan, with its principal place of business in Taipei, Taiwan. As relevant here, BenQ is engaged in the business of manufacturing and distributing personal computers and related products, in the United States, China, and elsewhere around the world. BenQ operates and does business throughout the United States, including under the marks "BenQ," "Joybook," and "Joybee."

22. Defendant Haier Group Corporation ("Haier") is a corporation organized and existing under the laws of the People's Republic of China, with its principal place of business in Quingdao, China. As relevant here, Haier is engaged in the business of manufacturing and distributing personal computers and related products, in the United States, China, and elsewhere around the world. Haier operates and does business throughout the United States through its wholly-owned subsidiary, Haier America.

23. The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants sued herein as Does 1 through 10, inclusive, are unknown at the present time and Plaintiff therefore sues said Does and each of them by such fictitious names. If necessary, Plaintiff will seek leave of Court to amend this complaint to allege their true names and capacities when they are ascertained.

24. Unless otherwise indicated herein, on information and belief, each of Does 1 through 10, inclusive, participated in the activities described herein and rendered material assistance to the other Defendants in the actions alleged herein, conspired and agreed with and aided and abetted one or more of the other Defendants, and at all relevant times each of the Defendants was the principal or agent, alter ego,

7

**FIRST AMENDED COMPLAINT**

1  partner, joint venturer, co-venturer, co-conspirator, independent contractor, servant

2  and/or employee of at least one other of the other Defendants, and all of the acts

3  performed by them or omissions alleged herein were made in the course and scope of

4  their employment, agency, partnership, joint venture, conspiracy or other such

5  relationship and with knowledge, consent, approval and/or ratification of the

6  principals, and each of them.  Unless otherwise indicated herein, each of the parties

7  herein named as Does 1 through 10 are responsible in some manner or fashion, and

8  are by contract or otherwise, the successor, assign, joint venturer, co-venturer, co-

9  conspirator, partner or alter ego of one or more of the Defendants, or was otherwise

10  involved with the other Defendants in the wrongdoing alleged herein, and by virtue of

11  such capacity, assumed the obligations herein owed by Defendants, and is liable and

12  responsible for the damages on the facts alleged herein and for all the relief sought.

13       25.    Unless otherwise indicated herein, on information and belief, there has

14  existed at all relevant times, a unity of interest and ownership between each of the

15  Does 1 through 10 named herein, and at least one or more of the Defendants, such that

16  any individuality and separateness between them has ceased and each is the "alter

17  ego" of the other, and that adherence to the fiction of the separate existence of each

18  Doe Defendant as an entity or individual distinct from one or more of the Defendants

19  would therefore permit an abuse of the corporate privilege and would sanction fraud

20  and promote injustice.

21       26.    Unless otherwise indicated herein, on information and belief, there has

22  existed at all relevant times a joint venture between each of the Does 1 through 10

23  named herein, and at least one or more of the Defendants, such that each of the Does 1

24  through 10 and at least one or more of the Defendants shared a common business

25  interest, shared control, profits and losses arising from such common business

26  interests, and therefore are liable and responsible for the damages on the facts alleged

27  herein and for all relief sought.

28

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

**FIRST AMENDED COMPLAINT**

04444\00001\166919.1

## GENERAL ALLEGATIONS

Solid Oak's CYBERsitter

27. Solid Oak is a family-owned software company based in Santa Barbara, California, that manufactures an Internet filtering software program known as "CYBERsitter." This product was designed to help parents protect their children from viewing inappropriate pornographic and violent content on the Web. CYBERsitter was the first commercially available Internet filter. It has been continuously published by Solid Oak for over 14 years. CYBERsitter has won numerous awards, including winning *PC Magazine*'s prestigious Editor's Choice Award five times. Solid Oak now boasts over 2.4 million active CYBERsitter users worldwide, including thousands of businesses, individuals, and schools in China, and thousands more in other Chinese-speaking countries. CYBERsitter is sold on Solid Oak's website, www.CYBERsitter.com, for $39.95 per copy.

28. CYBERsitter operates by using a complex and unique series of Internet content filters. These content filters (also referred to herein as "Trade Secrets") are proprietary code, which is encrypted in order to prevent its disclosure to third parties and competitors. They have been developed and refined by Solid Oak over many years, and are the key to the Internet filtering aspect of the program. Solid Oak's filters are constantly updated, and updates are made available at no cost to those who have purchased the CYBERsitter program. This Internet filtering component is the centerpiece of the program.

29. Designing a content filter is an art and involves significant creativity. There are many distinctive ways for different programmers to construct these filters in order to achieve the same function. CYBERsitter's content filters are Solid Oak's unique expression, and any copying of these filters goes to the heart of the program and takes the central expressive feature that distinguishes CYBERsitter from its competitors.

9

**FIRST AMENDED COMPLAINT**

04444\00001\166919.1

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

## Green Dam and Its Developers

30.    Green Dam Youth Escort, like CYBERsitter, is an Internet content management program that uses content filters to block undesired content.  Green Dam was developed by two Chinese companies:  Zhengzhou Jinhui Computer System Engineering Ltd. and Beijing Dazheng Human Language Technology Academy Ltd.  Green Dam was developed with the backing and support of the Chinese government.  In 2004, the Green Dam project received 3 million Yuan in government investment funds.

31.    Jinhui was founded in 1997.  Jinhui is officially listed as a private company, but its principal shareholders include government-backed corporations and its researchers have close ties with the military research division of the Information Engineering University ("IEU"), one of a handful of military academies run by the People's Liberation Army.

32.    Dazheng was founded in 2000.  Dazheng (which also operates under the name "HNC Institute") is officially listed as a private company, but works closely with several Chinese government Ministries and Commissions.  In 2003, Dazheng developed its first publicly-announced software program called the "Falun Gong Concept Censorship System."  As the name suggests, the program was designed to censor Internet content related to the Falun Gong, a religious group banned by the Chinese government.  The program was found to have serious flaws that caused constant crashing on the computers on which it was installed.

## The Green Dam Initiative

33.    On January 21, 2008, the PRC announced an "open bidding" process for companies purportedly to compete for a one-year contract for content-filtering software to be used by the PRC.  On January 25 – just four days after the bidding began – the bidding process was abruptly closed.  The PRC then allowed Jinhui and Dazheng, the makers of Green Dam, to set the standards for evaluating the software

10

**FIRST AMENDED COMPLAINT**

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

1   bids, and to conduct the testing of the competing software products.  Not surprisingly,

2   the winner of this "open bidding" process was Green Dam.  The PRC initially paid

3   Jinhui and Dazheng a sum of 47.1 million Yuan (approximately 6.9 million U.S.

4   dollars) for a one-year license to distribute the Green Dam program.  The PRC then

5   charged substantial license fees to computer manufacturers and others for use of the

6   Green Dam program.

7       34.    Pursuant to this license, Defendant PRC has made the Green Dam

8   program available for free downloading worldwide on the Internet, including on its

9   own official site, as well as on many other privately owned Internet sites.  Defendants

10   Jinhui and Dazheng also made the program available for download from websites that

11   they own or control.   The PRC has encouraged downloading of the program by

12   Chinese speakers worldwide, including through propaganda.    The Chinese

13   government's official Green Dam site contains or contained links targeting users in

14   "San Francisco" and "New York" – the locations of the two largest Chinese-speaking

15   populations in the United States.

16       35.    On February 1, 2009, the PRC expanded an existing program known as

17   the "Rural Subsidy Program" ("Program") – which was originally designed to make

18   household items such as televisions, refrigerators, and cell phones available to rural

19   Chinese families at significantly below market price – to include home computers

20   made by certain designated suppliers.  In order to participate in the Program, computer

21   suppliers were required to submit an application to the PRC and agree to abide by all

22   of the terms and preconditions of the Program.  In return, the PRC has made available

23   a vast and captive market of over 800 million rural residents to the Program's

24   exclusive designated suppliers.  As a precondition of participation in the Program, the

25   government required that computers sold in the Program must have Green Dam pre-

26   installed on them, or must be accompanied by a disk containing the Green Dam

27   software.  Defendants Lenovo, Acer, Asus, BenQ and Haier are among the select

28

11
**FIRST AMENDED COMPLAINT**

1   group of computer manufacturers that applied and were accepted as designated

2   suppliers for the Program.

3       36.   On May 19, 2009, the PRC's MIIT issued a directive mandating that by

4   July 1, 2009 every computer shipped to or sold in China must have the Green Dam

5   software pre-installed on or packaged with the computer.  The stated purpose of the

6   directive was to "build a healthy and harmonious online environment that does not

7   poison young people's minds."  The directive also required computer suppliers to

8   report sales information to the MIIT, including the number of computers sold or

9   shipped with the Green Dam software.  Also in May 2009, MIIT ordered Green Dam

10  to be installed on every computer in every primary and secondary school in China.

11      37.   The Green Dam Initiative was met with condemnation from international

12  human rights groups and activists within China.  These groups, while agreeing with

13  the stated goal of keeping pornography away from minors (as the CYBERsitter filters

14  were designed to do), viewed the Green Dam Initiative as a thinly-veiled attempt to

15  expand political and religious censorship.  Researchers in China reported that Green

16  Dam contains over 6,500 political keyword filters, including keywords related to the

17  Chinese occupation of Tibet, the 1989 Tiananmen Square massacre, and the

18  government-banned Falun Gong religious group.  This is more than double the

19  number of pornography-related keyword filters in the program.

20      38.   On June 30, 2009 – the day before the mandate was to take effect – the

21  MIIT announced that it was delaying implementation of the mandatory pre-installation

22  of Green Dam on computers.  On August 12, 2009, China issued a statement saying

23  that it did not intend to reinstate the mandate.  Nevertheless, Green Dam continues to

24  be distributed throughout China and to Chinese speakers throughout the world, and

25  the PRC continues to promote proliferation of the Green Dam program by both formal

26  and informal means.

27

28

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

12

**FIRST AMENDED COMPLAINT**

04444\00001\166919.1

<u>Unauthorized Copying and Exploitation of CYBERsitter Content Filters</u>

39.     On June 11, 2009, an independent team of researchers in the computer science department at the University of Michigan issued a report analyzing the Green Dam program ("Michigan Report").  In less than 12 hours of testing, the Michigan team found "serious security vulnerabilities" in the Green Dam program, including "remotely-exploitable vulnerabilities" whereby "[a]ny website a Green Dam user visits can take control of the PC."  Researchers also found that the program makes possible remote monitoring of a computer user's activities, not limited to activities on the Internet.

40.     The Michigan Report also concluded that Green Dam had copied verbatim portions of Solid Oak's CYBERsitter program.  The most significant and troubling aspect of this copying was the copying of CYBERsitter's proprietary content filters.

41.     In addition to the verbatim copying of the CYBERsitter content filters, researchers also discovered a "smoking gun" file.  The smoking gun file is a file containing two CYBERsitter announcements, dated May 4 and May 10, 2004, respectively.  The first is a simple announcement to CYBERsitter customers: "CYBERsitter Version 9 released.  This is a free upgrade and is available at: http://www.getcybersitter.com."  The second warns CYBERsitter users of the dangers of Spyware.  It urges users to install a Spyware checker, and directs users to the CYBERsitter website for further information on this issue.  This smoking gun file was apparently copied because it has a file extension similar to that of the content filters. Despite the fact that this file obviously has no functional role in the Green Dam program, it was directly copied from the CYBERsitter program and incorporated into the Green Dam program along with the CYBERsitter content filters.

42.     In total, the version of Green Dam tested by researchers at the University of Michigan contains 2,972 lines of code identical to CYBERsitter code.

13

**FIRST AMENDED COMPLAINT**

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

43.    Numerous subsequent versions of and updates to Green Dam have been released since the Michigan Report.  Testing of subsequent versions and updates to Green Dam show that the CYBERsitter filters remain active, and the most current version of Green Dam makes active use of CYBERsitter's content filters.  Subsequent testing also indicates that the removal of the CYBERsitter content filters from the program (as opposed to merely deactivating them) causes Green Dam to lose content-filtering capability altogether, rendering it possible for users to access even the most well-known pornographic websites.  This suggests that CYBERsitter files are integral to the basic functioning of the Green Dam program and its ability to filter content.

Green Dam Facts and Figures

44.    Green Dam continues to be aggressively marketed and disseminated throughout China by the PRC and the Chinese software developers, both by formal and informal means.  As of June 8, 2009, the PRC reported that from the end of March 2009 through early June 2009 over 53 million computers marketed for home use had been sold in China with the Green Dam program.  The government also reported that more than 2,000 schools in China had installed Green Dam on more than half a million computers during that period.  By some estimates, the number of computers equipped with Green Dam in Chinese schools was expected to top 4 million by the end of June 2009.  In addition, as of early June 2009, Green Dam had been downloaded from Internet sites over 3 million times.

45.    The PRC paid the developers of Green Dam the equivalent of 6.9 million U.S. dollars for a one-year license to distribute the software.  Using the PRC's figures for less than three months of distribution on home computers alone, this would amount to a mere 13 cents per copy.  This figure does not represent a fair market price for a commercial software license arrived at through an arms-length bargaining process.  Moreover, the license price does not account for the substantial additional financial benefits that Jinhui and Dazheng expected to reap from the PRC-promoted

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

14

**FIRST AMENDED COMPLAINT**

04444\00001\166919.1

1   proliferation of the program.  Indeed, due to update fees and other fees that the makers

2   expected to collect for the continued use of Green Dam after expiration of the one-

3   year governmental license period, Jinhui stated publicly that it expected its revenues

4   from the program to top 3 billion Yuan (nearly half a billion U.S. dollars) in 2010.  In

5   addition, the PRC has collected substantial sums, in an amount to be determined at

6   trial, in sublicensing fees from computer manufacturers and others.

7       46.    The proliferation of Green Dam is not limited to China.  It is available for

8   free download to Chinese speakers through the world.  On information and belief,

9   many thousands of downloads of Green Dam have occurred in the United States,

10  including thousands of downloads in the state of California.  Defendants PRC, Jinhui,

11  and Dazheng have made the Green Dam program available for download on their

12  official websites, and have authorized numerous other Internet sites to offer the

13  program for download.  Chinese speakers outside of China, including in the United

14  States, have been encouraged to download the program through propaganda, including

15  in promotional materials on the PRC's website.  As stated above, the PRC's official

16  Green Dam site contains or contained links specifically targeting users in San

17  Francisco and New York.

18      Unlawful Attempts to Gain Access to Solid Oak Servers and Computers

19      47.    In addition to the illegal copying and distribution of Solid Oak's

20  intellectual property, there have been numerous unlawful attempts to gain access to

21  Solid Oak's computers and servers originating from within China.  Solid Oak has

22  discovered several thousand individual attempts to gain administrative access to Solid

23  Oak's servers originating from China.  Each of these intrusions involved between 20

24  and 3,000 attempts at access per session.  If successful, gaining administrative access

25  would allow a perpetrator to access all of Solid Oak's information stored on its servers

26  (including its content filters), and to appropriate and alter or delete this information.

27  At least one such intrusion, on May 31, 2009, originated from within the PRC

28

**FIRST AMENDED COMPLAINT**

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

Ministry of Health in China, and involved more than 2,500 attempts over the course of 27 minutes.

48.    On or about June 20, 2009, Solid Oak employees received a series of individually customized Trojan emails originating from sources in China posing as Solid Oak employees.  These emails were designed to retrieve information stored on Solid Oak's computers and send it back to their source, and to install foreign items on Solid Oak's computers.  Solid Oak is still investigating whether any of these attempts was successful, and what information may have been compromised.

The Common Scheme

49.    As stated above, Defendants Jinhui and Dazheng (collectively, "Defendant Developers") entered into an agreement with Defendant PRC providing PRC with a one-year license to distribute the Green Dam software.  Defendant PRC then entered into agreements with Defendants Sony, Lenovo, Toshiba, Acer, Asus, BenQ, Haier and Does 1 through 10 (collectively, "Defendant Manufacturers") providing for the distribution of Green Dam by Defendant Manufacturers in China (including as part of the Rural Subsidy Program).  On information and belief, Defendant PRC has charged substantial fees to the Defendant Manufacturers for use of the Green Dam program.

50.    In addition, Defendant Manufacturers entered into contracts with Defendant Developers, pursuant to which said Defendant Manufacturers have been designated as official distributors of the Green Dam product and Defendant Developers are their designated suppliers of content-filtering software.  Defendant Manufacturers have requested and obtained indemnity for violations of law relating to the Green Dam program from Defendant Developers.  Such indemnity, however, has no bearing on Defendant Manufacturers' liability for violations of law relating to the Green Dam program.

51.    On or about March 11, 2009, Defendant PRC held a symposium on the Green Dam program at MIIT headquarters in Beijing ("Green Dam Symposium").  In

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

16

**FIRST AMENDED COMPLAINT**

04444\00001\166919.1

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

1  addition to the MIIT, participants included the Defendant Developers and

2  representatives of each of the major computer manufacturers (including Defendant

3  Manufacturers).    The meeting agenda was to finalize a working plan for the

4  proliferation of the Green Dam program and to discuss plans for installing Green Dam

5  on computers throughout China.

6      52.    Each of the Defendant Manufacturers has willingly participated in the

7  PRC and Defendant Developers' scheme to proliferate the illegal software throughout

8  China.

9      53.    Each of the Defendant Manufacturers commenced distribution of the

10  Green Dam software no later than on or about March 1, 2009.

11      54.    Each of the Defendants has had actual knowledge of the violations at

12  issue herein since early-June 2009 at the latest, when the highly publicized

13  infringement of Plaintiff's software by the Green Dam program was reported

14  extensively in the press.

15      55.    On June 15, 2009, Plaintiff sent cease and desist letters giving express

16  notice of the ongoing infringements to the following Defendants:    Sony, Lenovo,

17  Toshiba, Acer, Asus and BenQ.

18      56.    On information and belief, each of the Defendant Manufacturers

19  continued to distribute the Green Dam program even after the widespread press

20  reports of infringement in early June and (where applicable) even after being sent the

21  June 15, 2009 cease and desist letter.  According to press reports, most or all of the

22  Defendant Manufacturers had ceased distributing the Green Dam program by mid to

23  late September 2009.

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

17

**FIRST AMENDED COMPLAINT**

04444\00001\166010 1

**FIRST CLAIM FOR RELIEF**

**MISAPPROPRIATION OF TRADE SECRETS**

**(violation of Cal. Civ. Code § 3426.1)**

**[Against All Defendants]**

57.    Plaintiff repeats and realleges the allegations made in paragraphs 1 through 56 as if fully set forth herein.

58.    Each and every Defendant, and Does 1 through 10, inclusive, have acted in concert, conspired together, and engaged in conduct constituting misappropriation of trade secrets pursuant to California's Uniform Trade Secrets Act, Cal. Civ. Code § 3426, *et seq.*

59.    Plaintiff's Trade Secrets embedded in the CYBERsitter computer program constitute valuable information from which Plaintiff derives independent economic value because such Trade Secrets are not generally known to the public, and are not readily ascertainable through proper means by the public.  The Trade Secrets include CYBERsitter's proprietary content filters, which are encrypted so as to prevent their disclosure to third parties and competitors.

60.    Defendants Jinhui and Dazheng obtained Plaintiff's Trade Secrets through improper means.  Defendant PRC knew of and gave support to Defendants Jinhui and Dazheng in their unauthorized misappropriation and exploitation of Plaintiff's Trade Secrets.

61.    Each of the Defendant Manufacturers acquired Plaintiff's Trade Secrets through Defendants Jinhui, Dazheng and/or PRC.  Defendant Manufacturers had actual or constructive knowledge no later than early-June 2009 that Jinhui and Dazheng had acquired the Trade Secrets through improper means and without Plaintiff's authorization.  Each and every Defendant Manufacturer used the Trade Secrets by distributing the Green Dam software.  At the time that each Defendant Manufacturer distributed the Green Dam software, it knew or had reason to know that

**FIRST AMENDED COMPLAINT**

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

the Trade Secrets were obtained through the unauthorized decryption of the CYBERsitter program.

62.    Defendants each possessed knowledge that Plaintiff is and was a United States company and that their illegal acts would therefore cause injury within the United States and within California.  Plaintiff's Trade Secrets were misappropriated from within the United States and/or downloaded from servers within the United States.

63.    As a direct and proximate result of Defendants' unlawful misappropriation of Plaintiff's Trade Secrets, Plaintiff has been deprived of money, such as licensing fees for the use of Plaintiff's Trade Secrets that would otherwise have been due to Plaintiff, and Defendants have been unjustly enriched by their misappropriation of Plaintiff's Trade Secrets.  Plaintiff is thus entitled to damages for its losses and restitution of Defendants' profits attributable to the misappropriation of Plaintiff's Trade Secrets, in amounts to be proven at trial which are not currently ascertainable.  Cal. Civ. Code. § 3426.3(a).  In the alternative, Plaintiff is entitled to a "reasonable royalty" for Defendant's use of Plaintiff's Trade Secrets, in an amount to be proven at trial which is not currently ascertainable.  *Id.*  If necessary, Plaintiff will seek leave to amend this complaint to state the full amount of such sums when such amounts have been ascertained.

64.    As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.  Plaintiff is informed and believes and on that basis avers that unless enjoined and restrained by this Court, Defendants will continue to engage in conduct violative of the Uniform Trade Secrets Act.  Plaintiff is entitled to preliminary and permanent injunctive relief.

/ / /

/ / /

/ / /

19

**FIRST AMENDED COMPLAINT**

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

04444\00001\166919.1

## SECOND CLAIM FOR RELIEF

## UNFAIR COMPETITION

### (In Violation of California Business and Professions Code §§ 17200 et seq.

### and 18 U.S.C. §§ 1831, 1832)

### [Against All Defendants]

65.     Plaintiff repeats and realleges the allegations made in paragraphs 1 through 64 as if fully set forth herein.

66.     Each and every Defendant and Does 1 through 10, inclusive, have acted in concert, conspired together, and engaged in conduct constituting an illegal business practice prohibited by the California Unfair Competition Law, California Business and Professions Code §§ 17200, *et seq.* (the "UCL"), by and through their violations of Section 1832 of the federal Economic Espionage Act, entitled "Theft of Trade Secrets" (18 U.S.C. § 1832). Section 1832 of the Act makes certain types of trade secret theft a federal crime. While the Act does not, by itself, create a private cause of action, violations of the Economic Espionage Act may serve as predicate acts giving rise to a private right of action for unlawful business practices under the UCL. *See* Cal. Bus. & Prof. Code §§ 17200, *et seq.*

67.     In addition, each and every Defendant and Does 1 through 10, inclusive, have acted in concert, conspired together, and engaged in conduct constituting an illegal business practice prohibited by the UCL by and through their violations of Section 1831 of the federal Economic Espionage Act, entitled "Economic Espionage" (18 U.S.C. § 1831). Section 1831 of the Act makes certain types of trade secret theft benefitting a foreign government, instrumentality, agent or power a federal crime. While the Act does not, by itself, create a private cause of action, violations of the Economic Espionage Act may serve as predicate acts giving rise to a private right of action for unlawful business practices under the UCL. *See* Cal. Bus. & Prof. Code §§ 17200, *et seq.*

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

**FIRST AMENDED COMPLAINT**

68.    Plaintiff's computer program, CYBERsitter, is produced for and placed in interstate commerce and foreign commerce.

69.    Plaintiff's Trade Secrets embedded in the CYBERsitter computer program constitute valuable information from which Plaintiff derives independent economic value because such Trade Secrets are not generally known to the public, and are not readily ascertainable through proper means by the public.  The Trade Secrets include CYBERsitter's content filters, which are encrypted to prevent their disclosure to third parties and competitors.

70.    All Defendants obtained Plaintiff's Trade Secrets through wrongful means without Plaintiff's authorization.  All Defendants knew or became aware that the Trade Secrets were obtained through wrongful means without Plaintiff's authorization, and that the use of the Trade Secrets by all Defendants was without Plaintiff's authorization.

71.    Defendants knew that the Trade Secrets were proprietary and belonged to Plaintiff.  Defendants nevertheless intended to convert the Trade Secrets for their own economic benefit.  Defendants knew that such conversion of Plaintiff's Trade Secrets would injure Plaintiff.  Defendants nevertheless used and exploited Plaintiff's Trade Secrets for their own economic benefit.

72.    All Defendants knew that their unauthorized possession, exploitation, copying and dissemination of Plaintiff's Trade Secrets would benefit a foreign government, namely Defendant PRC.  Defendant Manufacturers, Jinhui, Dazheng and Does 1 through 10 conspired together with Defendant PRC to misappropriate and exploit Plaintiff's Trade Secrets without Plaintiff's authorization.  Indeed, Plaintiff is informed and believes that Defendant Manufacturers paid substantial sums to Defendant PRC to exploit Plaintiff's Trade Secrets.

73.    The aforementioned illegal acts occurred in part within the territorial boundaries of the United States and/or its territories.  Plaintiff's Trade Secrets were taken from within the United States and/or downloaded from servers within the

**FIRST AMENDED COMPLAINT**

04444\00001\166919 1

United States.  In addition, Defendants each possessed knowledge that Plaintiff is and was a United States company and that their illegal acts would therefore cause injury within the United States and within California.

74.    Defendants' unlawful, unfair, and/or deceptive acts were willful, in disregard of and with indifference to Plaintiff's rights.

75.    As a direct and proximate result of Defendants' unlawful acts and practices, Plaintiff has been deprived of money, such as licensing fees for the use of Plaintiff's Trade Secrets that would otherwise have been due to Plaintiff.  Plaintiff is thus entitled to restitution of such sums as would otherwise have been owed or paid to Plaintiff, in amounts to be proven at trial which are not currently ascertainable.  If necessary, Plaintiff will seek leave to amend this complaint to state the full amount of such sums when such amounts have been ascertained.

76.    As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.  Plaintiff is informed and believes and on that basis avers that unless enjoined and restrained by this Court, Defendants will continue to engage in conduct violative of California Business and Professions Code, Section 17200.  Plaintiff is entitled to preliminary and permanent injunctive relief.

### THIRD CLAIM FOR RELIEF
### COPYRIGHT INFRINGEMENT
#### (In Violation of the Copyright Act of the United States)
#### [Against Defendants PRC, Jinhui, Dazheng, and Does 1-10]

77.    Plaintiff repeats and realleges the allegations made in paragraphs 1 through 76 as if fully set forth herein.

78.    Plaintiff's CYBERsitter program and the various versions thereof are copyrighted works ("Copyrighted Works").  Plaintiff has applied for and obtained Certificates of Copyright Registration duly issued by the Register of Copyright for the

22

**FIRST AMENDED COMPLAINT**

Copyrighted Works.  Under the U.S. Copyright Act, Plaintiff has the exclusive rights, *inter alia*, to reproduce the Copyrighted Works, to prepare derivative works based upon the Copyrighted Works, and to distribute copies of the Copyrighted Works to the public. *See* 17 U.S.C. §§ 106(1), (2), (3).

79.    Through their conduct averred herein, Defendants PRC, Jinhui, Dazheng, and Does 1 through 10 have directly infringed Plaintiff's copyrights in the Copyrighted Works by reproducing, adapting, and/or distributing works embodying the Copyrighted Works without authorization in violation of the Copyright Act. *See* 17 U.S.C. §§ 106, 501.  Defendants PRC, Jinhui, Dazheng, and Does 1 through 10 have caused copies Plaintiff's Copyrighted Works to be distributed within the United States, including via the Internet.

80.    Defendants PRC, Jinhui, Dazheng, and Does 1 through 10 have the right and ability to supervise and control ongoing infringements by third parties, including infringements by those who – with the authorization, approval, and consent of said Defendants – distribute and cause copies to be made of Plaintiff's Copyrighted Works via the Internet in the United States and elsewhere.  Said Defendants have refused and failed to exercise supervision and control over said third parties, and said Defendants also reap a direct pecuniary benefit from the infringement.  As a direct and proximate result of said Defendants' actions, third parties have infringed Plaintiff's copyrights in the Copyrighted Works, including by reproducing, adapting, distributing, and publicly displaying the Copyrighted Works.

81.    In addition, Defendants PRC, Jinhui, Dazheng, and Does 1 through 10 have knowingly facilitated the unauthorized copying and dissemination of Plaintiff's Copyrighted Works.  Said Defendants have materially contributed to the infringing conduct of third parties, *inter alia*, because said Defendants have knowingly authorized, approved of, and consented to third party distribution and copying of Plaintiff's Copyrighted Works via the Internet in the United States and elsewhere, and

23

**FIRST AMENDED COMPLAINT**

1  said Defendants each possessed actual or constructive knowledge of the violations at
2  issue.

3       82.   The aforementioned infringing acts occurred in whole or in part within
4  the territorial boundaries of the United States and/or its territories.

5       83.   Each infringement by Defendants in and to the Copyrighted Works
6  constitutes a separate and distinct act of infringement.

7       84.   Defendants' acts of infringement were knowing, willful, negligent, in
8  disregard of and with indifference to the rights of Plaintiff.

9       85.   As a direct and proximate result of the infringements by Defendants,
10  Plaintiff is entitled to its damages and Defendants' profits, each in amounts to be
11  proven at trial.

12       86.   Alternatively, Plaintiff is entitled to the maximum statutory damages in
13  the amount of $150,000 with respect to each work infringed, or for such other
14  amounts as may be proper. *See* 17 U.S.C. § 504(c).

15       87.   Plaintiff is further entitled to its attorneys' fees and costs pursuant to 17
16  U.S.C. § 505.

17       88.   As a direct and proximate result of the foregoing acts and conduct,
18  Plaintiff has sustained and will continue to sustain substantial, immediate, and
19  irreparable injury, for which there is no adequate remedy at law.  Plaintiff is informed
20  and believes and on that basis avers that unless enjoined and restrained by this Court,
21  Defendants will continue to infringe Plaintiff's rights in the Copyrighted Works.
22  Plaintiff is entitled to preliminary and permanent injunctive relief.

### FOURTH CLAIM FOR RELIEF
### COPYRIGHT INFRINGEMENT
### (In Violation of the Copyright Laws of the People's Republic of China)
### [Against All Defendants]

27       89.   Plaintiff repeats and realleges the allegations made in paragraphs 1
28  through 88 as if fully set forth herein.

24

**FIRST AMENDED COMPLAINT**

04444\00001\166919.1

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

90.   Plaintiff's Copyrighted Works are protected under the Copyright Law of the People's Republic of China ("PRC Copyright Law") and the Regulations for the Protection of Computer Software of the People's Republic of China ("PRC Software Regulations").   Plaintiff is the owner of the Copyrighted Works under Chinese law. *See* PRC Copyright Law, Arts. 9, 11; PRC Software Regulations, Art. 13.   The People's Republic of China is a signatory to the Berne Convention and has adopted laws that comply with the minimum standards set by the Berne Convention. Accordingly, because Plaintiff's Copyrighted Works are foreign works under Chinese copyright law, those works are entitled to full protection of the Chinese copyright laws from the moment they are created without any need for registration in China (or elsewhere). *See* PRC Copyright Law, Art. 2; PRC Software Regulations, Arts. 5, 7, 14.

91.   Chinese copyright law protects both the economic rights and moral rights of the owner of copyrighted works, including computer software and written works. *See* PRC Copyright Law, Art. 3; PRC Software Regulations, Art. 1.   Under Chinese copyright law (including both the PRC Copyright Law and the PRC Software Regulations), Plaintiff has the exclusive rights, *inter alia*, to reproduce, publish, distribute, disseminate on information networks, lease, and make available to the public the Copyrighted Works, as well as the moral right to attribution of authorship of the Copyrighted Works. *See* PRC Software Regulations, Art. 8; PRC Copyright Law, Art. 10 (rights), Arts. 46-47 (infringing acts).

92.   Through their conduct averred herein, Defendants have infringed Plaintiff's copyrights in the Copyrighted Works by reproducing, publishing, distributing, disseminating on information networks, leasing, and making available to the public works embodying the Copyrighted Works without authorization, and have not attributed authorship of the Copyrighted Works to Plaintiff, all in violation of Plaintiff's rights under Chinese copyright law. *See* PRC Copyright Law, Arts. 46-47; PRC Software Regulations, Arts. 23-24.

25

**FIRST AMENDED COMPLAINT**

04444\00001\166919.1

93.     Through their conduct averred herein, Defendants are jointly liable under Chinese law for the infringing acts of third parties to which they have materially contributed and/or caused, including the infringement of Plaintiff's copyrights in the Copyrighted Works by reproducing, publishing, distributing, disseminating on information networks, leasing, and making available to the public works embodying the Copyrighted Works without authorization, and by failing to attribute authorship of the Copyrighted Works to Plaintiff, all in violation of Plaintiff's rights under Chinese copyright law.  *See* PRC Copyright Law, Arts. 46-47; PRC Software Regulations, Arts. 23-24; *see also Shanghai Push Sound Music & Entertainment Co., Ltd. v. Beijing Kuro Music Software Development Co., Ltd., et al.*, Case No. 13739 (Beijing Second Interm. Ct., Dec. 19, 2006) (holding a Napster-like peer-to-peer file sharing service liable under traditional joint liability principles) available at http://bjgy.chinacourt.org/public/detail.php?id=43572&k_w.   As   a   direct   and proximate result of Defendants' actions, third parties have infringed Plaintiff's copyrights in the Copyrighted Works, and Defendants have caused third parties to infringe Plaintiff's copyrights in the Copyrighted Works in the manner stated above in violation of Chinese copyright law.  *See* PRC Copyright Law, Arts. 46-47; PRC Software Regulations, Arts. 23-24.

94.     Defendants have acted in concert with third parties to violate Plaintiff's rights.   Defendants have the right and ability to supervise and control ongoing infringements by third parties, including: (a) infringements by those who – with the authorization, approval, direction and consent of Defendants PRC, Jinhui, Dazheng, and Does 1-10 – distribute and cause copies to be made of Plaintiff's Copyrighted Works via the Internet in China and elsewhere, and (b) infringements by those who – with the authorization, approval, direction and consent of Defendants – make, package, install, or otherwise distribute unauthorized copies of Plaintiff's Copyrighted Works with Defendant Manufacturers' computers (*viz.*, Sony, Lenovo, Toshiba, Acer, Asus, BenQ, Haier and Does 1-10).   Defendants have refused and failed to exercise

26

**FIRST AMENDED COMPLAINT**

1    supervision and control over said third parties, and Defendants reap a direct pecuniary

2    benefit from the infringement of said third parties.  Defendant Manufacturers have a

3    duty to ensure that the programs that are sold and distributed with their computers are

4    not stolen in violation of the copyrights of others.  Defendants failed to meet this

5    obligation here and instead turned a blind eye to third party violations that they could

6    reasonably anticipate would occur.  In addition, while knowledge is not required for a

7    violation of Chinese copyright law, each of the Defendants has had knowledge of the

8    violations at issue since early-June 2009 at the latest.

9        95.    Through their conduct averred herein, Defendants PRC, Jinhui, Dazheng

10   and Does 1 through 10 have infringed Plaintiff's rights in its Copyrighted Works by

11   "intentionally circumventing or destroying technological measures [*viz.*, Plaintiff's

12   encryption methods] taken by a right holder for protecting the copyright or copyright-

13   related rights in his work ... without the permission of the copyright owner, or the

14   owner of the copyright-related rights" in violation of Chinese Copyright Law. *See*

15   PRC Copyright Law, Art. 47(6).

16       96.    The aforementioned infringing acts occurred in whole or in part within

17   the territorial boundaries of the People's Republic of China and/or its territories.

18       97.    Each infringement by Defendants in and to the Copyrighted Works

19   constitutes a separate and distinct act of infringement.

20       98.    Defendants' acts of infringement were knowing, willful, negligent, in

21   disregard of and with indifference to the rights of Plaintiff.

22       99.    As a direct and proximate result of the infringements by Defendants,

23   Plaintiff is entitled to its damages or to Defendants' profits, each in amounts to be

24   proven at trial. *See* PRC Copyright Law, Art. 48; PRC Software Regulations, Art. 25.

25       100.   Alternatively, Plaintiff is entitled to the maximum statutory damages in

26   the amount of 500,000 Yuan (approximately 73,000 U.S. dollars) per infringement, or

27   for such other amounts as may be proper under the PRC Copyright Law and PRC

28

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

27

**FIRST AMENDED COMPLAINT**

0444\00001\166919.1

1  Software Regulations.  *See* PRC Copyright Law, Art. 48; PRC Software Regulations,

2  Art. 25.

3      101.   Plaintiff is further entitled to its attorneys' fees and costs.

4      102.   As a direct and proximate result of the foregoing acts and conduct,

5  Plaintiff has sustained and will continue to sustain substantial, immediate, and

6  irreparable injury, for which there is no adequate remedy at law.  Plaintiff is informed

7  and believes and on that basis avers that unless enjoined and restrained by this Court,

8  Defendants will continue to infringe Plaintiff's rights in the Copyrighted Works.

9  Plaintiff is entitled to preliminary and permanent injunctive relief.  *See* PRC

10  Copyright Law, Art. 49; PRC Software Regulations, Art. 26.

## FIFTH CLAIM FOR RELIEF

## COPYRIGHT INFRINGEMENT

### (In Violation of the Copyright Laws of Japan)

### [Against Defendants PRC, Jinhui, Dazheng, Sony, Toshiba, and Does 1-10]

15      103.   Plaintiff repeats and realleges the allegations made in paragraphs 1

16  through 102 as if fully set forth herein.

17      104.   Plaintiff's Copyrighted Works are protected under Japan's Copyright Act

18  ("JCA").  Plaintiff is the owner of the Copyrighted Works, which constitute "works of

19  authorship" – in particular, "computer program works" – protected under Japanese

20  law.  JCA, Arts. 10(1), 6(3), 14-15; *see also* Art. 2(1) (defining "computer program"

21  as "an expression of a combination of instructions to cause a computer to function in

22  order to be able to obtain a certain result").   Japan is a signatory to the Berne

23  Convention and has adopted laws that comply with the minimum standards set by the

24  Berne Convention.  Accordingly, because Plaintiff's Copyrighted Works are foreign

25  works under Japanese copyright law, those works are entitled to full protection of the

26  Japanese copyright laws from the moment they are created without any need for

27  registration in Japan (or elsewhere).  *See* JCA, Arts. 17(2), 51(1).

28

**FIRST AMENDED COMPLAINT**

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

105. Japanese copyright law protects both the economic rights and moral rights of the author of copyrighted works, including "computer program works" and "literary works." *See* JCA, Arts. 10, 18-28. Under Japanese copyright law, Plaintiff has the exclusive rights, *inter alia*, to reproduce, distribute, transfer ownership, rent, adapt, offer and make available to the public the Copyrighted Works, as well as the moral right to attribution of authorship and to maintain the integrity of the Copyrighted Works. *See* JCA, Arts. 18-28.

106. Through their conduct averred herein, Defendants PRC, Jinhui, Dazheng, Sony, Toshiba and Does 1 through 10 have infringed Plaintiff's copyrights in the Copyrighted Works by reproducing, distributing, transferring ownership, renting, adapting, and offering and making available to the public works embodying the Copyrighted Works without authorization, and have not attributed authorship or maintained the integrity of the Copyrighted Works to Plaintiff, all in violation of Plaintiff's rights under Japanese copyright law. *See* JCA, Arts. 18-28.

107. Through their conduct averred herein, said Defendants are jointly liable under Japanese law for the infringing acts of third parties to which they have materially contributed and/or caused, including the infringement of Plaintiff's copyrights in the Copyrighted Works by reproducing, distributing, transferring ownership, renting, adapting, and offering and making available to the public works embodying the Copyrighted Works without authorization, and by failing to attribute authorship of the Copyrighted Works to Plaintiff and to maintain their integrity, all in violation of Plaintiff's rights under Japanese copyright law. *See* JCA, Arts. 18-28. As a direct and proximate result of said Defendants' actions, third parties have infringed Plaintiff's copyrights in the Copyrighted Works, and said Defendants have caused third parties to infringe Plaintiff's copyrights in the Copyrighted Works in the manner stated above in violation of Japanese copyright law. *See* JCA, Arts. 18-28.

108. The aforementioned infringing acts occurred in whole or in part within the territorial boundaries of Japan.

29

**FIRST AMENDED COMPLAINT**

04444\00001\166919.1

109. Each infringement by said Defendants in and to the Copyrighted Works constitutes a separate and distinct act of infringement.

110. Said Defendants' acts of infringement were knowing, willful, negligent, in disregard of and with indifference to the rights of Plaintiff.

111. As a direct and proximate result of the infringements by said Defendants, Plaintiff is entitled to its damages and/or to said Defendants' profits and/or to a reasonable royalty, each in amounts to be proven at trial. *See* JCA, Arts. 114(1)-(3), 114-5.

112. Plaintiff is further entitled to its attorneys' fees and costs.

113. As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Plaintiff is informed and believes and on that basis avers that unless enjoined and restrained by this Court, said Defendants will continue to infringe Plaintiff's rights in the Copyrighted Works. Plaintiff is entitled to preliminary and permanent injunctive relief. *See* JCA, Arts. 112, 115.

## SIXTH CLAIM FOR RELIEF
## COPYRIGHT INFRINGEMENT
### (In Violation of the Copyright Laws of Taiwan)
### [Against Defendants PRC, Jinhui, Dazheng, Acer, Asus, BenQ, and Does 1-10]

114. Plaintiff repeats and realleges the allegations made in paragraphs 1 through 113 as if fully set forth herein.

115. Plaintiff's Copyrighted Works are protected under the Taiwan Copyright Act ("TCA"). Plaintiff is the author of the Copyrighted Works under Taiwanese law. *See* TCA, Arts. 3, 11-12. While Taiwan is a not a formal signatory to the Berne Convention, it has adopted laws that comply with the minimum standards set by the Berne Convention. Plaintiff's Copyrighted Works are foreign works under Taiwanese copyright law, entitled to full protection of the Taiwanese copyright laws from the

30

**FIRST AMENDED COMPLAINT**

moment they are created without any need for registration in Taiwan (or elsewhere). *See* TCA, Arts. 4, 10.

116.   Taiwanese copyright law protects both the economic rights and moral rights of the owner of copyrighted works, including "computer programs" and "literary works." *See* TCA, Art. 5.   Under Taiwanese copyright law, Plaintiff has the exclusive rights, *inter alia*, to reproduce, distribute, publicly transmit, adapt, and lease the Copyrighted Works, as well as the moral rights to attribution of authorship, public release, and prevention of alteration of the Copyrighted Works. *See* TCA, Arts. 15-17 (moral rights), Arts. 22-29 (economic rights).

117.   Through their conduct averred herein, Defendants PRC, Jinhui, Dazheng, Acer, Asus, BenQ, and Does 1 through 10 have infringed Plaintiff's copyrights in the Copyrighted Works by reproducing, distributing, publicly transmitting, adapting and leasing works embodying the Copyrighted Works without authorization, and have publicly released, have not attributed authorship and have altered without authorization the Copyrighted Works to Plaintiff, all in violation of Plaintiff's rights under Taiwanese copyright law.   *See* TCA, Arts. 15-17 (moral rights), Arts. 22-29 (economic rights).

118.   Through their conduct averred herein, said Defendants are jointly liable under Taiwanese law for the infringing acts of third parties to which they have materially contributed and/or caused, including the infringement of Plaintiff's copyrights in the Copyrighted Works by reproducing, distributing, publicly transmitting, adapting and leasing works embodying the Copyrighted Works without authorization, and by publicly releasing, failing to attribute authorship, and altering without authorization the Copyrighted Works to Plaintiff, all in violation of Plaintiff's rights under Taiwanese copyright law. *See* TCA, Arts. 15-17 (moral rights), Arts. 22-29 (economic rights).   As a direct and proximate result of said Defendants' actions, third parties have infringed Plaintiff's copyrights in the Copyrighted Works, and said Defendants have caused third parties to infringe Plaintiff's copyrights in the

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

31

**FIRST AMENDED COMPLAINT**

04444\00001\166919.1

1  Copyrighted Works in the manner stated above in violation of Chinese copyright law.
2  *See id.*

3      119.   The aforementioned infringing acts occurred in whole or in part within
4  the territorial boundaries of Taiwan.

5      120.   Each infringement by said Defendants in and to the Copyrighted Works
6  constitutes a separate and distinct act of infringement.

7      121.   Said Defendants' acts of infringement were knowing, willful, negligent,
8  in disregard of and with indifference to the rights of Plaintiff.

9      122.   As a direct and proximate result of the infringements by said Defendants,
10  Plaintiff is entitled to its damages and to said Defendants' profits, each in amounts to
11  be proven at trial.

12      123.   Plaintiff is further entitled to its attorneys' fees and costs.

13      124.   As a direct and proximate result of the foregoing acts and conduct,
14  Plaintiff has sustained and will continue to sustain substantial, immediate, and
15  irreparable injury, for which there is no adequate remedy at law.  Plaintiff is informed
16  and believes and on that basis avers that unless enjoined and restrained by this Court,
17  said Defendants will continue to infringe Plaintiff's rights in the Copyrighted Works.
18  Plaintiff is entitled to preliminary and permanent injunctive relief.

19  

**SEVENTH CLAIM FOR RELIEF**

20  **CIVIL CONSPIRACY**

21  **[Against All Defendants]**

22      125.   Plaintiff repeats and realleges the allegations made in paragraphs 1
23  through 124 as if fully set forth herein.

24      126.   Defendant Manufacturers and Does 1 through 10, inclusive, conspired,
25  colluded, agreed with, and aided and abetted Defendants PRC, Jinhui, and Dazheng at
26  all relevant times. Through their actions and participation in furtherance of the Green
27  Dam Initiative, Defendant Manufacturers, Defendant Jinhui, Defendant Dazheng, and

28

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

32

**FIRST AMENDED COMPLAINT**

04444\00001\166919.1

1    Defendant PRC implicitly and/or explicitly agreed to participate and did participate in

2    an unlawful plan which included misappropriation and theft of trade secrets, violation

3    of unfair competition laws, and copyright infringement.

4         127.   Defendants' common scheme – *viz.*, the Green Dam Initiative – involved

5    two overlapping components which eventually became indistinguishable from each

6    other:  participation in the PRC's seemingly legal (albeit surreptitious) plan to have

7    Green Dam installed on every computer in China, and the illegal infringement, theft

8    and distribution of Plaintiff's intellectual property and trade secrets.   Defendant

9    Manufacturers, Defendant Suppliers, and Defendant PRC all willingly participated in

10   this common scheme both before and after the illegal aspects of the scheme became

11   apparent.

12        128.   In March 2009, Defendant PRC sponsored a Green Dam Symposium at

13   MIIT offices in Beijing.   The express purpose of the Symposium was to develop a

14   plan to proliferate the Green Dam program on computers throughout China.

15   Representatives of Defendant Manufacturers, Defendant Developers and Defendant

16   PRC all attended and participated in the Green Dam Symposium.

17        129.   Defendant PRC, Defendant Jinhui, Defendant Dazheng and Defendant

18   Manufacturers also entered into contractual agreements with each other in furtherance

19   of the common scheme, providing for the distribution of the Green Dam program

20   throughout China and elsewhere.

21        130.   During their initial participation in the Green Dam Initiative, the

22   Defendant Manufacturers may have been unaware that the Green Dam Initiative had

23   an illegal component:  the illegal theft, misappropriation and proliferation of Plaintiff's

24   intellectual property and trade secrets.   But while at first the illegal theft and

25   infringement of Plaintiff's CYBERsitter software may have been limited to the

26   Defendant Developers and the PRC, no later than early June 2009, Defendant

27   Manufacturers had knowledge of the illegal components of the common scheme and,

28   despite this knowledge, thereafter continued to copy and distribute Green Dam and

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

33

**FIRST AMENDED COMPLAINT**

otherwise promote and participate in the Green Dam Initiative.  At this point, the legal and illegal aspects of the common scheme merged and became indistinguishable.

131.  As a result of the foregoing, each of the Defendants is liable for the illegal acts (as alleged herein) of each of the other Defendants in furtherance of their common plan and scheme to proliferate the illegal Green Dam program throughout China.

## **PRAYER FOR RELIEF**

WHEREFORE, Solid Oak respectfully requests that the Court enter judgment against Defendants as follows:

A.    For an award of Plaintiff's damages and unjust enrichment for Defendant's misappropriation of trade secrets in an amount to be ascertained at trial pursuant to Cal. Civ. Code § 3426.3(a), or in the alternative for a reasonable royalty in an amount to be ascertained at trial, but in no event less than $2,257,175,000, representing the Chinese government's stated figures of more than 56.5 million unlicensed copies distributed on computers, in schools, and on the Internet (as of early June 2009) multiplied by $39.95 per copy,  pursuant to Cal. Civ. Code § 3426.3(b).

B.    For an award of Plaintiff's damages under the copyright laws of the United States, China, Japan and Taiwan, in an amount to be ascertained at trial, but in no event less than $2,257,175,000, and in addition or in the alternative for the following:

a. For an award of Plaintiff's damages and Defendants' profits, each in amounts to be ascertained at trial, or, alternatively, for maximum statutory damages in the amount of $150,000 with respect to each copyrighted work infringed either directly or indirectly, and/or for such other amounts as may be proper under the Copyright Act of the United States;

b. For an award of Plaintiff's damages or Defendants' profits, each in amounts to be ascertained at trial, or, alternatively, for maximum

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

34

**FIRST AMENDED COMPLAINT**

04444\00001\166919.1

1  statutory damages in the amount of 500,000 Yuan (or approximately
2  73,000 U.S. dollars) per direct or indirect infringement, and/or for such
3  other amounts as may be proper under the Copyright Law and Software
4  Regulations of the People's Republic of China.

5    c. For an award of Plaintiff's damages and/or Defendants' profits and/or a
6  reasonable royalty, each in amounts to be ascertained at trial, and/or for
7  such other amounts as may be proper under the Copyright Act of Japan.

8    d. For an award of Plaintiff's damages and/or for Defendants' profits, each
9  in amounts to be ascertained at trial, and/or for such other amounts as
10  may be proper under the Copyright Act of Taiwan.

11    C.    For restitution of such sums as would otherwise have been owed or paid
12  to Plaintiff absent Defendants' violations of law, in an amount to be ascertained at
13  trial;

14    D.    For exemplary damages against Defendant PRC and Defendant
15  Developers and in favor of Plaintiff pursuant to Cal. Civ. Code § 3426.3(c) in the sum
16  of twice the amount awarded for restitution or a reasonable royalty by reason of
17  Defendants' willful and malicious improper appropriation of Plaintiff's Trade Secrets;

18    E.    For preliminary and permanent injunctive relief;

19    F.    For prejudgment interest;

20    G.    For Plaintiff's attorneys fees and costs of suit incurred in this action; and

21    H.    For such other and further relief as the Court may deem just and proper.

22  DATED:  September 27, 2010        GIPSON HOFFMAN & PANCIONE
                                       A Professional Corporation
23                                      GREGORY A. FAYER
                                       ELLIOT B. GIPSON
24

25

26                                      By
27                                          GREGORY A. FAYER
                                       Attorneys for Plaintiff CYBERsitter, LLC
28                                       d/b/a Solid Oak Software

35

**FIRST AMENDED COMPLAINT**

04444\00001\166919.1

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a trial by jury.

DATED:  September 27, 2010

GIPSON HOFFMAN & PANCIONE
A Professional Corporation
GREGORY A. FAYER
ELLIOT B. GIPSON

By
        GREGORY A. FAYER
Attorneys for Plaintiff CYBERsitter, LLC
d/b/a Solid Oak Software

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

36

**FIRST AMENDED COMPLAINT**

04444\00001\166919.1

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and am not a party to the within action.  My business address is 1901 Avenue of the Stars, Suite 1100, Los Angeles, California 90067-6002.

On September 27, 2010, I served the document described as:  **FIRST AMENDED COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRETS; UNFAIR COMPETITION; COPYRIGHT INFRINGEMENT; AND CIVIL CONSPIRACY; DEMAND FOR JURY TRIAL** on all interested parties in this action by:

☒ placing ☐ the original ☒ a true copy thereof enclosed in sealed envelopes addressed as stated below:

**SEE ATTACHED SERVICE LIST**

☒ **BY MAIL:**  I am "readily familiar" with this firm's practice of collection and processing correspondence for mailing.  Under that practice, it would be deposited with the U.S. Postal Service on the same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ **BY ELECTRONIC MAIL:**  By electronically mailing a true and correct copy through Gipson Hoffman & Pancione's electronic mail system to the e-mail address(es) set forth as stated on the attached service list. [C.C.P. § 1010.6].

☒ [State]    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒ [Federal]  I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

Executed on September 27, 2010, at Los Angeles, California.

Marsha Tylke

---

1

**PROOF OF SERVICE OF FIRST AMENDED COMPLAINT**

04444\00001\177262.1

1
2
3

**SERVICE LIST**
*CYBERsitter, LLC v. The People's Republic of China, et al.*
CASE NO. CV10-0038 JST (SHx)

4
5
6
7

Paul J. Loh, Esq.
Willenken Wilson Loh & Lieb LLP
707 Wilshire Blvd., Suite 3850
Los Angeles, CA  90017

Attorneys for Defendant BenQ Corporation

8
9
10
11

Karen I. Boyd, Esq.
Turner Boyd LLP
2625 Middlefield Road
Suite 675
Palo Alto, CA  94306

Attorneys for Defendant ASUSTeK Computer Inc.

12
13
14
15
16

Robert W. Dickerson
Alyssa M. Caridis
Orrick, Herrington & Sutcliffe LLP
777 South Figueroa Street
Suite 3200
Los Angeles, CA  90017

Attorneys for Defendant Acer Inc.

17
18
19
20

Kai Tseng
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA  94025

21
22
23
24

Karin G. Pagnanelli
Marc E. Mayer
Mitchell Silberberg & Knupp LLP
11377 West Olympic Blvd.
Los Angeles, CA  90064-1683

Attorneys for Defendant Sony Corporation

25
26
27
28

John B. Sganga, Jr.
Knobbe Martens Olson & Bear LLP
2040 Main Street, 14th Floor
Irvine, CA  92614

Attorneys for Defendant Toshiba Corporation

2
**PROOF OF SERVICE OF FIRST AMENDED COMPLAINT**

04444\00001\177262.1

1

## SERVICE LIST (CONTINUED)

2

3   Joseph F. Coyne, Jr.                              Attorneys for Defendant Lenovo Group
    Mary E. Tarduno                                   Limited
4   Bethany L. Hengsbach
    Sheppard, Mullin, Richter
5     & Hampton LLP
6   333 South Hope Street, 48th Floor
    Los Angeles, CA  90071-1448
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

__PROOF OF SERVICE OF FIRST AMENDED COMPLAINT__

04444\00001\177262.1