1  GIPSON HOFFMAN & PANCIONE
   A Professional Corporation
2  GREGORY A. FAYER (State Bar No. 232303)
   GFayer@ghplaw.com
3  ELLIOT B. GIPSON (State Bar No. 234020)
   EGipson@ghplaw.com
4  1901 Avenue of the Stars, Suite 1100
   Los Angeles, California 90067-6002
5  Telephone: (310) 556-4660
   Facsimile:  (310) 556-8945
6
7  Attorneys for Plaintiff
   CYBERsitter, LLC d/b/a Solid Oak Software
8

9              UNITED STATES DISTRICT COURT

10      CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

11

12 | CYBERsitter, LLC, a California limited | CASE NO. CV 10-00038 JST(SHx)
   | liability company, d/b/a Solid Oak Software, |

13

14 |             Plaintiff, | **PLAINTIFF'S MEMORANDUM OF
                              POINTS AND AUTHORITIES IN**
15 | v. | **OPPOSITION TO MOTION OF
          DEFENDANT SONY
16 | The People's Republic of China, a foreign | CORPORATION TO DISMISS THE
     state; Zhengzhou Jinhui Computer System | ACTION ON GROUNDS OF *FORUM*
17 | Engineering Ltd., a Chinese corporation; | *NON CONVENIENS* AND RELATED
     Beijing Dazheng Human Language | JOINDERS**
18 | Technology Academy Ltd., a Chinese
     corporation; Sony Corporation, a Japanese
19 | corporation; Lenovo Group Limited, a
     Chinese corporation; Toshiba Corporation, a | Judge:  Hon. Josephine Staton Tucker
20 | Japanese corporation; ACER Incorporated, a | Ctrm:   10A
     Taiwanese corporation; ASUSTeK
21 | Computer Inc., a Taiwanese corporation;
     BenQ Corporation, a Taiwanese | Hearing Date:     Nov. 8, 2010
22 | corporation; Haier Group Corporation, a | Hearing Time:     10:00 a.m.
     Chinese corporation; DOES 1-10, inclusive,
23 |                                              | Discovery Cutoff:     None Set
   |             Defendants. | Pretrial Conference:  None Set
24 |                                              | Trial Date:           None Set

25

26

27

28
   PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION
   FOR DISMISSAL ON FORUM NON CONVENIENS GROUNDS

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

# **TABLE OF CONTENTS**

**PAGE**

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................1

I.      INTRODUCTION ........................................................................................1

II.     FACTUAL BACKGROUND ........................................................................5

III.    LEGAL STANDARDS ................................................................................5

IV.     ARGUMENT.................................................................................................6

A.      Sony Has Not Met Its Threshold Burden of Demonstrating That the PRC is an Adequate Alternative Forum....................................6

B.      The Balance of Public and Private Interest Factors Does Not Favor Dismissal ......................................................................................12

1.      The Private Interest Factors Do Not Favor Dismissal...................14

a)      Deference to Plaintiff's Choice of Forum Weighs Against Dismissal ...........................................14

b)      The Residence of the Parties and Witnesses Weighs Against Dismissal ...........................................16

c)      The Forum's Convenience to the Litigants Weighs Heavily Against Dismissal .................................19

d)      Access to Physical Evidence and Other Sources of Proof Weighs Against Dismissal.........................20

e)      Whether Unwilling Witnesses Can Be Compelled to Testify Weighs Heavily Against Dismissal .......................23

f)      The Cost of Bringing Witnesses to Trial Weighs Against Dismissal ...........................................25

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION
FOR DISMISSAL ON FORUM NON CONVENIENS GROUNDS

1

## TABLE OF CONTENTS (continued)

2

PAGE

3

g)  The Enforceability of the Judgment Weighs Against

4
Dismissal ........................................................................... 25

5

h)  "Other Practical Problems That Make Trial of a Case
Easy, Expeditious and Inexpensive" Weigh Heavily

6
Against Dismissal .............................................................. 26

7

2.  The Public Interest Factors Do Not Favor Dismissal .................... 26

8

9

a)  The Local Interest of the Lawsuit Strongly Weighs
Against Dismissal .............................................................. 26

10

11

b)  The Court's Familiarity with Governing Law Weighs
Against Dismissal .............................................................. 32

12

13

c)  Burden on Local Courts and Juries and Congestion in
the Court Do Not Support Dismissal ................................. 34

14

d)  Costs of Resolving a Dispute Unrelated to This Forum

15
Do Not Support Dismissal ................................................. 34

16

C.  Defendants' Unclean Hands Foreclose Them From Equitable

17
Relief ........................................................................................ 35

18

V.  CONCLUSION .................................................................................. 35

19

20

21

22

23

24

25

26

27

28

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

ii

1

## <u>**TABLE OF AUTHORITIES**</u>

2
<u>**PAGE(S)**</u>

3 <u>**Federal Cases**</u>

4 *2002 Irrevocable Trust for Richard C. Hvizdak v. Huntington Nat. Bank*, ,
   2008 WL 5110778 (M.D. Fla. Dec. 1, 2008)................................................15

5
*Altmann v. Republic of Austria*,

6   317 F.3d 954 (9th Cir. 2002).......................................................................16

7 *American Dredging Co. v. Miller*,
   510 U.S. 443, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994).................................6

8
*Bleu Products, Inc. v. Bureau Veritas Consumer Product Services, Inc.*,

9   2009 WL 2412413 (C.D. Cal. Aug. 3, 2009)......................................12, 13

10 *Boston Telecommunications Group, Inc. v. Wood*, ,
    588 F.3d 1201 (9th Cir. 2009).............................................................*passim*

11
*Brackett v. Hilton Hotels Corp.*,

12   619 F.Supp.2d 810 (N.D. Cal. 2008) .......................................................5, 19

13 *Caijano v. Occidental Petroleum*,
    548 F.Supp.2d 823 (C.D. Cal. 2008) ..........................................................15

14
*Caruth v. International Psychoanalytical Ass'n*,

15   59 F.3d 126 (9th Cir. 1995).....................................................................17, 26

16 *Ceramic Corp. of America v. Inka Maritime Corp.*,
    1 F.3d 947 (9th Cir. 1993)........................................................................7, 16

17
*China Tire Holdings Ltd. v. Goodyear Tire & Rubber Co.*,

18   91 F. Supp. 2d 1106 (N.D. Ohio 2000)...........................................15, 30, 31

19 *Chitkin v. Lincoln Nat. Ins. Co.*,
    879 F. Supp. 841 (S.D. Cal. 1995)...............................................................35

20
*Dabbous v. American Express*,

21   2009 WL 1403930 (S.D.N.Y. May 8, 2009) ...............................................15

22 *Decker Coal Co. v. Commonwealth Edison Co.*,
    805 F.2d 834 (9th Cir. 1986).........................................................................5

23
*Dole Food Co., Inc. v. Watts*,

24   303 F.3d 1104 (9th Cir. 2002).................................................................5, 13

25 *Gates Learjet Corp. v. Jensen*,
    743 F.2d 1325 (9th Cir. 1984).......................................................................6

26
*Gulf Oil Corp. v. Gilbert*,

27   330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)......................................6

28
PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION
FOR DISMISSAL ON FORUM NON CONVENIENS GROUNDS

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

# TABLE OF AUTHORITIES (continued)

**PAGE(S)**

**Federal Cases (continued)**

*Hotvedt v. Schlumberger*,
942 F.2d 294 (5th Cir. 1991) .................................................................................. 15

*In re Compania Naviera Joanna S.A.*,
531 F. Supp. 2d 680 (D.S.C. 2007) ........................................................................ 15

*In Re West Caribbean Crew Members*,
2009 WL 1974238 (S.D. Fla. May 14, 2009) ........................................................ 15

*Intercontinental Dictionary Series v. De Gruyter*,
822 F. Supp. 662 (C.D. Cal. 1993) ........................................................................ 31

*Irwin v. World Wildlife Fund*,
448 F.Supp.2d 29 (D.D.C. 2006) ............................................................................ 15

*Koster v. (American) Lumbermens Mut. Cas. Co.*,
330 U.S. 518, 67 S. Ct. 828, 91 L. Ed. 1067 (1947) ............................................ 16

*Lehman Bros. Commercial Corp. v. Minmetals Intern. Non-Ferrous
Metals Trading Co.*,
179 F.Supp.2d 118 (S.D.N.Y. 2000) ...................................................................... 33

*Leon v. Million Air, Inc.*,
251 F.3d 1305 (11th Cir. 2001) ............................................................................ 15

*Lockman Found. v. Evangelical Alliance Mission*,
930 F.2d 764 (9th Cir. 1991) ............................................................................ 13, 14

*London Film Productions Ltd. v. Intercontinental Communications, Inc.*,
580 F. Supp. 47 (S.D.N.Y. 1984) .......................................................................... 33

*Lou v. Otis Elevator Co.*,
77 Mass.App.Ct. 571 (Sept. 3, 2010) .................................................................... 33

*Lu v. Air China*,
1992 WL 453646 (E.D.N.Y. Dec. 16, 1992) ........................................................ 15

*Lueck v. Sundstrand Corp.*,
236 F.3d 1137 (9th Cir. 2001) ...................................................................... 7, 11, 12

*MBI Group v. Credit Foncier du Cameroun*,
558 F.Supp.2d 21 (D.D.C. 2008) ............................................................................ 15

*Mintel Learning Technology, Inc. v. Beijing Kaidi Educ. & Technology
Development Co., Ltd.*,
2007 WL 2403395 (N.D. Cal. Aug. 20, 2007) ........................................................ 6

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

iv

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION
FOR DISMISSAL ON FORUM NON CONVENIENS GROUNDS

## **TABLE OF AUTHORITIES (continued)**

**PAGE(S)**

**Federal Cases (continued)**

*Moskovitz v. Moskovitz,*
150 Fed Appx. 101 (2d Cir. 2005)....................................................15

*Mujica v. Occidental Petroleum Corp.,*
381 F.Supp.2d 1134 (C.D. Cal. 2005) .............................................11

*Murray v. British Broad. Corp.,*
906 F. Supp. 858 (S.D.N.Y. 1995)...................................................27

*Niv v. Hilton Hotels Corp.,*
710 F. Supp. 2d 328 (S.D.N.Y. 2008) ..............................................15

*Overseas Media v. Skvortsov,*
277 Fed. Appx. 92 (2d Cir. 2008) ....................................................15

*Panama Shipping Lines, Inc. v. Ciramar Int'l Trading, Ltd.,*
2009 WL 742675 (S.D. Fla. March 20, 2009) .................................15

*Panavision Int'l, L.P. v. Toeppen,*
141 F.3d 1316 (9th Cir. 1998)..........................................................27

*Paolicelli v. Ford Motor Co.,*
289 Fed. Appx. 387 (11th Cir. 2008) ...............................................15

*Piper Aircraft Co. v. Reyno,*
454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981).........5, 6, 14, 31

*Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.,*
324 U.S. 806, 65 S.Ct. 993, 89 L.Ed. 1381 (1945)..........................35

*S. Megga Telecommunications Ltd. v. Lucent Technologies, Inc.,*
1997 WL 86413 (D. Del. Feb. 14, 1997) .........................................15

*Seales v. Panamanian Aviation Co.,*
2008 WL 544705 (E.D.N.Y. Feb. 26, 2008) ....................................15

*Sinatra v. National Inquirer,*
854 F.2d 1191 (9th Cir. 1988)..........................................................17

*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.,*
549 U.S. 422, 127 S. Ct. 1184, 167 L. Ed. 2d 15 (2007)..................15

*Stroitelstvo Bulgaria v. Bulgarian-American Enterprise Fund,*
598 F. Supp.2d 875 (N.D. Ill. 2009) ................................................15

*Turedi v. Coca-Cola,*
2009 WL 1956206 (2d Cir. July 7, 2009) ........................................15

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

v

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION
FOR DISMISSAL ON FORUM NON CONVENIENS GROUNDS

1

## TABLE OF AUTHORITIES (continued)

2                                                                          **PAGE(S)**

3 **Federal Cases (continued)**

4 *Vanity Fair Mills, Inc. v. T. Eaton Co.*,
     234 F.2d 633 (2d Cir. 1956).................................................................31

5

6 *Villar v. Crowley Mar. Corp.*,
     782 F.2d 1478 (9th Cir. 1986)...............................................................26

7 *Voda v. Cordis Corp.*,
     476 F.3d 887, 904 (Fed. Cir. 2007)......................................................31

8

9 *Vorbiev v. McDonnell Douglas Helicopters*,
     2009 WL 1765675 (N.D. Cal. June 18, 2009).......................................15

10 *W.S. Kirkpatrick & Co., Inc. v. Envtl. Tectonics Corp., Int'l*,
     493 U.S. 400, 110 S. Ct. 701, 107 L. Ed. 2d 816 (1990).......................31

11

12 *Wozniak v. Wyndham Hotels*,
     2009 WL 901134 (N.D. Ill. Mar. 31, 2009)..........................................15

13

14 **State Cases**

15 *China Gezhouba United Industries v. Robinson Helicopter Co.*,
     Sup. Ct. No. YC022805 (Sup. Ct. L.A. County, CA, Oct. 18, 2006).....15

16

17 *Filip v. Bucurenciu*,
     129 Cal.App.4th 825 (2005) .................................................................33

18 *Group Danone v. Kelly Fuli Zhong et al.*,
     Sup. Ct. No. BC372121 (Sup. Ct. L.A. County, CA, Feb. 27, 2009).....15

19

20 *Guimei v. Gen. Elec. Co.*,
     172 Cal. App. 4th 689 (2009) ...............................................................15

21

22 **Statutes**

23 28 U.S.C. § 1367(c) ...............................................................................31

24 Federal Rules of Civil Procedure, Rule 30(b)(6).............................17, 24

25 Federal Rules of Civil Procedure, Rule 44.1 .......................................33

26

27

28

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

vi

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION
FOR DISMISSAL ON FORUM NON CONVENIENS GROUNDS

04444\00001\174159.2

1

## TABLE OF AUTHORITIES (continued)

2

**PAGE(S)**

3

## Other Authorities

4    Jacques deLisle, *Human Rights, Civil Wrongs and Foreign Relations: A "Sinical"*
     *Look at the Use of U.S. Litigation to Address Human Rights Abuses Abroad*,

5    52 DePaul L. Rev. 473 (Winter 2002) ........................................................................ 9

6    U.S. Trade Representative's Office "Special 301 Report" to Congress ................. 28, 29

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION
FOR DISMISSAL ON FORUM NON CONVENIENS GROUNDS

04444\00001\174159.2

1

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff CYBERsitter, LLC d/b/a Solid Oak Software ("Plaintiff") submits this memorandum of points and authorities in opposition to the motion ("Motion") of defendant Sony Corporation ("Sony") and the joinders ("Joinders") of defendants ACER Incorporated ("Acer"), ASUSTeK Computer Inc. ("Asus") and BenQ Corporation ("BenQ") (collectively, "Defendants") in Sony's motion to dismiss the action on *forum non conveniens* ("FNC") grounds.

## I.   INTRODUCTION

This action concerns the theft of a small American company's software and intellectual property ("IP"), wherein seven multi-national computer manufacturers based in three different countries knowingly and willingly participated in a scheme to distribute the illegal software to millions of end users, and persisted in doing so long after they had actual knowledge that the software was stolen from an American company.  In so participating, the foreign manufacturers knowingly targeted an American company whose IP they misappropriated, copied and distributed without permission.  These facts alone make this case very different from any of the cases that Sony cites in favor of dismissal, none of which involved the targeting of an American plaintiff who the defendants knew would experience injury here in the U.S.

Plaintiff is a U.S. company, and it has filed suit in its home forum.  This fact alone distinguishes this case from almost all of the cases cited by Sony and its expert, almost all of which involve forum-shopping by a foreign plaintiff seeking to take advantage of more favorable U.S. laws.  Plaintiff's company, its founders, its principals, its offices, its employees, and its equipment are and have been located wholly within the Central District of California for over 15 years.  The founder and CEO  of the company has never been to China.  Plaintiff did not venture into China for purposes of any of the conduct at issue in this action.  Plaintiff has been injured here, in its home forum (as explained below, under settled principles of law, the locus

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION
FOR DISMISSAL ON FORUM NON CONVENIENS GROUNDS

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

of Plaintiff's IP – California – is the locus of the injury).  Defendants were each aware and placed on notice by mid-June 2009 at the latest, that they were copying and distributing a product whose key components were stolen from a U.S. company.  They nevertheless continued to copy and distribute Plaintiff's IP without authorization for months after they were aware that their actions were causing harm to a U.S. company in the U.S.  Apart from past sales of its products to Chinese customers, Plaintiff's only connection with the Chinese forum is Defendants' theft of Plaintiff's IP there.  Defendants cite no case in which the claims of a U.S. plaintiff who was injured in the U.S. and who has never ventured into a foreign forum, have been dismissed from the plaintiff's home forum on FNC grounds.  This case should not be the first.

The moving Defendants are a Japanese company and three Taiwanese companies.  Their proposed alternative forum is China.  Defendants complain that it is unfair to require them to litigate in Plaintiff's home forum because the U.S. "is not the home to any of the defendants."  Bf. 1.[1]  On this basis they argue that a small American software developer should be forced to litigate its claims for violations of American law, and the laws of three other nations, in China because litigating there would be more convenient for them.  This contention is wrong.  China is not the home forum of any of the moving Defendants, and litigating in the U.S. is neither unfair nor inconvenient to them.

Sony and the other Defendants are not only well-known household names in the U.S., each of the moving Defendants has filed multitudes of U.S. trademark, copyright and patent registrations in their own names (not in the names of their subsidiaries), including the U.S. registrations for the use of the marks "Sony," "Acer," "Asus" and "BenQ" on computers.  For over 40 years (since 1967), Sony Corporation has

---

[1] References to Sony's brief are indicated herein by "Bf." followed by a page number.  References to the declarations filed by the parties in support of and in opposition to the Motion are indicated by the last name of the declarant and a paragraph number.  Exhibits to the declarations are indicated by "Ex."  References to Plaintiff's Request for Judicial Notice are indicated by "RJN" and an exhibit number.

2

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION
FOR DISMISSAL ON FORUM NON CONVENIENS GROUNDS

registered or attempted to register over 25,000 U.S. patents, 250 U.S. copyrights, and 400 U.S. trademarks.  RJN ¶¶ 2-9.  The Taiwanese Defendants have similarly used and enjoyed the benefits of U.S. IP laws and protection in their own names – Acer: over 250 patents and 70 trademark applications; Asus: over 250 patents and 70 trademark applications; BenQ: over 600 patents.  *Id.* ¶¶ 10-17 (Acer); 18-23 (Asus); an 24-29 (BenQ).  In connection with their U.S. trademark applications, each of the Defendants has submitted affidavit(s) of use to the U.S. PTO, swearing under penalty of perjury that they or their agents use their marks in commerce in the U.S. and that they themselves are the owners of the mark (and, thus, the beneficiaries of its use).  *Id.* ¶¶ 6-7, 14-15, 20-21, 22-27.  Either Defendants have lied on their U.S. trademark applications – thus committing fraud on the PTO and making their marks vulnerable to cancellation– or the Defendants' assertions that they have no U.S. presence and it would be unfair to subject them to a lawsuit here is false.  Each of the Defendants has been systematically using and availing themselves of the protections of U.S. IP law, and receiving the benefits of the goodwill of U.S. consumers for many years.  Defendants' assertion that the equities dictate that a small American company should be required to litigate its claims halfway around the world because Sony and the other Defendants would be inconvenienced by litigation in this "foreign forum" is absurd.

As a practical matter, China does not meet the minimal standards necessary to qualify as an "adequate alternative forum" for this case.  This is so because, as explained in detail in the declaration of Prof. Clarke, given the nature of the claims at issue here – highly internationally publicized claims of widespread IP theft by the Chinese government and several other large and economically important companies, including two prominent Chinese computer companies, stemming from the dissemination an internationally-denounced censorship program – it would be impossible for Plaintiff to receive a fair trial in the Chinese courts.  Clarke ¶ 11.  As a result, the PRC offers no practical remedy for Plaintiff's claim.  In light of the

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR DISMISSAL ON FORUM NON CONVENIENS GROUNDS

04444\00001\174159.2

1   politically sensitive issues at issue in this case, extra-judicial intervention is "virtually
2   certain."   *Id.*   Even Sony's expert states that "[o]fficially and in practice, China
3   strongly resents: U.S. and other foreign powers' denunciation of the inadequacy of
4   Chinese laws and legal institutions…."  deLisle ¶ 77.  In light of the PRC's resentment
5   and its entrenched interest in advancing the perception of its compliance with IP laws
6   and norms, and given the built-in mechanisms for extra-judicial intervention in the
7   process and outcome of Chinese judicial proceedings that even Sony's expert
8   recognizes, there can be no doubt that Plaintiff could not and would not receive a fair
9   hearing of its claims in the PRC.  Indeed, as explained in the declaration of Plaintiff's
10  attorney, one need not speculate about the possibility of non-judicial intervention in
11  this case: it has already occurred.  Fayer ¶ 11.

12          But even if China could meet the minimal standards necessary to qualify as an
13  "adequate alternative forum," the equities weigh decisively against dismissal.  As
14  explained below, each of the private and public interest factors in this case weighs
15  against dismissal.  Significantly, Sony's contentions regarding China's allegedly
16  important interests in hearing this case are not merely wrong (as explained below),
17  they are irrelevant under recent Ninth Circuit precedent.  *Boston Telecommunications*
18  *Group, Inc. v. Wood*, 588 F.3d 1201, 1211-12 (9th Cir. 2009) (holding that the FNC
19  public interest factors consider only the strength of the local forum's interest, and
20  district court abused its discretion in considering and balancing the interests of the
21  foreign forum against those of the home forum).

22          As a matter of policy, a decision in favor of Sony would have disastrous effects
23  on American IP.  If Sony and the other Defendants can knowingly misappropriate an
24  American company's IP and then force it to litigate its claims around the globe, any
25  other foreign company is free to do the same.  As a practical matter, a decision in
26  Sony's favor would be a veritable invitation to foreign companies to violate the IP
27  rights of smaller U.S. companies with impunity, knowing that they do not have the
28

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION
FOR DISMISSAL ON FORUM NON CONVENIENS GROUNDS

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

1   resources to litigate their claims in a forum convenient to the violator.  Only multi-
2   national corporations would be able to protect their IP from knowing infringement
3   outside the U.S.  Such policy considerations should weigh heavily in the Court's
4   equitable balancing of the public interest factors.

5       In sum, Defendants have not met their burden of showing that the PRC is
6   "adequate alternative forum," and have not even come close to meeting their steep
7   burden of showing that the private and public interest factors strongly favor dismissal
8   from Plaintiff's home forum.  Significantly, none of the moving Defendants has
9   contested personal jurisdiction, or subject matter jurisdiction, or raised any other
10  jurisdictional or pleading defect with respect to the claims asserted herein.  This case
11  is thus properly before this Court, and it should stay here.

## II.   FACTUAL BACKGROUND

13      The relevant facts are set forth in the Introduction hereto and in the Milburn,
14  Halderman and Fayer Declarations filed concurrently herewith.

## III.   LEGAL STANDARDS

16      *Forum non conveniens* is an "exceptional tool to be employed sparingly, not a
17  ... doctrine that compels plaintiffs to choose the optimal forum for their claim." *Dole*
18  *Food Co., Inc. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002) (reversing dismissal on
19  FNC grounds).  "[A] plaintiff's choice of forum should rarely be disturbed."  *Piper*
20  *Aircraft Co. v. Reyno*, 454 U.S. 235, 241, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981).  This
21  is particularly so where the plaintiff has chosen its home forum as the site of the
22  lawsuit.  *Id.* at 256.  "[T[here is a general presumption in favor of a plaintiff's choice
23  of forum and 'the defendant must make a strong showing of inconvenience' to
24  overcome that presumption.  *Brackett v. Hilton Hotels Corp.*, 619 F.Supp.2d 810,
25  820 (N.D. Cal. 2008) (quoting *Decker Coal Co. v. Commonwealth Edison Co.*, 805
26  F.2d 834, 843 (9th Cir. 1986).

27
28

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

5

Defendants bear the burden of making "a clear showing of facts which establish that trial in the chosen forum would 'establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience.'" *Mintel Learning Technology, Inc. v. Beijing Kaidi Educ. & Technology Development Co., Ltd.*, 2007 WL 2403395, *8 (N.D. Cal. Aug. 20, 2007) (denying FNC motion, quoting *American Dredging Co. v. Miller,* 510 U.S. 443, 447-48, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994)).

Unless the balance of "private interest" and "public interest" factors weighs "strongly" in favor of trial in a foreign country, a plaintiff's choice of forum is not to be disturbed. *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1335 (9th Cir. 1984) (reversing dismissal on FNC grounds). Private interest factors include: "(1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Boston Telecom*, 588 F.3d at 1206-07; *see also Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). Public interest factors include: "(1) the local interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular forum." *Id.* at 1211; *see also Piper Aircraft,* 454 U.S. at 241 n. 6.

## IV.   ARGUMENT

### A.   Sony Has Not Met Its Threshold Burden of Demonstrating That the PRC is an Adequate Alternative Forum

Sony has not met its threshold burden of demonstrating that an adequate alternative forum exists in which to bring Plaintiff's claims in this action. While an alternative forum is not inadequate simply because the remedies it offers are "less

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR DISMISSAL ON FORUM NON CONVENIENS GROUNDS

04444\00001\174159.2

favorable" than those in the home forum, an alternative forum is inadequate where there is, as a practical matter, no "potential avenue for redress" for the claims asserted or "offers *no practical remedy* for the plaintiff's complained of wrong." *Ceramic Corp. of America v. Inka Maritime Corp.,* 1 F.3d 947, 949 (9th Cir.1993) (holding that district court abused its discretion in finding Japan an adequate alternative forum); *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1144 (9th Cir. 2001) (emphasis added). Significantly, any uncertainty about whether a forum is adequate must be resolved against dismissal of the action. *Dole Food*, 303 F.3d at 1118 (reversing FNC dismissal, *inter alia*, because "it is unclear whether there is an alternative forum in The Netherlands, for it is unclear that Boenneken could be compelled to appear in a court there… [and] … the applicability of the purported 'forum selection' clause to this action is uncertain).

Plaintiff has submitted the declaration of one of the world's foremost legal scholars on Chinese law, Prof. Donald Clarke, concluding that under the circumstances presented here it is "inconceivable" that Plaintiff could get a fair hearing of its claims in China and that intervention by non-judicial powers (including organs of the Communist Party of China ("CPC")) to influence the outcome of this case adversely against Plaintiff is a "virtual certainty."  Clarke ¶ 11.  The relevant circumstances here include: (i) a small U.S. company (ii) making claims of widespread IP theft (a very sensitive issue for the PRC) against (iii) the Chinese government and (iv) several other large, multi-national, economically important companies, (v) including two prominent Chinese computer companies, (vi) stemming from the dissemination an internationally-denounced censorship program, (vii) in a matter that has already been highly publicized in the international press, and (viii) has already caused the Chinese government and Chinese companies significant embarrassment.  Defendants cite no analogous case – or any case involving anything close to this aggregate of factors – where a plaintiff has successfully brought suit and

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

7

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION
FOR DISMISSAL ON FORUM NON CONVENIENS GROUNDS

prevailed in the Chinese courts.  Because, no practical remedy would be available to Plaintiff in the Chinese courts under these circumstances, China is not an adequate alternative forum.

Even Sony's expert, Prof. deLisle, acknowledges the fact that Chinese law specifically provides for "nonjudicial collateral review" (¶ 39) and further acknowledges that even China's best courts, while providing "stiffer resistance to influence producing legally improper outcomes" (¶ 50), remain subject to "successful attempts to influence outcomes" (¶ 49).  As Prof. Clarke explains, unlike in the U.S., the Chinese judiciary is not "independent" of the political organs of the State and the CPC.  Clarke ¶ 36.  There are specific mechanisms built into the Chinese legal system to ensure that Chinese authorities may intervene in the courts and direct the outcome of cases (or indefinitely delay them) where doing so would benefit the PRC, or perceived local or Chinese economic or policy interests.  *Id.* ¶¶ 37-40.  Such influence is regularly exercised in politically or economically sensitive cases, and has been exercised in cases involving far less political sensitivity than the instant case.  *See Id.* ¶ 71-77.  This much is not in dispute, and is recognized even by Sony's expert.  *See*, *e.g.*, deLisle ¶¶ 39, 49, 50.[2]

The only question is whether Chinese extra-judicial authorities are likely to exercise such influence in this particular case.  For the reasons explained in Prof. Clarke's declaration, there is no doubt that such influence would be exerted to ensure

_____

[2] From the perspective of the PRC, political intervention in judicial decisions does not represent a flaw or malfunction in the system.  *See* Clarke ¶¶ 17-22.  The Chinese judicial system, unlike the American system, is not intended only to serve the ends of impartial justice, but, first and foremost, to serve and further the interests of the State.  While the Chinese system has an interest in achieving just results, that interest is subordinate to the interests of the State.  The interest in just results may well prevail in most cases (as most cases likely do not implicate significant State interests), but in cases affecting State interests State intervention in judicial decisions is not an anomaly or defect, it is the way the system was meant to function.  This conflict between the interests of justice and the interests of the PRC, and the international concern therewith, was poignantly underscored again this week when the Nobel Peace Prize was awarded to a Chinese dissident serving an 11-year prison term on subversion charges.  RJN Ex. 32.

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

8

either that Plaintiff's claims would not be heard at all, or that Plaintiff would not prevail.  Clarke ¶ 80.  Prof. deLisle notes that "China strongly resents" foreign denunciations of China's laws and IP practices.  deLisle ¶ 77. This case involves both highly publicized allegations of IP theft and censorship – two highly sensitive topics for the PRC.  These facts, combined with the PRC's concern to save face on the international stage (*see id.* ¶¶ 68, 77), portend a high likelihood of extra-judicial intervention by the PRC in the outcome of this case.  As Prof. Clarke explains, the PRC has a strong incentive to direct an outcome adverse to Plaintiff in this case. Clarke ¶¶ 79-80.[3]

Indeed, there are already indicators that adverse political intervention would be exercised in this case.  The PRC's own written communications refusing to effect service of process on the Chinese Defendants in this suit expressly state that the PRC regards this lawsuit as "infring[ing] the sovereignty or security of the People's Republic of China."  Fayer Ex. A (also stating, "The Chinese government solemnly announces that we enjoy the absolute sovereignty immunity.  We neither recognize nor accept any lawsuit against China or the Chinese government.").  Moreover, the defendant software developers have continued to make (non-specific and non-credible) conclusory denials of copying to Plaintiff and to the press when confronted with Plaintiff's allegations.  *Id.* Ex. B.  In light of the strong ties of the developers to the PRC (*see* Complaint ¶¶ 30-32), it is likely that the PRC would take the same stance.  Moreover, as explained by Plaintiff's attorney, non-judicial intervention by the

---

[3]   Sony's expert acknowledges "the growing problems of popular disillusionment, social unrest, institutional fragmentation, and rampant corruption that beset the Chinese regime," but nevertheless argues that U.S. courts should not interfere in China's affairs even in cases in which they otherwise have jurisdiction and statutory authority, including under the Torture Victims Protection Act and Alien Tort Claims Act. Jacques deLisle, *Human Rights, Civil Wrongs and Foreign Relations: A "Sinical" Look at the Use of U.S. Litigation to Address Human Rights Abuses Abroad*, 52 DePaul L. Rev. 473, 481 (Winter 2002) (arguing that U.S. courts should decline to hear cases against Chinese officials under the Torture Victims Protection Act and Alien Tort Claims Act for alleged crimes committed in China because doing so could upset political relations with the PRC).

9

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR DISMISSAL ON FORUM NON CONVENIENS GROUNDS

political authorities of the PRC in this case requires has already occurred.  Fayer ¶ 11.

Compounding the obstacles to a fair hearing in this case are the fact that, even apart from the political issues addressed above, the Chinese courts are also subject to bias and influence for economic reasons.  Clarke ¶ 62.  Given the radical disparity between the economic importance of the Plaintiff (a small American company) and the Defendants (the PRC and several large multinational corporations, including two prominent Chinese computer manufacturers), the Chinese courts' notorious local bias in favor of Chinese or local parties and Chinese or local economic interests, also pose serious barriers to a fair hearing in this case.  *Id.* ¶¶ 62-70.  While Sony's expert touts IP victories in Chinese courts by such multinational behemoths as Disney and Microsoft in cases with no political sensitivity, those cases are no indication of the likelihood of influence and bias against a small American company.  *Id.*  Neither Defendants nor Prof. deLisle cite any successful Chinese case in circumstances similar to those presented here.

It is also doubtful that Plaintiff would be able to obtain counsel to represent it for bringing suit in China.  Clarke ¶¶ 103, 130.  Even if it were, counsel could well be required "to report to and receive approval" from a local justice bureau.  Clarke ¶ 115.  Attorney-client privilege would not be recognized.  *Id.* ¶ 110.  There are serious consequences for any Chinese attorney who does not adhere to the advice of the PRC and the CPC.  Attorneys who do take on unpopular clients or disfavored cases risk everything from the suspension of their legal licenses to being imprisoned on trumped up legal charges.  Clarke ¶¶ 120-129.

Further underscoring the practical impossibility of receiving a fair hearing of and redress for Plaintiff's claims in the PRC is the woeful inadequacy of China's IP protection and enforcement (discussed in greater detail *infra* at § IV.B.2.a).  While Prof. deLisle discusses China's laws on the books at length in his declaration, the problem – as highlighted by the U.S. government's many official reports on the topic –

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

10

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION
FOR DISMISSAL ON FORUM NON CONVENIENS GROUNDS

is not so much the laws on the books, but the systematic failure and refusal of the PRC to enforce those laws, particularly in cases that have political implications or may cause embarrassment to the PRC.  RJN Exs. 30-31; Clarke ¶¶ 27-31.  China tops the U.S. government's list of countries on the U.S. government's "Priority Watch List," a list of the leading global threats to American IP abroad, and according to the USTR, "the overall level of IPR theft in China remains unacceptable."  RJN Ex. 31 at 19.

In addition, "an alternative forum is inadequate if the claimants cannot pursue their case without fearing retaliation.  Under those conditions, the foreign alternative forum, in reality, would provide no available remedies for Plaintiffs' claims."  *Mujica v. Occidental Petroleum Corp.*, 381 F.Supp.2d 1134, 1143 (C.D. Cal. 2005) (denying FNC motion, finding no adequate alternative forum because plaintiffs feared reprisal if forced to return to Columbia to litigate their claims).  There need not be "an absolute certainty that Plaintiffs would be harmed" if they litigated in a hostile foreign forum, "a significant possibility would be sufficient."  *Id.*  Here, Plaintiff has submitted declarations establishing that there have already been two significant cyber attacks upon Plaintiff and its attorneys coinciding with Plaintiff's initial public statements regarding the theft of its IP in June 2009, and with the filing of the Complaint in this action in early January 2010.  Milburn ¶¶ 14-16.  Given the PRC's history of arrests and retaliation against those who publicly defy it (*see supra*), Plaintiff has a very real fear of retaliation if forced to litigate in the PRC.  Milburn ¶ 23; *see also* Halderman pp. 10-11.  The PRC is an inadequate forum for this reason as well.

Sony's attempt to analogize this case to the facts of *Lueck* is unavailing.  In *Lueck*, the plaintiff did not contest the fact that the foreign forum, New Zealand, provided a remedy to it, but argued that the remedy was not adequate because the remedy under New Zealand's "no fault accident compensation" policy was an *administrative* remedy, rather than a judicial remedy.  236 F.3d at 1144.  Indeed, in

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR DISMISSAL ON FORUM NON CONVENIENS GROUNDS

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

*Lueck*, plaintiff's attorney "candidly admitted" that his client's preference for a U.S. forum was because a higher damage award would be available here than in New Zealand. *Id.* The *Lueck* Court merely held that whether an available remedy is administrative or judicial in nature makes no difference to whether it is "adequate." *Id. Lueck* thus has no application here.

For each of these reasons, the PRC fails to provide any practical remedy for Plaintiff's complained of wrongs and, as a result, the PRC is not an adequate forum for this action.

**B.     The Balance of Public and Private Interest Factors Does Not Favor Dismissal**

Even assuming *arguendo* that the Chinese courts meet the minimal standards necessary to qualify as an "adequate alternative forum," the equities weigh decisively against dismissal.  The serious practical obstacles to a fair hearing and remedy for Plaintiff's complained of wrongs detailed above (all of which are relevant to the equitable balancing portion of the FNC analysis), combined with the weight of the other equitable factors discussed below, show that the balance of the private and public interest factors in this case strongly favor Plaintiff.

Sony's arguments on the public and private interests are nearly identical to those that this Court recently considered and rejected in *Bleu Products, Inc. v. Bureau Veritas Consumer Product Services, Inc.*, 2009 WL 2412413 (C.D. Cal. Aug. 3, 2009), a case which, unlike Sony's cases, involved claims by an American plaintiff in its home forum for conduct abroad alleged to have had effects in the U.S.  *Id.* at *5, *22-24.  In *Bleu*, the defendants argued that the case should be dismissed on FNC grounds because of: the location of the defendants in China, the location of documents and witnesses in China, the location of all of the allegedly wrongful conduct in China, the manufacture of the products at issue in China, uncertainty as to whether certain non-party witnesses in China could be compelled to testify in the U.S., the

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR DISMISSAL ON FORUM NON CONVENIENS GROUNDS

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

inconvenience of bringing Chinese witnesses to testify in the U.S., the burden of translating and transporting the relevant documents, the alleged ability of plaintiff to get a fair hearing in China, and the alleged lack of an interest in the U.S. and California courts in the dispute.  In addition, the defendants there were all Chinese or Hong Kong residents.  Judge Snyder nevertheless rejected those arguments:

> Although BV-HKL has argued that litigation in this forum would be inconvenient, and that certain evidence and witnesses may be located in China or Hong Kong, plaintiff has presented countervailing arguments indicating that there may be significant evidence and witnesses in the United States, and that California has an interest in litigating the instant action.  Given that *forum non conveniens* is "*an exceptional tool to be employed sparingly*" the Court finds that BV-HKL has not met its burden of showing that dismissal is appropriate.

*Id.* at *24 (emphasis in original, quoting *Dole Food Co.*, 303 F.3d at 1118).  Notably, *Bleu* lacked any of the sensitive political issues that this case involves, and the countervailing factors in this case also go well beyond those that the Court in *Bleu* found sufficient for denying defendants' FNC motion – including the fact that here the documentary evidence and witnesses are spread throughout four different fora (the U.S., China, Japan, and Taiwan) and involve claims under the laws of four different countries.  And, unlike in *Bleu*, the moving Defendants here have been continuously and systematically availing themselves of the privileges and protections of the IP laws of the United States, in Sony's case for over 40 years.

This case is indistinguishable from *Dole Food* and *Bleu* in two important respects: (1) Plaintiff is a U.S. plaintiff filing in its home forum, and, (2) "the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state."  *Dole Food*, 303 F.3d at *1111* (reversing dismissal on FNC grounds).  These facts distinguish this case from all but one of the cases cited by Sony and its expert.  The single exception, *Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764 (9th Cir. 1991), is nothing like this case.  *See* Bf. 4-5.  In *Lockman*, the U.S. plaintiff had already appeared and was already participating in a separate and first-filed Japanese action in which the Japanese

13

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR DISMISSAL ON FORUM NON CONVENIENS GROUNDS

1   defendant – with whom the Plaintiff had "maintained a relationship for over 30 years"
2   – sought declaratory relief that it owned the Japanese copyright.  *Id.* at 767.  Plaintiff
3   conceded the dismissal of its copyright claims, but argued that its non-copyright
4   claims – which arose from the same conduct and which the Court found to be
5   inextricably intertwined with the copyright claims – should be allowed to proceed in a
6   bifurcated proceeding in the U.S.  Not surprisingly, the Court rejected that argument.
7   *Id.* at 770 (finding that "[i]f Lockman's noncopyright claims went forward, one of
8   TEAM's defenses would be that it owned the Japanese copyright to the Shinkaiyaku
9   Seisho. TEAM has demonstrated that the copyright issue is integral to Lockman's
10  remaining claims.").  Nothing remotely similar is at issue in this case.  Here, there is
11  no prior lawsuit pending in China, the Plaintiff had no prior dealings with Defendants,
12  and did not have any dealings in China with respect to the wrongs alleged.
13         An examination of the private and public interest factors in this case, shows that
14  each of these factors weighs against dismissal.

### 1.   The Private Interest Factors Do Not Favor Dismissal

#### a)   Deference to Plaintiff's Choice of Forum Weighs Against Dismissal

18         "Ordinarily a plaintiff's choice of forum will not be disturbed unless the 'private
19  interest' and the 'public interest' factors strongly favor trial in a foreign country."
20  *Boston Telecom*, 588 F.3d at 1206-07 (reversing dismissal on FNC grounds, holding
21  that district court gave insufficient deference to plaintiff's choice of its home forum)
22  (internal quotations omitted); *Piper Aircraft,* 454 U.S. at 256 ("[A] plaintiff's choice
23  of forum is entitled to greater deference when the plaintiff has chosen the home
24  forum.... When the home forum has been chosen, it is reasonable to assume that this
25  choice is convenient.  When the plaintiff is foreign, however, the assumption is much
26  less reasonable.").

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION
FOR DISMISSAL ON FORUM NON CONVENIENS GROUNDS

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

1    Nearly every case cited by Defendants and Defendants' expert in support of

2    their motion involved forum shopping by a foreign plaintiff seeking to take advantage

3    of more favorable U.S. rights and remedies, and the few that did not involved

4    plaintiffs who had gone to the foreign forum and been injured there.[4]  This is not such

5

6    [4] *See* cases cited in deLisle n.58: *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430, 127 S. Ct. 1184, 167 L. Ed. 2d 15 (2007) (Chinese

7    plaintiff); *Lu v. Air China*, 1992 WL 453646 (E.D.N.Y. Dec. 16, 1992) (Chinese plaintiff); *2002 Irrevocable Trust for Richard C. Hvizdak v. Huntington Nat. Bank*,

8    2008 WL 5110778 (M.D. Fla. Dec. 1, 2008) (denying FNC motion to dismiss to China, despite claims of fraud occurring in China); *In re Compania Naviera Joanna*

9    *S.A.*, 531 F. Supp. 2d 680 (D.S.C. 2007) (Chinese parties in dispute re events in Chinese waters and ship had never been to port in the U.S.); *S. Megga*

10   *Telecommunications Ltd. v. Lucent Technologies, Inc.*, 1997 WL 86413 (D. Del. Feb. 14, 1997) (Hong Kong plaintiff with manufacturing factories in the PRC suing

11   Malaysian company under PRC contract); *Guimei v. Gen. Elec. Co.*, 172 Cal. App. 4th 689 (2009) (foreign plaintiffs with no connection to California suing over air crash

12   in China); *China Gezhouba United Industries v. Robinson Helicopter Co.*, Sup. Ct. No. YC022805 (Sup. Ct. L.A. County, CA, Oct. 18, 2006) (Chinese plaintiff); *Group*

13   *Danone v. Kelly Fuli Zhong et al.*, Sup. Ct. No. BC372121 (Sup. Ct. L.A. County, CA, Feb. 27, 2009) (French plaintiff bringing suit against foreign defendant); *China*

14   *Tire Holdings Ltd. v. Goodyear Tire & Rubber Co.*, 91 F. Supp. 2d 1106, 1110 (N.D. Ohio 2000) (Chinese plaintiff with principal place of business in Hong Kong);

15   *Moskovitz v. Moskovitz*, 150 Fed Appx. 101 (2d Cir. 2005) (plaintiffs transacted business in Brazil bringing claims re property located in Brazil); *Leon v. Million Air,*

16   *Inc.*, 251 F.3d 1305 (11th Cir. 2001) (foreign plaintiffs); *Hotvedt v. Schlumberger*, 942 F.2d 294 (5th Cir. 1991) (plaintiff injured in Brazil while employed there); *Turedi v.*

17   *Coca-Cola*, 2009 WL 1956206 (2d Cir. July 7, 2009) (Turkish plaintiffs and declarations of Turkish law experts proclaiming the adequacy of the alternative forum

18   were uncontroverted); *Paolicelli v. Ford Motor Co.*, 289 Fed. Appx. 387 (11th Cir. 2008) (foreign plaintiffs); *Overseas Media v. Skvortsov*, 277 Fed. Appx. 92 (2d Cir.

19   2008) (two of the three plaintiffs were foreign companies); *In Re West Caribbean Crew Members*, 2009 WL 1974238 (S.D. Fla. May 14, 2009) (foreign plaintiffs);

20   *Dabbous v. American Express*, 2009 WL 1403930 (S.D.N.Y. May 8, 2009) (Egyptian plaintiff and plaintiff's job, which gave rise to the suit, was in Egypt); *Niv v. Hilton*

21   *Hotels Corp.*, 710 F. Supp. 2d 328 (S.D.N.Y. 2008) (foreign plaintiffs); *Wozniak v. Wyndham Hotels*, 2009 WL 901134 (N.D. Ill. Mar. 31, 2009) (premises liability case

22   where plaintiff's injury occurred while in Mexico); *Panama Shipping Lines, Inc. v. Ciramar Int'l Trading, Ltd.*, 2009 WL 742675 (S.D. Fla. March 20, 2009)

23   (Panamanian plaintiff) (incorrect case name in deLisle); *Stroitelstvo Bulgaria v. Bulgarian-American Enterprise Fund*, 598 F. Supp.2d 875 (N.D. Ill. 2009) (Bulgarian

24   plaintiff); *MBI Group v. Credit Foncier du Cameroun*, 558 F.Supp.2d 21 (D.D.C. 2008) (dispute arising from contract to be performed in Cameroon); *Vorbiev v.*

25   *McDonnell Douglas Helicopters*, 2009 WL 1765675 (N.D. Cal. June 18, 2009) (Russian plaintiff); *Caijano v. Occidental Petroleum*, 548 F.Supp.2d 823 (C.D. Cal.

26   2008) (plaintiffs are indigenous people of Peru); *Seales v. Panamanian Aviation Co.*, 2008 WL 544705 (E.D.N.Y. Feb. 26, 2008) (plaintiff had prior ties to Jamaica and

27   sued airline based on damages suffered at hands of Jamaican authorities who arrested him for bringing in handgun to Jamaica); *Irwin v. World Wildlife Fund*, 448 F.Supp.2d

28   29 (D.D.C. 2006) (foreign plaintiffs).

15

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION
FOR DISMISSAL ON FORUM NON CONVENIENS GROUNDS**

a case.  Plaintiff is a California company, located in Santa Barbara, and all of its business operations, property, servers, and employees are and have been located within the Central District of California since its inception in 1995.  Milburn Decl. ¶ 6.  Defendants cite no case that has ever been dismissed on FNC grounds involving an American plaintiff who had no significant contact with the outside forum regarding the matters at issue in the suit.

In order to overturn Plaintiff's choice of its home forum, Sony must make:

> [a] clear showing of facts which either (1) establish such oppression and vexation of a defendant as to be out of proportion to the plaintiff's convenience, which may be shown to be slight or nonexistent, or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative and legal problems.

*Altmann v. Republic of Austria*, 317 F.3d 954, 974 (9th Cir. 2002) *aff'd on other grounds*, 541 U.S. 677, 124 S. Ct. 2240, 159 L. Ed. 2d 1 (2004) (internal quotation omitted); *see also Koster v. (American) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524, 67 S. Ct. 828, 91 L. Ed. 1067 (1947) (same language).  Moreover, "[t]his showing must overcome the great deference due plaintiffs because a showing of convenience by a party who has sued in his home forum will usually outweigh the inconvenience the defendant may have shown."  *Ceramic Corp*, 1 F.3d at 949 (internal quotations omitted).  Sony has not come close to meeting this heavy burden.

> b)   The Residence of the Parties and Witnesses Weighs Against Dismissal

Plaintiff is an American company.  Sony is a Japanese corporation.  The other Defendants joining in Sony's motion are Taiwanese corporations, and the non-appearing Defendants are Chinese entities.  Witnesses may be located in all four of these countries.  The Ninth Circuit has held in circumstances identical to those presented here, that where the plaintiff's witness and documents were located within the U.S., but the defendants' witnesses and documents were spread throughout several different fora (*viz.*, "Washington, Toronto, and Montreal, possibly also England and

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

16

1  Switzerland"), this factors weighs in favor of the plaintiff.  *Caruth v. International*

2  *Psychoanalytical Ass'n*, 59 F.3d 126, 129 (9th Cir. 1995) (reversing dismissal for lack

3  of personal jurisdiction, stating that because "no particular forum would appear to be

4  especially convenient for [defendant]…. [t]his factor therefore favors exercise of

5  jurisdiction in California.");  *Boston Telecom*, 588 F.3d at 1210 (9th Cir. 2009)

6  (reversing dismissal on FNC grounds, stating that "[t]his is a case in which witnesses

7  are scattered around the globe").

8          As an initial matter, this case is not a witness intensive case.  The sources of

9  proof for the claims and defenses in this case will consist primarily of the physical

10 evidence in the software programs themselves (coupled with expert testimony

11 regarding the same), and documentary evidence that is in the possession of the parties.

12 As Plaintiff's expert explains, this is the norm in software piracy cases, particularly

13 those involving such widespread copying as alleged here (nearly 3,000 lines of code).

14 Halderman ¶ 38-39; *see also* Milburn 27-28.  At this stage, Plaintiff has no intention

15 of taking the testimony of persons located outside of the U.S., except through 30(b)(6)

16 depositions of the parties.  Fayer ¶ 6.  As a result, this factor does not have great

17 weight.  *See also Sinatra v. National Inquirer*, 854 F.2d 1191, 1199 (9th Cir. 1988)

18 (noting that the importance of the FNC factors analyzing the location of witnesses and

19 evidence have been discounted because "[m]odern advances in communications and

20 transportation have significantly reduced the burden of litigating in another country").

21 But what weight it does have favors Plaintiff.

22          The most important and essential of the witnesses in this case are located in the

23 United States.  All of Plaintiff's factual and expert witnesses reside in the United

24 States.  The most important witness, who first independently discovered the piracy at

25 issue, is a professor at the University of Michigan.  Dr. Halderman, his assistants in

26 performing his research, and his records are all located in the United States.  *See*

27 Halderman ¶ 2.  Defendants can easily retain experts in the U.S. to analyze the

28

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

17

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION
FOR DISMISSAL ON FORUM NON CONVENIENS GROUNDS**

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

program.  Moreover, Dr. Halderman has submitted a declaration stating that he would fear for his physical safety if required to testify in the China.  *Id.* pp. 10-11.  Mr. Milburn, the CEO and programmer of CYBERsitter, is also a key witness and has performed an independent analysis of the programs at issue, and he too has stated that he would fear testifying in China under the circumstances.  Milburn ¶ 23; *see Boston Telecom*, 588 F.3d at 1209 (finding that this factor weighs against dismissal where key witnesses would be reluctant to testify in an alternative forum for fear of personal safety).

Defendants' witnesses are also spread throughout several different countries.  The vast majority, and most likely *all*, of the foreign witnesses are Defendants or affiliates of Defendants in this action.  Sony clearly has access to the testimony of its Chinese affiliates, and it has submitted a declaration of its affiliate in support of its Motion.[5]  Declaration of Takashi Hagiwara.  Moreover, Defendants have failed to identify what specific witnesses in China would be necessary, and why their testimony would be necessary – *i.e.*, what relevant information they might have that would not be available from other sources, including the documentary and physical evidence.  Indeed, Sony and the other Defendants have failed to identify any foreign non-party witness whose testimony would be either necessary or desirable at all.[6]  Defendants have thus failed to provide specific information necessary for the Court to assess their claims of the scope and importance of foreign testimony in this action.  *See Boston Telecom*, 588 F.3d at 1209-10 (the court's "focus … should not rest on the number of

---

[5] Sony and the other moving Defendants suggest that they are not proper parties to this action because the copying and distribution of Green Dam was performed by their Chinese affiliates and agents.  Such a contention is irrelevant to the present Motion.  None of the moving Defendants has filed a motion to dismiss for lack of personal or subject matter jurisdiction or raised any other jurisdictional or pleading defect except FNC.  Plaintiff stands by the allegations in its Complaint, including that Defendants are joint tortfeasors with their Chinese agents and affiliates.

[6] Sony seems to assume that the Chinese Defendants are not parties because they have not yet appeared.  This is not true.  The Court granted Plaintiff's request to file its First Amended Complaint in order to proceed with service of the Chinese Defendants and Plaintiff is diligently pursuing service of the Chinese Defendants.

18

witnesses in each locale but rather the court should evaluate the materiality and importance of the anticipated witnesses' testimony…" and "the district court abused its discretion [because defendant] provided very little information that would have enabled the district court to understand why various witnesses were material to his defense") (internal quotations omitted).  And while it is unclear whether there are necessary witnesses residing in China, witnesses regarding Defendants' role in the distribution, their participation in the alleged conspiracy, and their knowledge, approval and/or direction of the actions of their affiliates clearly reside in Japan and Taiwan (and would be required regardless of the fate of Sony's Motion).

For all of these reasons, this factor weighs against dismissal.

c)    The Forum's Convenience to the Litigants Weighs Heavily Against Dismissal

Litigating this case in China would be prohibitively burdensome and expensive for Plaintiff.  Plaintiff is a small family-owned, Santa Barbara-based software company.  It has never conducted operations outside of the Central District and has never ventured into China.  It has no resources in China whatsoever.  As stated above, it is unlikely that Plaintiff could retain counsel in the PRC.  Even if it could, it would likely have to retain both Chinese and American counsel. *See Boston Telecom*, 588 F.3d at 1208 (weighing "the possibility that [Plaintiff] may have to retain two sets of counsel" to litigate in a foreign forum in assessing the convenience factor).  As stated in the declaration of Plaintiff's founder and CEO:

> Given the small nature of its operations, CYBERsitter could not afford to litigate this case outside of the United States.  If Court were to decide to grant the defendants' motion for forum non conveniens, CYBERsitter would not be able to file a case in the PRC.  As a practical matter, if defendants' motion were granted, CYBERsitter would be left without a forum in which to pursue the damages it has suffered.

Milburn Decl. ¶ 7. *See Brackett v. Hilton Hotels Corp.*, 619 F.Supp.2d 810, 820 (N.D. Cal. 2008) (holding that convenience factors favored the plaintiff, an individual, over the defendant multinational corporation, noting that "while the parties' relative

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

19

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR DISMISSAL ON FORUM NON CONVENIENS GROUNDS**

1  financial ability is not entitled to great weight, it is a relevant consideration").

2  By contrast, the moving Defendants are large multinational corporations that

3  use and enjoy the protections of American IP law and the goodwill of American

4  consumers on a daily basis.  They also have vastly greater resources in the U.S. than

5  Plaintiff has in China, including access to the offices, in-house counsel, and guidance

6  of their U.S. affiliates. *See*, *e.g.*, Fayer Ex. C (letter on behalf of Sony America Corp.).

7  Indeed, Sony's U.S. affiliates have offices in throughout southern California.  RJN ¶

8  33.  Moreover, since the moving Defendants are Japanese and Taiwanese corporations

9  seeking dismissal to the PRC, this lawsuit will not be litigated in their home forum

10  regardless of whether the FNC Motion is granted or denied.  The idea that Sony and

11  the other moving Defendants are inconvenienced by litigating in this Court is not

12  plausible.

13  Particularly in light of the disparity in financial and other resources between the

14  parties, this factor weighs heavily against dismissal.

15          d)     Access to Physical Evidence and Other Sources of Proof

16               Weighs Against Dismissal

17  As explained below, most of the important physical evidence in this case is

18  located in the U.S., and all potentially relevant physical evidence located outside the

19  U.S. (including any exculpatory evidence) is in the possession, custody or control of

20  the Defendants and/or their agents.  There is accordingly no barrier to obtaining all

21  relevant physical evidence in this case through discovery and submitting it to this

22  Court.  On the other hand, as explained below, there are enormous barriers to

23  obtaining discovery in the Chinese courts – even on parties to the suit, much less on

24  third parties – regardless of the location of the documents and evidence (whether

25  within China or without).  And even if the Chinese courts were to allow some limited

26  discovery to take place (which is by no means guaranteed), there is no guarantee that

27  any documents submitted by the parties will even be considered by the Chinese courts.

28

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION
FOR DISMISSAL ON FORUM NON CONVENIENS GROUNDS

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

As a result, this factor weighs heavily against dismissal.

The U.S. courts have broad discovery procedures, providing for the discovery of documentary evidence within the possession, custody or control of the parties and/or their agents regardless of whether such evidence is located within the U.S. or elsewhere.  The U.S. courts also provide for third party discovery both within the U.S. and in other countries, pursuant to international conventions and procedures.  As Sony's expert notes, China, like the U.S., is a party to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters.  deLisle ¶ 36.  As a result, access to physical evidence and other sources of proof in China is subject to the same standards of cooperation in China as in the U.S., and a party seeking documents in China for use in the U.S. must use the same channels as a party seeking documents in the U.S. for use in China.  As the Court noted in *Boston Telecom*:

> [I]f this case proceeds in California, [defendant] may seek these documents through procedures for international third-party discovery, such as those under the Hague Convention on Taking of Evidence Abroad in Civil or Commercial Matters.  Any court will necessarily face some difficulty in securing evidence from abroad, but these complications do not necessarily justify dismissal.

588 F.3d at 1208 (internal quotations omitted) (noting many of the key documents are likely to be in possession of the parties, and "[t]he comparative difficulties presented by litigation in either of the two potential jurisdictions are, at best, in equipoise").

Prof. deLisle notes that China, unlike the U.S., requires any requests for documents pursuant to the Hague Evidence Convention to be stated with particularity (¶ 83).  However, the availability of *any* discovery of documents in China pursuant to the Hague Convention for foreign litigants, is more than is guaranteed to any party in an action in the Chinese courts.  In the Chinese courts, a party has only the right to "collect and provide evidence," not to discovery on other parties, much less third parties.  Clarke ¶ 91.[7]  And even evidence that is collected and provided has no

---

[7] While Prof. deLisle notes that under the Chinese civil procedure the parties have the right to "collect and provide evidence," to "consult material relevant to their case" and to "copy relevant material and legal documents," (¶ 35), these rights should not be confused with a right to take discovery from other parties or from third parties.

21

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

1    guarantee of being considered by the Chinese courts.  *Id.* ¶ 92.  In China, the courts,

2    not the parties, are responsible for discovery, and the parties may not take or request

3    discovery except as specifically ordered by the court.  *Id.* ¶ 91.  As Sony's expert puts

4    it, "the PRC system is inquisitorial rather than adversarial and therefore provides

5    limited mechanisms for pretrial discovery and adjudication."  deLisle ¶ 82.  In short,

6    there is no guarantee that any inter-party discovery will take place in the Chinese

7    courts, much less the third party discovery that Sony cites as a basis for dismissal.

8         Moreover, even if some limited discovery takes place in the Chinese courts,

9    there is no guarantee that any documents submitted by the parties will be considered

10   by the courts.  While the parties have a right to "provide" their evidence to the court,

11   providing such evidence is no guarantee that it will be admitted or considered by the

12   court.  As detailed by Prof. Clarke, the Chinese courts often deny requests of parties

13   for the courts to consider even the most central evidence relevant to their case,

14   particularly in cases involving politically sensitive issues.  Clarke ¶ 92.  As just one

15   example, in a case involving the publication of a story in the *New York Times* that the

16   PRC found offensive, the court refused to hear the testimony of the key witness in the

17   case.  *Id.* ¶ 92.

18        There are thus significant barriers to obtaining and submitting relevant evidence

19   to the courts of China regardless of the location of that evidence, whether in China,

20   the U.S., Japan or elsewhere.  Particularly in light of the political sensitivity of this

21   case, the parties' discovery rights and evidentiary protections with respect to

22   documentary evidence are significantly greater in the U.S. courts.

23        As explained above, the sources of proof for the claims and defenses in this

24   case will consist primarily of the physical evidence in the software programs

25   themselves (coupled with expert testimony regarding the same), and documentary

26   evidence that is in the possession of the parties.  This is the norm in software piracy

27   cases, particularly those involving such widespread copying as alleged here (nearly

28

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

22

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION
FOR DISMISSAL ON FORUM NON CONVENIENS GROUNDS

04444\00001\174159.2

3,000 lines of code).  Halderman ¶¶ 38-39; *see also* Milburn ¶¶ 27-28.  Plaintiff's headquarters, intellectual property, officers, employees and servers are located in the U.S.  Milburn ¶ 6.  The Green Dam program has been obtained and preserved both by Plaintiff's expert and by Plaintiff's in-house programmers.  Halderman ¶ 12.  All of Plaintiff's evidence relevant to damages is in the U.S.  All overseas documentary evidence relating to damages – *i.e.*, the number of unauthorized copies distributed – is within the possession, custody or control of Defendants and their affiliates and agents. *See* Hagiwara Decl. (President of VAIO & Mobile of China, a division of Sony China).   All documentary evidence relating to Plaintiff's conspiracy claims is necessarily in Defendants' possession, custody or control (and some is already in Plaintiff's possession) – and a significant part of that evidence is likely to be located in Japan and Taiwan, not China.

e)      <u>Whether Unwilling Witnesses Can Be Compelled to Testify Weighs Heavily Against Dismissal</u>

The difficulties addressed above in obtaining and utilizing documentary evidence in the Chinese courts are even greater with respect to testimonial evidence. Parties do not have the right to present their own witnesses, much less to compel the testimony of adverse witnesses or third-party witnesses. Clarke ¶ 97.  Even testimony at trial is in the sole discretion of the Chinese courts and, as seen above, is subject to blatant abuses, particularly in politically sensitive cases such as this.  *Id.*  As Sony's expert notes, access to testimonial evidence in the PRC courts is quite limited (deLisle ¶ 82).  The Chinese courts often decide cases on the basis of documentary evidence alone (or, more accurately, whatever limited documentary evidence the court chooses to consider).  Clarke ¶ 99; *see* deLisle ¶ 34.  Even when testimony at trial is allowed, most often (approximately 85% of the time) the witnesses simply read their statements to the court without being subjected to cross-examination.   Clarke ¶¶ 99-100.

23

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

1    While Prof. deLisle notes that the Chinese courts do not traditionally recognize

2    the authority of foreign persons or attorneys to take depositions in China (¶ 84), this

3    does not mean that depositions are unavailable.  Insofar as depositions in China are

4    deemed necessary by any of the parties herein, they may be noticed pursuant to the

5    Hague Evidence Convention and conducted by Chinese local counsel.  *See Boston*

6    *Telecom*, 588 F.3d at 1208.

7    And while the parties could likely not compel third party witnesses in China to

8    appear at trial in the U.S., neither could the parties compel such third party witnesses

9    to appear at trial in China – indeed, they could not even compel testimony of other

10   parties or be assured of having their own witnesses heard.  As seen above, even key

11   witnesses that wish to testify at trial in the Chinese courts may not be allowed to

12   testify, particularly in sensitive cases such as this.  Clarke ¶ 92.

13   Moreover, all of the relevant witnesses are expected to be officers, employees

14   or agents of the Defendants and/or their affiliates, and can thus be produced at trial in

15   the U.S. by Defendants.  To the extent that the moving Defendants assert that the

16   testimony of the software developers is necessary or desirable: (1) as explained above

17   and in the declaration of Dr. Halderman, their testimony is unnecessary to resolve the

18   issues of copying in a software piracy case such as this, so absent further explanation

19   by Sony it is not clear what their testimony could add to the expert analysis of the

20   software; (2) the software developers are parties to this action and can thus be

21   compelled to appear at trial in the U.S.; and (3) to the extent that Sony is concerned

22   that the software developers might not participate in this action, it can notice their

23   depositions through the Hague Convention.  *Boston Telecom*, 588 F.3d at 1208.

24   Plaintiff has no witnesses outside of the U.S., thus Defendants can use the

25   normal subpoena channels in the U.S. to compel any adverse witnesses they wish to

26   compel, and Plaintiff has no intention at this point of seeking to compel the testimony

27   of any overseas witnesses, except pursuant to Rule 30(b)(6).

28

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION
FOR DISMISSAL ON FORUM NON CONVENIENS GROUNDS

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

The potential for prejudice to the parties in the respective fora shows that this factor weighs heavily in favor of the U.S. courts.  In the U.S. courts, the parties are assured of being able to secure the testimony of Plaintiff's witnesses and of the other party witnesses, and may use the Hague Convention to secure the testimony of any third party witnesses outside the U.S.  In the Chinese courts, by contrast, the parties are not even assured of being able to put on the testimony of their own witnesses at trial, let alone being able to cross-examine the witnesses of the other parties, much less third parties.

While neither the U.S. nor China is an ideal forum for obtaining testimonial evidence from each of the four countries where witnesses may be located, the equities tip decisively in favor of the U.S. courts on this factor.  *See Boston Telecom*, 588 F.3d at 1208 ("Any court will necessarily face some difficulty in securing evidence from abroad, but these complications do not necessarily justify dismissal.").

    f)    The Cost of Bringing Witnesses to Trial Weighs Against Dismissal

This factor weighs in favor of Plaintiff for the reasons stated above in connection with the convenience of the parties factor.  Witnesses are located in four countries.  All of Plaintiff's witnesses are located in the U.S.  Given the relative resources of the parties, it would be far more burdensome for Plaintiff to bring its witnesses to China than it would be for the Sony and the Taiwanese Defendants to bring any Chinese witnesses it might wish to present to the U.S. (and any of Defendants' Japan and Taiwan-based witnesses would have to travel to either China or the U.S. in any event).

    g)    The Enforceability of the Judgment Weighs Against Dismissal

As seen above, all of the moving Defendants herein have has systematically and continuously registered their IP in the U.S. in their own names for years, including the

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION
FOR DISMISSAL ON FORUM NON CONVENIENS GROUNDS

04444\00001\174159.2

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

1   rights to the use of the "Sony," "Acer," "Asus" and "BenQ" marks on computers in the

2   U.S.  They are thus the beneficiaries of those marks, and must necessarily exercise

3   control over those marks (or risk losing their trademark rights).  As a result, Plaintiff

4   may enforce a judgment against them here in the U.S.  And to the extent that a

5   judgment must be enforced in Japan or Taiwan, a U.S. judgment would be no less

6   enforceable than a Chinese judgment.

7             h)      "Other Practical Problems That Make Trial of a Case Easy,

8                     Expeditious and Inexpensive" Weigh Heavily Against

9                     Dismissal

10      In addition to the foregoing, all of the practical barriers to Plaintiff receiving a

11  fair hearing of its claims in China discussed in connection with the "adequate

12  alternative forum" prong of the FNC analysis above weigh *heavily* against dismissal in

13  the equitable balancing of the private interest factors.

14        **2.      The Public Interest Factors Do Not Favor Dismissal**

15             a)      The Local Interest of the Lawsuit Strongly Weighs Against

16                     Dismissal

17      Sony asserts that the interest of the United States in this controversy is

18  "nominal" and that the U.S. has "little interest in any of the legal principles

19  implicated." Bf. at 16.  That assertion is grossly inaccurate.

20      The United States and California have strong interests in protecting their

21  citizens from injury, particularly where, as here, the locus of that injury is entirely

22  within their borders.  *See*, *e.g.*, *Caruth v. International Psychoanalytical Ass'n*, 59

23  F.3d 126, 129 (9th Cir. 1995) ("California maintains a strong interest in providing an

24  effective means of redress for its residents [who have been] tortiously injured.")

25  (denying motion to dismiss for lack of personal jurisdiction).[8]  In the case of IP theft,

26

27      [8] Here again, Sony's cases are easily distinguishable.  *Villar v. Crowley Mar.
    Corp.*, 782 F.2d 1478, 1482 (9th Cir. 1986), involved clear forum-shopping claims by
28  Philippine citizens regarding a shipping accident that occurred off the coast of Saudi

26

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION
FOR DISMISSAL ON FORUM NON CONVENIENS GROUNDS

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

the Ninth Circuit has held that the locus of the injury is the place where the owner of the IP resides – here Santa Barbara, California. *Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316, 1322 n.2 (9th Cir. 1998) (holding that the harm occurs where owner of intellectual property is damaged and harm to a corporation takes place at its principal place of business).

The U.S. also has a paramount interest in the protection of American-owned intellectual property from infringement abroad and the U.S. government has made this issue one of its top priorities.  With the erosion of the traditional farming and manufacturing base of the U.S. economy, U.S. IP – the product of American creativity and ingenuity, from the software industry to the film industry – is the single-most important American product, and the importance of IP protection to the U.S. economy will only increase in the coming years and decades.  As stated in the U.S. Trade Representative's Office's ("USTR") most recent "Special 301 Report" to Congress – an annual Congressionally-mandated report detailing the status of the protection of U.S. IP rights abroad and identifying the global threats to those rights – "fostering innovation and creativity is essential to our prosperity and to the support of countless jobs in the United States."  RJN Ex. 31 at 5.  Thus:

> An important part of the mission of the United States Trade Representative is supporting and implementing the Administration's commitment to aggressively protect American intellectual property overseas. IPR infringement causes significant financial losses for rights holders and legitimate businesses around the world. It undermines key U.S. comparative advantages in innovation and creativity to the detriment of American businesses and workers.

*Id.*

The 301 Report contains a "Watch List" and a "Priority Watch List" of the top countries that threaten and violate U.S. IP rights abroad.  In the most recent 2010 Report, there are 29 countries on the Watch List and 11 countries on the Priority Watch List.  As in all recent 301 Reports, China tops the list of countries on the

Arabia, and *Murray v. British Broad. Corp.*, 906 F. Supp. 858, 862 (S.D.N.Y. 1995), involved clear forum-shopping claims by a British citizen against the BBC.

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR DISMISSAL ON FORUM NON CONVENIENS GROUNDS

04444\00001\174159.2

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

1    Priority Watch List.  According to the USTR, "the overall level of IPR theft in China

2    remains unacceptable."  Id. Ex. 31 at 19.  As just a few examples, the Report states:

3    > China's IPR enforcement regime remains largely ineffective and non-deterrent. Widespread IPR infringement continues to affect products, brands and

4    > technologies from a wide range of industries, including movies, music, publishing, entertainment software, apparel, athletic footwear, textile fabrics

5    > and floor coverings, consumer goods, chemicals, electrical equipment, and information technology, among many others.

6    > The U.S. copyright industries report severe losses due to piracy in China…. The theft of software, books and journals also remain key concerns. Business

7    > software theft by enterprises is particularly troubling as it not only results in lost revenues to software companies but also lowers the business costs of offending

8    > enterprises, and may give these firms an unfair advantage against their law-abiding competitors.

9    > Generally, IPR enforcement at the local level is hampered by poor coordination

10   > among Chinese government ministries and agencies, local protectionism and corruption, high thresholds for initiating investigations and prosecuting criminal

11   > cases, lack of training, and inadequate and non-transparent processes.

12   *Id.* at 19, 23.[9]

13       Since 2007, the U.S. itself has initiated two actions against China in the WTO

14   alleging violations of China's international treaty obligations, including allegations of

15   local favoritism and various "deficiencies in China's legal regime for protecting and

16   enforcing copyrights and trademarks on a wide range of products."  *Id.* at 16-17.  The

17   U.S. has thus far prevailed on virtually all of its claims.  *Id.*

18       Adding to these interests are the fact that, as detailed above, Sony Corporation

19   and the other moving Defendants have continuously and systematically availed

20   themselves of the privileges and protections of the IP laws of the United States for

21   many years, and in Sony's case for over four decades.

22       In short, if other jurisdictional prerequisites are met, as they are, there is no

23   doubt that the U.S. and California have tremendously strong interests in the

24   prosecution of this case.  Notably, none of the moving Defendants has challenged

25

26   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

     [9] The 301 Report notes Microsoft's victory in a large piracy case as a "positive

27   step."  However, as explained by Prof. Clarke, the instant case – involving a relatively small economic player in the Chinese market up against the Chinese government and

28   several large, economically important  companies – is readily distinguishable from both the Microsoft case and the Disney case cited by Prof. deLisle.  *See* Clarke ¶ 81.

28

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION
FOR DISMISSAL ON FORUM NON CONVENIENS GROUNDS

personal jurisdiction or subject matter jurisdiction, or made any other jurisdictional challenge to this case apart from their FNC motion.[10]

Sony's contention that China's interest outweighs that of the U.S. is both wrong and irrelevant.  It is irrelevant because this factor requires courts to assess only the strength of this forum's interest in the case, and not to balance this forum's interest against that of the proposed alternative forum:

> We need not hold, as [defendant] urges, that "California is the principal locus" of the case or that California "has more of an interest than any other jurisdiction" in order to conclude that California has a meaningful interest in this litigation. "[W]ith this [public] interest factor, we ask only if there is an identifiable local interest in the controversy, not whether another forum also has an interest."

*Boston Telecom*, 588 F.3d at 1212 (holding that district court abused its discretion on this factor) (citations omitted).  The vast majority of the governmental interest cases that Sony relies on are supplemental jurisdiction, comity or act of state doctrine cases, not FNC cases (see discussion below).  And while some cases have discussed the interests of the alternative forum in the context FNC cases, the Ninth Circuit has rejected that approach.

Sony's contention that "all of the alleged conduct at issue in this action was undertaken pursuant to a mandate issued by a ministry of the PRC" (Bf. 1) is false.  No copies of Green Dam were *ever* distributed pursuant to the PRC mandate because the mandate never took effect and was withdrawn in June 2009 prior to implementation.  Moreover, each and every one of the Defendants herein continued to engage in mass distribution of the infringing program well after the PRC's withdrawal of the mandate (and there are recent indications that some may still be distributing the illegal product).  Moreover, Sony's own expert states that China has little interest in this case, arguing that because the PRC "abandoned the Green Dam mandate" in June 2009, China no longer has a significant policy interest at stake that would warrant its

---

[10] Toshiba Corporation moved to dismiss for lack of personal jurisdiction, but that motion is now moot, as the claims against Toshiba have been dismissed pursuant to the parties' settlement agreement.

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR DISMISSAL ON FORUM NON CONVENIENS GROUNDS

04444\00001\174159.2

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

1  intervention in the case.  deLisle ¶ 66.

2       Sony's remaining contentions – that the PRC has an interest in determining its

3  own sovereign immunity, that it has an interest in determining whether the

4  manufacturers' illegal distribution is shielded from liability based on the fact that they

5  were conspiring with the PRC, that it has an interest in determining whether it

6  believes claims of infringement under foreign laws are preempted by its own laws,

7  and its interest in determining the scope of damages (*see* Bf. 17-18) – all effectively

8  boil down to a claim that an infringer has an interest in determining its own immunity

9  from liability, and that of its co-defendants.  While true, this is not an interest

10  sufficient to justify transfer of the suit and certainly does not outweigh the weighty

11  interests of the U.S. outlined above, including interests in protecting its citizens from

12  tortious conduct, in providing redress for injury to IP located in the U.S., and in

13  applying its own laws.  Further, the U.S. courts are perfectly competent to make

14  determinations about the sovereign immunity of the PRC (and that of any other parties

15  claiming immunity) under the Foreign Sovereign Immunities Act, as they regularly

16  do, to assess conflicts of laws – here involving, U.S. federal law, California state law,

17  and Chinese, Taiwanese and Japanese law – and to determine the scope of damages.

18       The cases Sony cites in support of its claims are readily distinguishable.  *See*

19  Bf. 18-19.  The principal case discussed by Sony, *China Tire Holdings Ltd. v.*

20  *Goodyear Tire & Rubber Co.*, 91 F. Supp. 2d 1106 (N.D. Ohio 2000), concerned an

21  allegedly wrongful attempt to procure a PRC government contract in the PRC: "The

22  present dispute arises from the parties' attempts to exploit the potential market for tires

23  in the Peoples Republic of China."  *Id.* at 1107.  It also involved blatant forum-

24  shopping by a Chinese plaintiff who filed suit in California, had its claims dismissed,

25  and then filed again in Ohio.  It is in this context that the court noted "[t]he interest of

26  a Chinese court to adjudicate matters regarding its own government contracts far

27  outweighs the small interest that American courts have in adjudicating this matter,

28

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION
FOR DISMISSAL ON FORUM NON CONVENIENS GROUNDS

04444\00001\174159.2

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

1  *which is limited to the fact that Defendants, who are seeking the alternative forum,*
2  *are American based corporations.*" *Id.* at 1111 (emphasis added).  The italicized
3  language was omitted from Sony's block quotation of *China Tire* on p. 19 of its brief.

4  Sony's other cases are similarly inapposite.  *Voda v. Cordis Corp.*, 476 F.3d
5  887, 904 (Fed. Cir. 2007), for example, merely held that the exercise of supplemental
6  jurisdiction over foreign patents in a patent infringement case was improper under 28
7  U.S.C. § 1367(c), *inter alia*, because under the "act of state" and comity doctrines the
8  courts may not nullify a foreign act of state, which is what the plaintiff's request to
9  declare the foreign patents invalid would require.  But nullifying an act of a foreign
10 state is very different from determining that an act of a foreign state contravenes a law
11 (be it foreign or domestic), as U.S. courts can and regularly do determine.  The instant
12 case is akin to the seminal U.S. Supreme Court case cited in *Voda*, *W.S. Kirkpatrick &*
13 *Co., Inc. v. Envtl. Tectonics Corp., Int'l*, 493 U.S. 400, 110 S. Ct. 701, 107 L. Ed. 2d
14 816 (1990), in which the Court held the act of state doctrine inapplicable because
15 "neither the claim nor any asserted defense requires a determination that Nigeria's
16 contract with Kirkpatrick International was, or was not, effective."  *Id.* at 406.  Here,
17 unlike in *Voda*, Plaintiff requests a determination that the PRC's actions were contrary
18 to U.S. and other laws, not to nullify the PRC's acts themselves (Plaintiff does not
19 contest the PRC's power to do any of the underlying acts in this case, including its
20 authority to issue the Green Dam mandate).  Similarly for Sony's remaining cases:
21 *Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 647 (2d Cir. 1956) (pre-*Piper*
22 case refusing to exercise supplemental jurisdiction over Canadian trademark claims
23 because "we do not think it the province of United States district courts to determine
24 the *validity* of trade-marks which officials of foreign countries have seen fit to grant")
25 (emphasis added); *Intercontinental Dictionary Series v. De Gruyter*, 822 F. Supp. 662,
26 681 (C.D. Cal. 1993) (forum-shopping case where defendants were all Australian and
27 "plaintiff is a citizen neither of the United States nor of California").

28

31

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION
FOR DISMISSAL ON FORUM NON CONVENIENS GROUNDS

1    In light of the important U.S. interests at stake in this case, the irrelevance of

2    the interests of the alternative forum under clear Ninth Circuit precedent, and the

3    relative weakness of China's interests, this factor strongly favors Plaintiff.

4            b)    The Court's Familiarity with Governing Law Weighs

5                 Against Dismissal

6    This case involves the interpretation of U.S. copyright law, California trade

7    secrets law, California unfair competition law, U.S. trade secrets and economic

8    espionage law, as well as the copyright laws of China, Japan and Taiwan.  The U.S.

9    Court's familiarity with and ability to interpret the governing law in this case is far

10   superior to that of the courts of the PRC.  This factor strongly favors retention of

11   jurisdiction.

12   California Trade Secrets Act claims have been asserted against all of the

13   Defendants in this action.  A favorable resolution of these claims may make it

14   unnecessary for the Court to even reach the foreign copyright law claims under

15   Chinese, Japanese and Taiwanese law.  Moreover, while the U.S. copyright claims are

16   asserted only against the PRC and Chinese developers, insofar as the other Defendants

17   are found to have conspired with the PRC and developers, they may be liable for PRC

18   and developers' violations, since a conspiracy renders each participant "responsible as

19   a joint tortfeasor for all damages ensuing from the wrong, irrespective of whether or

20   not he was a direct actor and regardless of the degree of his activity."  *Filip v.*

21   *Bucurenciu,* 129 Cal.App.4th 825, 837 (2005) (affirming judgment of conspiracy,

22   stating that "[c]onspiracy is … a legal doctrine that imposes liability on persons who,

23   although not actually committing a tort themselves, share with the immediate

24   tortfeasors a common plan or design in its perpetration") (internal quotations omitted).

25   With respect to the claims under Chinese, Japanese and Taiwanese law, the

26   federal courts of the United States are the best and most experienced courts in the

27   world at handling complex international disputes.  The federal courts are specifically

28

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

32

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION
FOR DISMISSAL ON FORUM NON CONVENIENS GROUNDS

1   empowered to interpret foreign laws and assess and decide claims under foreign laws.

2   Fed. R. Civ. P. 44.1 ("In determining foreign law, the court may consider any relevant

3   material or source, including testimony, whether or not submitted by a party or

4   admissible under the Federal Rules of Evidence.").  The U.S. courts regularly handle

5   complex cases involving the interpretation of foreign laws, including Chinese lawas

6   evidenced by the cases in which Sony's own expert has been involved.   *See*, *e.g.*, *Lou*

7   *v. Otis Elevator Co.*, 77 Mass.App.Ct. 571, 584 n.20 (Sept. 3, 2010) (case involving

8   detailed interpretation of aspects of Chinese tort law, including damage and pre-

9   judgment interest rules); *Lehman Bros. Commercial Corp. v. Minmetals Intern. Non-*

10   *Ferrous Metals Trading Co.*, 179 F.Supp.2d 118, 140 (S.D.N.Y. 2000) (case

11   involving detailed interpretation of Chinese corporate and securities laws).  Federal

12   courts have denied motions for FNC in copyright cases even where *only* claims under

13   foreign copyright laws were asserted.   *See*, *e.g.*, *London Film Productions Ltd. v.*

14   *Intercontinental Communications, Inc.*, 580 F. Supp. 47, 50 (S.D.N.Y. 1984) (denying

15   FNC motion where British plaintiff sued American defendant for violations of South

16   American copyright laws occurring in Chile, Venezuela, Peru, Ecuador, Costa Rica

17   and Panama, stating that while "it is true that this case will likely involve the

18   construction of at least one, if not several foreign laws … the need to apply foreign

19   law is not in itself reason to dismiss or transfer the case").

20       Here, the fact that China, Japan and Taiwan are all civil law countries greatly

21   simplifies this Court's task in interpreting the relevant law.  To assist in this task, both

22   Plaintiff and Sony have hired some of the most prominent Chinese legal experts in the

23   world.  Indeed, Sony's expert has already set forth in detail Sony's interpretation of

24   almost all of the provisions of Chinese copyright law at issue in this action in his

25   declaration.  deLisle ¶¶ 13-21.

26       By contrast, the Chinese courts are ill-suited to hear the claims at issue in this

27   litigation.  It is undisputed, as Sony's expert has testified, that Plaintiff's claims under

28

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

33

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION
FOR DISMISSAL ON FORUM NON CONVENIENS GROUNDS**

U.S., Japanese and Taiwanese law could be brought in the courts of the PRC.  deLisle Decl. ¶¶ 25-28 (stating that "Chinese [choice of law] rules look to the law of the place of the infringing act or the place where the harm occurs" and "[a] Chinese court could also determine that non-PRC law applies and governs some of the adjudicable claims in the [instant] case").  However, because the Chinese courts employ a civil law system, they have little, if any, experience or familiarity with the application of the common-law precedential system that applies to Plaintiff's U.S. law claims.  Chinese courts also have little experience adjudicating complex claims under foreign laws. The prospect of combing through hundreds or thousands of pages of foreign caselaw on various aspects of U.S. federal and state law (all of which would likely have to be translated), presents a formidable and likely impossible task for a Chinese court with little or no relevant experience.

This factor also favors the Plaintiff.

c)  <u>Burden on Local Courts and Juries and Congestion in the Court Do Not Support Dismissal</u>

Because the U.S. interest in resolving this dispute is great, and because recent cases transferred to the PRC under the FNC have experienced extraordinary delays (*see* Clarke ¶¶ 63-69), these factors favors retention of jurisdiction.

d)  <u>Costs of Resolving a Dispute Unrelated to This Forum Do Not Support Dismissal</u>

This dispute is not unrelated to this forum.  Plaintiff is a California company whose U.S. IP Defendants knowingly misappropriated.  As stated above, the interests of California and the U.S. in this dispute are great.  This factor supports Plaintiff.

In sum, each of the public and private interest factors weighs against dismissal and the equitable balancing decisively favors Plaintiff.

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR DISMISSAL ON FORUM NON CONVENIENS GROUNDS

04444\00001\174159.2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

## C.   Defendants' Unclean Hands Foreclose Them From Equitable Relief

Because FNC is an equitable doctrine, Defendants are in no position to invoke this doctrine given their knowing, widespread copying and distribution of Plaintiff's IP long after they knew that the IP they were distributing was stolen from Plaintiff. Defendant's unclean hands and inequitable conduct with respect to the very matters at issue in this Motion make their request for equitable relief inappropriate. *Chitkin v. Lincoln Nat. Ins. Co.*, 879 F. Supp. 841, 853 (S.D. Cal. 1995) (inequitable conduct "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief") (quoting *Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.,* 324 U.S. 806, 814, 65 S.Ct. 993, 89 L.Ed. 1381 (1945)).

## V.   CONCLUSION

For the reasons stated herein, Sony's motion for dismissal on grounds of *forum non conveniens* should be denied in its entirety.


DATED:  October 11, 2010              GIPSON HOFFMAN & PANCIONE
                                      A Professional Corporation
                                      GREGORY A. FAYER
                                      ELLIOT B. GIPSON


                                      By____/s/  Gregory A. Fayer_____
                                          GREGORY A. FAYER
                                      Attorneys for Plaintiff CYBERsitter, LLC
                                      d/b/a Solid Oak Software

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION
FOR DISMISSAL ON FORUM NON CONVENIENS GROUNDS

04444\00001\174159.2