1  KARIN G. PAGNANELLI (SBN 174763)
   kgp@msk.com
2  MARC E. MAYER (SBN 190969)
   mem@msk.com
3  MITCHELL SILBERBERG & KNUPP LLP
   11377 West Olympic Boulevard
4  Los Angeles, California 90064-1683
   Telephone:   (310) 312-2000
5  Facsimile:   (310) 312-3100

6  Attorneys for Defendant
   SONY CORPORATION, a Japanese
7  Corporation

8

9                UNITED STATES DISTRICT COURT

10               CENTRAL DISTRICT OF CALIFORNIA

11                     SOUTHERN DIVISION

12

13  | CYBERsitter, LLC, a California limited | Case No. CV 10-0038 JST (SHx) |
    liability company, d/b/a Solid Oak

14  Software,                                The Honorable Josephine Staton Tucker

15              Plaintiff,                   **REPLY MEMORANDUM OF**
                                             **POINTS AND AUTHORITIES IN**
16          v.                               **SUPPORT OF MOTION OF**
                                             **DEFENDANT SONY**
17  THE PEOPLE'S REPUBLIC OF                 **CORPORATION TO DISMISS THE**
    CHINA, a foreign state; ZHENGZHOU        **ACTION ON GROUNDS OF *FORUM***
18  JINHUI COMPUTER SYSTEM                   ***NON CONVENIENS***
    ENGINEERING LTD., a Chinese
19  corporation; BEIJING DAZHENG
    HUMAN LANGUAGE                           **[Reply Declaration of Jacques deLisle**
20  TECHNOLOGY ACADEMY LTD., a               **Filed Concurrently Herewith]**
    Chinese corporation; SONY
21  CORPORATION, a Japanese                  Date:      November 8, 2010
    corporation; LENOVO GROUP                Time:      10:00 a.m.
22  LIMITED, a Chinese corporation;          Ctrm.:     10A (Santa Ana Courthouse)
    TOSHIBA CORPORATION, a Japanese
23  corporation; ACER INCORPORATED,
    a Taiwanese corporation; ASUSTeK
24  COMPUTER INC., a Taiwanese
    corporation; BenQ CORPORATION, a
25  Taiwanese corporation; HAIER GROUP
    CORPORATION, a Chinese
26  corporation; DOES 1-10, inclusive,

27              Defendants.

28

Mitchell
Silberberg &
Knupp LLP

3078422.1

# **TABLE OF CONTENTS**

**Page(s)**

Introduction .................................................................................................. 1

I.    PLAINTIFF CANNOT ESTABLISH THAT CHINESE COURTS ARE SO INADEQUATE THAT THEY OFFER "NO REMEDY AT ALL." ............................................................. 3

II.   THE PRIVATE INTEREST FACTORS OVERWHELMINGLY FAVOR DISMISSAL. ............................... 9

    A.   Plaintiff's Residence Is Not Entitled To Overriding Weight. ........................................................................ 9

    B.   Plaintiff Cannot Credibly Dispute That The Vast Majority Of Relevant Witnesses And Documents Are In China. ............................................................................. 12

    C.   Plaintiff's Purported Size And Relative Financial Condition Do Not Outweigh The Burden And Prejudice To Defendants. ...................................................... 16

III.  THE PUBLIC INTEREST FACTORS OVERWHELMINGLY FAVOR DISMISSAL. ......................................... 18

    A.   Plaintiff Grossly Overstates This Court's Interest. ........... 18

    B.   This Court Cannot Ignore China's Substantial Interests. ... 21

    C.   Plaintiff Misconstrues The Nature Of The Case And The Relevant Laws To Be Applied. ........................................ 23

Conclusion ................................................................................................ 25

# **TABLE OF AUTHORITIES**

**Page(s)**

## **CASES**

Altmann v. Republic of Austria,
  317 F.3d 954 (9th Cir. 2002) ........................................................................ 15

Bleu Prods. Inc. v. Bureau Veritas Consumer Prod. Servs. Inc.,
  No. 08-2591, 2009 WL 2412413 (C.D. Cal. Aug. 3, 2009) ....................... 11

Blimpie Int'l, Inc. v. ICA Menyforetagen AB,
  No. 96-3082, 1997 WL 143907 (S.D.N.Y. March 25, 1997) .............. passim

Borden, Inc. v. Meiji Milk Prods. Co.,
  919 F.2d 822 (2d Cir. 1990) ........................................................................... 7

Boston Telecom Group, Inc. v. Wood,
  588 F.3d 1201 (9th Cir. 2009) ..................................................................... 21

Capitol Records, LLC v. VideoEgg, Inc.,
  611 F. Supp. 2d 349 (S.D.N.Y. 2009) ........................................................ 13

Carijano v. Occidental Petroleum Corp.,
  548 F. Supp. 2d 823 (C.D. Cal. 2008) ........................................................ 24

Caruth v. Int'l Psychoanalytical Ass'n,
  59 F.3d 126 (9th Cir. 1995) ......................................................................... 15

CCS Int'l, Ltd v. ECI Telesystems, Ltd.,
  No. 97-4646, 1998 WL 512951 (S.D.N.Y. Aug. 18, 1998) ................... 16, 25

China Tire Holdings Ltd. v. Goodyear Tire and Rubber Co.,
  91 F. Supp. 2d 1106 (N.D. Ohio 2000) ....................................................... 22

Compania Naveria Joanna SA v. Koninklijke Boskalis Westminster
  NV,
  569 F.3d 189 (4th Cir. 2009) ......................................................................... 5

Cooper v. Sony Music Ent., Inc.,
  No 01-0941, 2002 WL 391693 (S.D. Tex. Feb. 22, 2002) .......................... 24

Creative Tech., Ltd. v. Aztech Sys. Pte, Ltd.,
  61 F.3d 696 (9th Cir. 1995) ..................................................................... 4, 13

1

2

### **TABLE OF AUTHORITIES**
### (continued)

**Page(s)**

3

Crosstown Songs U.K. Ltd. v. Spirit Music Group, Inc.,
  513 F. Supp. 2d 13 (S.D.N.Y. 2007) ..................................................... 19, 22

DeFazio v. Hollister Employee Share Ownership Trust,
  406 F. Supp. 2d 1085 (E.D. Cal. 2005) ................................................. 17

Dole Food Co., Inc. v. Watts,
  303 F.3d 1104 (9th Cir. 2002) ............................................................... 10, 11

Europe & Overseas Commodity Traders, S.A. v. Banque Paribas
      London,
  940 F. Supp. 528 (S.D.N.Y. 1996) ........................................................ 13

First Union Nat'l Bank v. Paribas,
  135 F. Supp. 2d 443 (S.D.N.Y. 2001) ................................................... 10

Guimei v. Gen. Elec. Co.,
  172 Cal. App. 4th 689 (2009) ................................................................ 25

Jarvis v. K2 Inc.,
  486 F.3d 526 (9th Cir. 2007) ................................................................. 20

LaSala v. Bank of Cyprus Pub. Co., Ltd.,
  510 F. Supp. 2d 246, 258 (S.D.N.Y. 2007) .......................................... 13

Lockman Found. v. Evangelical Alliance Mission,
  930 F.2d 764 (9th Cir. 1991) ...........................................................passim

Lueck v. Sundstrand Corp.,
  236 F.3d 1137 (9th Cir. 2000) ............................................................... 16

Marra v. Papandreou,
  59 F. Supp. 2d 65 (D.D.C. 1999) .......................................................... 7

Mujica v. Occidental Petroleum Corp.,
  381 F. Supp. 2d 1134 (C.D. Cal. 2005) ................................................ 8

Murray v. British Broad. Corp.,
  81 F.3d 287 (2d Cir. 1996) ...........................................................17, 19, 22

Nai-Cho v. Boeing Co.,
  555 F. Supp. 9 (N.D. Cal. 1982) ........................................................... 18

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

3078422.1

iii

## **TABLE OF AUTHORITIES**
### **(continued)**

**Page(s)**

Panavision Int'l, L.P. v. Toeppen,
  141 F.3d 1316 (9th Cir. 1998)..................................................................20

Piper Aircraft Co. v. Reyno,
  454 U.S. 235 (1981) ...............................................................4, 10, 16, 23

PT United Can Co. v. Crown, Cork & Seal Co.,
  138 F.3d 65 (2d Cir. 1998)......................................................................5

Satz v. McDonnell Douglas Corp.,
  244 F.3d 1279 (11th Cir. 2001) ..............................................................6

Scottish Air Int'l, Inc. v. British Caledonian Group, PLC,
  81 F.3d 1224 (2d Cir. 1996)..................................................................13

Silvaco Data Sys. v. Intel Corp.,
  184 Cal. App. 4th 210 (2010)................................................................25

Sinatra v. Nat'l Enquirer,
  854 F.2d 1191 (9th Cir. 1998)...............................................................17

Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.,
  549 U.S. 422 (2007) ...............................................................................5

Subafilms, Ltd. v. MGM-Pathe Commc'ns. Co.,
  24 F.3d 1088 (9th Cir. 1994).................................................................20

Tang v. Synutra Int'l, Inc.,
  No. 09-0088, 2010 WL 1375373 (D. Md. March 29, 2010).................4, 7, 13

Vanity Fair Mills, Inc. v. The T. Eaton Co.,
  234 F.2d 633 (2d Cir. 1956).........................................................10, 21, 23

Mitchell
Silberberg &
Knupp LLP

3078422.1

iv

**Introduction**

Plaintiff's Opposition memorandum is long on rhetoric, suspicion, and speculation, but short on factual support and legal authority.  In fact, nothing in Plaintiff's Opposition challenges any of the basic, critical facts that make China the only logical forum for this action:

- The conduct at issue – namely, the development, sale, and distribution of Green Dam – took place entirely in China.  Thus, the case arises largely (if not entirely) under Chinese law and Plaintiffs' claims under U.S. law are tangential or nonexistent.

- The conduct of the government of the PRC, including the Green Dam Mandate, is at the heart of Plaintiff's claims, and the lawsuit will involve complex issues of Chinese copyright law and sovereign immunity.  The issues to be decided in this lawsuit also may impact those doing business in China, including the disposition and potential future liability of distributors of Green Dam within China.

- None of the defendants is a U.S. entity, and none of the Foreign Manufacturers participated in the creation of Green Dam (Plaintiff alleges this was done in China by two Chinese defendants, in conjunction with the PRC) or distributed Green Dam in the United States.

- Sony Corporation is not a proper defendant in this case, since it did not distribute or sell VAIO computers in China.  Its Chinese subsidiary, Sony China, has not been sued and is not subject to jurisdiction here.  This also is true of the other Foreign Manufacturers (Acer, ASUSTeK, and BenQ).

Plaintiff largely ignores these compelling issues, each of which individually makes dismissal appropriate and all of which together make the case for dismissal overwhelming.  Instead, Plaintiff dwells on irrelevancies, such as the merits of its allegations that Cybersitter code is contained in Green Dam and unrelated patent and trademark filings by the Foreign Manufacturers.  Plaintiff also makes the misguided policy argument that U.S. courts should hear any case brought by an

Mitchell
Silberberg &
Knupp LLP

3078422.1

1

American plaintiff alleging infringement of its copyright in another country by foreign defendants to prevent "disastrous effects on American IP."  Opp'n at 5.  This is not the law, and for good reason:  Plaintiff's argument goes too far, and would require the United States federal courts to act as "world courts" for copyright infringement claims abroad anytime a plaintiff claimed not to have the resources to litigate in the foreign forum.

Ignoring the strong legal precedent cited by Sony in its moving papers, Plaintiff does not cite a single case in which a United States court denied a *forum non conveniens* motion in a case alleging acts of copyright infringement that took place ***entirely abroad.***  (In fact, Plaintiff does not cite a single *forum non conveniens* case involving copyrights at all.)  Nor does it provide any credible explanation as to why a court in China is incapable of handling this dispute (as opposed to abstract, hypothetical and unsupported fears of possible "retaliation" or "corruption"), and tellingly, ***Plaintiff does not cite a single case in which a court held that China was an inadequate forum.***

Plaintiff also does not explain why litigation in China would be unduly burdensome for Plaintiff (which admits that it will be required to travel to China for depositions or evidence-gathering no matter where the case proceeds), or why the inconvenience of having two percipient witnesses travel to China justifies forcing six Foreign Manufacturers, two Chinese software developers, and the government of the PRC to defend a lawsuit in the United States for conduct that took place entirely in China pursuant to a Chinese government mandate.

Plaintiff's other contentions are equally infirm and logically flawed.  For example:

●  Although Plaintiff speculates (without supporting evidence) that the importance of this matter to China will cause Chinese "extra-judicial authorities" to exert influence over the case, preventing Plaintiff from obtaining a fair hearing, Plaintiff actually takes the opposite view when it is convenient, conceding that

China "no longer has a significant policy interest at stake" because the Green Dam Mandate was withdrawn (Opp'n at 29), underscoring that any claims of prejudice and persecution are baseless and overreaching.

- Plaintiff's argument that the presence of witnesses and documents in China is irrelevant or immaterial cannot withstand scrutiny. Even if, as Plaintiff claims, its **own** witnesses are located in the United States and it does not plan to call many witnesses (Opp'n at 17-18), this ignores the many substantive allegations that the Foreign Manufacturers must defend, using witnesses and documents located in China. Plaintiff's suggestion that all of the witnesses and information in China are unimportant is disingenuous.

- Plaintiff argues that some witnesses may be employed by or within the control of the Foreign Manufacturers, but fails to address the burden of requiring these witnesses to testify in the United States. Plaintiff also ignores the unfairness of forcing this burden on parties that had no involvement in the creation of Green Dam or the issuance of the Green Dam Mandate, and are not alleged to have engaged in any infringing (or tortious) activities in the United States.

- Plaintiff confuses the issue of personal jurisdiction with *forum non conveniens*, claiming that by registering trademarks and patents that have nothing to do with this case the Foreign Manufacturers have "availed themselves" of the benefits of United States law.

In sum, it is difficult to conceive of a case in which the balance of interests more strongly favors litigation elsewhere, and Plaintiff's Opposition does nothing to change this. The Court should grant Sony Corporation's Motion.

# I.   PLAINTIFF CANNOT ESTABLISH THAT CHINESE COURTS ARE SO INADEQUATE THAT THEY OFFER "NO REMEDY AT ALL."

Plaintiff does not dispute that because each of the defendants that has appeared in this action has agreed not to contest personal jurisdiction in China and to toll the statute of limitations if Cybersitter were to file this lawsuit there, China

is an available alternative forum.  That is sufficient to satisfy the threshold "adequacy" prong.  Lockman Found. v. Evangelical Alliance Mission, 930 F.2d 764, 768 (9th Cir. 1991) ("Because the record shows that [defendant] has agreed to submit to Japanese jurisdiction . . . the threshold test [of adequacy] is satisfied.").  Plaintiff also concedes that China's intellectual property laws are well developed (FAC ¶¶ 90-91)[1] and comply with the Berne Convention (id. ¶ 90) – indeed, Plaintiff has sued all of the defendants under Chinese copyright law.  See Lockman, 930 F.2d at 768 (forum is adequate if it offers the plaintiffs a remedy for their losses); see also Creative Tech., Ltd. v. Aztech Sys. Pte, Ltd., 61 F.3d 696, 701 (9th Cir. 1995) ("[T]he Singapore Copyright Act offers Creative an adequate alternative remedy independent of United States copyright law.").  Finally, Plaintiff acknowledges that the threshold bar for "adequacy" is "minimal" (Opp'n at 4), and that a plaintiff may not defeat a *forum non conveniens* motion merely by showing that the alternative forum is "less favorable" to the plaintiff (Opp'n at 5-6).  Piper Aircraft Co. v. Reyno, 454 U.S. 235, 250-51 (1981).

Plaintiff's entire argument thus is that this case presents the "rare circumstance" in which "the remedy provided [in the alternative forum]…is so clearly inadequate or unsatisfactory that it is **no remedy at all**."  Lockman, 930 F.2d at 768 (emphasis added).  Initially, Plaintiff misconstrues the parties' respective burdens.  Where, as here, the defendant has established the existence of an available alternative forum it need then only assert a "justifiable belief" that the alternative forum is "adequate."  Tang v. Synutra Int'l, Inc., No. 09-0088, 2010 WL 1375373, at *8, 12 (D. Md. March 29, 2010).  Once that threshold burden is met, a court need not weigh competing expert declarations, need not find that the

---

[1] On September 27, 2010, Plaintiff filed its First Amended Complaint ("FAC").  The First Amended Complaint did not change any of the substantive allegations, but merely removed references to Taiwan as the "Republic of China."  This Motion applies to both the Complaint and FAC.  While citations to the Complaint and FAC are interchangeable, because the FAC is the operative pleading, all citations in this memorandum are to the FAC, rather than the initial Complaint.

Mitchell
Silberberg &
Knupp LLP

3078422.1

4

1   alternative forum is an "ideal" forum, and should not "cast … aspersions on

2   foreign judicial systems absent a substantial showing of a lack of procedural

3   safeguards"  Id., at *9-10.  Rather, it then is the *plaintiff's* "substantial" burden to

4   prove that the available alternative forum is so inadequate as to provide it with no

5   remedy at all.  See <u>PT United Can Co. v. Crown, Cork & Seal Co.</u>, 138 F.3d 65, 73

6   (2d Cir. 1998) ("considerations of comity preclude a court from adversely judging

7   the quality of a foreign justice system absent a showing of inadequate procedural

8   safeguards").  Plaintiff has not met this substantial burden.

9        Plaintiff largely ignores or casually disregards the dozens of cases that have

10   found China to be an adequate alternative forum in the context of *forum non*

11   *conveniens* motions.  See, e.g., <u>Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping</u>

12   <u>Corp.</u>, 549 U.S. 422, 435 (2007) (Supreme Court concluded that dismissal in favor

13   of Chinese forum was "a textbook case for immediate *forum non conveniens*

14   dismissal"); <u>Compania Naveria Joanna SA v. Koninklijke Boskalis Westminster</u>

15   <u>NV</u>, 569 F.3d 189, 205 (4th Cir. 2009) (dismissing action where Chinese forum

16   provides "analogous" remedy to that provided by a U.S. forum).  While Plaintiff's

17   expert discounts many of these cases as "less supportive than they are represented

18   to be" (Clarke Decl. ¶ 132), neither Plaintiff nor Clarke cites a single case holding

19   that China is an inadequate forum.  Opp'n at 6-12.

20        Much of Clarke's declaration is speculative, premised solely on abstract and

21   hypothetical possibilities, without any concrete evidence concerning the facts and

22   circumstances of this case.  For example, Clarke hypothecates that Plaintiffs are

23   unlikely to receive a fair trial because political interference with court decisions

24   "remains ***possible***" (Clarke Decl. ¶¶ 46, 78; emphasis added), and there is "no

25   assurance" that it will not occur (id. ¶ 61).  Often, Clarke's conclusions rely on

26   blanket assertions that the entire Chinese legal system is susceptible to

27   "interference" or "corruption," which he supports with very few random, unrelated

28   examples presumably culled out from the thousands of cases litigated in China

Mitchell
Silberberg &
Knupp LLP

3078422.1

5

1   each year.  Even Clarke admits, as he must, that the few examples he cites "do *not*
2   prove how all Chinese courts handle the general run of cases" and are only
3   "*suggestive* of the problems that *can occur*."  (id. ¶ 70) (emphasis added).  The
4   problems that Clarke identifies are vastly overstated, and his views are not shared
5   by the academic community (including the very sources he cites).  Reply
6   Declaration of Jacques deLisle ("deLisle Reply Decl."), ¶¶ 7-18.  There is no
7   reason to conclude that Plaintiff will not receive a fair, unbiased trial in this case,
8   and, in fact, there are mechanisms in place to ensure fairness and impartiality.  Id.,
9   ¶¶ 19, 23-26.  There also is no reason to believe that any extrajudicial actor will
10  interfere in the case, or tamper with the decision-making of the high-level court
11  that would hear this case.  Id., ¶¶ 27-33.

12      Clarke's claim that "it would be difficult for Chinese attorneys to represent
13  Plaintiff in such a politically charged case, if indeed they dared to take the case at
14  all" (id. ¶ 103), is speculative, unpersuasive and unsupported.  That this case
15  involves a mandate of the MIIT does not make it "politically charged," and there is
16  a vast difference between this intellectual property dispute and the cases referenced
17  by Clarke (involving, for example, the Sichuan earthquake or Falun Gong).  See
18  deLisle Reply Decl., ¶ 51-63.  Plaintiff also does not present any evidence that it is
19  an "unpopular client" or that this is a "disfavored" case.  See Opp'n at 10.  In fact,
20  it appears that Plaintiff has never even *consulted* an attorney in China concerning
21  its case – far less attempted to retain counsel in China – which is surprising given
22  the nature of the case and Plaintiff's reliance on Chinese law.  There is no evidence
23  that any lawyer in China has been harassed, threatened, or punished in connection
24  with this matter, far less "instructed" not to take this case.

25      Ultimately, Clarke's declaration is an unbalanced critique (indeed,
26  indictment) of the entire Chinese legal system, of the kind that courts have
27  consistently rejected in deciding *forum non conveniens* motions.  Clarke ultimately
28  concludes that because Chinese courts lack the same types of constitutional

Mitchell
Silberberg &
Knupp LLP

3078422.1

6

protections and administrative procedures that are present in the United States, it is "inadequate" in this case. In addition to overstating or mischaracterizing the facts (see generally deLisle Reply Decl.), the examples Clarke cites (a court refusing to accept jurisdiction of a case (¶ 72); delays in scheduling trial dates (¶¶ 68, 73); and three judges accused of bribery and corruption over an unspecified period of time (¶¶ 82-86) are exactly the types of issues that courts repeatedly have held will ***not*** suffice to overcome a *forum non conveniens* motion. See Satz v. McDonnell Douglas Corp., 244 F.3d 1279, 1283 (11th Cir. 2001) ("fear of delays in the Argentine courts do not render Argentina an inadequate forum"). And Clarke's assertion that China's discovery, evidence-gathering, and trial procedures are different from those available in the United States (Clarke Decl. ¶¶ 91-103) is wholly irrelevant. Borden, Inc. v. Meiji Milk Prods. Co., 919 F.2d 822, 829 (2d Cir. 1990) ("[S]ome inconvenience or the unavailability of beneficial litigation procedures similar to those available in the federal district courts does not render an alternative forum inadequate."); Marra v. Papandreou, 59 F. Supp. 2d 65, 73-74 (D.D.C. 1999) ("A foreign forum is not inadequate because of asserted deficiencies in its discovery rules generally or its documentary discovery rules in particular.").

Plaintiff's (and its expert's) claims of "bias," "corruption," "delay" and "undue influence" in the courts in China are precisely the same arguments that the court recently addressed, and rejected, in Tang. At issue in Tang were claims arising from tainted milk distributed to infants in China (discussed by Professor Clarke at Paragraph 119 of his Declaration). In opposition to Defendants' motion to dismiss, the plaintiffs submitted expert declarations stating that attorneys in China had been instructed to withdraw from representing victims, that the Chinese courts were delaying the proceedings, and that plaintiffs "cannot receive meaningful legal remedies in China." Tang at *6-7. The Court nevertheless refused to find that China was an "inadequate" forum:

> In essence, Plaintiffs ask that a value judgment be made, on the basis of the limited evidence presented, that corruption in the Chinese

judiciary would systematically deny them access to a legal remedy there. The vast majority of courts considering similar claims, however, have found them to be unpersuasive. Moreover, courts have rightly been reluctant to cast such aspersions on foreign judicial systems absent a substantial showing of a lack of procedural safeguards. Here, Plaintiffs have demonstrated that similar claimants have encountered difficulties in pursuing relief in Chinese courts, but their argument that due process is completely lacking is not persuasive. Id. at *9.

Finally, Plaintiff's claim that it fears "retaliation" if it files a lawsuit is pure makeweight. Plaintiff has not offered any evidence of any likely "retaliation," or, indeed, any statements from any person or entity in China that could conceivably form the basis for a justifiable fear of retaliation – far less that the risk of retaliation is greater if the case is litigated in China than if litigated here. Assertions by Plaintiff's attorney and expert that they "fear for my personal safety" (Fayer Decl. ¶ 10) or that "traveling to China… would expose me to unacceptable risks of reprisal and jeopardize my personal safety" (Halderman Decl. ¶ 41), lack foundation and credibility. As an aside, counsel certainly must have expected that he would be required to travel to China when he sued the PRC, two Chinese software developers, and two Chinese Computer Manufacturers.[2]

_____

[2] The circumstances presented here cannot be compared to Mujica v. Occidental Petroleum Corp., 381 F. Supp. 2d 1134, (C.D. Cal. 2005), in which the plaintiffs were seriously injured in a military attack on their town in Columbia and presented evidence that paramilitary groups were likely to retaliate if the litigation was pursued. Id. at 1143-45. The only "evidence" of "retaliation" presented by Plaintiff is its testimony concerning purported anonymous "cyberattacks" on its office. Plaintiff does not offer any support for its suspicion that such cyberattacks (even if actually directed at Plaintiff) originated from any of the defendants in this action. In fact, just a few months before this lawsuit was filed, the FBI issued a warning to *all* law firms concerning the danger of "spear phishing" e-mails with "malicious payloads." The Federal Bureau of Investigation, Archived E-Scams & Warnings, http://www.fbi.gov/scams-safety/e-scams/archived_escams. Thus, Plaintiff's experience is hardly unique.

## II.   THE PRIVATE INTEREST FACTORS OVERWHELMINGLY FAVOR DISMISSAL.

Plaintiff cannot and does not challenge that all but one of the parties (namely, Cybersitter) is located outside the United States; that the allegedly infringing conduct took place largely (if not exclusively) in China; that the relevant documents (including those concerning Green Dam, the Mandate, and the alleged distribution and sale of computers containing Green Dam) are located outside the United States; and that the witnesses – both party witnesses and third party witnesses – with percipient knowledge of the facts are located in China (with a few in Taiwan and Japan).  Thus, the Foreign Manufacturers not only would be inconvenienced by litigation in the United States, but also would be severely prejudiced because they could not present live testimony from key witnesses at trial (such as third party witnesses beyond the Court's subpoena power or Chinese residents for whom a visa cannot be obtained).  Plaintiff's few witnesses (limited to two experts and two employees, see Fayer Decl. ¶ 5) easily can travel to China (and, in fact, Clarke regularly does so), and the cost of doing so is not so burdensome as to deprive Plaintiff of an opportunity to be heard on its claims.

Plaintiff's exclusive focus on its own claims of purported inconvenience tells only part of the story; when the private interest factors are considered together, they strongly favor dismissal.

### A.   Plaintiff's Residence Is Not Entitled To Overriding Weight.

Plaintiff argues that its U.S. residence is so powerful a consideration that it "distinguish[es] this case from all but one of the cases cited by Sony and its expert" (Opp'n at 13) and entitles its choice of forum to overriding, virtually dispositive, weight.  Plaintiff vastly overstates the importance of this single factor.  "A *forum non conveniens* dismissal may be appropriate even where the plaintiff is American."  Blimpie Int'l, Inc. v. ICA Menyforetagen AB, No. 96-3082, 1997 WL 143907, at *4 (S.D.N.Y. March 25, 1997).  Moreover, while a U.S. plaintiff's

choice of forum may be entitled to more deference than given to a foreign-based plaintiff, this factor is by no means entitled to "dispositive weight." See Piper, 454 U.S. at 255-56 ("A citizen's forum choice should not be given dispositive weight … dismissal should not be automatically barred when a plaintiff has filed suit in his home forum."); see also Vanity Fair Mills, Inc. v. The T. Eaton Co., 234 F.2d 633, 645 (2d Cir. 1956) ("An American citizen does not have an absolute right under all circumstances to sue in American court.").

Nor does Plaintiff's choice of forum diminish the importance of the countervailing interests, burdens, and prejudice to the other parties to this lawsuit. To the contrary, the weight given to a Plaintiff's choice of forum is substantially diminished where, as here, the Plaintiff seeks "to haul a group of foreign defendants into a U.S. court on transactions having little or nothing to do with this country where there is an available forum significantly better suited to handling the litigation in a prompt, efficient, and effective manner." First Union Nat'l Bank v. Paribas, 135 F. Supp. 2d 443, 448 (S.D.N.Y. 2001), aff'd, 48 Fed. Appx. 801 (2d Cir. 2002). This is especially true where the claims primarily seek to vindicate rights under foreign law, and where the overwhelming bulk of the public and private interest factors, such as the location of the events giving rise to the dispute, the law to be applied, the location of the parties and witnesses, and the relative interests of the respective fora, tip decidedly in favor of litigation elsewhere. See id. at 448 ("[T]he weaker the connection between a plaintiff's U.S. activities, even those of a U.S. plaintiff, and the events at issue in the lawsuit, the more likely it is that defendants attacking the plaintiff's choice of a U.S. forum will be able to marshal a successful challenge to that choice."). Plaintiff's assertion that the Court should exercise its jurisdiction whenever conduct abroad is "alleged to have effects in the U.S." (Opp'n at 12), would render the forum non conveniens doctrine a nullity, since such allegations always are made by plaintiffs seeking to litigate in the U.S. See, e.g., Lockman, 930 F.3d at 771-72 (dismissing action despite

1    argument that the U.S. has a broad interest in copyright laws).

2        While discounting (in a footnote) more than two dozen analogous cases on

3    the basis that they involved a foreign plaintiff – and then brushing aside another

4    half-dozen cases (including those involving domestic plaintiffs) as involving

5    "forum shopping" or some other amorphous distinction – Plaintiff is unable to cite

6    even a single case involving even roughly comparable circumstances (namely, the

7    purely overseas alleged infringement of a copyright by a foreign defendant).  The

8    two cases on which Plaintiff places primary reliance, <u>Bleu Prods. Inc. v. Bureau</u>

9    <u>Veritas Consumer Prod. Servs. Inc.</u>, No. 08-2591, 2009 WL 2412413 (C.D. Cal.

10   Aug. 3, 2009) and <u>Dole Food Co., Inc. v. Watts</u>, 303 F.3d 1104 (9th Cir. 2002),

11   addressed the *forum non conveniens* issues only in cursory fashion and neither is

12   on point.  They certainly are not, as Plaintiff claims, factually "indistinguishable"

13   (Opp'n at 3) from this case.  In <u>Bleu</u>, the allegedly defective products had been

14   shipped to the United States and sold in Costco stores throughout the United

15   States.  <u>Bleu</u>, at *6.  Thus, a "significant" portion of the witnesses, including

16   "plaintiff's employees and experts, witnesses who re-inspected, repaired and

17   shipped the jackets, and witnesses at Costco" were located in the U.S.  <u>Id.</u> at *23-

18   24.  In <u>Dole</u>, the primary basis for the court's decision was its finding that because

19   the defendants (unlike here) had not agreed to jurisdiction in the alternative forum

20   (the Netherlands), that forum was not "adequate."[3] 303 F.3d at 1118-19.

21       Plaintiff's further suggestion that Sony Corporation (or the other Foreign

22   Manufacturers) somehow "targeted" their conduct at a United States company is

23   frivolous.  The evidence is undisputed that neither Sony Corporation (or Sony

24   China), nor any of the other Foreign Manufacturers were involved in the creation

25   or development of Green Dam or in the decision to implement the Green Dam

26   Mandate.  <u>See</u>, <u>e.g.</u> Akahane Decl. ¶¶ 4-7; Lin Decl. ¶¶ 4-6; Hong Decl. ¶ 6.  Nor

27

---

[3] Plaintiff's attempt to distinguish <u>Lockman</u> on the basis that the Plaintiff had a preexisting relationship with the defendant is unavailing.  That issue was not discussed as a factor in the Court's decision.

28

Mitchell
Silberberg &
Knupp LLP

3078422.1

did any of the Foreign Manufacturers distribute any computers containing or bundled with Green Dam in the United States.[4]

## B.   Plaintiff Cannot Credibly Dispute That The Vast Majority Of Relevant Witnesses And Documents Are In China.

Plaintiff ignores the declarations submitted by the Foreign Manufacturers regarding the location of the witnesses and information that each needs to present their defenses in this case.  Instead, it raises a number of arguments which mischaracterize (or inappropriately downplay) the facts.

*First*, Plaintiff disingenuously and incorrectly claims that the location of witnesses is unimportant and should be given little consideration because "this case is not a witness intensive case."  Opp'n at 17.  Plaintiff's 131-paragraph complaint contains dozens of allegations about conduct supposedly engaged in by Sony Corporation and the other Foreign Manufacturers.  Sony Corporation (and the other Foreign Manufacturers) will require (and certainly are entitled to) testimony of both its own and third party witnesses to address these allegations.[5]  There also is no dispute that evidence of alleged damages (including "the number of unauthorized copies distributed") and of "Plaintiff's conspiracy claims" (Opp'n at 23), likewise is located abroad (largely in China).  See Blimpie, at *6 ("evidence of any profits earned by [defendant]…were earned in Sweden, and proof of those profits will be derived from the Swedish business records of [defendant].")

---

[4] Plaintiff seems to suggest that its June 2009 letter created a connection between this case and the U.S. because it placed Sony Corporation on notice that it was allegedly "causing harm to a U.S. company in the U.S." (Opp'n at 2).  The letter is irrelevant, as once again Plaintiff appears to confuse personal jurisdiction with *forum non* conveniens.  The June 2009 letter did not change the fact that all of the underlying conduct at issue took place in China pursuant to a mandate of the PRC.

[5] To the extent that Plaintiff intends to seek lost licensing income, that will require evidence of license fees for similar uses or products within the Chinese marketplace (where Green Dam was distributed), as well as evidence concerning the value of those portions of Green Dam that indisputably were independently developed by the Chinese Developers.

That the Foreign Manufacturers' own witnesses are within the subpoena power of the Court is irrelevant, and does not change the fact that these witnesses (at least 3 or 4 for each defendant, more than a dozen in total) will be required to travel to the United States at great burden and expense.  See Europe & Overseas Commodity Traders, S.A. v. Banque Paribas London, 940 F. Supp. 528, 538 (S.D.N.Y. 1996) ("transporting witnesses from England to the United States – even if they were within the Court's subpoena power or would appear voluntarily – would be extremely inconvenient and would impose a prohibitive cost on defendants."); Scottish Air Int'l, Inc. v. British Caledonian Group, PLC, 81 F.3d 1224, 1232-34 (2d Cir. 1996) (dismissing case where "the difficulty, cost, and disruption of requiring the attendance of [foreign] witnesses in New York – whether they are willing to appear or not – would be considerable."); LaSala v. Bank of Cyprus Pub. Co., Ltd., 510 F. Supp. 2d 246, 259-60 (S.D.N.Y. 2007) ("the presence of the vast majority of witnesses in one forum weighs in favor of that forum, even if the witnesses could be transported.")  Additionally, with respect to third party witnesses, since there is no dispute that all or nearly all of this evidence is in China, Sony Corporation would be prejudiced if it were unable to present such witnesses testimony at trial, including via live testimony, and at a minimum would suffer a heavy burden in being required to transport these witnesses to the United States and provide for translation of their testimony.  See Tang, at *12.

**Second**, Plaintiff's claim that the "the most important and essential witnesses in this case are located in the United States" (Opp'n at 18) (namely, its technical expert and CEO) is wrong.  It is well-established that in infringement cases, the critical evidence is that concerning the development, manufacture, and distribution of the allegedly infringing product.  See, e.g., Creative Tech., 61 F.3d at 703 (dismissal appropriate where "all of the records and the majority of witnesses involved in the manufacture of the alleged [infringing product] are located in Singapore" notwithstanding that the "majority of expert witnesses reside

in California").  Plaintiff further concedes that it has very few of its own witnesses and intends to rely largely on expert testimony, including the testimony of Clarke, who travels to China regularly.  See Capitol Records, LLC v. VideoEgg, Inc., 611 F. Supp. 2d 349, 367 (S.D.N.Y. 2009) ("testimony about the design and creation of the technology at issue and Defendants' conduct…can only come from persons who were 'in the right place at the right time,'" while testimony about injury and damages "are commonly addressed by expert witnesses, whose convenience is not relevant to a motion to transfer venue.")

**Third**, Plaintiff's claim that it "has no intention of taking the testimony of persons located outside of the U.S., except through 30(b)(6) depositions of the parties" (Opp'n at 17) or that Plaintiff may wish to forego discovery and premise its case for liability entirely on Professor Halderman's expert testimony (id.) again misses the point because it focuses solely on the plans of one party (the Plaintiff) and ignores the plans of the nine defendants.  See Lockman, 930 F.2d at 769 ("Lockman's argument about sources of proof falls short because it relates only to how *Lockman* intends to present its case and ignores how [defendant] intends to defend itself.") (emphasis in original).[6]

**Fourth**, Plaintiff argues that the location of the witnesses is irrelevant because they are "scattered all over the globe." (Opp'n at 16-17.)  That is not the case (and Plaintiff's overstatement of this fact underscores the weakness of its position).  Other than Plaintiff's two percipient witnesses (its CEO and one employee), virtually ***all*** of the witnesses with knowledge of the facts and circumstances are located in China.  Plaintiff's contentions to the contrary ignore the undisputed evidence that there are very few (if any) witnesses in Japan or Taiwan with relevant knowledge, including because the distribution of computers

---

[6] Even if there were any merit to Plaintiff's claim that copying can be determined through expert analysis, Plaintiff ignores all of the other facts and issues relevant to both liability and damages, such as the amount and nature of the alleged infringement, whether any trade secrets were misappropriated and/or used, the number of copies made and sold, and the parties' knowledge (or lack thereof).

1   in China is undertaken by the Foreign Manufacturers' affiliates in China – not at

2   their headquarters in Japan or Taiwan.  See Hagiwara Decl. ¶ 10; Yang Decl. ¶¶ 1-

3   4 (manufacture and distribution undertaken by non-party BenQ Co., Ltd., located

4   in China); Hong Decl. ¶ 4 (Asustek computers distributed by Asustek Computer

5   (Shanghai) Co., Ltd.); Lin Decl., ¶ 4 (distribution in China overseen by Acer

6   Computer (Shanghai) Ltd.)  Plaintiff cannot deliberately sue the wrong party (e.g.,

7   Sony Corporation, rather than Sony China), and then claim that the action involves

8   witnesses outside China.  The "center of gravity" of the case, Blimpie, at *11,

9   plainly is China (regardless of the potential of a few witnesses located elsewhere),

10  a fact that also sets this case apart from Caruth v. Int'l Psychoanalytical Ass'n, 59

11  F.3d 126, 129 (9th Cir. 1995), in which witnesses were located in Europe, the

12  United States, and Canada.

13      *Fifth*, Plaintiff engages in a dense, confusing, and inconsistent discussion of

14  the Chinese discovery rules, apparently claiming that while transfer to China

15  would deprive it of the ability to seek discovery, it would nevertheless be able to

16  take discovery (via the Hague Convention) in China to support its claims in this

17  action.  Plaintiff's argument concerning China's discovery rules and procedures is

18  misplaced, including because it is well-established that procedural differences

19  between two fora (including that China is an "inquisitorial" system, Opp'n at 22)

20  and that "access to testimonial evidence in the PRC courts is quite limited," (Opp'n

21  at 23) are irrelevant.  Altmann v. Republic of Austria, 317 F.3d 954, 972-73 (9th

22  Cir. 2002); Lockman, 930 F.2d at 768-69 (Japan was an adequate alternative forum

23  even though it does not conduct jury trials or pretrial discovery).

24      Plaintiff's argument also misses the point.  In evaluating the comparative

25  ease of access to sources of proof, the Court does not compare and evaluate

26  discovery procedures in different countries, but rather whether one or both parties

27  would be unfairly deprived of (or would have difficulty obtaining) access to

28  relevant witnesses and documents if the case were litigated in the chosen or

Mitchell
Silberberg &
Knupp LLP

3078422.1

15

1  alternative forum – as would be the case for the Foreign Manufacturers if this case

2  proceeds in the U.S.  <u>Lueck v. Sundstrand Corp.</u>, 236 F.3d 1137, 1147 (9th Cir.

3  2000) ("[B]ecause the district court cannot compel production of much of the New

4  Zealand evidence, whereas the parties control, and therefore can bring, all of the

5  United States evidence to New Zealand, the private interest factors favor

6  dismissal."); <u>Lockman</u>, 930 F.2d at 770 (defendant "cannot force [witnesses in

7  Japan] to testify in the United States"); <u>CCS Int'l, Ltd v. ECI Telesystems, Ltd.</u>,

8  No. 97-4646, 1998 WL 512951, at *9 (S.D.N.Y. Aug. 18, 1998) (dismissing action

9  where "access to necessary proof will be considerably easier in Israel").  Plaintiff

10  has no reason to believe that a Court in China, irrespective of its discovery rules,

11  will prevent Plaintiff from introducing its expert testimony or documentary

12  evidence, which it claims alone is sufficient to prove its case.  <u>See</u> Milburn Decl.

13  ¶¶ 28-30 ("[T]here is little or nothing that non-expert testimony could add to the

14  analysis of the programs.").  It will not.  deLisle Reply Decl., ¶¶ 46-49.

15  *Finally*, Plaintiff's suggestion that the Foreign Manufacturers have not

16  sufficiently identified the party and third party witnesses is incorrect and irrelevant.

17  <u>See Piper</u>, 454 U.S. at 258 ("[The plaintiff] suggested that defendants seeking

18  *forum non conveniens* dismissal must submit affidavits identifying the witnesses

19  they would call and the testimony these witnesses would provide if the trial were

20  held in the alternative forum.  Such detail is not necessary."); <u>see</u> Hagiwara Decl.

21  ¶¶ 8-12 (identifying the specific categories of witnesses who possess relevant

22  information, along with the specific departments and divisions whose employees

23  will be required to testify).

### C.    <u>Plaintiff's Purported Size And Relative Financial Condition Do Not Outweigh The Burden And Prejudice To Defendants.</u>

26  Much of Plaintiff's remaining argument is that as a "small family-owned"

27  software company it would be "prohibitively burdensome and expensive" to

28  litigate the case in China.  (Opp'n at 19.)  Defendant offers no legal or evidentiary

1  support for its proposition that the "financial disparity" between the parties is a

2  relevant consideration.  Even if it were, Plaintiff fails to offer any evidence that

3  litigation in China would be so burdensome and expensive as to be beyond

4  Cybersitter's financial means.  The declaration of Plaintiff's CEO confirms that

5  Cybersitter's annual revenue is as much as $2.5 million.  Milburn Decl., ¶ 6.

6  Plaintiff has the financial wherewithal to hire a substantial Los Angeles law firm to

7  prepare and file its massive 131-paragraph complaint, correspond with and serve

8  defendants all over the world, pursue default judgments, and hire at least two

9  expert witnesses.  See Murray v. British Broad. Corp., 81 F.3d 287, 294 (2d Cir.

10  1996) (rejecting plaintiff's argument he lacked the financial ability to litigate the

11  case in England based on the fact that he was "credit-worthy" and had a personal

12  income of between 46,000 and 57,000 pounds sterling); see also DeFazio v.

13  Hollister Employee Share Ownership Trust, 406 F. Supp. 2d 1085, 1090 (E.D. Cal.

14  2005) (denying transfer where "there is no indication that defendants suffer from

15  financial constraints in defending this action…").

16       Nor does Plaintiff (or its expert) explain why litigating this case in China

17  would be any more expensive than doing so in the United States.  It would not.

18  Not only are attorneys' fees lower in China, but as Plaintiff admits, the more

19  limited discovery rules would obviate or reduce the need for costly depositions and

20  prolonged discovery battles.  deLisle Reply Decl., ¶ 50.  Furthermore, Plaintiff

21  concedes that "[m]odern advances in communications and transportation have

22  significantly reduced the burden of litigating in another country."  Opp'n at 17

23  (citing Sinatra v. Nat'l Enquirer, 854 F.2d 1191, 1199 (9th Cir. 1998)).  Plaintiff

24  also may avoid the expense of costly service and discovery procedures via the

25  Hague Convention and trips to Asia to take witness depositions.  In any event, to

26  the extent that Plaintiff would incur some additional expense in transporting its few

27  anticipated witnesses to China for trial, such costs are far outweighed by the

28  substantial evidentiary prejudice and burden that would be faced by the Foreign

Mitchell
Silberberg &
Knupp LLP

3078422.1

17

1  Manufacturers if the case were litigated here.  Nai-Cho v. Boeing Co., 555 F.

2  Supp. 9,18 (N.D. Cal. 1982) ("compelling the litigants to try their case without the

3  benefit of live testimony from important witnesses would impose a serious

4  hardship upon them and upon this Court").

5  **III.  THE PUBLIC INTEREST FACTORS OVERWHELMINGLY FAVOR**

6  **DISMISSAL.**

7  The "public interest" factors that weigh in favor of dismissal are obvious,

8  especially given the PRC's involvement, the sovereign immunity and international

9  comity issues, the application of foreign law, and the relatively attenuated

10  connection between this case and the United States.  Plaintiff's attempt to

11  downplay these factors, while overstating the United States' interest, is unavailing.

12  **A.  Plaintiff Grossly Overstates This Court's Interest.**

13  Plaintiff recognizes that the ***only*** interest that this Court has in this dispute is

14  that Plaintiff is a United States resident.  Accordingly, Plaintiff devotes nearly the

15  entirety of its "public interest" argument (and as set forth above, a substantial

16  portion of its "private interest" argument as well) to its theory that Plaintiff's U.S.

17  residence gives this Court a compelling and overriding interest in this case, to the

18  exclusion of virtually every other competing interest.  Indeed, Plaintiff goes so far

19  as to characterize this case as critical to United States international intellectual

20  property policy, and suggests that granting Sony's motion would jeopardize the

21  entire American economy in light of the "erosion of the traditional farming and

22  manufacturing base of the U.S. economy" and the growing importance of "IP

23  protection to the U.S. economy."  (Opp'n at 26-27.)[7]

24

25  [7]  Plaintiff's lengthy discussion of United States intellectual property policy and the "Special 301" Report to Congress is misleading.  The Section 301 Report is not a directive to U.S. Congress or U.S. courts to act as surrogates for China's own regime, but rather is concerned with the use of the United States ***trade*** regime to ensure international intellectual property enforcement at the ***local level***.  The portions of the Section 301 Report cited by Plaintiff addressed local enforcement efforts (*e.g.*, investigation and prosecution) concerning counterfeiting, and have nothing to do with the adequacy of the Chinese courts to adjudicate complex, intellectual property disputes.

26

27

Mitchell
Silberberg &
Knupp LLP

28

3078422.1

18

1    Plaintiff's argument cannot withstand scrutiny.  The interest of the United

2  States in protecting copyrights is not limitless, and does not extend to adjudicating

3  every instance of alleged copyright infringement by foreign defendants in every

4  country throughout the world in a U.S. court.  Rather, courts routinely hold that the

5  doctrine of *forum non conveniens* is appropriately applied to copyright cases

6  arising from overseas infringement – even where the plaintiff is a United States

7  citizen – and in so doing have not found that the U.S. interest in protecting a

8  plaintiff's intellectual property is of such paramount importance (or so

9  "tremendously strong," Opp'n at 28) that it outweighs every other countervailing

10  interest.  Lockman, 930 F.2d at 771; see also Murray, 81 F.3d at 293-94 ("[W]e

11  note that the forum in which actual infringement … has occurred is not the United

12  States but England….In virtually all respects, the connection of this case to the

13  United States is as tenuous as its connection to the United Kingdom is as strong.").

14    Nor would transfer result in the effective collapse of United States

15  intellectual property rights, as Plaintiff asserts.  This case does not involve or

16  concern broad issues of national (or international) policy, and Plaintiff does not

17  seek to enforce United States copyright law against any of the Foreign

18  Manufacturers.  Crosstown Songs U.K. Ltd. v. Spirit Music Group, Inc., 513 F.

19  Supp. 2d 13, 17 (S.D.N.Y. 2007) ("Plaintiffs have not alleged that the United

20  States has a specific interest in the litigation of this suit in a U.S. court, such as the

21  enforcement of U.S. laws.").  Indeed, this is not a case about electronic cross-

22  border piracy, or even the wholesale copying (or counterfeiting) of a U.S. work for

23  a commercial purpose.  This is a highly localized controversy involving the alleged

24  use of portions of a single software product in a *new* work created and distributed

25  almost entirely in China.  As Plaintiff recognizes, its copyright (to the extent valid)

26  is entitled to international protection under the Berne Convention and thus may be

27  enforced in China.  Whether Plaintiff is entitled to redress (under Chinese or other

28  foreign laws) for the alleged infringement does not make this Court's interest in the

Mitchell
Silberberg &
Knupp LLP

3078422.1

19

1   case "tremendously strong." Opp'n at 28.  See Lockman, 930 F.2d at 771

2   (controversy had "a large connection to Japan and little connection to California

3   because all claims were related to [infringement] in Japan").

4          Plaintiff's claim that the "locus" of its injury is "entirely within [U.S.]

5   borders" (Opp. at 26) also is incorrect, or, at best, overstated.  Initially, since

6   Plaintiff apparently does not do business in China, it is debatable whether it

7   suffered *any* actual injury, since it did not lose any potential sales or license fees in

8   the Chinese market.  See Jarvis v. K2 Inc., 486 F.3d 526, 533-34 (9th Cir. 2007)

9   (lost license fee damages available only "in situations where the infringer could

10  have bargained with the copyright owner to purchase the right to use the work").

11  To the extent it did, any such injury necessarily occurred entirely (or largely) in

12  China, where the allegedly infringing product (Green Dam) was distributed and

13  sold and where Plaintiff claims to have lost sales or license fees in connection with

14  the allegedly infringing use.  See FAC ¶¶ 6 (alleging that defendants'

15  infringements allowed them "to reap the rewards of exploiting the vast *Chinese*

16  computer market"); id. ¶ 8 (estimating damages as the number of copies of Green

17  Dam distributed "*in China alone,*" multiplied Cybersitter's U.S. retail price)

18  (emphases added).  See Blimpie, *9 ("Although Blimpie's United States profits

19  may be affected by the resolution of this matter, the effects on the Swedish market,

20  Swedish businesses, and Swedish consumers will be greater than an attenuated

21  effect in New York [where plaintiff is located].").  In fact, the strict "territorial"

22  nature of copyright law has been reaffirmed time and again, such that it now is an

23  "undisputed axiom…that the United States copyright laws have no application to

24  extraterritorial infringement," irrespective of the purported "impact" of the

25  infringement.  Subafilms, Ltd. v. MGM-Pathe Commc'ns. Co., 24 F.3d 1088,

26  1095-96 (9th Cir. 1994).[8]

27

28  Mitchell Silberberg & Knupp LLP

3078422.1

---

[8]  Plaintiff's reliance on Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1322 n.2 (9th Cir. 1998) is misplaced.  At issue in Toeppen was whether the court could

(…continued)

1    Finally, Plaintiff apparently claims that because some of the Foreign

2    Manufacturers have not yet contested jurisdiction (though they have not waived the

3    defense, and in fact have asserted it in their Answers), the Court has an interest in

4    adjudicating the dispute.  The argument confuses the doctrine of *forum non*

5    *conveniens* with issues of personal jurisdiction.  Whether this Court **can** adjudicate

6    the case is irrelevant to the *forum non conveniens* analysis.  See Vanity Fair, 234

7    F.3d at 647 (while "a court of equity having personal jurisdiction over a party has

8    power to enjoin him from committing acts elsewhere … this power should be

9    exercised with great reluctance when it will be difficult to secure compliance with

10   any resulting decree or when the exercise of such power is fraught with

11   possibilities of discord and conflict with the authorities of another country.").

12   Whether any of the Foreign Manufacturers registered trademarks or patents in the

13   U.S. (and thus purportedly "availed" themselves of the "privileges and protections

14   of the IP laws of the United States" (Opp'n at 13)) is irrelevant, since there is no

15   relationship between such patents or trademarks and the issues in this lawsuit.

16   **B.    China's Substantial Interests Must Be Considered.**

17   Citing Boston Telecom Group, Inc. v. Wood, 588 F.3d 1201 (9th Cir. 2009),

18   Plaintiff argues that the countervailing interests of China, including in interpreting

19   and applying its own laws and mandates, is wholly irrelevant and should not be

20   considered by the Court.  Boston Telecom did **not** hold that the interests of an

21   alternative forum are "irrelevant" to the *forum non conveniens* analysis.  Rather,

22   the Ninth Circuit held only that the district court had abused its discretion in

23   finding that there was "**no** identifiable local interest" because of the competing

24   foreign interests.  Id. at 1212 ("We need not hold that… ***California*** is the principal

25   locus of the case or that ***California*** has more of an interest than any other

26   jurisdiction.") (emphasis added).  In fact, the Boston Telecom Court went out of its

27   _____

(…continued)

exercise ***personal jurisdiction*** over a defendant who registered the plaintiff's
28   trademark as a domain name.

Mitchell
Silberberg &
Knupp LLP

3078422.1

21

1    way to note that the interests of California were "at least as strong" as the foreign

2    interests, thereby confirming that the foreign interests must be considered.  Id.

3          Courts routinely weigh the competing public interests in performing the

4    *forum non conveniens* analysis, and in fact numerous cases (including those cited

5    by Plaintiff) have found this to be a highly relevant factor – especially in cases

6    involving intellectual property laws or the public policy decisions of a foreign

7    state.  See, e.g., Lockman, 930 F.2d 771 ("Japan [has an] interest in matters

8    relating to Japanese copyrights."); Murray, 81 F.3d at 293-94 ("In virtually all

9    respects, the connection of this case to the United States is as tenuous as its

10   connection to the United Kingdom is strong."); Crosstown Songs, 513 F. Supp. 2d

11   at 17 ("the interests of the United Kingdom in this dispute outweigh those of the

12   United States."); China Tire Holdings Ltd. v. Goodyear Tire and Rubber Co., 91 F.

13   Supp. 2d 1106, 1111 (N.D. Ohio 2000) ("The interest of a Chinese court to

14   adjudicate matters regarding its own government contracts far outweighs the small

15   interest that American courts have in adjudicating this matter").

16         The competing Chinese interests in this case are obvious, and are not

17   seriously addressed by Plaintiff.  China's interest in applying its own law alone is a

18   significant factor weighing in favor of dismissal.  Lockman, 930 F.2d at 771.

19   Likewise, since this case concerns the conduct of the PRC (and MIIT), a Chinese

20   administrative mandate, and the business practices of computer manufacturers in

21   China in connection with the mandate, both Chinese public policy and private

22   Chinese business interests will be impacted.  China Tire, 91 F. Supp. 2d at 1111

23   ("The interest of a Chinese court to adjudicate matters regarding its own

24   government contracts far outweighs the small interest that American courts have in

25   adjudicating this matter."); see FAC ¶¶ 33-38 (discussing Chinese policies.)  In

26   fact, the outcome of this case will impact the future disposition of any computers

27   containing Green Dam, including the potential liability of those in China (such as

28   re-sellers or retailers) who may continue to exploit or sell them.

Mitchell
Silberberg &
Knupp LLP

3078422.1

22

1    Plaintiff's claim that China's interest is "relatively weak" borders on the

2    frivolous.  Plaintiff's argument that because the Green Dam Mandate ultimately

3    was withdrawn, none of the conduct at issue was undertaken "pursuant to" the

4    Mandate is pure semantics, and is contradicted by Plaintiff's own allegations.  See

5    (FAC ¶ 36) ("every computer shipped to or sold in China must have the Green

6    Dam software pre-installed on or packed with the computer").  Similarly, Plaintiff

7    contends that China "no longer has a policy interest" (Opp'n at 29-30) in the

8    Mandate, ignoring its own vehement contentions that the case is "politically

9    sensitive."  In any event, this case is not concerned with enforcing the Mandate,

10   but with infringement claims arising from efforts undertaken by the Foreign

11   Manufacturers in compliance with the Mandate.  Finally, Plaintiff's

12   characterization of all of the dispositive and complicated Chinese legal issues as

13   "boil[ing] down to a claim that an infringer has an interest in determining its own

14   immunity from liability" (Opp'n at 30) mischaracterizes the issues.  There can be

15   no credible dispute that the interpretation and application of China's laws

16   concerning sovereign immunity (including whether private parties such as the

17   Foreign Manufacturers are within the scope of these laws) and the relationship

18   between governmental mandates and Chinese copyright law are matters of

19   importance for the Chinese public and for private entities doing business in China.

20   Vanity Fair, 234 F.2d at 646 ("[T]he courts of one state will not determine the

21   validity of the acts of a foreign sovereign done within its borders.").

22   **C.**   **Plaintiff Misconstrues The Nature Of The Case And The Relevant**

23   **Laws To Be Applied.**

24   Admitting that the need to interpret and apply foreign law is a significant

25   factor weighing in favor of dismissal, see Piper, 454 U.S. at 260, Plaintiff goes to

26   great lengths to recharacterize the case as one that "involves the interpretation of

27   U.S. copyright law" and California law, "as well as the copyright laws of China,

28   Japan, and Taiwan." Opp'n at 32.  The gravamen of Plaintiff's case – especially to

Mitchell
Silberberg &
Knupp LLP

3078422.1

23

1   the extent it concerns the Foreign Manufacturers – is its claims under Chinese law.

2   *All* of the defendants (including the PRC, the Chinese developers, and the Foreign

3   Manufacturers) have been sued under Chinese law.  See FAC ¶¶ 89-102.  The

4   alleged predicate acts (the creation of Green Dam, the purported "trade secret"

5   theft, and the alleged conspiracy) took place in China.  Id. ¶¶ 33-38, 49-56.  And,

6   Plaintiff seeks to recover damages based on the number of copies of Green Dam

7   distributed in China.  Id. ¶ 8.

8         Not one of the Foreign Manufacturers has been sued under U.S. copyright

9   law.  See FAC, ¶¶ 77-88.  Moreover, since neither the PRC nor the Chinese

10   Developers have been served or appeared in the case, it is unclear that any U.S.

11   copyright claims ever will be litigated if the case remains here.  Even if these

12   defendants ultimately do appear, analysis of the Amended Complaint confirms that

13   these claims are makeweight or, at best, tangential, arising from the allegation that

14   Green Dam was placed on the Internet (in China), from where it was accessible "in

15   the United States *and elsewhere*."  Id., ¶ 80 (emphasis added).[9]  The claims under

16   Japanese and Taiwanese law likewise are tangential (at best), as there is no dispute

17   that computers containing Green Dam were sold exclusively in China, and it is not

18   the Foreign Manufacturers, but their *Chinese affiliates*, that do business in China.

19   Akahane Decl., ¶¶ 4-7; Lin Decl., ¶¶ 4-6; Lee Decl., ¶¶ 3-12; Hong Decl., ¶ 4.

20         Nor should the Court give any weight to Plaintiff's trade secret claims.

21   Initially, under California's "governmental interest" test (see Carijano v.

22   Occidental Petroleum Corp., 548 F. Supp. 2d 823, 834 (C.D. Cal. 2008)) it is likely

23   that *Chinese* (not California) law would apply to these claims.  See Blimpie at *10

24   _____

[9]  Plaintiff's claim that its "conspiracy" allegations may render the Foreign
25   Manufacturers liable for copyright infringement under U.S. law is frivolous.
Plaintiff has not sued any of the Foreign Manufacturers for contributory or
26   vicarious copyright infringement, and there is no basis for its theory that general
allegations of "conspiracy" may give rise to *copyright* liability.  To the contrary,
27   any such claim is preempted by the Copyright Act.  See Cooper v. Sony Music
Ent., Inc., No 01-0941, 2002 WL 391693, at *4-5 (S.D. Tex. Feb. 22, 2002) (a
28   "civil conspiracy claim does not add substantively to the underlying federal
copyright claim and should therefore be preempted").

1  (applying Swedish law to trade secret claims because "most of [defendant's]

2  alleged tortious actions, such as . . . the conversion of proprietary secrets and

3  information, took place in Sweden" and "the outcome of the litigation would have

4  the greatest impact in Sweden, where [the] allegedly unlawful conduct is taking

5  place."); CCS, at *8 (misappropriation claim governed by Israeli law because the

6  conduct "would have become tortious only upon [Defendant's] wrongful use of

7  that information, and those acts are not alleged to have occurred in the United

8  States.")  Regardless, the claims are meritless under California law.  Silvaco Data

9  Sys. v. Intel Corp., 184 Cal. App. 4th 210, 224 (2010).

10  Finally, Plaintiff's claim that the Chinese courts are incapable of

11  adjudicating these claims, or "have little experience adjudicating complex claims

12  under foreign laws" (Opp'n at 33-34) is false.  See Guimei v. Gen. Elec. Co., 172

13  Cal. App. 4th 689, 701 (2009) ("Chinese courts… are in fact capable of

14  adjudicating complex product liability claims.  The judges and attorneys are well

15  educated and sophisticated, and they have experience in complex, multiparty

16  litigation").  Also incorrect is Plaintiff's claim of "extraordinary delays" (Opp'n at

17  34), apparently surmised from a few random, unrelated cases.  Plaintiff overstates

18  the length and significance of such purported "delays," and, in fact, the time

19  between acceptance of the case and trial is actually less in China than in the United

20  States.  deLisle Reply Decl., ¶ 35-42[10]

21  ### Conclusion

22  Fore the foregoing reasons, Sony Corporation respectfully requests that the

23  Court grant this Motion.

24  Dated:  October 25, 2010          MITCHELL SILBERBERG & KNUPP LLP

25                                                 By:   /s/ Marc E. Mayer

26                                                       Attorneys for Sony Corporation

27

28  ---

[10] Plaintiff argues, in a single paragraph at the end of its brief, that the Foreign Manufacturers' "unclean hands" precludes dismissal.  The argument is legally and factually unsupported, as well as contradicted by the undisputed testimony.