

United States Department of State

*Washington, D.C. 20520*

November 1, 2010

Terry Nafisi
Clerk of the Court
United States District Court
Central District of California
312 N. Spring Street
Los Angeles, CA 90012

**RE:  CYBERsitter, LLC v. The People's Republic of China, et al.,
Case Number CV 10-0038 GAF (SHx)**

Dear Ms. Nafisi:

I am writing regarding the transmittal of a Summons and Complaint to the People's Republic of China as a defendant in the above referenced case pursuant to 28 U.S.C. Section 1608(a)(4).

The American Embassy in Beijing transmitted the documents to the Ministry of Foreign Affairs of the People's Republic of China under cover of diplomatic note No. 1353 dated and delivered September 27, 2010.  A certified copy of the Embassy's diplomatic note and copies of the documents transmitted to the Foreign Ministry are enclosed herewith in accordance with the procedures established for the implementation of the Foreign Sovereign Immunities Act.

Should you have any questions regarding this matter, please do not hesitate to contact me at (202) 736-9115.

Sincerely,

William P. Fritzlen
Attorney Adviser
Office of Policy Review and Interagency Liaison

Enclosures As Stated

cc:   Gregory A. Fayer
      Gipson Hoffman & Pancione
      1901 Avenue of the Stars, #1100
      Los Angeles, CA 90067-6002



*Embassy of the United States of America*

I, Aleta T. Okediji, Vice Consul, of American Citizen Services in Beijing, People's Republic of China certify that this is a true copy of the Embassy of the United States of America's diplomatic note number 1353 dated September 27, 2010, and delivered to the Ministry of Foreign Affairs of the People's Republic of China on September 27, 2010.

Aleta T. Okediji, Vice Consul
American Citizen Services

No. 1353

The Embassy of the United States of America refers the Ministry of Foreign Affairs of the People's Republic of China to the lawsuit entitled CYBERsitter, LLC v. People's Republic of China, et al., Case No. CV 10-00038-GAF(SHx) which is pending in the Federal District Court for the Central District of California in which the People's Republic of China is a defendant. The Embassy herewith transmits a Summons and Complaint. This note constitutes transmittal of these documents to the People's Republic of China as contemplated in Title 28, United States Code, Section 1608(a)(4).

Under applicable United States law a defendant in a lawsuit must file an answer to the complaint or some other responsive pleading within 60 days from the date of transmittal of the complaint ( i.e. the date of this note) or face the possibility of having judgment entered against it without the opportunity of presenting evidence or arguments in its behalf. Accordingly, the Embassy requests that the enclosed Summons and Complaint be forwarded to the appropriate authority of the People's Republic of China with a view towards taking whatever steps are necessary to avoid a default judgment.

Under the laws of the United States, any jurisdictional or other defense including claims of sovereign immunity must be addressed to the court before which the matter is pending, for which reason it is advisable to consult an attorney in the United States. Otherwise, proceedings will continue without an opportunity to present evidence or possible defenses. Consistent with practice, the United States Department of State is available to discuss with

**DIPLOMATIC NOTE**

counsel the requirements of U.S. law. The United States Government is not a party to this litigation and cannot represent other parties in this matter.

In addition to the Summons and Complaint, the Embassy is enclosing a notice of suit prepared by the plaintiff, which summarize the nature of the case and includes references to pertinent U.S. laws concerning suits against foreign States.

Attachments:

1. Summons

2. Order Confirming Arbitration Award and Supporting documents

3. Translations

The Embassy of the United States of America

Beijing, September 27, 2010

非正式译文　仅供参考

第 1353 号

　　美利坚合众国大使馆就案件编号为第 CV 10-00038-GAF(SHx)的 CYBERsitter 有限责任公司诉中华人民共和国，等等的诉讼案提请中华人民共和国外交部注意。该案现在加利福尼亚中区联邦地区法院待审。中华人民共和国为该案被告。 大使馆谨转送该案的传票和诉状。本照会系依据《美国法典》第 1608(a)(4)条第 28 款的规定向中华人民共和国送达前述各文件。

　　根据有关的美国法律，诉讼被告方必须在 送达之日（即本照会的日期）起 60 日内就诉状予以回复或者提供其他答辩书， 否则将有可能因没有机会出示己方证据或辩辞而被法院进行对其不利的宣判。大使馆请求将所附传票和诉状送达中华人民共和国适当机构，以采取一切必要措施避免缺席判决。

　　根据美国的法律，任何有关管辖权的或者其他的答辩，包括主权豁免的主张必须向待审法院提出，为此，建议向在美国的律师咨询。 否则，诉讼将在被告没有机会提供证据或可能的辩护的情况下继续进行。一如既往，美国国务院可以与律师讨论美国的法律要求。美国政府不是该诉讼的一方，也不在此代表其他方。

　　除传票和诉状外，大使馆同时送达原告方准备的诉讼通知书一份， 其中概述了该案的性质并包括了对外国政府提起诉讼所使用的相关美国的法律。

附件：

1.　传票
2.　确认仲裁裁决的法庭令和证明文件
3.　译文

　　　美利坚合众国大使馆
　　　2010 年 9 月 27 日 于北京

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | CASE NUMBER |
|---|---|
| CYBERsitter, LLC, a California limited liability company, d/b/a Solid Oak Software | CV 10-0038 GAF (SHx) |
| PLAINTIFF(S) | |
| v. The People's Republic of China, a foreign state; Zhengzhou Jinhui Computer System Engineering Ltd., a Chinese corporation; Beijing Dazheng Human Language Technology Academy Ltd., a Chinese corporation; Sony Corporation, a Japanese corporation; Lenovo Group Limited, a Chinese corporation; Toshiba Corporation, a Japanese corporation; ACER Incorporated, a Taiwanese corporation; ASUSTeK Computer Inc., a Taiwanese corporation; BenQ Corporation, a Taiwanese corporation; Haier Group Corporation, a Chinese corporation; and DOES 1-10, Inclusive | SUMMONS |
| DEFENDANT(S). | |

TO:   DEFENDANT(S): <u>The People's Republic of China, a foreign state</u>

A lawsuit has been filed against you.

Within   <u>60</u>   days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached [X] complaint [ ] _____ amended complaint [ ] counterclaim [ ] cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, <u>Gregory A. Fayer, Esq.</u> _____ , whose address is <u>Gipson Hoffman & Pancione, 1901 Avenue of the Stars, #1100, Los Angeles, CA  90067-6002</u>   . If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated:   2 2 JAN 2010   By: _____

Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

## 美国加利福尼亚州中区地方法院

| 原告：CYBERsitter、LLC，是在加利福尼亚注册的有限责任公司，业务用名 Solid Oak Software。 | 案件编号 CV10-0038 GAF (SHx) |
|---|---|
| 对 | |
| 被告：中华人民共和国（外国国家）；郑州金惠计算机系统工程有限公司（中国公司）；北京大正语言知识处理科技有限公司（中国公司）；索尼公司（日本公司）；联想集团（中国公司）；日本东芝公司（日本公司）；宏碁股份有限公司（台湾公司）；华硕电脑股份有限公司（台湾公司）；明基电通股份有限公司（台湾公司）；海尔集团公司（中国公司）以及无名被告 1 到 10（含 1 和 10）。 | 传票 |

致被告：  The People's Republic of China, a foreign state

您已被起诉。

依据《美国民事诉讼联邦规则》第 12 条的规定，在本传票送达 60 天之内（传票送达之日不计），您必须对所附的起诉书、修改的起诉书、反诉、交叉诉讼和申请给予原告答复。答复和申请必须送达原告的律师：Gregory A. Fayer 先生  ，其地址是：Gipson Hoffman & Pancione, 1901 Avenue of the Stars, #1100, Los Angeles, CA 90067-6002  。如果您未能按照上述要求去做，将判决您缺席且本诉讼书中的救济请求对您会非常不利。  您也必须向法院递交您的答复或申请。

美国地区法院书记官

日期：_____        签名：_____

助理书记官

*(法院盖章)*

*[如果被告是美国或美国机构，或美国的官员或雇员，依据《美国民事诉讼联邦规则》第 12(a)(3) 条的规定，允许使用 60 天的期限。]*

1   GIPSON HOFFMAN & PANCIONE
    A Professional Corporation
2   GREGORY A. FAYER (State Bar No. 232303)
    GFayer@ghplaw.com
3   ELLIOT B. GIPSON (State Bar No. 234020)
    EGipson@ghplaw.com
4   1901 Avenue of the Stars, Suite 1100
    Los Angeles, California 90067-6002
5   Telephone: (310) 556-4660
    Facsimile:  (310) 556-8945
6
7   Attorneys for Plaintiff
    CYBERsitter, LLC d/b/a Solid Oak Software
8
9              UNITED STATES DISTRICT COURT
10      CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION
11

| CYBERsitter, LLC, a California limited liability company, d/b/a Solid Oak Software, | CASE NO. **CV10-0038 GAF (SHx)** |
|---|---|
| Plaintiff, | **COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRETS; UNFAIR COMPETITION; COPYRIGHT INFRINGEMENT; AND CIVIL CONSPIRACY** |
| v. | |
| The People's Republic of China, a foreign state; Zhengzhou Jinhui Computer System Engineering Ltd., a Chinese corporation; Beijing Dazheng Human Language Technology Academy Ltd., a Chinese corporation; Sony Corporation, a Japanese corporation; Lenovo Group Limited, a Chinese corporation; Toshiba Corporation, a Japanese corporation; ACER Incorporated, a Taiwanese corporation; ASUSTeK Computer Inc., a Taiwanese corporation; BenQ Corporation, a Taiwanese corporation; Haier Group Corporation, a Chinese corporation; DOES 1-10, inclusive, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

              **COMPLAINT**

04444\00001\68504.6

Plaintiff CYBERsitter, LLC d/b/a Solid Oak Software ("Solid Oak" or "Plaintiff") alleges, on information and belief, as follows:

## NATURE OF THE ACTION

1.     This action arises from one of the largest cases of software piracy in history, wherein two Chinese companies, backed by the Chinese government, stole approximately 3,000 lines of code from a small American company's software program, and disseminated it to tens of millions of end users in China with the willing participation of computer manufacturers who chose to turn a blind eye to the illegal and otherwise surreptitious nature of the pirated program in order to gain increased access to the vast Chinese market by participating in the Chinese government-led initiative to proliferate the illegal program throughout China (the "Green Dam Initiative").

2.     Solid Oak is a small family-owned software company based in Santa Barbara, California.  Solid Oak developed and marketed an award-winning Internet content filtering program called CYBERsitter, which was designed to help parents protect their children from viewing inappropriate pornographic and violent content on the Web.  CYBERsitter was the first commercially available Internet content filter, and it has been continuously published by Solid Oak for over 14 years.  Solid Oak now boasts over 2.4 million active CYBERsitter users worldwide, including thousands of businesses, individuals, and schools in China, and thousands more in other Chinese-speaking countries.

3.     The Defendants in this action include the People's Republic of China ("PRC"), two Chinese software development companies, and several of the largest computer manufacturers in the world.  As relevant here, the Chinese software developers, in collaboration with the Chinese government, purported to design an Internet content filtering program known as Green Dam Youth Escort ("Green Dam").  Like CYBERsitter, the Green Dam program was allegedly designed to block pornographic and violent Internet content from children.  Unlike CYBERsitter,

1

**COMPLAINT**

0444\00001\68504.6

however, the Green Dam program was found to contain filters to block political and religious content expressing views that differed from those of the Chinese government. The program was also found to have serious security vulnerabilities that would allow third parties to monitor or take control of the computers on which it was installed. As a result, the Green Dam program and the Chinese government's efforts to proliferate the program throughout China were met with stiff opposition from human rights groups in China and around the world. The central component of the Green Dam Initiative was for the PRC to convince and incentivize computer manufacturers to participate in the Initiative by including the Green Dam software with their computers sold in China. The Defendant computer manufacturers named herein willingly participated in this plan.

4.    In June 2009, a group of independent researchers at the University of Michigan confirmed that the Green Dam developers had copied verbatim nearly 3,000 lines of code from the CYBERsitter program and incorporated it into the Green Dam program. The stolen materials include the heart of the CYBERsitter software:  its proprietary content filters. The Chinese government has issued Green Dam usage figures reporting – as of early June 2009 – that over 53 million computers marketed for home use had been sold with the Green Dam program, that the Green Dam program had been installed on more than half a million computers in Chinese schools, and that Green Dam had been downloaded by users from the Internet an additional 3.27 million times.

5.    The Defendants in this action have conspired together to steal Solid Oak's proprietary software, and to disseminate the illegal product to tens of millions of end users in China and elsewhere. The Defendants met together at a PRC-sponsored Green Dam Symposium at the Beijing offices of the PRC's Ministry of Industry and Information Technology ("MIIT") in March 2009 to develop their common plan. The Defendants' common scheme – the Green Dam Initiative – involved two overlapping components which eventually became indistinguishable from each other: participation

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

2
**COMPLAINT**

044440000168504.6

in the Chinese government's seemingly legal (albeit surreptitious) plan to proliferate the Green Dam program throughout China, and the illegal theft, infringement, exploitation and distribution of Plaintiff's intellectual property.   Each of the Defendants herein willingly participated in this common scheme both before and after the illegal aspects of the scheme became apparent.

6.   Defendant computer manufacturers derive significant financial benefits from their unauthorized distribution of Plaintiff's intellectual property to the vast Chinese market, and have willingly participated in the scheme of the Defendant developers and the Chinese government to proliferate the illegal Green Dam product throughout China and elsewhere.  The Defendant computer manufacturers had the right, ability, legal obligation and knowledge to prevent unauthorized copies of Plaintiff's works from being distributed on their computers. But although the Defendant computer manufacturers vigorously defend their own intellectual property in the courts and in the press, they chose to turn a blind eye to the theft and infringement at issue here in order to continue to reap the financial rewards of exploiting the vast Chinese computer market.

7.   By their actions alleged herein, Defendants have conspired together to misappropriate Plaintiff's trade secrets under California law, have violated federal prohibitions on theft of trade secrets and economic espionage (constituting unlawful practices under California's Unfair Competition Law), and have violated Plaintiff's copyrights in the CYBERsitter program, both directly and indirectly, under applicable copyright laws of the United States, China, Japan and Taiwan.  Because each Defendant named herein willingly participated in the illegal elements of their common scheme, each Defendant is liable for the illegal acts of the others.

8.   As a result of Defendants' acts alleged herein, Plaintiff has been damaged in an amount to be determined at trial.   Plaintiff estimates its damages to be $2,257,175,000, representing the Chinese government's stated figures of more than 56.5 million unauthorized copies distributed in China alone as of early June 2009,

3
**COMPLAINT**

1   multiplied by $39.95 per copy (the price of purchasing a legal copy of the
2   CYBERsitter program from Solid Oak).

**JURISDICTION AND VENUE**

4   9.   This Court has subject matter jurisdiction over this action pursuant to 28
5   U.S.C. §§ 1330, 1331, 1332(a), 1338 and 1367. This action seeks relief, *inter alia*,
6   for violations of the United States Copyright Act, 17 U.S.C. §§ 101, *et seq.*, and for
7   unfair competition predicated on violations of the Economic Espionage Act, 18 U.S.C.
8   §§ 1831-32 (theft of trade secrets and economic espionage). As stated in paragraphs
9   12 through 26 below, for purposes of diversity jurisdiction, Solid Oak is a citizen of
10  the State of California, and Defendants are citizens of the People's Republic of China,
11  Japan, and the Republic of China (Taiwan). The amount in controversy exceeds the
12  sum of $75,000 exclusive of interest and costs.

13  10.   This Court has personal jurisdiction over Defendant PRC, Defendant
14  Jinhui, and Defendant Dazheng because they have purposefully availed themselves of
15  the benefits of this forum by doing business in this District, by committing wrongful
16  acts in whole or in part within this District, and/or by committing wrongful acts which
17  have had direct effects in this District. Because Defendant PRC's wrongful acts
18  alleged herein arise in connection with a commercial activity that causes a direct
19  effect in the United States, Defendant PRC comes within an express exception to the
20  Foreign Sovereign Immunities Act, *viz.*, 28 U.S.C. § 1605(a)(2). This Court has
21  personal jurisdiction over the remaining Defendants because they conduct significant
22  business in this District, and sell their computers throughout the United States in their
23  own capacity and through their wholly-owned subsidiaries.

24  11.   Venue is proper in the Central District of California pursuant to 28
25  U.S.C. § 1391(b)(2).

**THE PARTIES**

27  12.   Plaintiff Solid Oak is a limited liability company organized and existing
28  under the laws of the State of California, with its principal place of business in Santa

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

4

**COMPLAINT**

0444410000145650446

Barbara, California.  Solid Oak is engaged in the business of software development and sales.  As relevant here, Solid Oak developed and sells an Internet content filtering program known as "CYBERsitter."

13.    Defendant People's Republic of China ("PRC") is a foreign state.  As relevant here, PRC has engaged in the purely economic conduct of licensing, sublicensing, distributing and promoting the software program known as Green Dam at issue in this litigation.  PRC may not claim jurisdictional immunity from this suit as its conduct arises from commercial activity that "causes a direct effect in the United States" as described in 28 U.S.C. § 1605(a)(2) in the form of damaging Solid Oak, a California company, by PRC's unauthorized taking and use of Solid Oak's intellectual property.  The PRC's actions alleged herein are purely economic because PRC purchased a one-year license to exploit the software program at issue for approximately 6.9 million U.S. dollars, and then promoted the program and sublicensed the program to computer manufacturers, for which it received substantial sums.

14.    Defendant Zhengzhou Jinhui Computer System Engineering Ltd. ("Jinhui") is a corporation organized and existing under the laws of the People's Republic of China, with its principal place of business in Zhengzhou, China.  As relevant here, Jinhui is in the business of developing and distributing software products – in particular, the Green Dam program at issue in this litigation.

15.    Defendant Beijing Dazheng Human Language Technology Academy Ltd. ("Dazheng") is a corporation organized and existing under the laws of the People's Republic of China, with its principal place of business in Beijing, China.  As relevant here, Dazheng is in the business of developing and distributing software products – in particular, the Green Dam program at issue in this litigation.

16.    Defendant Sony Corporation ("Sony") is a corporation organized and existing under the laws of Japan, with its principal place of business in Tokyo, Japan.  As relevant here, Sony is engaged in the business of manufacturing and distributing

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

personal computers and related products, in the United States, China, and elsewhere around the world.  Sony operates and does business throughout the United States through its wholly-owned subsidiary, Sony Corporation of America.  Sony has taken a strong public stance on the importance of the protection and vigorous enforcement of its own intellectual property rights.

17.    Defendant Lenovo Group Limited ("Lenovo") is a corporation organized and existing under the laws of the People's Republic of China, with its principal place of business in Beijing, China.  As relevant here, Lenovo is engaged in the business of manufacturing and distributing personal computers and related products, in the United States, China, and elsewhere around the world.  Lenovo operates and does business throughout the United States.   In May 2005, Lenovo purchased IBM's Personal Computing Division.   As part of this purchase, Lenovo agreed to relocate its PC business headquarters from Beijing to the United States.  Lenovo's principal office is currently located in Morrisville, North Carolina.

18.    Defendant Toshiba Corporation ("Toshiba") is a corporation organized and existing under the laws of Japan, with its principal place of business in Tokyo, Japan.  As relevant here, Toshiba is engaged in the business of manufacturing and distributing personal computers and related products, in the United States, China, and elsewhere around the world.  Toshiba operates and does business throughout the United States through its wholly-owned subsidiary, Toshiba America, Inc.

19.    Defendant ACER Incorporated ("Acer") is a corporation organized and existing under the laws of the Republic of China, commonly known as Taiwan ("Taiwan"), with its principal place of business in Taipei, Taiwan.  As relevant here, Acer is engaged in the business of manufacturing and distributing personal computers and related products, in the United States, China, and elsewhere around the world. Acer operates and does business throughout the United States through its wholly-owned subsidiaries, Acer America Corporation and Gateway, Inc.

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

04444\00001\68504.6

20.     Defendant ASUSTeK Computer Inc. ("Asus") is a corporation organized and existing under the laws of Taiwan, with its principal place of business in Taipei, Taiwan.  As relevant here, Asus is engaged in the business of manufacturing and distributing personal computers and related products, in the United States, China, and elsewhere around the world.  Asus operates and does business throughout the United States through its wholly-owned subsidiary, Asus Computer International.

21.     Defendant BenQ Corporation ("BenQ") is a corporation organized and existing under the laws of Taiwan, with its principal place of business in Taipei, Taiwan.  As relevant here, BenQ is engaged in the business of manufacturing and distributing personal computers and related products, in the United States, China, and elsewhere around the world.  BenQ operates and does business throughout the United States, including under the marks "BenQ," "Joybook," and "Joybee."

22.     Defendant Haier Group Corporation ("Haier") is a corporation organized and existing under the laws of the People's Republic of China, with its principal place of business in Quingdao, China.  As relevant here, Haier is engaged in the business of manufacturing and distributing personal computers and related products, in the United States, China, and elsewhere around the world.  Haier operates and does business throughout the United States through its wholly-owned subsidiary, Haier America.

23.     The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants sued herein as Does 1 through 10, inclusive, are unknown at the present time and Plaintiff therefore sues said Does and each of them by such fictitious names.  If necessary, Plaintiff will seek leave of Court to amend this complaint to allege their true names and capacities when they are ascertained.

24.     Unless otherwise indicated herein, on information and belief, each of Does 1 through 10, inclusive, participated in the activities described herein and rendered material assistance to the other Defendants in the actions alleged herein, conspired and agreed with and aided and abetted one or more of the other Defendants, and at all relevant times each of the Defendants was the principal or agent, alter ego,

7

**COMPLAINT**

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

1   partner, joint venturer, co-venturer, co-conspirator, independent contractor, servant
2   and/or employee of at least one other of the other Defendants, and all of the acts
3   performed by them or omissions alleged herein were made in the course and scope of
4   their employment, agency, partnership, joint venture, conspiracy or other such
5   relationship and with knowledge, consent, approval and/or ratification of the
6   principals, and each of them.  Unless otherwise indicated herein, each of the parties
7   herein named as Does 1 through 10 are responsible in some manner or fashion, and
8   are by contract or otherwise, the successor, assign, joint venturer, co-venturer, co-
9   conspirator, partner or alter ego of one or more of the Defendants, or was otherwise
10  involved with the other Defendants in the wrongdoing alleged herein, and by virtue of
11  such capacity, assumed the obligations herein owed by Defendants, and is liable and
12  responsible for the damages on the facts alleged herein and for all the relief sought.

13      25.    Unless otherwise indicated herein, on information and belief, there has
14  existed at all relevant times, a unity of interest and ownership between each of the
15  Does 1 through 10 named herein, and at least one or more of the Defendants, such that
16  any individuality and separateness between them has ceased and each is the "alter
17  ego" of the other, and that adherence to the fiction of the separate existence of each
18  Doe Defendant as an entity or individual distinct from one or more of the Defendants
19  would therefore permit an abuse of the corporate privilege and would sanction fraud
20  and promote injustice.

21      26.    Unless otherwise indicated herein, on information and belief, there has
22  existed at all relevant times a joint venture between each of the Does 1 through 10
23  named herein, and at least one or more of the Defendants, such that each of the Does 1
24  through 10 and at least one or more of the Defendants shared a common business
25  interest, shared control, profits and losses arising from such common business
26  interests, and therefore are liable and responsible for the damages on the facts alleged
27  herein and for all relief sought.

28

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

8
**COMPLAINT**

## GENERAL ALLEGATIONS

### Solid Oak's CYBERsitter

27.     Solid Oak is a family-owned software company based in Santa Barbara, California, that manufactures an Internet filtering software program known as "CYBERsitter." This product was designed to help parents protect their children from viewing inappropriate pornographic and violent content on the Web. CYBERsitter was the first commercially available Internet filter. It has been continuously published by Solid Oak for over 14 years. CYBERsitter has won numerous awards, including winning *PC Magazine*'s prestigious Editor's Choice Award five times. Solid Oak now boasts over 2.4 million active CYBERsitter users worldwide, including thousands of businesses, individuals, and schools in China, and thousands more in other Chinese-speaking countries. CYBERsitter is sold on Solid Oak's website, www.CYBERsitter.com, for $39.95 per copy.

28.     CYBERsitter operates by using a complex and unique series of Internet content filters. These content filters (also referred to herein as "Trade Secrets") are proprietary code, which is encrypted in order to prevent its disclosure to third parties and competitors. They have been developed and refined by Solid Oak over many years, and are the key to the Internet filtering aspect of the program. Solid Oak's filters are constantly updated, and updates are made available at no cost to those who have purchased the CYBERsitter program. This Internet filtering component is the centerpiece of the program.

29.     Designing a content filter is an art and involves significant creativity. There are many distinctive ways for different programmers to construct these filters in order to achieve the same function. CYBERsitter's content filters are Solid Oak's unique expression, and any copying of these filters goes to the heart of the program and takes the central expressive feature that distinguishes CYBERsitter from its competitors.

**COMPLAINT**

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

044440000168504 6

<u>Green Dam and Its Developers</u>

30.     Green Dam Youth Escort, like CYBERsitter, is an Internet content management program that uses content filters to block undesired content. Green Dam was developed by two Chinese companies:  Zhengzhou Jinhui Computer System Engineering Ltd. and Beijing Dazheng Human Language Technology Academy Ltd. Green Dam was developed with the backing and support of the Chinese government. In 2004, the Green Dam project received 3 million Yuan in government investment funds.

31.     Jinhui was founded in 1997.  Jinhui is officially listed as a private company, but its principal shareholders include government-backed corporations and its researchers have close ties with the military research division of the Information Engineering University ("IEU"), one of a handful of military academies run by the People's Liberation Army.

32.     Dazheng was founded in 2000.  Dazheng (which also operates under the name "HNC Institute") is officially listed as a private company, but works closely with several Chinese government Ministries and Commissions.  In 2003, Dazheng developed its first publicly-announced software program called the "Falun Gong Concept Censorship System."  As the name suggests, the program was designed to censor Internet content related to the Falun Gong, a religious group banned by the Chinese government.  The program was found to have serious flaws that caused constant crashing on the computers on which it was installed.

<u>The Green Dam Initiative</u>

33.     On January 21, 2008, the PRC announced an "open bidding" process for companies purportedly to compete for a one-year contract for content-filtering software to be used by the PRC.  On January 25 – just four days after the bidding began – the bidding process was abruptly closed.  The PRC then allowed Jinhui and Dazheng, the makers of Green Dam, to set the standards for evaluating the software

10

**COMPLAINT**

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

1    bids, and to conduct the testing of the competing software products. Not surprisingly,
2    the winner of this "open bidding" process was Green Dam. The PRC initially paid
3    Jinhui and Dazheng a sum of 47.1 million Yuan (approximately 6.9 million U.S.
4    dollars) for a one-year license to distribute the Green Dam program. The PRC then
5    charged substantial license fees to computer manufacturers and others for use of the
6    Green Dam program.

7         34.   Pursuant to this license, Defendant PRC has made the Green Dam
8    program available for free downloading worldwide on the Internet, including on its
9    own official site, as well as on many other privately owned Internet sites. Defendants
10   Jinhui and Dazheng also made the program available for download from websites that
11   they own or control. The PRC has encouraged downloading of the program by
12   Chinese speakers worldwide, including through propaganda. The Chinese
13   government's official Green Dam site contains or contained links targeting users in
14   "San Francisco" and "New York" – the locations of the two largest Chinese-speaking
15   populations in the United States.

16        35.   On February 1, 2009, the PRC expanded an existing program known as
17   the "Rural Subsidy Program" ("Program") – which was originally designed to make
18   household items such as televisions, refrigerators, and cell phones available to rural
19   Chinese families at significantly below market price – to include home computers
20   made by certain designated suppliers. In order to participate in the Program, computer
21   suppliers were required to submit an application to the PRC and agree to abide by all
22   of the terms and preconditions of the Program. In return, the PRC has made available
23   a vast and captive market of over 800 million rural residents to the Program's
24   exclusive designated suppliers. As a precondition of participation in the Program, the
25   government required that computers sold in the Program must have Green Dam pre-
26   installed on them, or must be accompanied by a disk containing the Green Dam
27   software. Defendants Lenovo, Acer, Asus, BenQ and Haier are among the select
28

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

11
**COMPLAINT**

04444\0000\168504.6

1    group of computer manufacturers that applied and were accepted as designated

2    suppliers for the Program.

3        36.    On May 19, 2009, the PRC's MIIT issued a directive mandating that by

4    July 1, 2009 every computer shipped to or sold in China must have the Green Dam

5    software pre-installed on or packaged with the computer.  The stated purpose of the

6    directive was to "build a healthy and harmonious online environment that does not

7    poison young people's minds."  The directive also required computer suppliers to

8    report sales information to the MIIT, including the number of computers sold or

9    shipped with the Green Dam software.  Also in May 2009, MIIT ordered Green Dam

10   to be installed on every computer in every primary and secondary school in China.

11       37.    The Green Dam Initiative was met with condemnation from international

12   human rights groups and activists within China.  These groups, while agreeing with

13   the stated goal of keeping pornography away from minors (as the CYBERsitter filters

14   were designed to do), viewed the Green Dam Initiative as a thinly-veiled attempt to

15   expand political and religious censorship.  Researchers in China reported that Green

16   Dam contains over 6,500 political keyword filters, including keywords related to the

17   Chinese occupation of Tibet, the 1989 Tiananmen Square massacre, and the

18   government-banned Falun Gong religious group.  This is more than double the

19   number of pornography-related keyword filters in the program.

20       38.    On June 30, 2009 – the day before the mandate was to take effect – the

21   MIIT announced that it was delaying implementation of the mandatory pre-installation

22   of Green Dam on computers.  On August 12, 2009, China issued a statement saying

23   that it did not intend to reinstate the mandate.  Nevertheless, Green Dam continues to

24   be distributed throughout China and to Chinese speakers throughout the world, and

25   the PRC continues to promote proliferation of the Green Dam program by both formal

26   and informal means.

27

28

**COMPLAINT**

04444\0000\1685046

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

Unauthorized Copying and Exploitation of CYBERsitter Content Filters

39.    On June 11, 2009, an independent team of researchers in the computer science department at the University of Michigan issued a report analyzing the Green Dam program ("Michigan Report").  In less than 12 hours of testing, the Michigan team found "serious security vulnerabilities" in the Green Dam program, including "remotely-exploitable vulnerabilities" whereby "[a]ny website a Green Dam user visits can take control of the PC."  Researchers also found that the program makes possible remote monitoring of a computer user's activities, not limited to activities on the Internet.

40.    The Michigan Report also concluded that Green Dam had copied verbatim portions of Solid Oak's CYBERsitter program.  The most significant and troubling aspect of this copying was the copying of CYBERsitter's proprietary content filters.

41.    In addition to the verbatim copying of the CYBERsitter content filters, researchers also discovered a "smoking gun" file.  The smoking gun file is a file containing two CYBERsitter announcements, dated May 4 and May 10, 2004, respectively.  The first is a simple announcement to CYBERsitter customers: "CYBERsitter Version 9 released.  This is a free upgrade and is available at: http://www.getcybersitter.com."  The second warns CYBERsitter users of the dangers of Spyware.  It urges users to install a Spyware checker, and directs users to the CYBERsitter website for further information on this issue.  This smoking gun file was apparently copied because it has a file extension similar to that of the content filters.  Despite the fact that this file obviously has no functional role in the Green Dam program, it was directly copied from the CYBERsitter program and incorporated into the Green Dam program along with the CYBERsitter content filters.

42.    In total, the version of Green Dam tested by researchers at the University of Michigan contains 2,972 lines of code identical to CYBERsitter code.

13
**COMPLAINT**

1    43.    Numerous subsequent versions of and updates to Green Dam have been
2    released since the Michigan Report.   Testing of subsequent versions and updates to
3    Green Dam show that the CYBERsitter filters remain active, and the most current
4    version of Green Dam makes active use of CYBERsitter's content filters.   Subsequent
5    testing also indicates that the removal of the CYBERsitter content filters from the
6    program (as opposed to merely deactivating them) causes Green Dam to lose content-
7    filtering capability altogether, rendering it possible for users to access even the most
8    well-known pornographic websites.   This suggests that CYBERsitter files are integral
9    to the basic functioning of the Green Dam program and its ability to filter content.

10    Green Dam Facts and Figures

11    44.    Green Dam continues to be aggressively marketed and disseminated
12    throughout China by the PRC and the Chinese software developers, both by formal
13    and informal means.   As of June 8, 2009, the PRC reported that from the end of
14    March 2009 through early June 2009 over 53 million computers marketed for home
15    use had been sold in China with the Green Dam program.   The government also
16    reported that more than 2,000 schools in China had installed Green Dam on more than
17    half a million computers during that period.   By some estimates, the number of
18    computers equipped with Green Dam in Chinese schools was expected to top 4
19    million by the end of June 2009.   In addition, as of early June 2009, Green Dam had
20    been downloaded from Internet sites over 3 million times.

21    45.    The PRC paid the developers of Green Dam the equivalent of 6.9 million
22    U.S. dollars for a one-year license to distribute the software.   Using the PRC's figures
23    for less than three months of distribution on home computers alone, this would
24    amount to a mere 13 cents per copy.   This figure does not represent a fair market price
25    for a commercial software license arrived at through an arms-length bargaining
26    process.   Moreover, the license price does not account for the substantial additional
27    financial benefits that Jinhui and Dazheng expected to reap from the PRC-promoted
28

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

14
**COMPLAINT**

04444\00001\68504.6

proliferation of the program.  Indeed, due to update fees and other fees that the makers expected to collect for the continued use of Green Dam after expiration of the one-year governmental license period, Jinhui stated publicly that it expected its revenues from the program to top 3 billion Yuan (nearly half a billion U.S. dollars) in 2010.  In addition, the PRC has collected substantial sums, in an amount to be determined at trial, in sublicensing fees from computer manufacturers and others.

46.     The proliferation of Green Dam is not limited to China.  It is available for free download to Chinese speakers through the world.  On information and belief, many thousands of downloads of Green Dam have occurred in the United States, including thousands of downloads in the state of California.  Defendants PRC, Jinhui, and Dazheng have made the Green Dam program available for download on their official websites, and have authorized numerous other Internet sites to offer the program for download.  Chinese speakers outside of China, including in the United States, have been encouraged to download the program through propaganda, including in promotional materials on the PRC's website.  As stated above, the PRC's official Green Dam site contains or contained links specifically targeting users in San Francisco and New York.

Unlawful Attempts to Gain Access to Solid Oak Servers and Computers

47.     In addition to the illegal copying and distribution of Solid Oak's intellectual property, there have been numerous unlawful attempts to gain access to Solid Oak's computers and servers originating from within China.  Solid Oak has discovered several thousand individual attempts to gain administrative access to Solid Oak's servers originating from China.  Each of these intrusions involved between 20 and 3,000 attempts at access per session.  If successful, gaining administrative access would allow a perpetrator to access all of Solid Oak's information stored on its servers (including its content filters), and to appropriate and alter or delete this information.  At least one such intrusion, on May 31, 2009, originated from within the PRC

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

04444\0000\168504.6

1    Ministry of Health in China, and involved more than 2,500 attempts over the course of
2    27 minutes.
3         48.     On or about June 20, 2009, Solid Oak employees received a series of
4    individually customized Trojan emails originating from sources in China posing as
5    Solid Oak employees.  These emails were designed to retrieve information stored on
6    Solid Oak's computers and send it back to their source, and to install foreign items on
7    Solid Oak's computers.  Solid Oak is still investigating whether any of these attempts
8    was successful, and what information may have been compromised.
9         The Common Scheme
10        49.     As stated above, Defendants Jinhui and Dazheng (collectively,
11   "Defendant Developers") entered into an agreement with Defendant PRC providing
12   PRC with a one-year license to distribute the Green Dam software.  Defendant PRC
13   then entered into agreements with Defendants Sony, Lenovo, Toshiba, Acer, Asus,
14   BenQ, Haier and Does 1 through 10 (collectively, "Defendant Manufacturers")
15   providing for the distribution of Green Dam by Defendant Manufacturers in China
16   (including as part of the Rural Subsidy Program).  On information and belief,
17   Defendant PRC has charged substantial fees to the Defendant Manufacturers for use
18   of the Green Dam program.
19        50.     In addition, Defendant Manufacturers entered into contracts with
20   Defendant Developers, pursuant to which said Defendant Manufacturers have been
21   designated as official distributors of the Green Dam product and Defendant
22   Developers are their designated suppliers of content-filtering software.  Defendant
23   Manufacturers have requested and obtained indemnity for violations of law relating to
24   the Green Dam program from Defendant Developers.  Such indemnity, however, has
25   no bearing on Defendant Manufacturers' liability for violations of law relating to the
26   Green Dam program.
27        51.     On or about March 11, 2009, Defendant PRC held a symposium on the
28   Green Dam program at MIIT headquarters in Beijing ("Green Dam Symposium").  In

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

16
**COMPLAINT**