GIPSON HOFFMAN & PANCIONE
A Professional Corporation
GREGORY A. FAYER (State Bar No. 232303)
GFayer@ghplaw.com
ELLIOT B. GIPSON (State Bar No. 234020)
EGipson@ghplaw.com
1901 Avenue of the Stars, Suite 1100
Los Angeles, California 90067-6002
Telephone: (310) 556-4660
Facsimile:  (310) 556-8945

Attorneys for Plaintiff
CYBERsitter, LLC d/b/a Solid Oak Software

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| CYBERsitter, LLC, a California limited liability company, d/b/a Solid Oak Software,<br><br>Plaintiff,<br><br>v.<br><br>The People's Republic of China, a foreign state; Zhengzhou Jinhui Computer System Engineering Ltd., a Chinese corporation; Beijing Dazheng Human Language Technology Academy Ltd., a Chinese corporation; Sony Corporation, a Japanese corporation; Lenovo Group Limited, a Chinese corporation; Toshiba Corporation, a Japanese corporation; ACER Incorporated, a Taiwanese corporation; ASUSTeK Computer Inc., a Taiwanese corporation; BenQ Corporation, a Taiwanese corporation; Haier Group Corporation, a Chinese corporation; DOES 1-10, inclusive,<br><br>Defendants. | CASE NO. CV 10-00038 JST(SHx)<br><br>**JOINT RULE 26(F) REPORT**<br><br>Judge:  Hon. Josephine Staton Tucker<br>Ctrm:   10A<br><br>Scheduling Conf.  Date:  Dec. 6, 2010<br>Hearing Time:              1:30 p.m.<br><br>Discovery Cutoff:        None Set<br>Pretrial Conference:     None Set<br>Trial Date:                  None Set |

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

04444\00001\185339.2

1   Pursuant to Federal Rule of Civil Procedure 26(f), Central District of California
2   Local Rule 26-1, and this Court's September 7, 2010 Order Setting Scheduling
3   Conference, plaintiff CYBERsitter, LLC d/b/a Solid Oak Software ("Plaintiff") and
4   defendants Sony Corporation ("Sony"), ACER Incorporated ("Acer"), ASUSTeK
5   Computer Inc. ("Asus") and BenQ Corporation ("BenQ") (collectively, "Defendants")
6   met and conferred on November 15, 2010, and hereby submit this Joint Report.

7   **a)**   **Statement of the Case**
8   Plaintiff's Statement:

9   Plaintiff asserts claims for misappropriation of trade secrets, copyright
10   infringement, unfair competition, and civil conspiracy against ten defendants,
11   including the People's Republic of China ("PRC"), two Chinese software developers
12   (*viz.*, defendants Jinhui and Dazheng), and seven computer manufacturers.  Plaintiff
13   alleges that the developers of the Green Dam censorware program misappropriated
14   approximately 3,000 lines of code from Plaintiff's internet filtering program,
15   CYBERsitter – including the heart of the program, the CYBERsitter content filters.
16   Plaintiff further alleges that the defendant computer manufacturers distributed over 50
17   million illegal copies of the censorware program with their computers, and in so
18   doing, willingly participated with the PRC and defendant software developers in an
19   illegal scheme to misappropriate Plaintiff's intellectual property.  Plaintiff alleges that
20   each of the defendant computer manufacturers continued to distribute millions of
21   copies of the illegal program even after the illegal nature of the program became well-
22   known and long after the PRC had withdrawn its announced mandate regarding the
23   program – indeed, the PRC's Green Dam mandate was withdrawn before it was ever
24   implemented.

25   The appearing Defendants have filed answers denying the majority (but not all)
26   of Plaintiff's allegations and asserting various affirmative defenses, including, *inter*
27   *alia*, that Plaintiff's Complaint fails to state a claim, that Defendants were acting at the
28   direction of a foreign sovereign, that Defendants' actions were authorized by Plaintiff

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

1

JOINT RULE 26(f) REPORT

1    or constituted fair use, lack of personal jurisdiction, and various other equitable and

2    legal defenses. The remaining Defendants have not yet responded to the Complaint

3    and are either in the process of being served or have been served.

4         None of the appearing Defendants has asserted any counterclaims herein.

5         <u>Defendant Sony Corporation's Statement</u>:

6         This case arises from Plaintiff's allegations that two Chinese software

7    developers, acting in cooperation with the People's Republic of China ("PRC"),

8    infringed Plaintiffs' copyright in its computer software program "CYBERsitter" by

9    using portions of CYBERsitter in a Chinese software filtering program known as the

10    "Green Dam Youth Escort" ("Green Dam"). On or about May 19, 2009, the Ministry

11    of Industry and Information Technology ("MIIT") of the PRC issued a mandate

12    requiring that as of July 1, 2009, all personal computers sold in China be pre-installed

13    or packaged with Green Dam (the "Green Dam Mandate").

14         Sony Corporation had nothing to do with, and did not develop or participate in

15    the development of Green Dam. Instead, the entirety of Plaintiff's claims against Sony

16    Corporation (and a number of other foreign computer manufacturers) arises from its

17    claim that Sony Corporation complied with the Green Dam Mandate and sold

18    computers in China that were pre-installed or packaged with Green Dam. Plaintiff

19    alleges that such conduct violated the copyright laws of China and Japan, and

20    constituted a misappropriation of Plaintiff's trade secrets.

21         All of Plaintiff's claims are legally and factually meritless, and Plaintiff is not

22    entitled to any damages from Sony Corporation.

23         ***First***, Sony Corporation has no place in this lawsuit. In addition to the fact that

24    Sony Corporation did not develop (or participate in developing) Green Dam, Sony

25    Corporation does not distribute or sell any PCs in China, including the PCs at issue in

26    this action. Rather, the distribution and sale of Sony PCs in China is overseen and

27    undertaken by a separate legal entity, Sony (China) Limited ("Sony China"). Sony

28

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

2

JOINT RULE 26(f) REPORT

Corporation has informed Plaintiff that Plaintiff has sued the wrong entity, but Plaintiff refuses to dismiss Sony Corporation.

**Second**, Plaintiff cannot prevail on its claims.  Among other things, to the extent that any VAIO computers were sold in China (by Sony China) with Green Dam preinstalled, and to the extent that any claims could lie against Sony Corporation for the conduct of non-party Sony China, such conduct was undertaken as required by the Green Dam Mandate, and thus did not violate Chinese or Japanese copyright laws (plaintiff did not sue Sony Corporation under the U.S. copyright laws).  Likewise, Sony Corporation cannot be liable for misappropriation of trade secrets based solely on its alleged distribution of computer software that it did not develop.

**Third**, even if there were some basis for liability, Plaintiff is not entitled to even a fraction of the damages it seeks.  Because Plaintiff does not distribute its products in China, it has no basis to seek lost licensing fees.  In any event, it is unlikely that any purported actual damages are significant, including because Green Dam had no market value in China and would not have been purchased by any Chinese consumer.

Defendant BenQ's Statement:

Plaintiff alleges claims for Misappropriation of Trade Secrets (violation of California Civil Code section 3426.1), Unfair Competition (violation of California Business and Professions Code sections 17200 et seq. and 18 U.S.C. sections 1831, 1832), Copyright Infringement under the laws of the United States, People's Republic of China, Japan, and Taiwan, and Civil Conspiracy, all premised upon alleged software piracy.  Plaintiff seeks more than $2.2 billion in damages.

BenQ denies all liability, and asserts a number of affirmative defenses, including but not limited to those stemming from the fact that Plaintiff has named the wrong BenQ entity as a defendant, this Court does not have subject matter jurisdiction over this action, Plaintiff's claims are not premised upon proper trade secrets, and that Plaintiff's claims are barred by preemption and the Foreign Sovereign Immunities Act, among other things.

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

1    <u>Defendant Acer's Statement</u>:

2    This case arises from Plaintiff's allegations that two Chinese software

3    developers, acting in cooperation with the People's Republic of China ("PRC"),

4    infringed Plaintiffs' copyright in its computer software program "CYBERsitter" by

5    using portions of CYBERsitter in a Chinese software filtering program known as the

6    "Green Dam Youth Escort" ("Green Dam").  On or about May 19, 2009, the Ministry

7    of Industry and Information Technology ("MIIT") of the PRC issued a mandate

8    requiring that as of July 1, 2009, all personal computers sold in China be pre-installed

9    or packaged with Green Dam (the "Green Dam Mandate").

10   Acer did not develop or participate in, and had nothing to do with, the

11   development of Green Dam or the institution of the Green Dam Mandate.  Instead, the

12   entirety of Plaintiff's claims against Acer (and a number of other foreign computer

13   manufacturers) arises from its claim that Acer supposedly infringed plaintiff's

14   copyright in the CYBERsitter software by complying with the Green Dam Mandate

15   and selling computers in China that were pre-installed or packaged with Green Dam in

16   compliance with the Green Dam Mandate.  Plaintiff alleges that such conduct violated

17   the copyright law of China and Taiwan, and constituted a misappropriation of

18   Plaintiff's trade secrets.   Plainly, Acer is minor player in this matter.   Indeed,

19   Plaintiff's President, Brian Milburn, has publicly acknowledged that the computer

20   companies that distributed Green Dam (i.e. Acer) "are not really the bad guys here."

21   [As quoted in June 16, 2009 article on PCmag.com entitled "Solid Oak Asks Dell, HP

22   to stop 'Green Dam' Shipments"].

23   Plaintiff cannot prevail on its claims, and certainly not as to Acer.  Among other

24   things, to the extent that any Acer computers were sold in China with Green Dam

25   preinstalled, such conduct was undertaken as required by the Green Dam Mandate,

26   and thus did not violate Chinese and Taiwanese copyright laws.  Likewise, as a matter

27   of law Acer cannot be liable for misappropriation of trade secrets based solely on its

28   alleged distribution of computer software that it did not develop.

4

04444\00001\185339.2

1    Additionally, even if there were some basis for liability, Plaintiff is not entitled
2    to even a fraction of the damages it seeks. Plaintiff's damages claim seems more
3    intended to grab headlines than based in reality. Because Plaintiff does not distribute
4    its products in China, it has no basis to seek lost licensing fees and, in any event, it is
5    unlikely that there are any actual damages to Plaintiff, because among other reasons,
6    Green Dam had no market value in China and would not have been purchased by any
7    Chinese consumer.

8    Finally, Acer asserts a number of affirmative defenses, including failure to state
9    a claim and preemption under the Foreign Sovereign Immunities Act, among other
10   things.

11   Defendant Asus's Statement:

12   Asus denies all liability, and asserts a number of affirmative defenses, including
13   lack of subject matter jurisdiction over this action, failure to state a claim of trade
14   secret misappropriate, and preemption and the Foreign Sovereign Immunities Act,
15   among other things.

16   **b)**    **Legal Issues**

17   Plaintiff's Statement:

18   The key legal issues in this case include: (1) whether Plaintiff's software was
19   copied without authorization into the Green Dam program; (2) whether Defendants
20   and/or their agents, affiliates or subsidiaries copied and/or distributed copies of
21   Plaintiff's program; (3) whether Defendants participated in a conspiracy to
22   misappropriate Plaintiff's intellectual property; (4) whether Defendants are directly
23   liable for infringement of Plaintiff's IP; (5) whether Defendants may be held liable for
24   the infringing acts of their agents, affiliates or subsidiaries; and (6) whether the
25   appropriate measure of damages is Defendants' profits, Plaintiff's losses (*see* FAC ¶
26   27, noting that Plaintiff's customers include "thousands of businesses, individuals, and
27   schools in China, and thousands more in other Chinese-speaking countries"), a
28   reasonable license fee, or some combination thereof.

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

5

JOINT RULE 26(f) REPORT

Apart from issues related to overseas discovery (addressed below), Plaintiff is unaware of any unusual substantive, procedural, or evidentiary issues to be addressed at this time.

Statement of Defendant Sony Corporation:

This is a highly unusual case, both procedurally and substantively. Assuming Sony Corporation remains in the case, this action would involve the application of the laws of four countries (China, Taiwan, Japan and the United States) and would raise questions under those laws of sovereign immunity and international comity. With respect to each of the laws of China, Taiwan and Japan, the parties would need to obtain legal experts specializing in those countries' conflicts of law, copyright and/or trade secrets laws.

Among the issues to be decided are:

● Whether Sony Corporation can be liable for the acts of non-party Sony China under Chinese or Japanese copyright law, or under California Trade Secrets law;

● Whether a finding of infringement under Chinese or Japanese copyright law or California Trade Secrets law can be based solely on conduct undertaken in compliance with the Green Dam Mandate issued by the MIIT of the PRC;

● Whether Plaintiff's claims are barred under the doctrines of sovereign immunity or sovereign compulsion under Japanese and Chinese law.

● Whether Plaintiff is entitled to any actual damages under Chinese or Japanese copyright law or California Trade Secrets law, and, if so, the amount of such damages, including the proper apportionment of damages under Chinese and Japanese copyright law between the allegedly infringing and indisputably non-infringing portions of Green Dam.

The evidentiary issues also are extremely unusual, and will involve extensive international discovery, including discovery on the PRC and its representatives. As discussed below, obtaining discovery will be complicated, difficult, and time

6

04444\00001\185339.2

consuming.  Discovery imperative to proving Sony Corporation's defenses will need to be obtained from third parties through the Hague Convention, and to a lesser extent, by using Letters Rogatory.  The parties will be required to travel to multiple foreign jurisdictions to take (and defend) discovery in this case.  In the event the case is tried, Sony Corporation will be required to transport witnesses from overseas to Los Angeles, and to obtain any necessary visas.

Defendant BenQ's Statement:

As Plaintiff has been informed and provided evidence of, Plaintiff has sued the incorrect BenQ entity.  Accordingly, BenQ plans to move for summary judgment on this issue at the earliest possible opportunity.  Additionally, if BenQ remains as a defendant in this case, BenQ plans to file an appropriate dispositive motion challenging this Court's subject matter jurisdiction under the Foreign Sovereign Immunities Act.

Defendant Acer's Statement:

This action involves the application of the laws of four countries, and raises issues regarding the laws of foreign sovereign immunity in each of those countries. With respect to each of the laws of China, Taiwan and Japan, the parties would need to obtain legal experts specializing in those countries' conflicts of law, copyright and/or trade secrets laws.

Among the issues to be decided are:

● Whether Acer can be liable for infringement under Chinese or Taiwanese copyright law or California Trade Secrets law based solely on conduct undertaken in compliance with the Green Dam Mandate, issued by the MIIT of the PRC;

● Whether Plaintiff's claims are barred under the doctrines of sovereign immunity or sovereign compulsion under Taiwan and Chinese law; and

● Whether Plaintiff is entitled to any damages under Chinese or Taiwan copyright law or California Trade Secrets law, and, if so, the amount of such damages.

Defendant Asus's Statement:

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

7

04444\00001\185339.2

In the event that this case proceeds substantively, it will involve the application of the laws of four countries (China, Taiwan, Japan and the United States) and raise issues of sovereign immunity and international comity.  With respect to each of the laws of China, Taiwan and Japan, the parties will need to obtain legal experts specializing in those countries' conflicts of law, copyright, and/or trade secrets laws.

Among the issues to be decided are:

● Whether Asus can be liable alleged infringement under Chinese or Taiwanese copyright law or California Trade Secret law based solely on conduct undertaken in compliance with the Green Dam Mandate, issued by the MIIT of the PRC;

● Whether Plaintiff's claims are barred under the doctrines of sovereign immunity or sovereign compulsion under Taiwanese or Chinese law;

● Whether Plaintiff is entitled to any actual damages under Chinese or Taiwanese copyright law or California Trade Secrets law, and, if so, the amount of such damages;

The evidentiary issues also are extremely unusual, and will involve extensive international discovery, including discovery on the PRC and its representatives.  As discussed below, obtaining discovery will be complicated, difficult, and time consuming.  Discovery imperative to proving Asus's defenses will need to be obtained from third parties through the Hague Convention, and to a lesser extent, by using Letters Rogatory.  The parties will be required to travel to multiple foreign jurisdictions to take (and defend) discovery in this case.  In the event the case is tried, Asus will be required to transport witnesses from overseas to Los Angeles.

c) **Damages**

Plaintiff's Statement:

Plaintiff estimates the reasonable range of provable damages to be between $6.2 million and $2.25 billion.  The former is the amount that the Chinese government paid the Green Dam developers (*viz.*, defendants Jinhui and Dazheng) for a one-year

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

8

JOINT RULE 26(f) REPORT

license to use and distribute the Green Dam software, the heart of which was copied from the CYBERsitter program.  The latter, as stated in the Complaint, represents the Chinese government's stated figures of more than 56.5 million unlicensed copies distributed on computers, in schools, and on the Internet (as of early June 2009) multiplied by $39.95 per copy.

Defendant Sony Corporation's Statement:

Even assuming Plaintiff is entitled to damages, which Sony Corporation denies, any damages analysis would need to be assessed by experts in Chinese licensing and copyright infringement.  Additionally, any damages analysis must take into consideration issues of apportionment between the allegedly infringing and non-infringing portions of CYBERsitter, the fact that few, if any, Chinese consumers likely would have purchased Green Dam at retail (and certainly not at the market value of the CYBERsitter software for the United States market), and the fact that Plaintiff has no track record of sales or licensing of its product in China, and has never entered or contemplated entering the Chinese market.

Defendant BenQ's Statement:

BenQ denies that it has caused any damages to Plaintiff, and thus does not believe any range of damages is provable against it.

Defendant Acer's Statement:

For the reasons discussed above, Acer believes that Plaintiff will not be able to prove liability by Acer, so the issue of damages will not be reached as to it.  Even if Plaintiff were able to prove liability as to Acer, it will not be able to prove that it is entitled to any amount of damages as to Acer for the reasons discussed above.   It is anticipated that Plaintiff's damages claim will require analysis under, and expert testimony as to,  Chinese law on licensing and copyright infringement.

Defendant Asus's Statement:

Asus denies that it has caused any damages to Plaintiff, and thus does not believe any range of damages is provable against it.

9

JOINT RULE 26(f) REPORT

**d)**     **Insurance**

Plaintiff is not aware of any relevant insurance coverage.

Defendants are not aware at this time of any relevant insurance policies.

**e)**     **Motions**

Plaintiff's Statement:

While Plaintiff does not at this time anticipate joining additional parties or claims, Plaintiff reserves its right to join additional parties if discovery brings to light facts that would make the joinder of additional parties appropriate, including (without limitation) Defendants' agents, alter egos, or joint ventures involved in the unauthorized distribution of Plaintiff's intellectual property via the Green Dam program, as may come to light during discovery.

Plaintiff intends to bring motions for entry of default and default judgment at the appropriate time against any defendants that fail to timely respond to the Complaint after service. For the convenience of the Court, Plaintiff provides the following update regarding the status of service on the Chinese defendants. According to the proof of service filed with the Court by the U.S. Department of State on November 12, 2010, defendant PRC was served on September 27, 2010. Accordingly, the PRC's response date is November 26, 2010. With respect to the four Chinese corporate defendants (*viz.*, Lenovo, Haier, Jinhui and Dazheng), Plaintiff initiated the re-service of these entities pursuant to the Hague Service Convention and in accordance with this Court's September 15, 2010 Order on October 18, 2010. Service on defendant Lenovo was sent through the Hong Kong office, as was suggested by the PRC in its letter refusing to serve Lenovo pursuant to the initial service request. (Plaintiff notes that Lenovo made a general appearance in this action by and through its counsel by filing papers in opposition to Plaintiff's motion for default, which Plaintiff filed in response to the Court's Order to Show Cause.) Plaintiff has not yet received any response to its latest attempts to serve the four Chinese corporate defendants.

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

10

JOINT RULE 26(f) REPORT

1    Defendant Sony Corporation's Statement:

2        Sony Corporation has made it clear to Plaintiff since the inception of this case

3    that Sony Corporation is not a proper defendant and did not engage in any of the

4    activity alleged in Plaintiff's Amended Complaint.  Sony Corporation has advised

5    Plaintiff, including through declarations submitted in support of its motion to dismiss

6    for *forum non conveniens*, that Sony Corporation does not distribute any PCs in

7    China, and specifically has not distributed any PCs in China containing Green Dam.

8    Plaintiff has refused to dismiss Sony Corporation and also has refused to provide any

9    information to demonstrate why Plaintiff believes that Sony Corporation is a proper

10   Defendant.

11       In light of the foregoing, Sony Corporation requests that discovery be

12   conducted in phases.  Specifically, Sony Corporation proposes that Phase I of

13   discovery address the narrow, threshold issue of whether Sony Corporation is a proper

14   defendant.  Sony Corporation anticipates filing an early motion for summary

15   judgment on this threshold issue.  Sony Corporation submits that a phased discovery

16   approach would promote judicial economy and efficiency.

17       If it is determined that Sony Corporation is a proper defendant, Sony

18   Corporation anticipates filing a Rule 12(c) motion, as well as a motion for summary

19   judgment on both liability and damages.

20   Defendant BenQ's Statement:

21       BenQ intends to file a motion for summary judgment on the grounds that it is

22   the incorrect BenQ entity to be named in this suit.  Additionally, if BenQ remains as a

23   defendant in this case, BenQ plans to file an appropriate dispositive motion

24   challenging this Court's subject matter jurisdiction under the Foreign Sovereign

25   Immunities Act.

26   Defendant Acer's Statement:

27       Acer anticipates that it will file at least a Rule 12(c) motion as well as one or

28   more motions for summary judgment on both liability and damages.

04444\00001\185339.2

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

Defendant Asus's Statement:

Asus anticipates filing a Rule 12(c) motion, as well as a motion for summary judgment on both liability and damages.

**f)     Manual for Complex Litigation**

Plaintiff's Statement:

Plaintiff does not believe that the Manual for Complex Litigation should be utilized in this case.

Defendant Sony Corporation's Statement:

Although Sony Corporation agrees that the Manual for Complex Litigation need not be utilized in this case, Sony Corporation believes that phased discovery should be employed.

Defendant BenQ's Statement:

BenQ does not believe this case is "complex" within the meaning of the Manual for Complex Litigation, but nonetheless, the Manual's instructions regarding the phasing and management of discovery may be useful here.

Defendant Acer's Statement:

Acer does not believe this case is "complex" within the meaning of the Manual for Complex Litigation, but nonetheless, the Manual's instructions regarding the phasing and management of discovery may be useful here.

Defendant Asus's Statement:

Asus does not believe this case is "complex" within the meaning of the Manual for Complex Litigation, but nonetheless, the Manual's instructions regarding the phasing and management of discovery may be useful here.

**g)     Status of Discovery**

At Defendants' request, the parties agreed to forgo service of discovery until after the 16(b) Scheduling Conference or until after a ruling on Sony's pending motion for dismissal on *forum non conveniens* grounds, whichever is earlier.  As a result, none of the parties has yet served any discovery in this case.

JOINT RULE 26(f) REPORT

04444\00001\185339.2

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

**h)**   **Discovery Plan**

**1.**   **Rule 26(f)(3)(A) – Initial Disclosures**

At the Rule 26(f) conference, Defendants requested a three-week extension of the deadline for exchanging initial disclosures, which was originally set for November 29, 2010, per Fed. R. Civ. P. 26(a)(1)(C).  Plaintiff agreed to a two-week extension of this date.  Thus, per the parties' agreement, initial disclosures will be made no later than December 13, 2010.

**2.**   **Rule 26(f)(3)(B) – Subjects of Discovery**

Plaintiff's Statement:

Plaintiff  proposes a single discovery period wherein the parties may take discovery related to all claims and defenses.  Plaintiff believes that structuring discovery in this manner would further the speedy prosecution of the case and would avoid the lengthy delays that would result from Defendants' proposed phased discovery.  As stated in Plaintiff's opposition to Sony's *forum non conveniens* motion, Plaintiff does not believe that extensive discovery will be necessary regarding the central issues whether unauthorized copying and distribution of Plaintiff's intellectual property occurred.  Plaintiff anticipates that the principal issues in discovery will be: (1) the extent of Defendants' knowledge of, direction of and/or participation in discussions of and decisions relating to the distribution of the Green Dam product (including, without limitation, any efforts by Defendants to police and control the use of their trademarks by their affiliates in connection with infringing products); (2) whether the relationship between Defendants and their agents, affiliates, subsidiaries and joint ventures is such that liability may be imposed for their acts; (3) whether the Defendants entered into a common plan or scheme to distribute the illegal program, which continued after the Defendants had knowledge of the illegal nature of the scheme; and (4) the number of copies that each of the Defendants made or distributed (or otherwise directed or caused to be made or distributed) and the dates and location of these acts.

13

04444\00001\185339.2

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

Plaintiff plans to serve written discovery requests upon each of the Defendants regarding each of these issues and such other issues as may be appropriate.  Plaintiff also plans to take 30(b)(6) depositions of each of the Defendants.  Without waiving any rights to further discovery, Plaintiff does not currently have plans to take further depositions from either Defendants or third parties in connection with this case.

Thus, assuming that Defendants cooperate fully in the discovery process, Plaintiff does not believe that extensive overseas discovery will be needed (particularly with respect to third parties) and may not be necessary at all.  To the extent that Defendants wish to take discovery or third party discovery overseas, they may do so pursuant to the provisions of the Hague Evidence Convention (of which China, the U.S. and Japan are all signatories) or via letters rogatory with respect to third parties in Taiwan (if any, and none have been identified).  Furthermore, Sony's allusion to the information on the State Department's website (both below and in the conference of counsel) has no application provided that Sony (who is of course a party to this action) agrees to cooperate with the discovery process and to produce its own witnesses for deposition without the need for Plaintiff to seek to compel them through the Japanese authorities.

Plaintiff proposes the following discovery and trial-related dates (computed in accordance with one of the standard forms used by several Central District judges):

**Expert Witness Disclosures**: September 5, 2011

**Rebuttal Expert Witness Disclosures**: October 3, 2011

**Expert Discovery Cut-Off**: October 24, 2011

**Non-Expert Discovery Cut-Off** : September 5, 2011

**Cut-Off for Hearing of Motions**: October 17, 2011

**Last Day for Hand-Serving Motions in Limine**: October 24, 2011

**Pretrial Conference Date**: November 21, 2011

**Trial Date**: December 5, 2011

JOINT RULE 26(f) REPORT

04444\00001\185339.2

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

Defendants were unprepared to discuss or propose any trial or discovery dates at the Rule 26(f) conference.  Defendants did proposed a two-phase discovery process wherein the initial discovery phase would be limited to discovery regarding the whether the Defendants named herein are proper defendants in this action.  It is Plaintiff's position that phased discovery here would result in a waste of time and a nearly year-long delay in the litigation.  The principal flaw in Defendants' proposal is that the issue of whether the named Defendants are proper defendants herein is inextricably bound up with all of the substantive liability issues in this case.  In order to determine this issue, for instance, discovery would be necessary into: (i) what acts were taken by which of the Defendants and which of their related entities; (ii) whether the Defendants themselves authorized, instructed or approved of the complained of acts; (iii) what degree of control the Defendants exercised over their Chinese affiliates and subsidiaries in connection with the complained of acts; and (iv) the factual basis for Plaintiff's allegations that Defendants participated in a conspiracy with defendant PRC and the defendant developers to illegally distribute Plaintiff's software, among other topics.  It is unclear what if any topics would be excluded from the first phase of discovery under Defendants' plan.  Moreover, it is likely that after the conclusion of Defendants' proposed initial discovery period there will be issues of material fact remaining for the jury to determine regarding the conspiracy claim and other entity liability issues.  For all of these reasons, it would be far more efficient to simply take discovery on all topics in a single phase, as Plaintiff has proposed.

<u>Defendant Sony Corporation's Statement</u>:

Sony Corporation believes it is premature to attempt to set dates for discovery because several defendants have not yet been served, and not all defendants that have been served have appeared.

When discovery does proceed, it will be difficult and time consuming because of the complicated legal and factual nature of this case.  All of Defendants' witnesses are located outside the United States, and virtually every document located outside the

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

15

United States will need to be translated.  Much of the discovery will be obtained through the Hague Convention or Letters Rogatory.  It would be only speculation to estimate how long it will take to complete discovery.

In light of this, Plaintiff's proposed discovery schedule would essentially prevent the parties from obtaining key evidence to support their claims or defenses.  As just one example, if Sony Corporation is to remain in the case, depositions will need to be taken in Japan.  According to the Website of the U.S. Embassy in Japan, "[t]aking a deposition in Japan can be complex; depositions are controlled by detailed agreements between the United States and the Government of Japan, and procedure cannot be modified or circumvented.  Orders by U.S. Courts cannot compel the Government of Japan to amend or overlook its judicial regulations and procedures.  In addition, the Embassy cannot compel the Government of Japan to act faster, or in a way more convenient or beneficial to any party, even with a Court order requesting such action."  According to the Embassy, the first available date for a deposition in Japan is in approximately 6 months (assuming timely visas are obtained).

Moreover, witnesses with knowledge of the distribution of Sony computers in China are located in China.  Likewise, relevant documents – including any documents reflecting communications between Sony China and the PRC or the distribution and sale of computers in China – are located in China and are written largely in Chinese.  Many documents would need to be obtained from third parties via the Hague Convention.  Even once the documents have been collected, they will need to be translated and reviewed.

In light of this complexity and the threshold issue discussed above, Sony Corporation proposes phased discovery, as follows:

First, discovery should be limited to the threshold issue of whether Sony Corporation is a proper defendant.  Sony Corporation anticipates filing an early motion for summary judgment on this issue.

JOINT RULE 26(f) REPORT

04444\00001\185339.2

Second, in the event that Sony Corporation does not prevail on its initial motion for summary judgment, Sony Corporation proposes that the Court hold a further Rule 16 conference, wherein hopefully all defendants that have answered and appeared can participate.  Although Sony Corporation believes it is premature to set all dates for this case at this time, Sony Corporation believes that when dates are set, the following framework would be helpful.

**Phase I Discovery Cut-Off** – November 30, 2011

**Phase I MSJ Filing Deadline** – 60 days after close of Phase I discovery

**Phase II Discovery Cut Off** – 12 months after ruling on Phase I MSJ

**Expert Witness Disclosures** – 90 days before filing of Phase II Dispositive Motions (experts, *inter alia*, on the laws of Japan, China and Taiwan would need to be disclosed and arguably deposed before the MSJ's on those issues are filed)

**Deadline for Filing of Phase II Dispositive Motions** – 60 days after close of Phase II Discovery

**Pretrial Conference Date** – Four months after hearing on Phase II Dispositive Motions (to ensure time to comply with Rule 16)

**Trial Date** – TBD

Defendant BenQ's Statement:

Discovery should be phased.  As noted above, Plaintiff has named the incorrect BenQ entity as a defendant in this suit.  Accordingly, discovery as between Plaintiff and BenQ initially should be limited to whether Plaintiff has named the proper BenQ entity as a defendant ("Phase 1 Discovery").  When that discovery is complete, BenQ intends to file a motion for summary judgment on that issue ("BenQ's Phase 1 Motion for Summary Judgment").

If BenQ remains in the suit after this Court's order on that motion, only then should merits discovery go forward ("Phase 2 Discovery").  Phase 2 Discovery will require written discovery and depositions of both party and third-party witnesses.

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

17

BenQ proposes a more extended discovery period than Plaintiff because Phase 2 Discovery will be time-consuming and complicated.  Plaintiff has alleged claims under Chinese, Japanese, and Taiwanese law.  Much, if not most, of the written evidence in this case will be in Chinese or languages other than English, and will require translation.  Most of the witnesses will speak Chinese or languages other than English, and are located overseas.  The service of discovery and scheduling of depositions in compliance with the discovery laws of People's Republic of China, Japan, and Taiwan, in additional to the United States will be very time-consuming.

Although BenQ believes it is premature to set all dates for this case at this time, BenQ believes that when dates are set, the following framework would be helpful:

**Phase 1 Discovery Cut-Off**:  November 30, 2011

**Motion Deadline for BenQ's Phase 1 Motion for Summary Judgment**:  60 days after close of Phase 1 discovery

**Non-Expert Phase 2 Discovery Deadline**: 12 months after ruling on Phase 1 MSJ

**Expert Discovery Deadline**: 90 days before filing of Phase 2 Dispositive Motions (experts, *inter alia*, on the laws of Japan, China and Taiwan would need to be disclosed and arguably deposed before the MSJs on those issues are filed)

**Phase 2 Dispositive Motion Deadline** – 60 days after close of Phase 2 Discovery

**Pretrial Conference Date**: Four months after hearing on Phase 2 Dispositive Motions (to ensure time to comply with Rule 16)

**Trial Date**: TBD

<u>Defendant Acer's Statement:</u>

Acer believes it is premature to attempt to set dates for discovery because several defendants have not yet been served, and not all defendants that have been served have appeared, including the principal defendants.

04444\00001\185339.2

When discovery does proceed, it will be difficult and time consuming because of the complicated legal and factual nature of this case. Discovery will require written discovery and depositions of both party and third-party witnesses. All of Acer's witnesses are located outside the United States, and virtually every relevant document located outside the United States will need to be translated. Plaintiff has alleged claims under Chinese, Japanese, and Taiwanese law. At this point, it would be only speculation to estimate how long it will take to complete discovery. The service of discovery and scheduling of depositions in compliance with the discovery laws of People's Republic of China, Japan, and Taiwan, in additional to the United States will be time-consuming.

Moreover, virtually every witness with knowledge of the distribution of Acer computers in China is located in China. Likewise, relevant documents – including documents reflecting communications regarding the distribution and sale of Acer computers in China – are located in China. These documents would need to be obtained from third parties *via* the Hague Convention. Even once the documents have been collected, they will need to be translated and reviewed.

In light of this complexity and the threshold issue discussed above, Acer proposes phased discovery, as follows:

First, discovery be limited to the threshold issue of whether the proper entities have been named as defendants in this suit.

Second, after the various initial motions for summary judgment are ruled on, Acer proposes that the Court hold a further Rule 16 conference, wherein hopefully all defendants that Plaintiff intends to serve will have answered and appeared, and therefore can participate. Also, at that time the scope of the case and anticipated discovery will be more clear. Although Acer believes it is premature to set all dates for this case at this time, Acer believes that when dates are set, the following framework would be helpful.

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

19

JOINT RULE 26(f) REPORT

**Phase I Discovery Cut-Off** – November 30, 2011 (allowing time to take foreign depositions)

**Phase I MSJ Filing Deadline** – 60 days after close of Phase I discovery

**Phase II Discovery Cut Off** – 12 months after ruling on Phase I MSJ

**Expert Witness Disclosures** – 90 days before filing of Phase II Dispositive Motions (experts, *inter alia*, on the laws of Japan, China and Taiwan would need to be disclosed and arguably deposed before the MSJ's on those issues are filed)

**Deadline for Filing of Phase II Dispositive Motions** – 60 days after close of Phase II Discovery

**Pretrial Conference Date** – Four months after hearing on Phase II Dispositive Motions (to ensure time to comply with Rule 16)

**Trial Date** – TBD

Defendant Asus's Statement:

Asus believes it is premature to attempt to set dates for discovery because several defendants have not yet been served, and not all defendants that have been served have appeared.

When discovery does proceed, it will be difficult and time consuming because of the complicated legal and factual nature of this case. Discovery will require written discovery and depositions of both party and third-party witnesses. All of Defendants' witnesses are located outside the United States, and virtually every document located outside the United States will need to be translated. Plaintiff has alleged claims under Chinese, Japanese, and Taiwanese law. Much of the discovery will be obtained through the Hague Convention or Letters Rogatory. It would be only speculation to estimate how long it will take to complete discovery. The service of discovery and scheduling of depositions in compliance with the discovery laws of People's Republic of China, Japan, and Taiwan, in additional to the United States will be very time-consuming.

JOINT RULE 26(f) REPORT

04444\00001\185339.2

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

1    **Discovery Cut Off** – 12 months after rulings on Defendants' early motions.

2    **Expert Witness Disclosures** – 90 days before filing of Phase II Dispositive

3    Motions (experts, *inter alia*, on the laws of Japan, China and Taiwan would  need to

4    be disclosed and arguably deposed before the MSJ's on those issues are filed).

5    **Deadline for Filing of Dispositive Motions** – 60 days after close of discovery.

6    **Pretrial Conference Date** – Four months after hearing on Dispositive Motions

7    (to ensure time to comply with Rule 16).

8    **Trial**:  on a date to be set after an order is issued on Asus's 12(c) motion and

9    the other early motions that other Defendants will be filing.

10    **3.    Rule 26(f)(3)(C) – Discovery of Electronically Stored Information**

11    Plaintiff's Statement:

12    Defendants were not prepared to discuss this topic at the Rule 26(f) conference.

13    Defendants could not describe their clients' electronic information storage systems or

14    the form in which such information was stored.  Plaintiff asked whether Defendants

15    had instructed their clients to disable any automatic deletion of backup copies from

16    their clients' electronic document storage systems.  Defendants refused to confirm

17    either that such auto-purge functions had been disabled on their clients' electronic

18    storage systems or even that they had instructed their clients of their obligations

19    regarding the preservation and spoliation of evidence.  (Sony's counsel made only a

20    vague statement that they "would comply with their obligations under the Federal

21    Rules.")  This is particularly concerning given that the Defendants are all foreign

22    entities and may not know of or be accustomed to American discovery practices.

23    Indeed, both the formal legal requirements and informal business practices in Taiwan,

24    Japan and China regarding the preservation and spoliation of evidence are notoriously

25    very different those in the U.S.

26    This apparent failure of defense counsel to even instruct their clients regarding

27    the preservation and spoliation of electronic and other evidence more than ten (10)

28    months after the commencement of this case is highly troubling, and could well result

21

04444\00001\185339.2

in irreparable prejudice to Plaintiff's ability to conduct its case (if relevant evidence has already been destroyed, which, at this point, Plaintiff cannot determine). Plaintiff reserves the right to take any steps necessary to protect its interests in this regard as discovery unfolds. For now, Plaintiff requests the Court to instruct Defendants' counsel of their duties to communicate with their clients regarding their obligations to preserve evidence, particularly electronically stored information, to ensure that relevant information is not lost.

Plaintiff acknowledges and has fully complied with its obligations regarding the preservation of electronically stored evidence, including by disabling automatic deletion of backup files.

At the 26(f) conference, Plaintiff proposed that the parties produce any electronically stored information in its native form. Defendants had no proposal regarding the production of electronically stored information. Sony's counsel stated that they would have to discuss with their clients how such information is stored before making a proposal about the form in which it should be produced.

Defendant Sony Corporation's Statement:

Sony is prepared to negotiate and agree upon a separate "Discovery Plan Stipulation" to be submitted to the Court. Sony anticipates that such a Discovery Plan Stipulation would set forth the manner in which electronically stored information is to be produced, as well as address other related issues, such as the right to assert claims of privilege or work product protection after inadvertent production of privileged or protected electronic information.

Defendant BenQ's Statement:

BenQ acknowledges and has fully complied with its obligations regarding the preservation of electronically stored information ("ESI").

Contrary to plaintiff's statement that the "Defendants had no proposal regarding the production of electronically stored information", at the 26(f) conference, defendants proposed that the parties negotiate and agree upon a separate "Discovery

JOINT RULE 26(f) REPORT

04444\00001\185339.2

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

1   Plan Stipulation" to be submitted to the Court along with a Protective Order.  BenQ
2   anticipates that such a Discovery Plan Stipulation would set forth the manner in which
3   electronically stored information is to be produced, as well as address other related
4   issues, such as the right to assert claims of privilege or work product protection after
5   inadvertent production of privileged or protected electronic information.

6   BenQ reserves the right with regard to the production of ESI: (1) pursuant to
7   Federal Rule of Civil Procedure 26(b)(2)(B), the right not to provide discovery of ESI
8   that is not reasonably accessible because of undue burden or cost; (2) pursuant to
9   Federal Rule of Civil Procedure 34(b)(2)(E), the right to provide ESI in the form in
10  which it is ordinarily maintained; and (3) pursuant to Federal Rule of Civil Procedure
11  26(b)(5), the right to assert claims of privilege or work product protection after
12  inadvertent production of privileged or protected electronic information.

13  <u>Defendant Acer's Statement:</u>

14  Contrary to plaintiff's statement that the "Defendants had no proposal regarding
15  the production of electronically stored information", at the 26(f) conference, Acer
16  proposed that the parties negotiate and agree upon a separate "Discovery Plan
17  Stipulation" to be submitted to the Court along with a Protective Order.  Acer
18  anticipates that such a Discovery Plan Stipulation would set forth the manner in which
19  electronically stored information is to be produced, as well as address other related
20  issues, such as the right to assert claims of privilege or work product protection after
21  inadvertent production of privileged or protected electronic information.

22  <u>Defendant Asus's Statement:</u>

23  Contrary to plaintiff's statement that the "Defendants had no proposal regarding
24  the production of electronically stored information", at the 26(f) conference, co-
25  defendant Acer proposed that the parties negotiate and agree upon a separate
26  "Discovery Plan Stipulation" to be submitted to the Court along with a Protective
27  Order.  Asus agrees that such a negotiation process will be necessary and anticipates
28  that such a Discovery Plan Stipulation would set forth the manner in which

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

23

04444\00001\185339.2

electronically stored information is to be produced, as well as address other related issues, such as the right to assert claims of privilege or work product protection after inadvertent production of privileged or protected electronic information.

Asus acknowledges and has fully complied with its obligations regarding the preservation of electronically stored information ("ESI").

**4.    Rule 26(f)(3)(D) – Issues Relating to Claims of Privilege or Trial Preparation Material**

The parties have agreed that the assertion of a privilege may be made by a party after production, and that previously-produced documents that are subsequently claimed to be privileged will be returned to the parties upon assertion of a privilege, without prejudice to any party's right to challenge the claim of privilege.  The parties have agreed to use their best efforts to enter into a mutually acceptable protective order incorporating such a claw-back provision, in accordance with this Court's applicable rules and procedures.  Once the protective order has been approved by both parties, the parties will ask the Court to enter the protective order.

**5.    Rule 26(f)(3)(E) – Limitations on Discovery**

Plaintiff's Statement:

Much of Defendants' documentary evidence in this case is likely to be in either Japanese or Chinese, and would require translation.  As a result, the importance of interrogatories as a method of discovery for Plaintiff is substantially greater here than in ordinary cases.  In the interests of efficiency and economy and in order to avoid unnecessary expense and facilitate the gathering of information, Plaintiff requests that the Court permit Plaintiff to serve 75 written interrogatories (which is customary in other federal proceedings, such as trademark proceedings before the U.S. Trademark Trial and Appeal Board, for example), rather than the default 25 interrogatories per Rule 33(a)(1).

Apart from this, Plaintiff does not propose any changes to the limitations on discovery under the Federal or Local Rules.

24

04444\00001\185339.2

Defendant Sony Corporation's Statement:

Sony Corporation does not at this time foresee a need to alter the discovery limitations.  However, Sony Corporation is concerned that Plaintiff is attempting to artificially limit discovery in this case and prejudice Sony Corporation (and the other foreign manufacturers) by putting unrealistic time constraints on discovery.

Defendant BenQ's Statement:

BenQ proposes no additional limitations on discovery, other than those set forth above.

Defendant Acer's Statement:

Acer does not at this time foresee a need to alter the discovery limitations. However, Acer is concerned that Plaintiff is attempting to artificially limit discovery in this case and prejudice Acer (and the other foreign manufacturers) by putting unrealistic time constraints on discovery.

Defendant Asus's Statement:

Asus proposes no additional limitations on discovery, other than those set forth above.

## 6.    Rule 26(f)(3)(F) – Other Orders

The parties acknowledge that discovery in this action may include confidential or proprietary information.  The parties agree to use their best efforts to enter into a mutually acceptable protective order governing the production and use of such information, in accordance with this Court's applicable rules and procedures.  Once the protective order has been approved by both parties, the parties will ask the Court to enter the protective order.

The parties are not aware of any other orders at this time that would be appropriate for the Court to enter.

**i)**    **Discovery cut-off**

Plaintiff proposes September 5, 2011 as the discovery cut-off for this action (see other related dates in section h) above).

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

25

04444\00001\185339.2

Sony Corporation proposes a discovery cut off for Phase I of the case of November 30, 2011.  Sony Corporation proposes that the other dates not be set until after Phase I is completed.

BenQ proposes November 30, 2011 as the discovery cut-off for Phase 1 Discovery in this action (see other related dates in section h) above).

Acer proposes November 2011 as the discovery cut-off for Phase I of the case (see other related dates in section h) above).

Asus proposes that a discovery cut-off be established once the Defendants' early motions are ruled on.

**j)**      **Dispositive motions**

Both parties anticipate filing dispositive or partially dispositive motions.

On September 13, 2010, defendant Sony filed a motion to dismiss the action on grounds of *forum non conveniens*.  Defendants Acer, Asus, and BenQ joined in Sony's motion.  Sony's motion was originally set for hearing on November 8, 2010; however, by Order of November 4, 2010, the Court took the hearing off calendar, finding the motion fit for disposition without oral argument.  On November 18, 2010, the Court issued an order denying this motion.

Also on September 13, 2010, defendant Toshiba filed a motion to dismiss the Complaint as to Toshiba for lack of personal jurisdiction.  Toshiba also joined in Sony's motion based on *forum non conveniens*.  However, Toshiba's motion and joinder became moot, as Toshiba was dismissed from the action pursuant to a settlement agreement reached between Plaintiff and Toshiba, and the corresponding Notice of Dismissal (filed October 11, 2010).

Plaintiff's Statement:

Plaintiff anticipates filing motions for entry of default and for default judgment against all non-appearing defendants that will have been served, or will have been deemed to have been served by operation of law, prior to trial.

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

26

JOINT RULE 26(f) REPORT

Plaintiff anticipates filing a motion or motions for summary judgment or partial summary judgment to establish that: (a) the Green Dam developers' incorporation of elements of the CYBERsitter program into the Green Dam program infringes Plaintiff's rights in the CYBERsitter program; (b) the Defendant computer manufacturers and/or their affiliates or agents engaged in the copying and distribution of the infringing Green Dam program; and (c) the aforementioned copying and distribution of the Green Dam program infringes Plaintiff's rights in the CYBERsitter program.  Plaintiff may also file a motion for summary judgment or partial summary judgment that Defendant computer manufacturers are responsible as a matter of law for the infringing acts of their affiliates or agents.

Defendant Sony's Statement:

Sony Corporation anticipates filing a Phase I MSJ, addressing whether Sony Corporation is a proper party, and a Phase II motion for summary judgment as to all claims on liability and damages.  Sony Corporation is also currently considering filing a motion for judgment on the pleadings, if doing so would be a more efficient way of addressing certain of the foreign law issues or other issues that may be decided as a matter of law.

Defendant BenQ's Statement:

As noted above, Plaintiff has named the incorrect BenQ entity as a defendant in this suit.  Accordingly, BenQ intends to file a motion for summary judgment on that issue ("BenQ's Phase 1 Motion for Summary Judgment").   Additionally, if BenQ remains as a defendant in this case, BenQ plans to file an appropriate dispositive motion challenging this Court's subject matter jurisdiction under the Foreign Sovereign Immunities Act.

Defendant Acer's Statement:

Acer is currently considering filing a motion for judgment on the pleadings.  Acer also believes that it will be filing one or more motions for summary judgment to the extent anything remains of the claims as to it after the Rule 12(c) is decided.

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

27

Defendant Asus's Statement:

Asus anticipates filing motion for judgment on the pleadings on failure to state a claim and lack of supplemental jurisdiction.

**k)**   **Settlement**

Plaintiff's Statement:

Prior to the filing of this action, Plaintiff engaged in settlement discussions with some of the named defendants and other potential defendants.  After the filing the action, Plaintiff has had further settlement discussions with some of the named defendants.  These discussions in some cases included written settlement proposals by Plaintiff to certain of the named defendants and follow-up written and telephonic communications between these parties.  As stated in the Notice of Dismissal filed on October 11, 2010, Plaintiff has settled its claims as to Toshiba Corporation ("Toshiba").

Pursuant to Local Rule 16-15.4, Plaintiff selects Settlement Procedure No 1, *viz.*, appearance before the district judge for such settlement proceedings as the judge may conduct or direct.

Defendant Sony Corporation's Statement:

Pursuant to Local Rule 16-15.4, Sony Corporation selects Settlement Procedures No. 1 or No. 3.

Defendant BenQ's Statement:

No settlement discussions have taken place between BenQ and Plaintiff.

Pursuant to Local Rule 16-15.4, BenQ selects Settlement Procedure No 3 ("a non-judicial dispute resolution proceeding"), i.e., private mediation.

Defendant Acer's Statement:

No settlement discussions have taken place between Acer and Plaintiff.

Pursuant to Local Rule 16-15.4, Acer selects Settlement Procedure No 3 ("a non-judicial dispute resolution proceeding"), i.e., private mediation.

Defendant Asus's Statement:

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

04444\00001\185339.2

1   No settlement discussions have taken place between Asus and Plaintiff.

2   Pursuant to Local Rule 16-15.4, Asus selects Settlement Procedure No 3 ("a

3   non-judicial dispute resolution proceeding"), i.e., private mediation.

4   **l)**   **Trial estimate**

5   Plaintiff's Estimate:

6   Plaintiff estimates that trial will take ten (10) days and will be by jury trial.

7   Plaintiff expects to call 5-7 witnesses.  Defendants had no trial estimate or witness

8   estimate at the 26(f) conference.

9   Defendants Sony Corporation's Estimate:

10   Sony Corporation believes Plaintiff's estimate of the trial is unrealistic.  It is

11   likely that several expert witnesses will be required to testify, including one expert for

12   each side on Chinese law, Japanese law, and Taiwanese law, technical experts, and

13   damages experts.  Additionally, each defendant likely will present 3 or 4 witnesses at

14   trial.  It is anticipated that all of Sony Corporation's witnesses will need translators.

15   Accordingly, the trial could (and likely will) last many weeks, if not months.

16   Defendant BenQ's Estimate:

17   Given that claims have been brought under the laws of the United States,

18   People's Republic of China, Japan, and Taiwan, experts on the laws of each of these

19   countries will likely be presented by both sides, and because the vast majority of the

20   witnesses will not speak English, translation of testimony will be necessary, BenQ

21   estimates trial will take 30 days.  BenQ has not yet completed its factual investigation,

22   but at this time contemplates calling 4-6 witnesses.

23   Defendant Acer's Estimate:

24   Acer believes Plaintiff's estimate of the trial is unrealistic, and is certainly out of

25   line with the scope of the case according to the allegations of the First Amended

26   Complaint.  For example, in the event (albeit unlikely), that the entirety of Plaintiff's

27   allegations remain in this case for trial,  it is likely that as many as 10 expert witnesses

28   will be required to testify, including one or more expert for each side on Chinese law,

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

29

04444\00001\185339.2

Japanese law, and Taiwanese law, technical experts, and damages experts. Additionally, each defendant likely will present 3 or 4 witnesses at trial.  It is anticipated that all of Acer's witnesses (and those of other defendants) will need translators.  Accordingly, the trial could last many weeks, if not months.

Defendant Asus's Estimate:

Asus believes Plaintiff's estimate of the trial is unrealistic.  It is likely that as many as 10 expert witnesses will be required to testify, including one expert for each side on Chinese law, Japanese law, and Taiwanese law, technical experts, and damages experts.  Additionally, each defendant likely will present 3 or 4 witnesses at trial.  It is anticipated that all of Asus's witnesses will need translators.  Accordingly, the trial could (and likely will) last many weeks.

**m)   Trial counsel**

Plaintiff's Trial Counsel:

Gregory A. Fayer

Elliot B. Gipson

Sony's Trial Counsel:

Karin Pagnanelli and Marc Mayer, Mitchell Silberg & Knupp, LLP

BenQ's Trial Counsel:

Paul J. Loh

Eileen M. Ahern

Acer's Trial Counsel:

Robert Dickerson and Alyssa Caridis – Orrick, Herrington & Sutcliffe

Asus' Trial Counsel:

Karen Boyd and James Beard, Turner Boyd LLP.

**n)   Independent Expert or Master**

Plaintiff's Statement:

Plaintiff does not believe the appointment of a special master is necessary in the present case.  Plaintiff believes that there may be some incremental benefit to having

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

30

04444\00001\185339.2

an independent scientific expert regarding the copying of the CYBERsitter program into the Green Dam program.  However, Plaintiff has limited resources and has already retained its own scientific expert, who performed an analysis of the programs and prepared and submitted a declaration in opposition to Sony's *forum non conveniens* motion.  In light of this, Plaintiff does not believe that the incremental benefit of having an independent scientific expert would outweigh the cost.

Defendant Sony Corporation's Statement:

Sony Corporation does not believe this case will turn on technical issues that are so complex that an independent technical expert is necessary.

Defendant BenQ's Statement:

BenQ does not believe the appointment of a special master or independent expert is necessary in this case.

Defendant Acer's Statement:

Acer does not believe this case will turn on technical issues that are so complex that an independent technical expert is necessary.

Defendant Asus's Statement:

Asus does not believe this case will turn on technical issues that are so complex that an independent technical expert is necessary.

**o)** **Other Issues**

The parties have addressed these issues above in their respective discovery plans in Section h).

DATED:  November 22, 2010

GIPSON HOFFMAN & PANCIONE
A Professional Corporation
GREGORY A. FAYER
ELLIOT B. GIPSON


By_____/s/_____
    GREGORY A. FAYER
Attorneys for Plaintiff CYBERsitter, LLC
d/b/a Solid Oak Software

JOINT RULE 26(f) REPORT

1

2

3  DATED:  November 22, 2010          ORRICK, HERRINGTON & SUTCLIFFE
                                      LLP
4                                     ROBERT W. DICKERSON
                                      ALYSSA M. CARIDIS

5

6  By_____/s/_____

7           ROBERT W. DICKERSON
   Attorneys for Defendant ACER Inc.

8

9  DATED:  November 22, 2010          TURNER BOYD LLP
                                      KAREN I. BOYD
10

11 By_____/s/_____

12          KAREN I. BOYD
   Attorneys for Defendant ASUSTeK Computer
13 Inc.

14

15 DATED:  November 22, 2010          WILLENKEN WILSON LOH & LIEB LLP
                                      PAUL J. LOH
16

17 By_____/s/_____

18          PAUL J. LOH
   Attorneys for Defendant BenQ Corporation

19

20 DATED:  November 22, 2010          MITCHELL SILBERBERG & KNUPP LLP
                                      KARIN G. PAGNANELLI
21                                    MARC E. MAYER

22

23 By_____/s/_____

24          MARC E. MAYER
   Attorneys for Defendant Sony Corporation

25

26

27

28

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

JOINT RULE 26(f) REPORT

04444\00001\185339.2