GIPSON HOFFMAN & PANCIONE
A Professional Corporation
GREGORY A. FAYER (State Bar No. 232303)
GFayer@ghplaw.com
ELLIOT B. GIPSON (State Bar No. 234020)
EGipson@ghplaw.com
1901 Avenue of the Stars, Suite 1100
Los Angeles, California 90067-6002
Telephone: (310) 556-4660
Facsimile:  (310) 556-8945

Attorneys for Plaintiff
CYBERsitter, LLC d/b/a Solid Oak Software

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| CYBERsitter, LLC, a California limited liability company, d/b/a Solid Oak Software,<br><br>       Plaintiff,<br><br>  v.<br><br>The People's Republic of China, a foreign state; Zhengzhou Jinhui Computer System Engineering Ltd., a Chinese corporation; Beijing Dazheng Human Language Technology Academy Ltd., a Chinese corporation; Sony Corporation, a Japanese corporation; Lenovo Group Limited, a Chinese corporation; Toshiba Corporation, a Japanese corporation; ACER Incorporated, a Taiwanese corporation; ASUSTeK Computer Inc., a Taiwanese corporation; BenQ Corporation, a Taiwanese corporation; Haier Group Corporation, a Chinese corporation; DOES 1-10, inclusive,<br><br>       Defendants. | CASE NO. CV 10-00038 JST (SHx)<br><br>**PLAINTIFF'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE REGARDING DEFENDANT PRC'S SOVEREIGN IMMUNITY UNDER FSIA**<br><br>Judge:  Josephine Staton Tucker<br>Ctrm:    10A<br><br>Hearing Date:        None Set<br>Hearing Time:        None Set<br><br>Discovery Cutoff:    Dec. 2, 2011<br>Pretrial Conference: Feb. 27, 2012<br>Trial Date:          Mar. 27, 2012 |

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

PLAINTIFF'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE
RE: PRC'S SOVEREIGN IMMUNITY UNDER FSIA

04444\00001\197875.1

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ............................................................................. ii

I.     INTRODUCTION ................................................................................1

II.    ARGUMENT........................................................................................ 2

    A.     § 1605(a)(2) – The    PRC' s Acts  Are Not Immune Under the "Commercial Activity" Exception to the FSIA ..........................................2

    B.     § 1605(a)(5) – The    PRC' s Acts  Are Not Immune Under the "Tortious Conduct" Exception to the FSIA ...............................................7

III.   CONCLUSION ................................................................................11

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

PLAINTIFF'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE
RE: PRC'S SOVEREIGN IMMUNITY UNDER FSIA

04444\00001\197875.1

# TABLE OF AUTHORITIES

## PAGE(S)

**Federal Cases**

*Berkovitz by Berkovitz v. United States,*
  486 U.S. 531, 108 S. Ct. 1954, 100 L. Ed. 2d 531 (1988)............................10, 11, 12

*Burwood Products Co. v. Marsel Mirror & Glass Products, Inc.,*
  468 F. Supp. 1215 (N.D. Ill. 1979) ...........................................................................9

*Indian Towing Co. v. United States,*
  350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955) ...............................................10, 12

*Joseph v. Office of Consulate Gen. of Nigeria,*
  830 F.2d 1018 (9th Cir. 1987)...................................................................*passim*

*Moore v. United Kingdom,*
  384 F.3d 1079 (9th Cir. 2004) ...................................................................................2

*Panavision Int'l, L.P. v. Toeppen,*
  141 F.3d 1316 (9th Cir. 1998).....................................................................................7

*Republic of Argentina v. Weltover, Inc.,*
  504 U.S. 607, 112 S. Ct. 2160, 119 L. Ed. 2d 394 (1992).......................................5, 6

*Screen Gems-Columbia Music, Inc. v. Mark-Fi Records, Inc.,*
  256 F. Supp. 399 (S.D.N.Y. 1966)..............................................................................9

*Sun v. Taiwan,*
  201 F.3d 1105 (9th Cir. 2000) .................................................................................5, 6

*United States v. Gaubert,*
  499 U.S. 315, 111 S. Ct. 1267, 113 L. Ed. 2d 335 (1991) .........................................3

**State Cases**

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.,*
  7 Cal. 4th 503 (1994) .................................................................................................9

*Cypress Semiconductor Corp. v. Superior Court,*
  163 Cal. App. 4th 575 (2008) .....................................................................................9

**Statutes**

28 U.S.C. § 1603...........................................................................................................3

28 U.S.C. § 1604...........................................................................................................1

ii

PLAINTIFF'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE
RE: PRC'S SOVEREIGN IMMUNITY UNDER FSIA

04444\00001\197875.1

1

## **TABLE OF AUTHORITIES**

2

**PAGE(S)**

3

**Statutes (continued)**

4

28 U.S.C. § 1605.................................................................................. 1, 3, 7

5

28 U.S.C. § 1608......................................................................................... 2

6

28 U.S.C. § 2680......................................................................................... 8

7

28 U.S.C.A. § 1346..................................................................................... 8

8

Federal Tort Claims Act (28 U.S.C.A. §§ 1346(b), *et seq.*)........................ 8

9

Foreign Sovereign Immunities Act (28 U.S.C. §§ 1330, *et seq.*).........................*passim*

10

11

**Other Authorities**

12

H.R. Rep. No. 1487, 94th Cong., 2d Sess. 16,
    *reprinted in* 1976 U.S. Code Cong. & Admin. News 6604....................... 4

13

14

Peter S. Menell & David Nimmer, *Unwinding Sony*,
    95 Cal. L. Rev. 941 (2007)........................................................................ 8

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

iii

PLAINTIFF'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE
RE: PRC'S SOVEREIGN IMMUNITY UNDER FSIA

## PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE

Plaintiff CYBERsitter, LLC d/b/a Solid Oak Software ("Solid Oak" or "Plaintiff") submits this response to the Court's January 5, 2011 Order to Show Cause Regarding Defendant PRC's Sovereign Immunity Under FSIA ("OSC"). The Court's January 5 Order took the hearing off calendar on Plaintiff's pending Motion for Entry of Default Against Defendant People's Republic of China ("Motion"). Plaintiff respectfully submits this response to the Court's OSC and requests that the Court grant its Motion and enter the default of defendant People's Republic of China ("PRC").

## I. INTRODUCTION

The Court's OSC notes that the Foreign Sovereign Immunities Act ("FSIA") holds that "subject to certain exceptions, 'a foreign state shall be immune from the jurisdiction of the courts of the United States.'" OSC at 1 (quoting 28 U.S.C. § 1604). Among the FSIA's statutory exceptions, the FSIA provides that there shall be no immunity in cases stemming from any "commercial activity" of a foreign state occurring outside the territory of the United States, or in cases involving claims for money damages for injury to property within the United States stemming from the tortious acts or omissions of the foreign state. 28 U.S.C. §§ 1605(a)(2), (5).

As explained more fully below, the PRC's acts at issue in this case – *viz.*, the theft and illegal distribution of Plaintiff's intellectual property – fall within each of these statutory exceptions and are thus not immune from suit. First, because the PRC's activities at issue here are its purchase, licensing, sublicensing, and distribution to the general public of a commercial software product that is a competitor of Plaintiff's software product, its activities are "commercial activities" within the meaning of FSIA and are not immune from suit. *See Joseph v. Office of Consulate Gen. of Nigeria*, 830 F.2d 1018, 1022-24 (9th Cir. 1987) (holding, *inter alia*, that the "commercial activity exception" applied to preclude immunity under the FSIA, reversing district court on this issue). Second, and independently, the acts of the PRC

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

complained of in this suit are tortious acts (*viz.*, theft of trade secrets and copyright infringement) giving rise to monetary damage claims for injury to property located in the United States, where Plaintiff's intellectual property is located. *See id.* at 1025-27 (affirming district court determination that the "tortious conduct exception" applied to preclude immunity as to plaintiff's tort claims under the FSIA). For each of these independent reasons, defendant PRC is not entitled to immunity under the FSIA for purposes of this suit.

Plaintiff addresses each of these statutory exceptions in further detail below. For each of the reasons explained herein and those stated in Plaintiff's moving papers, Plaintiff's Motion should be granted and the PRC's default entered.[1]

## II.    ARGUMENT

### A.    § 1605(a)(2) – The PRC's Acts Are Not Immune Under the "Commercial Activity" Exception to the FSIA

Section 1605(a)(2) of the FSIA provides:

> A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case in which the action is based … upon an act outside the territory of the United States in connection with a

---

[1] Plaintiff's currently pending Motion does not request a default judgment against the PRC, but only entry of default. Once default is entered, if Plaintiff then requests a default judgment as to the PRC, Plaintiff will submit evidence sufficient to make out a *prima facie* case as to each of the various elements of its claims against the PRC at that time, as required by the FSIA. *See* 28 U.S.C. § 1608(e) (providing that no "judgment by default" shall be entered against a foreign state unless the claimant "establishes his claim or right to relief by evidence satisfactory to the court"); *Moore v. United Kingdom*, 384 F.3d 1079, 1090 (9th Cir. 2004) (stating that the FSIA provision effectively requires a plaintiff "to make out a prima facie case" against the foreign sovereign before a default judgment may be entered). However, no such requirement exists for entry of default. The posture of this case at the present stage is akin to that of a motion to dismiss, and the issue of immunity must therefore be considered in light of the allegations in Plaintiff's Complaint, construed in the light most favorable to Plaintiff. *Cf. United States v. Gaubert*, 499 U.S. 315, 324-25, 111 S. Ct. 1267, 1274-75, 113 L. Ed. 2d 335 (1991) (addressing immunity under Federal Tort Claims Act in the context of a motion to dismiss).

PLAINTIFF'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE
RE: PRC'S SOVEREIGN IMMUNITY UNDER FSIA

04444\00001\197875.1

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

1  commercial activity of the foreign state elsewhere and that act causes a

2  direct effect in the United States.

3  28 U.S.C. § 1605(a)(2).  The PRC's acts alleged in this lawsuit are acts that took place

4  outside the territory of the United States in connection with a commercial activity.

5  Moreover, the PRC's theft and unauthorized distribution of millions of illegal copies

6  of Plaintiff's software has caused a direct effect in the United States, where Plaintiff's

7  intellectual property is located.

8     The FSIA defines "commercial activity" as "either a regular course of

9  commercial conduct or a particular commercial transaction or act." 28 U.S.C. §

10  1603(d).  The Ninth Circuit has instructed that:

11     In determining whether the commercial activity exception applies, the

12  courts focus only on those *specific* acts that form the basis of the suit.  That is,

13  the courts examine whether the particular conduct giving rise to the claim in

14  question actually constitutes or is in connection with commercial activity,

15  regardless of the defendant's generally commercial or governmental character.

16     …The FSIA directs the courts to evaluate the *nature* rather than the

17  *purpose* of the activity in question.  Thus, a contract to purchase military

18  supplies, although clearly undertaken for public use, is commercial in nature

19  and therefore subject to the commercial activity exception.

20  *Joseph*, 830 F.2d at 1023 (emphasis in original, internal quotations omitted).

21     In *Joseph*, the Ninth Circuit reversed the district court's holding that the

22  Republic of Nigeria's activities did not come within the commercial activity exception

23  because its signing of a lease (as lessee) was not motivated by profit. *Id.* at 1024.  The

24  Court found this reasoning "flawed" because "there is no indication that Congress

25  intended the presence of a profit motive on the part of the sovereign to be a *threshold*

26  *requirement* for applying the commercial activity exception." *Id.* (emphasis in

27  original).  The Court noted that "the use of profit motive as a threshold requirement

28

3

PLAINTIFF'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE
RE: PRC'S SOVEREIGN IMMUNITY UNDER FSIA

04444\00001\197875.1

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

1  for applying the commercial activity exception would be inconsistent with the FSIA's

2  focus on the nature of the transaction at issue rather than its purpose." *Id.*

3      Significantly, the *Joseph* Court also held that "[t]ransactions between strictly

4  governmental entities and commercial enterprises are covered by the commercial

5  activity exception *if the role of the sovereign is one which might be played by a*

6  *private actor.*" *Id.* (emphasis added) (noting that the legislative history of the FSIA

7  states that "[c]ertainly, if an activity is *customarily* carried on for profit, its

8  commercial nature could readily be assumed," H.R. Rep. No. 1487, 94th Cong., 2d

9  Sess. 16, *reprinted in* 1976 U.S. Code Cong. & Admin. News 6604, 6615 (emphasis

10 added)).  By contrast, "[a]n activity is public and 'noncommercial' if it is one which

11 only a sovereign state can perform." *Id.*  On this basis, the Court concluded that:

12      although the lease agreement at issue was not undertaken by the Consulate for

13      profit, it nevertheless was a commercial transaction.  In renting the Joseph

14      property, the Consulate entered the marketplace as a commercial actor. There is

15      nothing about the lease agreement, or the alleged breach of that agreement,

16      which distinguishes the transaction from an ordinary private commercial

17      transaction, aside from the fact that the Consulate General of Nigeria was the

18      tenant. Neither the Consulate's rental agreement, nor its alleged breach of that

19      agreement, constitute sovereign activities.

20 *Id.* (citations omitted); *see also Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607,

21 616, 112 S. Ct. 2160, 2167, 119 L. Ed. 2d 394 (1992) (holding the "commercial

22 activity" exception applicable to claims relating to foreign state's refinancing of

23 government debt, stating that "private parties regularly issue bonds, not just to raise

24 capital or to finance purchases, but also to refinance debt. That is what Argentina did

25 here…," and rejecting Argentina's argument that its issuance of bonds was not

26 commercial because it "did not have the ordinary commercial consequence of raising

27 capital or financing acquisitions"); *Sun v. Taiwan*, 201 F.3d 1105, 1108 (9th Cir.

28

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

4

PLAINTIFF'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE
RE: PRC'S SOVEREIGN IMMUNITY UNDER FSIA

2000) (holding the "commercial activity" exception applicable to claims relating to government cultural tour, stating that "[w]hile the purpose of Taiwan's tour may not be one that would motivate a private tour promoter, the operation of a cultural tour – the nature of the activity in question – is a type of activity a private party would undertake for profit").

The lesson of *Joseph*, *Weltover*, and *Sun* is that so long as a governmental entity is playing a role in a commercial enterprise that might otherwise be played by a private actor – in the instant case, the licensing and distribution of a commercial software program – those activities retain their commercial nature even though the actor is a governmental entity and even though the governmental entity might engage in the activity for reasons other than profit motives. Indeed, the *Joseph* Court made clear that even "a contract to purchase military supplies, although clearly undertaken for public use, is commercial in nature and therefore subject to the commercial activity exception." *Id.* at 1023.

The licensing and distribution of commercial software at issue in this case is indistinguishable, under the Ninth Circuit's articulated criteria, from the leasing of commercial real estate at issue in *Joseph* or the purchase of military supplies discussed in *Joseph*. Private entities routinely purchase commercial software licenses, and private entities routinely engage in the sublicensing and distribution of such software to third parties pursuant to the licenses that they purchase. These are far from activities that "only a sovereign state can perform."

The PRC clearly participated in the market for commercial Internet-filtering software products as a buyer by purchasing a one-year license from the defendant software developers, Jinhui and Dazheng, for approximately $6.9 million USD. *See* Complaint ¶ 33. After the PRC purchased these rights, the PRC further injected itself into the commercial content-filtering software market by promoting and distributing the illegal product to tens of millions of private end users throughout China and

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

5

PLAINTIFF'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE
RE: PRC'S SOVEREIGN IMMUNITY UNDER FSIA

1    elsewhere, and by sublicensing the right to distribute the Green Dam program to

2    others, including the defendant computer manufacturers herein. *See id.* ¶¶ 34, 44.

3    The PRC also promoted and distributed the Green Dam product on the Internet, and in

4    so doing specifically targeted end users in the United States. *See id.* ¶ 34. It included

5    links on its official Green Dam website for users in New York and San Francisco,

6    where the two largest populations of native Chinese-speakers in the U.S. are located.

7    *Id.* Further, the PRC's purchase of the Green Dam software license and subsequent

8    distribution had a dramatic effect on the market for commercial software products in

9    China and, to a lesser extent, elsewhere (though, to be clear, having a dramatic effect

10   on the market for a product is not a requirement for commercial activity). The PRC's

11   activities at issue here – *viz.*, the licensing and distribution of commercial software –

12   are clearly commercial activities that could be and usually are carried on by private

13   actors. They are thus commercial activities within the meaning of the FSIA.

14       With respect to the "direct effect in the United States" prong of the exception, it

15   is settled Ninth Circuit law that in cases involving intellectual property theft, the

16   location of the injury is wherever the intellectual property is located. *Panavision Int'l,*

17   *L.P. v. Toeppen,* 141 F.3d 1316, 1322 n.2 (9th Cir. 1998) (holding that in IP cases the

18   locus of the injury is where the intellectual property is located). In cases in which the

19   owner of the IP is a business, the IP is deemed to be located in the principal place of

20   business of the company – here, Santa Barbara, California. *Id.* Thus, the injury

21   experienced by Plaintiff in this case occurred in the U.S.

22       Furthermore, Plaintiff's injuries at issue in this case were directly caused by the

23   PRC's acts. The PRC knowingly licensed and distributed – and continues to distribute

24   via its website – a competing pirated software program at no cost to tens of millions of

25   end users in China, the U.S. and elsewhere. These actions had a direct effect in the

26   United States, where Plaintiff's IP rights have been impaired. Not only has Plaintiff

27   been deprived of reasonable licensing revenues for the distribution of its product to

28

PLAINTIFF'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE
RE: PRC'S SOVEREIGN IMMUNITY UNDER FSIA

04444\00001\197875.1

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

1   millions of end users, but the market for Plaintiff's product in China, where Plaintiff

2   previously had thousands of customers, has been seriously compromised, and most

3   likely destroyed altogether.   *Cf.* Complaint ¶ 2 ("Solid Oak now boasts over 2.4

4   million active CYBERsitter users worldwide, including thousands of businesses,

5   individuals, and schools in China, and thousands more in other Chinese-speaking

6   countries.").

7       As a result, defendant PRC's wrongful activities alleged herein are not eligible

8   for immunity under the "commercial activity" exception to the FSIA.

9       **B.    § 1605(a)(5) – The PRC's Acts Are Not Immune Under the "Tortious**

10          **Conduct" Exception to the FSIA**

11      In addition to the foregoing, Section 1605 (a)(5) of the FSIA provides:

12          A foreign state shall not be immune from the jurisdiction of courts of the

13          United States or of the States in any case not otherwise encompassed in

14          paragraph (2) above, in which money damages are sought against a

15          foreign state for … damage to or loss of property, occurring in the United

16          States and caused by the tortious act or omission of that foreign state…;

17          except this paragraph shall not apply to [*inter alia*] any claim based upon

18          the exercise or performance or the failure to exercise or perform a

19          discretionary function regardless of whether the discretion be abused….

20   28 U.S.C. § 1605(a)(5).

21      This case involves claims for money damages against a foreign state for injury

22   to Plaintiff's intellectual property occurring (as explained above) in the United States

23   and stemming from the tortious acts of the foreign state – namely, theft of trade

24   secrets, copyright infringement, unfair competition and civil conspiracy.[2]   The only

25

26      _____
    [2]  Plaintiff's claims for theft of trade secrets, copyright infringement, and for
27   civil conspiracy predicated on underlying tortious conduct are all clearly tort claims.
    *See Cypress Semiconductor Corp. v. Superior Court*, 163 Cal. App. 4th 575, 585
28   (2008) (stating that "[m]isappropriation of trade secrets is an intentional tort");
    *Burwood Products Co. v. Marsel Mirror & Glass Products, Inc.*, 468 F. Supp. 1215,

7

PLAINTIFF'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE
RE: PRC'S SOVEREIGN IMMUNITY UNDER FSIA

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

1    question as to the applicability of this exception is whether the claims are based upon

2    the PRC's performance of a "discretionary function."

3         While there is scant case law under the FSIA on what constitutes a

4    "discretionary function," there is ample case law on this term in the context of the

5    immunity of federal and state governments and officials for their acts.  *See*, *e.g.*,

6    Federal Tort Claims Act, 28 U.S.C.A. §§ 1346(b), *et seq.* ("FTCA") (including a

7    "discretionary function" exception to immunity).  The Ninth Circuit has instructed that

8    "[t]he existence of a discretionary function under the FSIA is generally analyzed

9    under the principles developed pursuant to the Federal Tort Claims Act's discretionary

10   function exception." *Joseph*, 830 F.2d at 1026 (citations omitted).[3]

11        The Supreme Court has set forth a two-prong test for determining when conduct

12   comes within the FTCA "discretionary function" exception to the "tortious conduct"

13   exception to immunity: (1) courts must determine whether the challenged acts

14   "involv[e] an element of judgment or choice," and, if so (2) courts must determine

15   "whether that judgment is of the kind that the discretionary function exception was

16

17   _____

18   1218 (N.D. Ill. 1979) (stating that  "[c]opyright infringement is properly classified as a tort"); *Screen Gems-Columbia Music, Inc. v. Mark-Fi Records, Inc.,* 256 F. Supp. 399, 403 (S.D.N.Y. 1966) (same); Peter S. Menell & David Nimmer, *Unwinding Sony*, 95 Cal. L. Rev. 941, 957 (2007) (stating that "[c]opyright infringement, like patent infringement, is a tort. A contributory infringer is a species of joint-tort-feasor, who is held liable because he has contributed with another to the causing of a single harm to the plaintiff."); *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal. 4th 503, 511 (1994) (stating that "[b]y participation in a civil conspiracy, a coconspirator effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy. In this way, a coconspirator incurs tort liability co-equal with the immediate tortfeasors.") (internal citations omitted).  While the case law regarding the nature of unfair competition claims is less definitive, Plaintiff's unfair competition claims, like its civil conspiracy claim, are predicated on underlying tortious conduct. They should thus take on the tortious nature of the underlying claims.

    [3]  The FTCA's "discretionary function" exception contains substantially similar language to the FSIA exception.  28 U.S.C. § 2680(a) (government actor is liable for "[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused").

---

8

**PLAINTIFF'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE
RE: PRC'S SOVEREIGN IMMUNITY UNDER FSIA**

1    designed to shield" – namely, whether the judgment is "based on considerations of
2    public policy." *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536, 108 S. Ct.
3    1954, 1959, 100 L. Ed. 2d 531 (1988) (citations omitted) (holding that tort claims
4    based on the release of a polio vaccine that did not meet safety standards did not fall
5    within the discretionary function exception); *see also Indian Towing Co. v. United
6    States,* 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955) (holding that tort claims based
7    on failure to keep a government-controlled lighthouse in good working order did not
8    fall within the discretionary function exception).  The Supreme Court has emphasized
9    that the purpose of the discretionary function exception is "to prevent judicial 'second-
10   guessing' of legislative and administrative decisions grounded in social, economic,
11   and political policy through the medium of an action in tort." *Berkovitz*, 486 U.S. at
12   536-37 (internal quotations omitted).  "The exception, properly construed, therefore
13   protects only governmental actions and decisions based on considerations of public
14   policy." *Id.* at 537 (citation omitted).  Thus, "[i]n sum, the discretionary function
15   exception insulates the Government from liability if the action challenged in the case
16   involves the permissible exercise of policy judgment." *Berkovitz*, 486 U.S. at 537.

17         There is no claim that the PRC's IP theft that forms the basis of this action was
18   a policy decision, much less a "permissible" one.  Rather, the underlying policy
19   decision here was the decision to institute a policy of censorship implemented by
20   requiring censorware to be installed on all computers made or sold in China.  The IP
21   theft at issue here bears no essential or necessary relation to the PRC's policy
22   directive.  Indeed, the policy at issue could have been carried into effect perfectly well
23   by using non-pirated software.

24         The instant case is virtually identical in relevant respects to the situation
25   addressed in *Joseph*.  In *Joseph*, the Court held that because the tortious conduct
26   challenged in the lawsuit was incidental and non-essential to the fundamental policy
27   decision of establishing a Nigerian consulate, the conduct was not shielded by the

28

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

9

1    discretionary conduct exception.   *Joseph*, 830 F.3d at 1027.   The Ninth Circuit

2    concluded:

> *MacArthur* [a factually similar case from the D.C. Circuit] indicates that the
> *acquisition and operation* of the Joseph residence by the Consulate was a
> discretionary policy decision. However, *MacArthur* does not indicate that the
> purely destructive acts which give rise to Joseph's tort claims were
> discretionary. Destruction of property can hardly be considered as part of a
> policy decision to establish a consular residence. Nor will the exercise of
> jurisdiction over the instant lawsuit encroach on the ability of foreign
> sovereigns to make policy decisions regarding their consular buildings. We
> therefore conclude that the discretionary function exception does not apply to
> Joseph's tort claims.

13   *Id.* (citations omitted, emphasis in original).

14        Here, as in *Joseph* (as well as in *Berkovitz* and *Indian Towing*), the PRC's

15   tortious acts of intellectual property theft bear no essential relation to its underlying

16   policy decision to implement a program of censorship.  As in *Joseph*, the policy at

17   issue could have been carried out without engaging in independent tortious acts.  As a

18   result, permitting claims based on the PRC's tortious activities to go forward does not

19   interfere with any policy-making function of the PRC, nor does it permit or in any

20   way involve the Court in "judicial second-guessing" of the foreign sovereign's policy

21   determinations.

22        The PRC's acts of licensing and distributing the Green Dam program that are at

23   issue in this lawsuit are clearly not themselves policy decisions.  The PRC's policy

24   decision was to enact a programme of Internet censorship at the individual computer

25   level (to accompany its "Great Firewall" programme).  While the PRC's Green Dam

26   Mandate provides the policy backdrop for the claims at issue here, the Mandate itself

27   (which, of course, was never implemented) is not challenged herein.  Plaintiff rather

GIPSON HOFFMAN & PANGIONE
A PROFESSIONAL CORPORATION

28

10

PLAINTIFF'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE
RE: PRC'S SOVEREIGN IMMUNITY UNDER FSIA

04444\00001\197875.1

challenges only the individual tortious acts of intellectual property theft and the tortious acts of copying and distributing the illegal program that were incidental to the PRC's policy decision (as in *Joseph*).

Neither the PRC nor any other party has ever claimed that intellectual property theft was a PRC policy decision. On the contrary, the PRC's letter dated November 24, 2010 in response to this case indicates that its policy decision was "to protect minors from internet pornography and other dangers. It is a public management activity to protect minors. It is also a government action taken to be responsible for minors." Letter from Embassy of the PRC (Dkt. #90) at ¶ 2. Far from claiming that the IP theft at issue here was a policy decision, the PRC's letter simply denies Plaintiff's allegations of IP theft altogether. *Id.* at ¶ 3.

Accordingly, the PRC's conduct at issue here is not a discretionary function, and is thus not immune from suit under the "tortious conduct" exception to the FSIA.

## III.   CONCLUSION

For the reasons stated herein, defendant PRC is not entitled to sovereign immunity under the FSIA pursuant to two separate statutory exceptions, the "commercial activity" exception and the "tortious conduct" exception. Plaintiff thus respectfully requests that its Motion for Entry of Default Against Defendant PRC be granted. In the event that the Court has concerns not addressed by this memorandum, Plaintiff respectfully requests an opportunity to respond to any remaining concerns either in "reply" briefing or at a hearing scheduled at a time convenient to the Court.

DATED: January 26, 2011

GIPSON HOFFMAN & PANCIONE
A Professional Corporation
GREGORY A. FAYER
ELLIOT B. GIPSON


By   /s/ Gregory A. Fayer
      GREGORY A. FAYER
Attorneys for Plaintiff CYBERsitter, LLC
d/b/a Solid Oak Software

11

PLAINTIFF'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE
RE: PRC'S SOVEREIGN IMMUNITY UNDER FSIA