YITAI HU (SBN 248085)
yitai.hu@alston.com
ELIZABETH H. RADER (SBN 184963)
elizabeth.rader@alston.com
**ALSTON & BIRD LLP**
275 Middlefield Road
Menlo Park, CA 94025-4008
Telephone:   650-838-2000
Facsimile:    650-838-2001

CASSANDRA E. HOOKS (SBN 244471)
cassandra.hooks@alston.com
**ALSTON & BIRD LLP**
333 South Hope Street, 16th Floor
Los Angeles, CA 90071
Telephone:   213-576-1000
Facsimile:    213-576-1100

Attorneys for Defendant
HAIER GROUP CORPORATION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CYBERSITTER, LLC, a California limited liability company, d/b/a Solid Oak Software, <br><br> Plaintiff, <br><br> v. <br><br> THE PEOPLE'S REPUBLIC OF CHINA, a foreign state; ZHENGZHOU JINHUI COMPUTER SYSTEM ENGINEERING LTD., a Chinese corporation; BEIJING DAZHENG HUMAN LANGUAGE TECHNOLOGY ACADEMY LTD., a Chinese corporation; SONY CORPORATION, a Japanese Corporation; LENOVO GROUP LIMITED, a Chinese corporation; TOSHIBA CORPORATION, a Japanese corporation; ACER INCORPORATED, a Taiwanese corporation; ASUSTEK COMPUTER, INC., a Taiwanese corporation; BENQ CORPORATION, a Taiwanese corporation; HAIER GROUP | Case No. 10-cv-00038-JST (SH) <br><br> **HAIER GROUP CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO JOIN A NECESSARY INDISPENSABLE PARTY** <br><br> DATE:     July 18, 2011 <br> TIME:     10:00 a.m. <br> CTRM:    10A <br> JUDGE:   Josephine Staton Tucker |

1   CORPORATION, a Chinese corporation;
    DOES 1-10, inclusive,

2

3                    Defendants.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

Page

3    I.     INTRODUCTION ........................................................................1

4    II.    STATEMENT OF FACTS............................................................2

5           A.    Jurisdictional Allegations In The First Amended
6                 Complaint ..........................................................................2

           B.    Facts About HGC ..............................................................2
7
     III.   HGC IS NOT SUBJECT TO THE PERSONAL
8           JURISDICTION OF THIS COURT ............................................3

9           A.    Legal Standard For Personal Jurisdiction ........................3

10          B.    HGC Has Not Had the Kinds of Contacts Needed to
11                Support General Jurisdiction.............................................4

12          C.    Plaintiff's Claim Against HGC Does Not Arise Out
                  Of Any Activity HGC Purposefully Directs At
13                California And Therefore This Court Lacks Specific
                  Jurisdiction over HGC. .....................................................5

14          D.    Parent-Subsidiary Relationship Does Not Confer
15                Jurisdiction Over The Foreign Parent. ..............................6

16   IV.    DEFENDANT PRC IS A NECESSARY AND
           INDISPENSABLE PARTY IMMUNE TO THIS SUIT
17          PURSUANT TO THE FOREIGN SOVEREIGN
           IMMUNITIES ACT ...................................................................8

18          A.    The PRC Is a Necessary And Indispensable Party. .........8

19          B.    The PRC Is Presumed To Be Immune From This Suit
20                Under The FSIA.............................................................11

21          C.    The "Commercial Activity" Exception To The FSIA
                  Does Not Apply. ............................................................12

22                1.    No Direct Effect In The United States Has
23                      Been Alleged. .......................................................13

24                2.    The Alleged Acts Upon Which The Claim Is
                        Based Are Not "In Connection With"
25                      Commercial Activity. ...........................................17

26          D.    The "Tortious Activity" Exception To FSIA
                  Likewise Does Not Apply................................................20

27   V.     CONCLUSION ........................................................................21

28

# TABLE OF AUTHORITIES

**Page**

## Cases

*Adler v. Fed. Republic of Nigeria,*
107 F.3d 720 (9th Cir. 1997)................................................................15, 16, 17, 20

*Alexander v. Circus Circus Enters., Inc.,*
972 F.2d 261 (9th Cir. 1992)............................................................................4, 7

*Antares Aircraft, L.P. v. Fed. Republic of Nigeria,*
999 F.2d 33 (2d Cir. 1993)..................................................................................17

*Argentine Republic v. Amerada Hess Shipping Corp.,*
488 U.S. 428 (1989)......................................................................................11, 21

*Ashcroft v. Iqbal,*
129 S. Ct. 1937 (2009)........................................................................................13

*Asociacion de Reclamantes v. United Mexican States,*
735 F.2d 1517 (D.C. Cir. 1984)...........................................................................21

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007)............................................................................................13

*Big Sky Network Canada, Ltd. v. Sichuan Provincial Gov't,*
533 F.3d 1183 (10th Cir. 2008).........................................................................16

*Brayton Purcell, LLP v. Recordon & Recordon,*
606 F.3d 1124 (9th Cir. 2010).............................................................................4

*California Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.,*
309 F.3d 1113 (9th Cir. 2002)............................................................................10

*Citibank Int'l v. Collier-Traino, Inc.,*
809 F.2d 1438 (9th Cir. 1987)............................................................................10

*Costa v. Keppel Singmarine Dockyard PTE, Ltd.,*
No. CV 01-11015 MMM, 2003 WL 24242419 (C.D. Cal. Apr. 24, 2003)...............7

*de Sanchez v. Banco Central de Nicaragua,*
770 F.2d 1385 (5th Cir. 1985)............................................................................20

*Delano Farms Co. v. Cal. Table Grape Comm'n,*
No. 1:07-CV1610 OWWSMS, 2009 WL 3586056 (E.D. Cal. Oct. 27, 2009) ...9, 11

*Doe v. Unocal Corp.,*
248 F.3d 915 (9th Cir. 2001)..................................................................4, 5, 7, 8

*E.E.O.C. v. Peabody Western Coal Co.,*
610 F.3d 1070 (9th Cir. 2010)...........................................................................8, 9

*Federal Ins. Co. v. Richard I. Rubin & Co.,*
12 F.3d 1270 (3d Cir. 1993)..........................................................................17, 18

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*,
    462 U.S. 611 (1983). .................................................................................... 13

*Freeman v. Nw Acceptance Corp.*,
    754 F.2d 553 (5th Cir. 1985). .................................................................... 10

*Frolova v. Union of Soviet Socialist Republics*,
    761 F.2d 370 (7th Cir. 1985). .................................................................... 12

*In re Toyota Motor Corp.*,
    ___ F. Supp. 2d ___, 2011 WL 1485479 (C.D. Cal. Apr. 8, 2011) ...................... 10

*International Shoe Co. v. Washington*,
    326 U.S. 310 (1945) ................................................................................... 4

*Joseph v. Office of Consulate Gen'l of Nigeria*,
    830 F.2d 1018 (9th Cir. 1987). ............................................................. 19, 21

*Kato v. Ishihara*,
    360 F.3d 106 (2d Cir. 2004) ....................................................................... 19

*MacArthur Area Citizens Ass'n v. Republic of Peru*,
    809 F.2d 918 (D.C. Cir. 1987) .................................................................... 21

*Meadows v. Dominican Republic*,
    817 F.2d 517 (9th Cir. 1987). .................................................................... 11

*Morris v. People's Republic of China*,
    478 F. Supp. 2d 561 (S.D.N.Y. 2007) ......................................................... 16

*Naxos Resources v. Southam Inc.*,
    No. CV 96-2314 WJR (MCX), 1996 WL 662451 (C.D. Cal. Aug. 16, 1996) ......... 7

*Olsen v. Government of Mexico*,
    729 F.2d 641 (9th Cir. 1984). .................................................................... 21

*Omeluk v. Langsten Slip & Batbyggeri A/S*,
    52 F.3d 267 (9th Cir. 1995). ........................................................................ 6

*Panavision Int'l, L.P. v. Toeppen*,
    141 F.3d 1316 (9th Cir. 1998). ................................................................... 17

*Peterson v. Islamic Republic of Iran*,
    627 F.3d 1117 (9th Cir. 2010). ................................................................... 10

*Pons v. People's Republic of China*,
    666 F. Supp. 2d 406 (S.D.N.Y. 2009) ......................................................... 16

*Republic of Argentina v. Weltover*, Inc.,
    504 U.S. 607 (1992) ...................................................................... 15, 16, 20

*Republic of the Philippines v. Pimentel*,
    553 U.S. 851 (2008) ................................................................................... 9

*Ryder Truck Rental, Inc. v. Acton Foodservices Corp.*,

554 F. Supp. 277 (C.D. Cal. 1983) .......................................................... 7

*Salkin v. United Servs. Auto. Ass'n,*
__ F. Supp. 2d __, 2011 WL 554079 (C.D. Cal. Jan. 28, 2011) .............. 8

*Saudi Arabia v. Nelson,*
507 U.S. 349 (1993) ........................................................................ 20

*Schwarzenegger v. Fred Martin Motor Co.,*
374 F.3d 797 (9th Cir. 2004) ............................................................ 3

*Tuazon v. R.J. Reynolds Tobacco Co.,*
433 F.3d 1163 (9th Cir. 2006) .......................................................... 5

*United States v. Bennett,*
621 F.3d 1131 (9th Cir. 2010) ...................................................... 7, 8

*United States v. Bestfoods,*
524 U.S. 51 (1998) ............................................................................ 8

*Verlinden B.V. v. Central Bank of Nigeria,*
461 U.S. 480 (1983) ........................................................................ 10

*Virtual Countries, Inc. v. Republic of South Africa,*
300 F.3d 230 (2d Cir. 2002) ............................................................ 16

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,*
433 F.3d 1199 (9th Cir. 2006) ...................................................... 4, 5

**Statutes**

28 U.S.C. § 1605 ............................................................................ 11

28 U.S.C. § 1605(a)(2) ............................................................... passim

28 U.S.C. § 1605(a)(5). .................................................... 11, 20, 21

28 U.S.C. § 1605A .......................................................................... 11

28 U.S.C. § 1607 ............................................................................ 11

28 U.S.C. § 1608(e) ...................................................................... 13

28 U.S.C. §§ 1330(a)-(b) .............................................................. 11

Cal. Civ. Proc. Code § 410.10 ......................................................... 4

**Rules**

Fed. R. Civ. P. 12(h)(3) ................................................................. 10

Fed. R. Civ. P. 19 ............................................................................. 8

Fed. R. Civ. P. 19(a) ........................................................................ 8

Fed. R. Civ. P. 19(b) ................................................................... 9

Fed. R. Civ. P. 55(d) ................................................................... 13

**Other Authority**

H.R. Rep. No. 94-1487, at 7, 20-21 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6605 .. 21

## I.      INTRODUCTION

Haier Group Corporation ("HGC") is a privately-held, Chinese holding company that does not engage in any commercial or business activities anywhere in the world.  HGC has not had any contact with this district or with the State of California, and HGC has no employees and owns no property in California.  HGC directly and indirectly holds stocks in other companies, one of which being the "Haier America" entity identified by Plaintiff.  However, HGC has no involvement with the operation of Haier America, and therefore a parent-subsidiary relationship alone is insufficient to impute personal jurisdiction on the foreign parent.  In short, there is simply no contact by HGC with this district to confer either general personal jurisdiction or specific personal jurisdiction.

In addition, this case should be dismissed in its entirety because a necessary and indispensable party -- the People's Republic of China ("PRC") government – is immune from this suit.  As Plaintiff's Amended Complaint ("Am. Compl.") makes clear, this entire action arises out of the "Chinese government-led" "Green Dam Initiative."  Am. Compl. ¶ 1.  Specifically, as alleged by Plaintiff, "[t]he central component of the Green Dam Initiative was for the PRC to convince and incentivize computer manufacturers to participate in the Initiative . . . ."  *Id.* ¶ 3.  The PRC also issued "a directive *mandating* that by July 1, 2009 every computer shipped to or sold in China must have the Green Dam software pre-installed on or packaged with the computer."  *Id.* ¶ 35 (emphasis added).

Therefore, the PRC government is expected to have, in its possession, documents and testimonial evidence that may prove, or disprove, Plaintiff's allegations.  As such, the presence of the PRC would be critically important to HGC if it were forced to defend this suit on the merits.  Plaintiff recognizes that HGC has absolutely no involvement with the alleged misappropriation of trade secrets.  Rather, HGC's alleged involvement with any aspect of the underlying facts of this suit was merely following the mandate of the PRC to incorporate the Green Dam

program into computers allegedly sold by HGC *in China*.  Indeed, HGC fully expects the PRC to confirm that disobeying the PRC issued mandate was *not* an option for HGC, which may be relevant to the defense of Plaintiff's Fourth Claim, infringement under the PRC's Copyright Laws.  As such, the PRC is a necessary and indispensable party to this case.

However, Defendant PRC is immune from this suit under the Foreign Sovereign Immunities Act ("FSIA").  Plaintiff argues that the PRC is not immune under the "commercial exception" of the FSIA.  Plaintiff's arguments are based on an incorrect reading of the law applied to a very narrow exception to the FSIA and an inaccurate application of the facts as to exactly what the PRC government is alleged to have done, which is critical to the determination of the applicability of the "commercial exception."  As shown below, the PRC is immune from this suit and is a necessary and indispensible party that cannot be joined.  Therefore, the claims should be dismissed.

## II.   STATEMENT OF FACTS

### A.   Jurisdictional Allegations In The First Amended Complaint

The amended complaint includes two paragraphs of bare and conclusory statements on which Plaintiff bases its allegation of personal jurisdiction over all defendants and HGC.  These numbered paragraphs are set forth below:

> 10.   … This Court has personal jurisdiction over the remaining Defendants because they conduct significant business in the District, and sell their computers throughout the United States in their own capacity and through their wholly-owned subsidiaries.
>
> 22.   … As relevant here, Haier is engaged in the business of manufacturing and distributing personal computers and related products, in the United States, China, and elsewhere around the world.  Haier operates and does business throughout the United States through its wholly-owned subsidiary, Haier America.

### B.   Facts About HGC

HGC is an entity organized under the laws of the PRC, with its principal place

of business in Qingdao, China.  Declaration of Cuimei Zhang in Support of HGC's Motion to Dismiss for Lack of Personal Jurisdiction ("Zhang Decl."), ¶ 3.  HGC is a holding company that does not engage in any commercial activities.  *Id.* Specifically, HGC does not develop, manufacture, market, or sell any products anywhere in the United States or the world.  *Id.*  Moreover, HGC does not advertise or promote any product in California.  *Id.* ¶ 6.

Although HGC directly and indirectly owns several subsidiaries in different countries, it has never held a license to conduct business in California or anywhere else in the United States.  Zhang Decl. ¶ 4.  Nor has HGC ever maintained a place of business, facility, or office, or other continuous presence within California.  *Id.* HGC also has never had an agent for service of process, any employee, or any property in California.  *Id.* ¶ 5.  HGC does not and has never conducted or solicited business in, or engaged in other persistent contact with, California.  *Id.* ¶ 6.  Finally, HGC has never entered into any contract or transaction in California.  *Id.* ¶ 7.

Plaintiff alleges that HGC does business in the United States through its "wholly-owned subsidiary, Haier America . . . ."  Am. Compl. ¶ 22.  HGC assumes "Haier America" refers to Haier America Trading, L.L.C. ("HAT"), a company headquartered in New York.  However, HGC does not directly own any interest in HAT, but rather indirectly owns interest in HAT.  Zhang Decl. ¶ 8(a).  Importantly, however, HGC has no involvement with the operation of HAT.  *Id.* ¶ 8(b).

## III.   HGC IS NOT SUBJECT TO THE PERSONAL JURISDICTION OF THIS COURT

### A.   Legal Standard For Personal Jurisdiction

The plaintiff bears the burden of establishing personal jurisdiction. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). While uncontroverted allegations in the complaint must be taken as true, the plaintiff cannot demonstrate personal jurisdiction based on bare allegations.  *Id.*  For purposes of personal jurisdiction, the court "may not assume the truth of allegations

1    in a [plaintiff's] pleading which are contradicted by affidavit." *Alexander v. Circus*

2    *Circus Enters., Inc.*, 972 F.2d 261, 262 (9th Cir. 1992).

3         Where there is no federal statute controlling a court's exercise of personal

4    jurisdiction, federal courts must look to the forum state's jurisdictional statute to

5    determine whether it is proper to assert personal jurisdiction. *Brayton Purcell, LLP*

6    *v. Recordon & Recordon*, 606 F.3d 1124, 1130 (9th Cir. 2010).  California long-arm

7    statute provides that "[a] court of this state may exercise jurisdiction on any basis

8    not inconsistent with the Constitution of this state or of the United States."  Cal. Civ.

9    Proc. Code § 410.10.  Thus, the Court's jurisdictional analysis under California law

10   and federal due process is the same. *Yahoo! Inc. v. La Ligue Contre Le Racisme Et*

11   *L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006).

12        In *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), the Supreme

13   Court held that a court may exercise personal jurisdiction over a defendant

14   consistent with due process only if he or she has "certain minimum contacts" with

15   the relevant forum "such that the maintenance of the suit does not offend 'traditional

16   notions of fair play and substantial justice.'" *Int'l Shoe*, 326 U.S. at 316.  Personal

17   jurisdiction over a non-resident defendant can be established by either general or

18   specific jurisdiction. *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001).

19   Unless a defendant's contacts with a forum are so substantial, continuous, and

20   systematic that the defendant can be deemed to be "present" in that forum for all

21   purposes to establish general personal jurisdiction, a forum may exercise only

22   "specific" jurisdiction – that is, jurisdiction based on the relationship between the

23   defendant's forum contacts and the plaintiff's claim. *Yahoo!*, 433 F.3d at 1205.  As

24   discussed below, HGC lacks the contacts necessary to support specific jurisdiction,

25   much less general jurisdiction.

### B.    HGC Has Not Had the Kinds of Contacts Needed to Support General Jurisdiction.

28        General jurisdiction exists only when the defendant's contacts with the state

1   are "substantial, continuous and systematic." *Doe v. Unocal*, 248 F.3d at 923.  The

2   standard for general jurisdiction is high:  contacts with a state must approximate

3   physical presence. *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1169 (9th

4   Cir. 2006).  Put another way, a defendant must not only step through the door, it

5   must also sit down and make itself at home. *Id.*  Here, Plaintiff does not set forth

6   any specific factual allegation in the amended complaint regarding HGC's alleged

7   contact with California -- because there is none.  Plaintiff's allegations are, at best,

8   conclusory.  In fact, HGC has no contact with this district, much less any

9   "continuous and systematic" contacts.

10      This is not surprising given HGC is a holding entity that does not engage in

11   any commercial activities, and does not develop, manufacture, market, or sell any

12   products anywhere in the United States or the world.  Zhang Decl. ¶ 3.  Although

13   HGC directly or indirectly owns several subsidiaries in different countries, it has

14   never held a license to do business in California or anywhere else in the United

15   States. *Id.* ¶ 4.  Nor has HGC ever maintained a place of business, facility or office,

16   or other continuous presence within California. *Id.*  In addition, HGC has never had

17   an agent for service of process, any employee, or any property in California, *id.* ¶ 5;

18   does not and has never conducted or solicited business in, or engaged in other

19   persistent contact with, California, *id.* ¶ 6; and has never entered into any contract or

20   transaction in California, *id.* ¶ 7.  Therefore, Plaintiff has failed to carry its burden

21   that this Court has general jurisdiction over HGC.

22      **C.    Plaintiff's Claim Against HGC Does Not Arise Out Of Any Activity HGC Purposefully Directs At California And Therefore This Court Lacks Specific Jurisdiction over HGC.**

23

24      The same facts also demonstrate that Plaintiff cannot support a claim that this

25   Court has specific personal jurisdiction over HGC.  Specific jurisdiction exists when

26   the plaintiff's claim against the non-resident defendant arises out of or relates to

27   activities that the defendant "purposefully directs" at the forum state. *Yahoo!*, 433

28   F.3d at 1206.

Here, there is nothing in the amended complaint to show that HGC purposefully directs any activity at California.  As already set forth above, HGC has no contacts with this district or California.  Indeed, Plaintiff acknowledges that the personal computers at issue here, allegedly manufactured by HGC, were sold in China and used in China.[1]  Am. Compl. ¶¶ 35, 44, 51-52.  Even if, *arguendo*, HGC did engage in commercial activities related to the computers at issue, such conduct would have occurred in China, as Plaintiff admits.  As such, there can be no specific personal jurisdiction over HGC.  *See Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995) (a defendant is subject to specific jurisdiction only "if the controversy [is] sufficiently related to or arose out of [the defendant's] contacts with the forum state.").

It has not alleged facts showing that HGC has availed itself of the privileges of conducting activities in California and that the claims arise out of or relate to HGC's forum-related activity.  As such, Plaintiff has failed to make a *prima facie* showing of specific personal jurisdiction over HGC.

### D.  Parent-Subsidiary Relationship Does Not Confer Jurisdiction Over The Foreign Parent.

Plaintiff also alleges that HGC conducts business in the United States through its wholly-owned subsidiary, "Haier America."  Am. Compl. ¶ 22.  HGC assumes "Haier America" refers to Haier America Trading, L.L.C. ("HAT"), a company headquartered in New York.  Zhang Decl. ¶ 8.  However, HGC does not directly own any interest in HAT, although HGC does indirectly own interest in HAT.  *Id*. ¶ 8(a).

Putting aside the factual inaccuracies with Plaintiff's allegations, personal

_____

[1] Plaintiff generally alleges that "[o]n information and belief, many thousands of downloads of Green Dam have occurred in … the state of California" and that Chinese-speaking users in the United States have been encouraged to download Green Dam through "Chinese government's official … links targeting users in 'San Francisco' and 'New York.'"  Am. Compl. ¶¶ 34, 46.  These allegations are not directed to HGC.

1   jurisdiction over HGC cannot be merely based on an alleged parent-subsidiary

2   relationship with HAT.  *See United States v. Bennett*, 621 F.3d 1131, 1137 (9th Cir.

3   2010) (citing *Doe v. Unocal Corp.*, 248 F.3d at 925-26 (the existence of a parent-

4   subsidiary relationship alone is not enough to attribute the liability of the subsidiary

5   to the parent).

6         Plaintiff's attempt to impute HAT's activities or contacts in the United States

7   to HGC lacks factual and legal support.  Indeed, Plaintiff does not even allege that

8   HAT has any contact with this district.  Furthermore, before any imputation is

9   appropriate, there must be evidence that "the parent and subsidiary are not really

10  separate entities."  *Costa v. Keppel Singmarine Dockyard PTE, Ltd.*, No. CV 01-

11  11015 MMM, 2003 WL 24242419, at *12 (C.D. Cal. Apr. 24, 2003) (quoting *Doe v.*

12  *Unocal*, 248 F.3d at 926).  The plaintiff has the burden to establish by "clear

13  evidence" that the parent controls the subsidiary's activities to overcome the

14  presumption of corporate separateness.  *See, e.g., Ryder Truck Rental, Inc. v. Acton*

15  *Foodservices Corp.*, 554 F. Supp. 277, 279 (C.D. Cal. 1983); *Naxos Resources v.*

16  *Southam Inc.*, No. CV 96-2314 WJR (MCX), 1996 WL 662451, at *3 (C.D. Cal.

17  Aug. 16, 1996) (the alter ego theory is an extraordinary remedy reserved for

18  extraordinary circumstances, and the burden of overcoming the presumption falls on

19  the party invoking the court's jurisdiction).  To satisfy the control, the plaintiff must

20  show that "the parent dictates every facet of the subsidiary's business -- from broad

21  policy decisions to routine matters of day-to-day operation."  *Doe v. Unocal*, 248

22  F.3d at 926-27.  The amended complaint is completely silent on this issue.

23  Plaintiff's lone conclusory allegation that HGC conducts business through HAT is

24  specifically contradicted by the Zhang Declaration.  A court, in determining the

25  existence of personal jurisdiction, "may not assume the truth of allegations in a

26  [plaintiff's] pleading which are contradicted by affidavit."  *Circus*, 972 F.2d at 262.

27        As already discussed, HGC does not directly own interest in HAT.  Zhang

28  Decl. ¶ 8(a).  Other than indirectly holding shares of HAT, HGC has no involvement

1   with the operation of HAT and does not interfere with the personnel, marketing,

2   sales, or operational decisions, or policies of HAT.  *Id.* ¶ 8(b).  Simply put, there is

3   no control by HGC over HAT (or Haier America).  Thus, there is no basis to hold

4   that HAT is HGC's alter ego.  As such, the principle of corporate separateness

5   between HGC and HAT must be respected.  *See Doe v. Unocal*, 248 F.3d at 925-26

6   (granting motion for lack of personal jurisdiction because parent and its subsidiaries

7   observe all of the corporate formalities necessary to maintain corporate separateness,

8   and therefore a subsidiaries' contacts should not be treated as parent's for

9   jurisdictional purposes).  Similarly, the liabilities of other companies cannot be

10  attributed to HGC based on the mere fact that HGC is the parent corporation.

11  *Bennett*, 621 F.3d at 1137 (citing *United States v. Bestfoods*, 524 U.S. 51, 61 (1998)

12  ("It is a general principle of corporate law … and legal systems that a parent

13  corporation (so-called because of control through ownership of another corporation's

14  stock) is not liable for the acts of its subsidiaries."); *see also Salkin v. United Servs.*

15  *Auto. Ass'n*, __ F. Supp. 2d __, 2011 WL 554079, at *2 (C.D. Cal. Jan. 28, 2011).

16        For the foregoing reasons, this Court lacks personal jurisdiction, general and

17  specific, over HGC.

18  **IV.   DEFENDANT PRC IS A NECESSARY AND INDISPENSABLE
19        PARTY IMMUNE TO THIS SUIT PURSUANT TO THE FOREIGN
        SOVEREIGN IMMUNITIES ACT**

20        **A.    The PRC Is a Necessary And Indispensable Party.**

21        A motion based on Rule 19 of the Federal Rules of Civil Procedure poses

22  three successive inquiries.  *E.E.O.C. v. Peabody Western Coal Co.*, 610 F.3d 1070,

23  1078 (9th Cir. 2010), *petition for cert. filed*, 79 U.S.L.W. 3522 (U.S. Mar. 3, 2011).

24  First, the court must determine whether a nonparty or absentee (now referred to as a

25  "person required to be joined if feasible") should be joined under Rule 19(a).  *Id*.  If

26  an absentee meets the requirements of Rule 19(a), the second stage is for the court to

27  determine whether it is feasible to order that the absentee be joined.  *Id*.  Finally, if

28  joinder is not feasible, the court must determine at the third stage whether the case

1  can proceed without the absentee or whether the action must be dismissed.  *Id.*

2      In a ruling regarding a Rule 19(b) case involving a foreign nation, the

3  Supreme Court held, "[a] case may not proceed when a required-entity sovereign is

4  not amenable to suit.  These cases instruct us that where sovereign immunity is

5  asserted, and the claims of the sovereign are not frivolous, dismissal of the action

6  must be ordered where there is a potential for injury to the interests of the absent

7  sovereign."  *Republic of the Philippines v. Pimentel*, 553 U.S. 851, 867 (2008);  *see*

8  *also Delano Farms Co. v. Cal. Table Grape Comm'n*, No. 1:07-CV1610

9  OWWSMS, 2009 WL 3586056, at *6 (E.D. Cal. Oct. 27, 2009) (dismissing,

10  pursuant to a non-governmental defendant's Rule 19 motion, plaintiffs' claims

11  where the necessary and indispensable named defendant the United States was

12  immune from suit).

13      There should be little doubt that the PRC is a necessary and indispensable

14  party to this suit.  Indeed, as Plaintiff alleges, this entire action arises out of the

15  "Chinese government-led" "Green Dam Initiative."  Am. Compl. ¶ 1.  Specifically,

16  "[t]he central component of the Green Dam Initiative was for the PRC to convince

17  and incentivize computer manufacturers to participate in the Initiative . . . ."  *Id.* ¶ 3.

18  The PRC also issued "a directive *mandating* that by July 1, 2009 every computer

19  shipped to or sold in China must have the Green Dam software pre-installed on or

20  packaged with the computer."  *Id.* ¶ 35 (emphasis added).  Therefore, the PRC

21  government is expected to have, in its possession, documents and testimonial

22  evidence that may prove, or disprove, Plaintiff's allegations.

23      HGC's alleged involvement with the acts giving rise to this suit was merely

24  following the mandate of the PRC to incorporate the Green Dam program into

25  computers allegedly sold by HGC *in China*.  Indeed, HGC expects the PRC to

26  confirm that HGC was required to follow the PRC issued mandate.  The PRC's

27  confirmation may be relevant to the defense of Plaintiff's Fourth Claim against

28  HGC for infringement under PRC's Copyright Laws.  As such, the PRC's "presence

1   is critical to the disposition of important issues in the case and/or its evidence will

2   either support the complaint or bolster the defense."  *See In re Toyota Motor Corp.*,

3   ___ F. Supp. 2d ___, 2011 WL 1485479, at *7 (C.D. Cal. Apr. 8, 2011) (citing

4   *Freeman v. Nw Acceptance Corp.*, 754 F.2d 553 (5th Cir. 1985)).

5        HGC recognizes that the Plaintiff named the PRC as a party to the suit and

6   that the Court has entered default against the PRC.  That the PRC did not appear to

7   argue that it enjoys sovereign immunity from this suit is not relevant to the Court's

8   analysis.  If the PRC is immune from this suit, the end result is tantamount to the

9   PRC never having been joined and being incapable of being joined.  The entry of

10  default against the PRC should not relieve the Court's responsibility under Rule

11  12(h)(3) to decide issues relevant to subject matter jurisdiction.  "If the court

12  determines at any time that it lacks subject-matter jurisdiction, the court *must*

13  dismiss the action."   Fed. R. Civ. P. 12(h)(3) (emphasis added).

14       As it concerns the Court's very power to act, even a nonparty may raise the

15  issue of lack of subject-matter jurisdiction.  *See California Dep't of Toxic*

16  *Substances Control v. Commercial Realty Projects, Inc.*, 309 F.3d 1113, 1120 (9th

17  Cir. 2002); *Citibank Int'l v. Collier-Traino, Inc.*, 809 F.2d 1438, 1440 (9th Cir.

18  1987).  Indeed, courts have an independent obligation to consider the sovereign

19  immunity of the sovereign, whether the sovereign appears or not:  "[E]ven if the

20  foreign state does not enter an appearance to assert an immunity defense, a District

21  Court still must determine that immunity is unavailable under the Act" before it can

22  exercise jurisdiction over the foreign state.  *Verlinden B.V. v. Central Bank of*

23  *Nigeria*, 461 U.S. 480, 493 n.20 (1983).  "A court has a duty to assure itself of its

24  own jurisdiction, regardless of whether jurisdiction is contested by the parties. . . .

25  We cannot require a defendant to affirmatively plead foreign sovereign immunity

26  from suit, since a court must decide immunity even if a defendant does not appear."

27  *Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1125 (9th Cir. 2010).  In the

28  *Delano Farms* case, the plaintiffs originally did not name the United States as a

1   defendant but the named defendant, the California Table Grape Commission,

2   successfully moved to dismiss patent related claims on the grounds that the United

3   States was a necessary party and indispensable party that was immune from suit and

4   thus could not be joined.  *Delano Farms*, 2009 WL 3586056, at *6.  In so doing, the

5   district court properly allowed the Commission, which did not itself claim sovereign

6   immunity, to raise the issue of the sovereign immunity of another, not before the

7   court so that the court could consider the issue and its relevance to the argument that

8   the suit should not go forward without a necessary and indispensable party that

9   cannot be joined.  While this court is not bound by the *Delano Farms* decision, it is

10  well-reasoned persuasive authority which supports granting HCG's motion.

### B.   The PRC Is Presumed To Be Immune From This Suit Under The FSIA.

13      The FSIA "provides the sole basis for obtaining jurisdiction over a foreign

14  state in the courts of this country."  *Argentine Republic v. Amerada Hess Shipping*

15  *Corp.*, 488 U.S. 428, 443 (1989).  Under the FSIA, a foreign state is presumptively

16  immune from the jurisdiction of U.S. federal and state courts.  *Meadows v.*

17  *Dominican Republic*, 817 F.2d 517, 522 (9th Cir. 1987).  Immunity will be denied to

18  a foreign state only if the claim in question fits within one of the narrowly specified

19  exceptions to immunity in 28 U.S.C. §§ 1605, 1605A and 1607, such as the

20  "commercial activity" exception in § 1605(a)(2) and "tortious activity" exception in

21  § 1605(a)(5).  The court has subject matter jurisdiction and personal jurisdiction

22  only if the foreign state lacks immunity.  28 U.S.C. §§ 1330(a)-(b).  Thus, if a

23  foreign state is immune because the claim brought against it does not fit within one

24  of the FSIA's specified exceptions to immunity, the court will lack both subject

25  matter jurisdiction and personal jurisdiction, and must dismiss the case.  Therefore,

26  PRC is immune from this suit unless Plaintiff can show that the facts of this case

27  falls within one of the exceptions to immunity under the FSIA.

28

## C.   The "Commercial Activity" Exception To The FSIA Does Not Apply.

The commercial activity exception denies immunity in any case "in which the action is based upon a commercial activity carried on in the United States by the foreign state." 28 U.S.C. § 1605(a)(2).  Plaintiff has claimed that the PRC is not immune under the "commercial activity" exception to the FSIA, and has already articulated its arguments in favor of its position in Plaintiff's Response to the Court's Order to Show Cause Regarding Defendant PRC's Sovereign Immunity Under FSIA" ("PR"), filed January 26, 2011.  The scope of these exceptions, however, is far more limited than Plaintiff asserts.  In fact, these exceptions are strictly construed.  *See Frolova v. Union of Soviet Socialist Republics*, 761 F.2d 370, 377 (7th Cir. 1985).

As far as the PRC is concerned, Plaintiff alleges that in May of 2009, the Ministry of Industry and Information Technology ("MIIT") of the PRC, in the exercise of its sovereign power, "issued a directive mandating that by July 1, 2009 every computer shipped to or sold in China must have the Green Dam software pre-installed on or packaged with the computer."  The stated purpose of the directive was to 'build a healthy and harmonious online environment that does not poison young people's minds.'"  Am. Compl. ¶ 36.  Also in May of 2009, "MIIT ordered Green Dam to be installed on every computer in every primary and secondary school in China."  *Id.*  Subsequently, in early June of 2009, University of Michigan researchers "concluded that Green Dam had copied verbatim portions of Solid Oak's CYBERsitter program.  *Id.* ¶ 40.  At the end of June, MIIT announced that implementation of the mandate would be delayed, and "[o]n August 12, 2009, China issued a statement saying that it did not intend to reinstate the mandate."  *Id.* ¶ 38.

A claim against a foreign state must be analyzed in terms of the foreign state's alleged activities, not in terms of the activities of other actors.  Even with respect to agencies and instrumentalities owned by the foreign state (which the two

software developments companies are not, *see* Am. Complt. ¶¶ 31-32), the presumption of the separate and independent status of these entities has to be respected.  That separate and independent status can be disregarded only when, in accordance with principles "common to both international law and federal common law," an entity is "so extensively controlled by its owner that a relationship of principal and agent is created," or respecting the corporate form "would work fraud or injustice."  *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 628 (1983) ("*Bancec*").  This presumption must apply with even greater force as between a foreign state and the private corporate legal persons within that state, that is, legal persons that the state does not own.  Here, the alleged actions of the two software development company defendants, which Plaintiff recognizes are incorporated private companies, *see* Am. Compl. ¶¶ 31-32, cannot be attributed to the PRC merely on the basis that they are PRC companies.  The stringent standards of *Bancec* would need to be met before the acts of one entity could be attributed to another.[2]  Therefore, it is necessary to carefully determine what the foreign state, the PRC, is alleged to have done.

### 1.    No Direct Effect In The United States Has Been Alleged.

Plaintiff maintains that its action falls within the "direct effect" prong of the "commercial activity" exception to immunity set forth in the FSIA, 28 U.S.C. § 1605(a)(2).  *See* PR at 2-3.  That exception removes immunity in a case "in which the action is "based . . . upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States."  Plaintiff's allegation of "direct effect in

---

[2]   Moreover, even when the foreign state defendant does not appear, an attribution of this nature cannot be made based on conjecture or speculation.  Under the FSIA, a default judgment may be entered against a foreign state defendant only by the presentation of "evidence satisfactory to the court" – the same standard that has to be met in order to impose a default judgment against the United States.  *Compare* 28 U.S.C. § 1608(e) with Fed. R. Civ. P. 55(d).  Also, *Bancec* standards are not satisfied by conclusory allegations about "civil conspiracy," which do not meet the present-day pleadings requirements of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).

the United States" is:

> As relevant here, PRC has engaged in the purely economic conduct of licensing, sublicensing, distributing and promoting the software program known as Green Dam at issue in this litigation.  PRC may not claim jurisdictional immunity from this suit as its conduct arises from commercial activity that "causes a direct effect in the United States" as described in 28 U.S.C. § 1605(a)(2) in the form of damaging Solid Oak, a California company, by PRC's unauthorized taking and use of Solid Oak's intellectual property.  The PRC's actions alleged herein are purely economic because PRC purchased a one-year license to exploit the software program at issue for approximately 6.9 million U.S. dollars, and then promoted the program and sublicensed the program to computer manufacturers, for which it received substantial sums.

Am. Compl. ¶ 13.  The alleged "form of damaging Solid Oak" is further described as follows:

> Plaintiff has been deprived of money, such as licensing fees for the use of Plaintiff's Trade Secrets that would otherwise have been due to Plaintiff, and Defendants have been unjustly enriched by their misappropriation of Plaintiff's Trade Secrets.

Am. Compl. ¶ 63.  Plaintiff sets out these allegations again in its Response.  *See* PR at 5-7.  Plaintiff's allegations establish that it actually is not alleging a "direct effect in the United States" in the FSIA meaning of that term.  The U.S. Court of Appeals for the Ninth Circuit has repeatedly held that financial loss experienced in the United States does not constitute the "direct effect" that the FSIA requires:

> An effect is "direct" for purposes of the commercial activity exception if it follows as an "immediate consequence" of the defendant's activity. [*Republic of Argentina v.*] *Weltover,* [*Inc.*,] 504 U.S. [607 (1992)] at 618, 112 S.Ct. at 2168 (citation omitted). However, mere financial loss by a person -- individual or corporate -- in the U.S. is not, in itself, sufficient to constitute a "direct effect." *Siderman de Blake* [*v. Republic of Argentina,*] 965 F.2d [699 (9th Cir. 1992)] at 710.  Rather, courts "'often look to the place where legally significant acts giving rise to the claim occurred' in determining the place where a direct effect may be said to be located." *United World Trade v. Mangyshlakneft Oil Production Ass'n,* 33 F.3d 1232, 1239 (10th Cir. 1994) (*quoting Weltover, Inc. v. Republic of Argentina,* 941 F.2d 145, 152 (2nd Cir. 1991), *aff'd,* 504 U.S. 607, 112 S.Ct. 2160, 119 L.Ed.2d 394, 112 S. Ct. 2160 (1992)); *see also Gregorian v. Izvestia,* 871 F.2d 1515,

1  1527 (9th Cir. 1989) (to establish direct effect, plaintiff
2  must show "something legally significant actually happened in the U.S.").

3  *Adler v. Fed. Republic of Nigeria*, 107 F.3d 720, 726-27 (9th Cir. 1997).  Thus, to

4  qualify as a "direct effect in the United States," that effect must be the "immediate

5  consequence" of the overseas act; and "something legally significant [must have]

6  actually happened in the U.S." as a consequence of the overseas act.  Financial loss

7  suffered by a U.S. corporation does not qualify as a "direct effect in the United

8  States."  Plaintiff itself highlights the indirectness of the effect of the alleged wrongs

9  when it complains of the "depriv[ation] of reasonable licensing revenues" from

10  "millions of end users" in China, and the alleged destruction of its market in China.

11  *See* PR at 6-7.

12  Plaintiff's allegation also fails the "legally significant act" test.  The

13  requirement that "something legally significant [must have] actually happened in the

14  U.S." can be grasped by reference to the leading "direct effect" case decided by the

15  Supreme Court, *Republic of Argentina v. Weltover*, Inc., 504 U.S. 607 (1992).

16  There, Argentina had issued bonds; bond issuance is a commercial activity.

17  Argentina later unilaterally extended the maturity date of the bonds – an act clearly

18  "in connection with" the underlying commercial activity, since it caused the bond

19  contract to be breached.  Three bondholders instituted a breach-of-contract action

20  against Argentina.  The Supreme Court ruled that "direct effect" jurisdiction existed,

21  because the place of payment of the bonds was in the United States – the bonds

22  provided that payment could be made in any of several international cities, including

23  New York, at the election of the creditor, and these bondholders had chosen New

24  York as the place of payment.  *See Weltover*, 504 U.S. at 609-10.  The Court

25  concluded that "because New York was thus the place of performance for

26  Argentina's ultimate contractual obligations, the rescheduling of those obligations

27  [the act upon which the claim was based] necessarily had a 'direct effect' in the

28  United States:  Money that was supposed to be delivered to a New York bank for

1   deposit was not forthcoming." *Id*. at 619; *see also Adler*, 107 F.3d at 727 ("direct

2   effect" jurisdiction existed because plaintiff had designated New York as place of

3   payment under an agreement).

4       Thus, if the place of payment in *Weltover* had been outside the United States,

5   and the sovereign bond issuer had committed an act like Argentina's that put it in

6   breach of contract, "direct effect" jurisdiction would not have existed, even if the

7   bondholder had been located in the United States and therefore had suffered

8   financial loss in the United States (indirectly, by the bonds not being paid overseas,

9   wherever payment was supposed to be made).  *See, e.g., Morris v. People's*

10  *Republic of China*, 478 F. Supp. 2d 561, 570-71 (S.D.N.Y. 2007) (designated places

11  of payment all outside the U.S.); *Pons v. People's Republic of China*, 666 F. Supp.

12  2d 406 (S.D.N.Y. 2009) (same); *see also Big Sky Network Canada, Ltd. v. Sichuan*

13  *Provincial Gov't*, 533 F.3d 1183, 1191 (10th Cir. 2008) ("[A]n American

14  corporation's failure to receive promised funds abroad will not qualify as a 'direct

15  effect in the United States.'  The 'direct effect' in such a case is the failure to receive

16  the funds, which occurs abroad, and the financial injury, though ultimately felt in the

17  United States, is too attenuated to qualify as direct.") (citation omitted); *Virtual*

18  *Countries, Inc. v. Republic of South Africa*, 300 F.3d 230, 240 (2d Cir. 2002)

19  ("[P]laintiff's more expansive theory, that *any* 'U.S. corporation's financial loss

20  constitutes a direct effect in the United States,' is plainly flawed.") (citation

21  omitted).  In these cases there was not an "immediate consequence" or a "legally

22  significant act" as required for this exception to immunity to apply.

23      Here also, no legally significant act occurred in the United States.  Plaintiff

24  alleges that the defendant PRC has committed a tort, which would have indirect

25  financial effects on Plaintiff in the United States.  Clothing the claim in almost

26  quasi-contractual terms – "deprived of money, such as licensing fees for the use of

27  Plaintiff's Trade Secrets that would otherwise have been due to Plaintiff," Am.

28  Compl. ¶ 63 – cannot disguise the fact that the required legally significant act in the

1   United States simply does not exist under the facts alleged.  "[T]he fact that an

2   American individual or firm suffers some financial loss from a foreign tort cannot,

3   standing alone, suffice to trigger the exception.  If a loss to an American individual

4   and firm resulting from a foreign tort were sufficient standing alone to satisfy the

5   direct effect requirement, the commercial activity exception would in large part

6   eviscerate the FSIA's provision of immunity for foreign states."  *Antares Aircraft,*

7   *L.P. v. Fed. Republic of Nigeria*, 999 F.2d 33, 36-37 (2d Cir. 1993) (citations

8   omitted).[3]

### 2.   The Alleged Acts Upon Which The Claim Is Based Are Not "In Connection With" Commercial Activity.

10   Plaintiff's allegation also suffers from the fatal defect that it fails to satisfy the

11   "in connection with" requirement.  The Ninth Circuit has held that "[t]o satisfy the

12   'in connection with' requirement, the acts complained of must have some

13   'substantive connection' or a 'causal link' to the commercial activity."  *Adler*, 107

14   F.3d at 726 (quoting *Federal Ins. Co. v. Richard I. Rubin & Co.*, 12 F.3d 1270,

15   1289-91 (3d Cir. 1993).  The requisite substantive connection or causal link between

16   the acts complained of and commercial activity is missing from Plaintiff's

17   allegations.

18   According to the amended complaint, "the PRC purchased a one-year license

19

20   [3]   The case on which plaintiff relies, *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998), is not to the contrary.  *Panavision* simply states that a corporation suffers "the brunt of harm" where its principal place of business is located.  *See Panavision*, 141 F.3d at 1322 n.2.  When a harm is inflicted on a U.S. corporation overseas, an indirect effect is that it will suffer a financial harm where it is located.  It is exactly that situation that the cases cited in the text above are addressing.  *Panavision* does not conflict with those cases.

Moreover, unlike this case, the cybersquatter defendant in *Panavision* deliberately directed his activity at the plaintiff, a corporation with its principal place of business in California, in order to exact a payment from the plaintiff. *Panavision* distinguishes that from the mere posting of website links on the Internet. The latter does not create jurisdiction wherever the website can be accessed, whether it be China, the United States or a third country.  *See Panavision*, 141 F.3d at 1321-23.  The court in *Panavision* noted that "no court had ever held that an Internet advertisement alone is sufficient to subject a party to jurisdiction in another state."  *Id.* at 1321.  A contrary result would create jurisdiction all over the world for causes based on material available on the Internet.

to exploit the software program at issue for approximately 6.9 million U.S. dollars," and this is "purely economic conduct."  Am. Compl. ¶ 13.  But even if, *arguendo*, purchasing a software license is commercial activity, Plaintiff's claim is not based upon acts "in connection with" that particular activity.  Plaintiff is not claiming that this license contract was breached in some way by an act of the PRC, and that it has a claim based upon the PRC's act causing the breach.  To the contrary, Plaintiff's claim is not connected to the alleged license.  The situation here is similar to that in *Rubin*, where plaintiffs were attempting to assert that FSIA jurisdiction existed because a foreign state instrumentality's loan transaction had some connection to the plaintiffs' claims:  "[T]he causes of action alleged in the lawsuit are not substantively connected to the loan transaction.  As previously discussed, the claims are primarily tort-based and do not include a breach of contract allegation stemming from the loan transaction.  There is no substantive nexus that satisfies the 'based upon' requirement contained in the statutory language."  *Rubin*, 12 F.3d at 1291.

Here, as in *Rubin*, the required causal link is missing between Plaintiff's claim and the alleged commercial activity, the license/license payment, of the PRC.  Plaintiff is not suing on the license contract.  In fact, it emphasizes that it is suing in tort, for alleged tortious activity that would exist whether the software had been developed internally, or by way of a contract, or some other way.  *See* PR at 7-8 & n.2.  As in *Rubin*, "the claims are primarily tort-based and do not include a breach of contract allegation . . . ."  *See Rubin*, 12 F.3d at 1291.  Therefore, even assuming *arguendo* that the license contract and contract payment constituted commercial activity, that activity is not connected in the requisite way so as to supply jurisdiction under § 1605(a)(2).

Plaintiff also alleges that the PRC "received substantial sums" for "sublicens[ing] the program to computer manufacturers."  Am. Compl. ¶ 13.  Even if this allegation were credited at the motion to dismiss stage, this suit is not the result of computer manufacturers negotiating in a commercial context about taking

1   sublicenses from a vendor.  To the contrary, the PRC did something no private party

2   could do:  It exercised its sovereign power to order the computer manufacturers to

3   include Green Dam with their computers shipped to or sold in China.  As noted in

4   the case on which Plaintiff relies so heavily, *Joseph v. Office of Consulate Gen'l of*

5   *Nigeria*, 830 F.2d 1018 (9th Cir. 1987), "[a]n activity is public and 'noncommercial'

6   if it is one which only a sovereign state can perform."  *Joseph*, 830 F.2d at 1024.

7        Plaintiff also alleges that the PRC engaged in the "purely economic conduct"

8   of "distributing and promoting the software program known as Green Dam."  Am.

9   Compl. ¶ 13.  This "distributing and promoting" activity is more particularly

10  described and explained elsewhere as the PRC government mandating the inclusion

11  of the Green Dam software in computers shipped to or sold in China.  *See* Am.

12  Compl. ¶¶ 35-36.  Clearly only a government can issue mandates that all new

13  computers in the sovereign's territory must contain or be shipped with a particular

14  software program.  Rather than being "purely economic conduct," the PRC was

15  exercising its sovereign powers for public purposes.  The PRC clearly was not

16  engaging in commercial activity in issuing this mandate.  Also equally clear is that

17  these mandates were directed at the territory of the sovereign; they would have

18  direct effects in the territory of the sovereign, China, not elsewhere.

19       That the PRC's mandates, if carried out, would have resulted in the

20  distribution of the software by the computer manufacturers when the manufacturers

21  sold their PCs does not make the PRC's mandate "commercial activity."  *Cf. Kato v.*

22  *Ishihara*, 360 F.3d 106, 112 (2d Cir. 2004) ("the fact that a government

23  instrumentality . . . is engaged in *the promotion of commerce* does not mean that the

24  instrumentality is thereby engaged in *commerce*").  In order to analyze whether

25  jurisdiction exists under the FSIA's "commercial activity" exception, it is necessary

26  to identify the activity in question precisely:  "A federal trial, for example, could be

27  characterized in the broadest, generic terms as a form of dispute resolution, or, more

28  specifically, as government-sponsored adjudication.  But whereas the broad

1   category of dispute resolution encompasses activities that might be considered

2   commercial, such as paid-for arbitration, the narrower category of adjudication

3   defines an intrinsically public activity, invested with the sovereign authority of the

4   state." *de Sanchez v. Banco Central de Nicaragua*, 770 F.2d 1385, 1392 (5th Cir.

5   1985); *cf. Saudi Arabia v. Nelson*, 507 U.S. 349, 356 (1993) (to determine whether a

6   claim is actually "based upon" commercial activity,  a court must "identify[ ] the

7   particular conduct on which the . . . action is 'based'").

8           The mandates of the PRC certainly constitute such "intrinsically public

9   activity, invested with the sovereign authority of the state."  Ordering the

10  distribution of software is not the same thing as contracting for the distribution of

11  software.  The former can only be done by a sovereign; the latter can be done by a

12  private party.  "'[W]hen a foreign government acts, not as a regulator of the market,

13  but as a private player within it, the foreign sovereign's actions are "commercial"

14  within the meaning of the FSIA.'" *Adler*, 107 F.3d at 724 (quoting *Weltover*, 504

15  U.S. at 614).

16          In short, the alleged activities of the PRC that would be substantively

17  connected or causally linked to the acts upon which Plaintiff's claim is based are not

18  commercial activities, but instead are sovereign activities.  Therefore the "in

19  connection with" requirement of 28 U.S.C. § 1605(a)(2) is not satisfied.  Therefore,

20  the "commercial activity" exception to the FSIA does not apply.

21          **D.      The "Tortious Activity" Exception To FSIA Likewise Does Not
22                   Apply.**

23          Plaintiff also argues that jurisdiction exists under the FSIA's tortious activity

24  exception, 28 U.S.C. § 1605(a)(5), but this is not correct.  Plaintiff has misread that

25  exception to require only that there be "injury to property within the United States

26  stemming from the tortious acts or omissions of the foreign state" elsewhere.  PR at

27  1; *see also id.* at 7.  In fact, "the exception in § 1605(a)(5) covers only torts

28  occurring within the territorial jurisdiction of the United States." *Argentine*

1   *Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 441 (1989).  Moreover,

2   the "entire tort" must occur completely within U.S. territory.  *Olsen v. Government*

3   *of Mexico*, 729 F.2d 641 (9th Cir. 1984), *abrogation on other grounds recognized by*

4   *Joseph v. Office of Consulate Gen'l of Nigeria*, 830 F.2d 1018 (9th Cir. 1987); *see*

5   *also Asociacion de Reclamantes v. United Mexican States*, 735 F.2d 1517 (D.C. Cir.

6   1984) (Scalia, J.) (same).[4]

7        Plaintiff's amended complaint asserts that the PRC allegedly committed

8   tortious acts *in China* that caused injury in the United States.  Consequently,

9   Plaintiff's claims are clearly inconsistent with the exercise of jurisdiction under §

10  1605(a)(5).  Because of the foregoing, it would be irrelevant even if, as Plaintiff

11  claims, the PRC's actions did not fall within the "discretionary function" "exception

12  to the exception," set forth in § 1605(a)(5)(A).

13  **V.   CONCLUSION**

14       For all the reasons set forth above, Defendant Haier Group Corporation

15  respectfully requests that the Court dismiss Plaintiff's Amended Complaint against

16  it for lack of personal jurisdiction, and/or Plaintiff's Amended Complaint in its

17  entirety for the fact that the PRC is a necessary and indispensable party to this suit

18  but is also immune from this suit under the FSIA.

19  DATED:  June  8, 2011          Respectfully submitted,

20                                 ALSTON & BIRD LLP

21

22                                 By:_____*/s/ Yitai Hu*_____
                                       Yitai Hu
23                                 Attorneys for Defendant
                                   HAIER GROUP CORPORATION
24  LEGAL02/32674444v3

25

26   _____
      [4] This particular exception to immunity was "directed primarily at the problem of
27  traffic accidents" in the United States caused by diplomats.  H.R. Rep. No. 94-1487,
    at 7, 20-21 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6605, 6619-20.  *See*
28  *Reclamantes*, 735 F.2d at 1525; *MacArthur Area Citizens Ass'n v. Republic of Peru*,
    809 F.2d 918, 921 (1987) (relied upon by plaintiff, PR at 10).