1   FAYER GIPSON LLP
    A Limited Liability Partnership
2   GREGORY A. FAYER (State Bar No. 232303)
    gfayer@fayergipson.com
3   ELLIOT B. GIPSON (State Bar No. 234020)
    egipson@fayergipson.com
4   2029 Century Park East, Suite 3535
    Los Angeles, California 90067
5   Telephone: (310) 557-3558
    Facsimile:  (310) 557-3589
6
7   Attorneys for Plaintiff
    CYBERsitter, LLC d/b/a Solid Oak Software
8
9                UNITED STATES DISTRICT COURT
10        CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION
11

| | |
|---|---|
| 12  CYBERsitter, LLC, a California limited liability company, d/b/a Solid Oak Software, | CASE NO. CV 10-00038 JST (SH) |
| 13 | |
| 14        Plaintiff, | **OPPOSITION TO DEFENDANT HAIER GROUP CORPORATION'S, MOTION  TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |
| 15     v. | |
| 16  The People's Republic of China, a foreign state; Zhengzhou Jinhui Computer System Engineering Ltd., a Chinese corporation; Beijing Dazheng Human Language Technology Academy Ltd., a Chinese corporation; Sony Corporation, a Japanese corporation; Lenovo Group Limited, a Chinese corporation; ASUSTeK Computer Inc., a Taiwanese corporation; BenQ Corporation, a Taiwanese corporation; Haier Group Corporation, a Chinese corporation; DOES 1-10, inclusive, | |
| 17 | |
| 18 | Judge:  Hon. Josephine Staton Tucker Ctrm:   10A |
| 19 | |
| 20 | Hearing Date:        July 18, 2011 Hearing Time:        10:00 a.m. |
| 21 | |
| 22        Defendants. | Discovery Cutoff: Pretrial Conference: Trial Date: |

23
24
25
26
27
28

FAYER GIPSON LLP
A LIMITED LIABILITY PARTNERSHIP

# TABLE OF CONTENTS

**PAGE(S)**

I.   INTRODUCTION ................................................................................. 1

II.  BACKGROUND ................................................................................. 4

   **A.**   PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE OF FACTS SHOWING THAT HAIER HAS SUBSTANTIAL CONTACTS IN THE UNITED STATES ................................................................ 4

   **B.**   PLAINTIFF'S UNCONTESTED EVIDENCE SUPPORTED BY DECLARATIONS ................................................................ 7

   **C.**   PLAINTIFF'S UNCONTESTED ALLEGATIONS IN THE COMPLAINT ........................................................................ 8

   **D.**   PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE THAT CALIFORNIA IS KNOWN TO BE THE CENTER OF THE UNITED STATES SOFTWARE INDUSTRY .......................................... 9

III. LAW ................................................................................................ 9

   **A.**   PLAINTIFF NEED ONLY MAKE A PRIMA FACIE SHOWING OF JURISDICTIONAL FACTS TO DEFEAT A MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION ...................... 9

   **B.**   GENERAL JURISDICTION ........................................................ 9

   **C.**   SPECIFIC JURISDICTION ........................................................ 10

   **D.**   ALTERNATIVELY, PLAINTIFF HAS A RIGHT TO JURISDICITIONAL DISCOVERY ...................................................... 11

IV.  ARGUMENT ..................................................................................... 11

   **A.**   HAIER IS SUBJECT TO GENERAL JURISDICTION .......................... 11

      **1.**   HAIER HAS SUBSTANTIAL CONTACTS IN CALIFORNIA AND IS SUBJECT TO JURISDICTION ........... 11

      **2.**   HAIER HAS SUBSTANTIAL CONTACTS IN THE UNITED STATES AND IS SUBJECT TO JURISDICTION PURSUANT TO RULE 4(k)(2) ................................ 12

FAYER GIPSON LLP
A LIMITED LIABILITY PARTNERSHIP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B.**   HAIER IS SUBJECT TO SPECIFIC JURISDICTION THROUGH THE CALDER EFFECTS TEST ........................................ 14

    **1.**   DEVELOPER DEFENDANTS PURPOSEFULLY DIRECTED THEIR ACTIONS TOWARDS CALIFORNIA ...... 14

    **2.**   PLAINTIFF'S CLAIMS ARISE OUT OF HAIER'S FORUM RELATED ACTIVITIES ................................................ 15

    **3.**   EXERCISE OF SPECIFIC JURISDICTION OVER DEVELOPER DEFENDANTS IS REASONABLE.................... 15

**V.**   CONCLUSION ................................................................................. 17

FAYER GIPSON LLP
A LIMITED LIABILITY PARTNERSHIP

# TABLE OF AUTHORITIES

**PAGE(S)**

**Federal Cases**

*Adams v. Unione Mediterranea DI Sicurta*,
  364 F.3d 646 (5th Cir.2004)................................................................13

*Bancroft & Masters, Inc. v. Augusta Nat. Inc.*,
  223 F.3d 1082 (9th Cir. 2000)................................................4, 15, 16

*Brayton Purcell, LLP v. Recordon & Recordon*,
  606 F.3d 1124 (9th Cir. 2010)..................................4, 10, 14, 16

*Calder v. Jones*,
  465 U.S. 783, 104 S. Ct. 1482 (1984 ........................4, 10, 11

*Dole Food Co., Inc. v. Watts*,
  303 F.3d 1104 (9th Cir. 2002)..................................................9

*Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*,
  328 F.3d 1122 (9th Cir. 2003)................................................11

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.*,
  485 F.3d 450 (9th Cir.2007)....................................................13

*International Shoe Co. v. Washington*,
  326 U.S. 310 (1945)..............................................................11

*Monster Cable Products, Inc. v. Euroflex S.R.L.*,
  642 F. Supp. 2d 1001 (N.D. Cal. 2009) ......................3, 10, 13

*Mwani v. bin Laden*,
  417 F.3d 1 (D.C.Cir.2005) ......................................................13

*Myers v. Bennett Law Offices*,
  238 F.3d 1068 (9th Cir. 2001)..................................................9

*Oldfield v. Pueblo De Bahia Lora*, S.A.,
  558 F.3d 1210 (11th Cir.2009)................................................13

*Panavision Intern., L.P. v. Toeppen*,
  938 F. Supp. 616 (C.D. Cal. 1996), aff'd, 141 F.3d 1316 (9th Cir. 1998)............4, 15

*Rio Properties v. Rio Int'l Interlink*,
  284 F.3d 1007 (9th Cir. 2002).................................................4

*Touchcom, Inc. v. Bereskin & Parr*,
  574 F.3d 1403 (Fed. Cir. 2009), reh'g denied (Sept. 24, 2009) ....................12, 13

**Statutes**

28 U.S.C. § 1338..............................................................................12

FAYER GIPSON LLP
A LIMITED LIABILITY PARTNERSHIP

Cal. Civ. Proc. Code § 410.10 ........................................................................ 11

**Rules**

Fed. R. Civ. P. 4(k) ........................................................................ 3, 9, 12, 13

FAYER GIPSON LLP
A LIMITED LIABILITY PARTNERSHIP

PLAINTIFF'S OPPOSITION TO HAIER'S MTD
FOR LACK OF PERSONAL JURISDICTION

## I.  INTRODUCTION

In its motion to dismiss for lack of personal jurisdiction, Haier Group Corporation ("Haier") claims that it does not engage in any commercial or business activities anywhere in the world, let alone in the United States or the state of California.  Haier's Motion To Dismiss ("MTD") at 1.  Haier claims to be no more than a passive holding company that only owns stock in subsidiaries.  In support of this assertion, Haier offers a brief, uncertified translation of a two-page declaration of one Zhang Cuimei, purportedly legal counsel to Haier.  In it, Mr. Cuimei claims, "[Haier] is a holding entity and does not directly engage in any commercial activities. Specifically, [Haier] does not develop, manufacture, market, or sell any product anywhere in the United States or the World."  *Id*.  at ¶ 3.  However, in filings with the United States Patent and Trademark Office filed in June 2009, Haier (not a subsidiary) through its attorney Peter Lange has expressly sworn, under penalty of perjury and criminal sanctions, that it owns the Haier mark, that such mark is in use in commerce in the United States, and that it is not aware of any adverse administrative or court decisions affecting its ownership of the mark.  Regarding the Haier mark with respect to its use with goods in international class nine (9), *which includes computers* and *notebook computers*, Mr. Lange swore as follows:

> The mark is in use in commerce on or in connection with the goods and/or services identified above, as evidenced by the attached specimen(s) showing the mark as used in commerce. The mark has been in continuous use in commerce for five (5) consecutive years after the date of registration, or the date of publication under Section 12(c), and is still in use in commerce. There has been no final decision adverse to the owner's claim of ownership of such mark, or to the owner's right to register the same or to keep the same on the register; and there is no proceeding involving said rights pending and not disposed of either in the

U.S. Patent and Trademark Office or in the courts. Request for Judicial Notice ("RJN") at ¶ 6; Exhibit ("Ex.") 11 (Haier's Trademark Declarations of Use).

In fact, contrary to Haier's and Mr. Cuimei's assertions, Haier has substantial contacts within California and the United States, including but not limited to:

- the purposeful, systematic and continuous registration of intellectual property with the United States Patent and Trademark Office for the past twenty (20) years, including the registration of thirty-five (35) patents and seven (7) trademarks;

- televised nationwide advertising campaigns for the "Haier" brand, including a high profile sponsorship of the National Basketball Association since 2006;

- annual sales of tens of millions of dollars of "Haier" consumer electronic goods through nationally recognized retailers such as Walmart and Best Buy throughout California and the United States;

- the systematic and continuous creation of a number of subsidiaries bearing the "Haier" name to do business in the United States; and

- the presence of a design, research, and development center for "Haier" branded protects located in Los Angeles, California.

In its own name, and through its myriad of subsidiaries, Haier has purposeful, systematic and continuous contact with California and all of the United States.  For Haier to claim that this Court does not have general jurisdiction over Plaintiff's intellectual property claims it when Haier has intentionally, systematically and continuously sought out the protection of U.S. intellectual property laws through its

2

1   dozens of registrations with the USPTO over the past twenty years, and when those

2   products bearing its same registered trademarks and incorporating its patented

3   technology are advertised and sold through the largest consumer electronics retailers

4   throughout California and the United States, is simply not credible. *See Monster*

5   *Cable Products, Inc. v. Euroflex S.R.L.*, 642 F. Supp. 2d 1001, 1009-10 (N.D. Cal.

6   2009) (holding that the Court had personal jurisdiction over defendant based upon

7   defendant's application with the USPTO). In Yiddish there is a word for this, it's

8   called *chutzpah*.

9       Moreover, along with the other defendants, Haier has willfully targeted

10  Plaintiff, a California company, through its tortious conduct of unlicensed copying

11  and distribution of Plaintiff's software program while knowing that Plaintiff would

12  suffer harm in California.   Significantly, neither Haier nor the other moving

13  defendants have denied (let alone introduced any evidence that would support such a

14  denial) that they copied and distributed the infringing software as Plaintiff has alleged

15  in its complaint.   Finally, Plaintiff's allegations of copying are beyond any serious

16  dispute: over six months ago Plaintiff introduced evidence of intentional copying from

17  Professor Halderman.   Declaration of Dr. J. Alex Halderman ("Halderman Decl.")

18  (Docket Inst. No. 62.).   Neither Haier, nor any moving or any other defendant, has

19  introduced any evidence refuting Plaintiff's expert's analysis, or even seriously

20  questioned it.  Indeed, when the infringing software contains instructions referring the

21  user to go to Plaintiff's website for updates, any "innocent" explanation likewise is not

22  credible. *Id*. at ¶ 18.

23      Accordingly, this Court has multiple alternative grounds on which to assert

24  personal jurisdiction, including traditional general jurisdiction, so-called "nationwide"

25  general jurisdiction pursuant to Fed. R. Civ. Proc. 4(k)(2), and specific jurisdiction

26  under the *Calder* effects test as applied under Ninth Circuit precedent. *See Calder v.*

27  *Jones*, 465 U.S. 783, 104 S. Ct. 1482 (1984): *see also Panavision Intern., L.P. v.*

28

FAYER GIPSON LLP
A LIMITED LIABILITY PARTNERSHIP

PLAINTIFF'S OPPOSITION TO HAIER'S MTD
FOR LACK OF PERSONAL JURISDICTION

*Toeppen,*141 F.3d 1316 (9th Cir. 1998)*; Bancroft & Masters, Inc. v. Augusta Nat. Inc.,*
223 F.3d 1082 (9th Cir. 2000),*; Rio Properties v. Rio Int'l Interlink*, 284 F.3d 1007 (9th
Cir. 2002); *Brayton Purcell, LLP,* 606 F.3d at 1128.

## II. BACKGROUND

**A.    PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE OF FACTS
SHOWING THAT HAIER HAS SUBSTANTIAL CONTACTS IN
THE UNITED STATES**

Plaintiff has requested judicial notice of the following facts:

- Haier is the registered owner of the following seven (7) "live" United
  States trademarks:

  o   Registration no. 28909681, for the word mark Haier, filed
      September 5, 2000;

  o   Registration no. 2801693, for the word mark HEC, filed
      September 1, 2000;

  o   Registration no. 2717688, for the word mark Haier, filed June 7,
      1999;

  o   Registration no. 2120737, for the word mark Haier, filed April 17,
      1995;

  o   Registration no. 2131584, for the word mark Haier, filed April 17,
      1995;

  o   Registration no. 213583, for a design mark that is a Chinese
      transliteration of the word Haier, filed April 17, 1995; and

  o   Registration no. 1678405, for a design mark featuring children,
      filed January 7, 1991.[1]

---

[1] In addition, Haier has let several trademarks lapse, indicating a purposeful picking and
choosing of which of its trademarks to maintain. Haier's "dead" registrations are numbers 2223687
for a Chinese transliteration of Haier, 2240208 for a design mark showing children, and 2223686 for
the word mark Haier.  Haier's abandoned applications are numbers 75722809 for a design mark
showing children and 75722807 for a Chinese transliteration of Haier.

PLAINTIFF'S OPPOSITION TO HAIER'S MTD
FOR LACK OF PERSONAL JURISDICTION

FAYER GIPSON LLP
A LIMITED LIABILITY PARTNERSHIP

RJN at ¶ 5; Ex. 10 (Haier's Trademark Registration Certificates).

- According to sworn statements made to the USPTO on Haier's behalf, Haier has used the "Haier" mark in connection with various consumer goods in commerce in the United States since 1991.  RJN at ¶¶ 3-6; Ex. 10-11.

- Haier is the registered owner of the following thirty-five (35) United States patents:
  - D598,003 for forniciform cabinet glass door freezer;
  - D596,651 for double layer glass door freezer;
  - 7,475,445 for counter rotation wash method and transmission machine;
  - D566,347 for drum type washing machine;
  - D566,223 for refrigerator with three doors;
  - 7,215,980 for pen-type mobile telephone;
  - D540,833 for refrigerator with three doors;
  - D540,832 for refrigerator with four doors;
  - D494,987 for glass door refrigeration cabinet with cooling chamber;
  - D493,153 for TV-set (frog prince-3);
  - D491,542 for mobile phone;
  - D485,893 for water heater;
  - D483,776 for wine cellar;
  - D481,740 for blood-refrigerating bank;
  - 6,622,531 for drum washing machine with draw-out inner spin basket;
  - D478,696 for dishwasher;
  - D477,338 for freezer with drawer below;

FAYER GIPSON LLP
A LIMITED LIABILITY PARTNERSHIP

PLAINTIFF'S OPPOSITION TO HAIER'S MTD
FOR LACK OF PERSONAL JURISDICTION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FAYER GIPSON LLP
A LIMITED LIABILITY PARTNERSHIP

o   D472,624 for split-type room air conditioner;

o   6,532,756 for refrigerator with a foldable table;

o   6,526,770 for method for controlling the temperature of a refrigerator;

o   D465,622 for drum washing machine;

o   D465,307 for impeller washing machine;

o   D463,682 for wine cabinet with bar;

o   6,449,976 for horizontal freezer with drawers;

o   D460,466 for constant temperature wine cellar;

o   D457,755 for TV cabinet;

o   D457,378 for microwave oven;

o   D456,032 for refrigerator;

o   D454,187 for cabinet air conditioner;

o   D453,169 for wine cellar with long handle;

o   D452,869 for wine cellar;

o   D452,255 for freezer with drawer below;

o   D451,936 for freezer with drawer below;

o   D451,935 for freezer with drawer below; and

o   D441,066 for window air conditioner.  RJN at ¶¶1-2; Ex. 6-7.

• Advertisements for "Haier," a registered trademark of Haier, are routinely televised throughout the United States. *See* RJN at ¶¶ 10-11.

• "Haier" has been an official sponsor of the NBA, and has been prominently featured in advertising associated with the NBA, since 2006. *RJN at ¶¶* 10-11; Ex. 15.

• Advertisements for Haier, a registered mark of Defendant Haier, are routinely run nation-wide during NBA telecasts – including advertisements that run in California, which has four (4) NBA teams.

6

RJN at ¶ 11; Ex. 16.

- The following U.S. companies are registered to do business in the United States:
    - o Haier America Building, LLC (registered in Delaware and New York);
    - o Haier America Trading, L.L.C. (registered in Delaware and New York);
    - o Haier America Business LLC (registered in Delaware); and
    - o Haier America Holding Corp. (registered in Delaware).  RJN at ¶¶ 8-9; Ex. 13-14.
- "Haier" products appear in store and internet retailers in California and in the United States nationwide, including but not limited to the following retailers:
    - o Walmart which operates more than 3000 stores in the United States and dozens within the Central District of California; and
    - o Best Buy which has hundreds of stores in the United States and dozens within the Central District of California.  RJN at ¶¶ 12-16; Ex. 12, 17, 18, and 19.

**B.    PLAINTIFF'S UNCONTESTED EVIDENCE SUPPORTED BY DECLARATIONS**

Plaintiff has introduced the following uncontroverted evidence:

- that Plaintiff is a California company with its principal place of business located in Santa Barbara, California (First Milburn Decl. at ¶ 6 (Docket Inst. No. 61).);

- that Plaintiff is the owner of CYBERsitter software, an adult content filter marketed to and used by parents to protect their children from adult

FAYER GIPSON LLP
A LIMITED LIABILITY PARTNERSHIP

content on the internet (Id. at ¶ 2.);

- Green Dam Youth Escort contains nearly 3000 lines of CYBERsitter's code (Id. at ¶¶ 24-30; *see generally* Halderman Decl. (Docket Inst. No. 62.);

- Plaintiff resides and has its principal place of business in the Central District, and that Plaintiff was damaged in the Central District (First Milburn Decl. at ¶ 6 (Docket Inst. No. 61);

- that Defendant Haier was aware of the software piracy, and that Plaintiff was a California company, at least as early as August 2009 (Fayer Decl. at ¶¶ 2-3, 5; Exs. 2 (August 2009 Cease and Desist to Haier) and 6 (September 2009 Email Correspondence with Haier).

## C.   PLAINTIFF'S   UNCONTESTED   ALLEGATIONS   IN   THE COMPLAINT

Plaintiff has alleged:

- that Defendant Haier knew that Plaintiff was a United States resident and would suffer harm in California.  FAC at para. 62, 73.

- that Haier knew that Plaintiff's software had been infringed  at least as early as June 2009.  FAC at para. 54, 130.

- that Haier continued to distribute the infringing Green Dam software even after having knowledge of the infringement.  FAC at para. 56, 61

FAYER GIPSON LLP
A LIMITED LIABILITY PARTNERSHIP

**D.    PLAINTIFF'S  REQUEST  FOR  JUDICIAL  NOTICE  THAT
CALIFORNIA  IS  KNOWN  TO  BE  THE  CENTER  OF  THE
UNITED STATES SOFTWARE INDUSTRY**

Plaintiff has also requested that the Court take judicial notice of the fact that
California is widely known for being the center of the United States' software
industry.  RJN at ¶ 18; see also Second Milburn Decl. at ¶ 4.

### III.    LAW

**A.    PLAINTIFF NEED ONLY MAKE A PRIMA FACIE SHOWING
OF  JURISDICTIONAL  FACTS  TO  DEFEAT  A  MOTION  TO
DISMISS FOR LACK OF PERSONAL JURISDICTION**

"[I]n  order  to  defeat  [Defendants']  motions  to  dismiss  for  lack  of  personal
jurisdiction,  at  this  stage,  Plaintiffs  only  needed  to  make,  through  their  pleadings  and
affidavits,  a  prima  facie  showing  of  the  jurisdictional  facts.  *Myers v. Bennett Law
Offices*, 238 F.3d 1068, 1071 (9th Cir. 2001).   As  the  Ninth  Circuit  has  held,
"Although  the  plaintiff  cannot  simply  rest  on  the  bare  allegations  of  its  complaint,
uncontroverted allegations in the complaint must be taken as true."  *Dole Food Co.,
Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002) (internal citations and quotations
omitted).    Moreover,  "Conflicts  between  parties  over  statements  contained  in
affidavits must be resolved in the plaintiff's favor."  *Id.*

**B.    GENERAL JURISDICTION**

A court may exercise general jurisdiction if the defendant has minimum
contacts with the forum state so that jurisdiction does not offend traditional notions of
fair play and substantial justice. Alternatively, if there is no minimum contact with
any one state sufficient to support forum specific jurisdiction,  a court may exercise
general jurisdiction for a defendant's "nationwide" contacts through Federal Rule of
Civil Procedure 4(k)(2).  As a District Court in California has explained:

The  federal  long-arm  statute  requires  simply  that  jurisdiction  comport

FAYER GIPSON LLP
A LIMITED LIABILITY PARTNERSHIP

FAYER GIPSON LLP
A LIMITED LIABILITY PARTNERSHIP

1  with due process. At its base, due process seeks to ensure that a
2  defendant is not haled into court for contacts that are random, fortuitous,
3  or attenuated. It places responsibility on defendant's own actions that
4  create a substantial connection with the forum. The Ninth Circuit's
5  flexible approach allows for a lesser showing of contacts if
6  considerations of reasonableness are met.

7  *Monster Cable Products, Inc. v. Euroflex S.R.L.*, 642 F. Supp. 2d 1001, 1009-10 (N.D.
8  Cal. 2009).   Applications with the USPTO to gain intellectual property protection
9  constitute substantial contact with the United States invoking the privileges and
10  benefits of U.S. law sufficient to require the applicant to submit to the jurisdiction of
11  U.S. courts. *Id.* (holding that the defendant was subject to personal jurisdiction based
12  on its application to the USPTO).

13  ### C.    SPECIFIC JURISDICTION

14  In order to have specific jurisdiction:

15  (1) The nonresident defendant must do some act or consummate some
16  transaction with the forum or perform some act by which he purposefully
17  avails himself of the privilege of conducting activities in the forum, thereby
18  invoking the benefits and protections of its laws; (2) the claim must be one
19  which arises out of or results from the defendant's forum-related activities;
20  and (3) exercise of jurisdiction must be reasonable.

21  *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010).

22  The first prong is satisfied by either "purposeful availment" or "purposeful
23  direction." *Id.* As this case is a tort case, the appropriate analysis is "purposeful
24  direction" analyzed under the Calder effects test. *Id.* The Ninth Circuit has
25  interpreted the effects test to require a showing that: (1) intentional actions (2)
26  expressly aimed at the forum state (3) causing harm which the defendant knows is
27  likely to be suffered in the forum state. *Id.*   "There is no requirement that the

28

10

1  defendant have any physical contacts with the forum." *Id*.

2  **D.  ALTERNATIVELY,  PLAINTIFF  HAS  A  RIGHT  TO**

3  **JURISDICITIONAL DISCOVERY**

4  In the event that the Court fails to find pleadings and facts sufficient to support

5  a finding of personal jurisdiction, the plaintiff has a right to take jurisdictional

6  discovery where discovery may demonstrate facts sufficient to constitute a basis for

7  jurisdiction. *Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d

8  1122, 1135 (9th Cir. 2003).  In such situations, it is an abuse of discretion to deny the

9  plaintiff from taking jurisdictional discovery. *See id*.

10  **IV.  ARGUMENT**

11  Haier has significant and systematic contacts with both California and the United

12  States.   Moreover, Haier is subject to specific jurisdiction because it specifically

13  targeted Plaintiff, a California company, by misappropriating and distributing

14  Plaintiff's CYBERsitter software.

15

16  **A.    HAIER IS SUBJECT TO GENERAL JURISDICTION**

17  **1.    HAIER HAS SUBSTANTIAL CONTACTS IN CALIFORNIA**

18  **AND IS SUBJECT TO JURISDICTION**

19  California has a long arm statute that is co-extensive with the requirements of

20  due process, so if due process concerns are met, this Court will have jurisdiction. *See*

21  Cal. Civ. Proc. Code § 410.10.  Therefore, this Court may exercise general jurisdiction

22  over Haier if Haier has minimum contacts with California and exercising jurisdiction

23  would comport with traditional notions of fair play and substantial justice.

24  *International Shoe Co. v. Washington*, 326 U.S. 310 (1945).  Here, Haier products are

25  sold within the Central District at such national retailers such as Walmart and Best

26  Buy. *See* RJN.  Haier, as sponsor of the NBA, markets to the fans of California's four

27  NBA teams and advertises during games televised in California. *See* RJN.   Finally,

28  according to its own website, Haier a design center in Los Angeles which one assumes

FAYER GIPSON LLP
A LIMITED LIABILITY PARTNERSHIP

designs the Haier products that are marketed and sold to the residents of California. *See* RJN.  Although Haier argues that its substantial business through its subsidiaries in California does not warrant the exercise of general jurisdiction, Haier ignores the fact that because it is Haier – not a subsidiary – that owns Haier's registered marks in the United States – all of the benefit of the goodwill that is accumulated by the presence of "Haier" products and advertising in California accrues to the benefit of Haier – the registered owner of the Haier marks – not a subsidiary.  Therefore, it is both fair and reasonable for this Court to exercise general jurisdiction over Haier.

## 2. HAIER HAS SUBSTANTIAL CONTACTS IN THE UNITED STATES AND IS SUBJECT TO JURISDICTION PURSUANT TO RULE 4(k)(2)

To the extent Haier claims that neither California nor any other state has jurisdiction over it, then the Court may exercise jurisdiction of Haier using the federal long-arm statute, which essentially allows the Court to aggregate the defendant's multiple contacts with the United States in order to assert jurisdiction.  There are three elements to federal long-arm jurisdiction:  1) the claim must be a federal claim, 2) no state must have jurisdiction over defendant, and 3) such long arm jurisdiction would comport with due process.  *See* Fed. Rule Civ. Proc. § 4(k)(2).

Plaintiff's second cause of action for unfair competition, which is based upon interpretation of underlying federal law of the Economic Espionage Act is sufficient to raise a federal question and confer subject matter jurisdiction to the court pursuant to 28 U.S.C. § 1338.  *See* FAC at ¶¶ 9; 65-76.   As a consequence, Plaintiff's claims necessarily arise under federal law for purposes of Rule 4(k)(2).  *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1413 (Fed. Cir. 2009), reh'g denied (Sept. 24, 2009).

As the *Bereskin* Court put it:

> In dealing with the second requirement of Rule 4(k)(2), the Fifth, Seventh, Ninth, Eleventh, and DC Circuits have adopted an approach that

FAYER GIPSON LLP
A LIMITED LIABILITY PARTNERSHIP

FAYER GIPSON LLP
A LIMITED LIABILITY PARTNERSHIP

1
2
3
4
5
6
7
8

places the burden on the defendant. *See Oldfield v. Pueblo De Bahia Lora*, S.A., 558 F.3d 1210, 1219 n. 22 (11th Cir.2009); *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 461 (9th Cir.2007); *Mwani v. bin Laden*, 417 F.3d 1, 11 (D.C.Cir.2005); *Adams v. Unione Mediterranea DI Sicurta*, 364 F.3d 646, 651 (5th Cir.2004); . . . .. Under that approach, a court is entitled to use Rule 4(k)(2) to determine whether it possesses personal jurisdiction over the defendant unless the defendant names a state in which the suit can proceed.

9
10
11

*Id*. Here, Haier has denied that either California or any any other state would have jurisdiction over it. *See generally* Cuimei Decl. If the Court takes Defendant Haier at face value, the second prong is satisfied.

12
13
14
15
16
17
18
19
20
21
22
23
24

The final prong of due process is satisfied because of Haier's aforementioned systematic, purposeful and continuous availment of United States intellectual property law protection through its registrations with the USPTO over the past 20 years. *See Monster Cable Products, Inc.*, 642 F. Supp. 2d at 1009-10 (holding that the defendant was subject to personal jurisdiction based on its application to the USPTO). There are at least four companies with the Haier name operating in the United States. *See* RJN. Moreover, Haier has advertised its products through its sponsorship of the NBA and television advertisements and sold its products nationwide through the nations largest retailers such as Walmart and Best Buy. *See generally* RJN. Haier's claim that it does not have substantial contacts in the United States, when all of the goodwill for its advertising necessarily accrues to its own benefit through its registered trademarks is simply not believable and flies in the face of Haier's own trademark registrations. *See* RJN.

25
26
27
28

**B.**   **HAIER IS SUBJECT TO SPECIFIC JURISDICTION THROUGH THE CALDER EFFECTS TEST**

**1.**   **DEVELOPER DEFENDANTS PURPOSEFULLY DIRECTED THEIR ACTIONS TOWARDS CALIFORNIA**

This case is indistinguishable from *Brayton Purcell LLP*, 606 F.3d 1124 (9th Cir. 2010).  In that case, a defendant law firm targeted plaintiff's law firm in Northern California by copying verbatim statements from plaintiff's website and using it them on defendant's website.  This was done in an attempt to siphon off business from a competitor.  *See id*.  Here, the facts are indistinguishable except that instead of law firms the parties are software developers and there co-conspirator computer manufacturers which distributed the pirated software.

Here, Plaintiff has introduced evidence that Jinhui maintained a website that targeted Chinese speaking California residents by including a "San Francisco" download channel where users could download Green Dam.  DiPasquale Decl. at ¶4.  Plaintiff has also introduced evidence that the stolen CYBERsitter code was stored on Jinhui's servers, which proving that Plaintiff was specifically targeted.  Milburn Decl. at ¶ 3.   Likewise, Haier similarly targeted Plaintiff.   The misappropriation and distribution of software code is an intentional act; it is by definition specifically targeted to the victim as it is impossible to steal software code without knowing whom you are stealing it from.

Plaintiff has both alleged and introduced evidence that Haier knew its conduct was hurting Plaintiff in California at least as early as August 2009.  Fayer Decl.  at ¶ 2-3,5; Ex. 2;6; FAC at ¶¶.  Indeed, Haier responded to Plaintiff's concerns by stating directing Plaintiff to  the PRC's Ministry of Industry and Information Technology, and to the Developer Defendants.  *Id*.  Haier's response amounted to an admission that it had indeed copied and distributed Green Dam Youth Escort, and by implication, infringing copies of the CYBERsitter code.

FAYER GIPSON LLP
A LIMITED LIABILITY PARTNERSHIP

FAYER GIPSON LLP
A LIMITED LIABILITY PARTNERSHIP

1    Moreover, by stealing CYBERsitter's code, Developer Defendants and their co-
2  conspirators, including Haier, were expressly aiming their conduct at California as
3  California is Plaintiff's principal place of business and the heart of the U.S. software
4  industry.  *See  Panavision Int'l, L.P. v. Toeppen*, 938 F. Supp. 616, 621-22 (C.D. Cal.
5  1996) aff'd, 141 F.3d 1316 (9th Cir. 1998) ("Toeppen has harmed Panavision, the
6  brunt of which Panavision has borne in California, which Toeppen knew would likely
7  happen because Panavision's principal place of business and the heart of the theatrical
8  motion picture and  television camera and photographic equipment business are in
9  California.") (affirmed by Ninth Circuit); *see also* Second Milburn Decl. at ¶ 4;
10  Plaintiff's RJN at ¶ 18.

### 2.    PLAINTIFF'S CLAIMS ARISE OUT OF HAIER'S FORUM RELATED ACTIVITIES

Solid Oak's claims arise out of Haier's forum related activities because its
forum related activities consisted of copying and distributing Plaintiff's
CYBERsitter's software.  But for Haier's willful infringement of Plaintiff's software,
there would be no need for Plaintiff to bring this suit in California.

### 3.    EXERCISE OF SPECIFIC JURISDICTION OVER DEVELOPER DEFENDANTS IS REASONABLE

The burden is on the defendant to demonstrate the unreasonableness of the
Court asserting jurisdiction.  *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d
1082, 1088 (9th Cir. 2000).  The Defendant must put on a "compelling case" that
asserting jurisdiction would be unreasonable.  *Id*.  The Ninth Circuit considers:

> (1) the extent of the defendant's purposeful interjection into the
> forum state, (2) the burden on the defendant in defending in the
> forum, (3) the extent of the conflict with the sovereignty of the
> defendant's state, (4) the forum state's interest in adjudicating the
> dispute, (5) the most efficient judicial resolution of the

15

controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum.

*Id*.

Here, the Developer Defendants and Haier purposefully interjected themselves into California by stealing a California resident's intellectual property. The Developer Defendants and Haier are able to mount a vigorous defense in California, as evidenced by their choice of lead counsel – all AmLaw 100 firms. RJN at ¶ 17; Ex. 21. This lawsuit should not conflict with the intellectual property laws of that the PRC has on the books and California has a significant interest in adjudicating the dispute in order to protect the rights of a California company. Finally, the current forum in California offers Plaintiff fast and effective relief, particularly in compared to the alternative – which is to litigate in the PRC which has already interjected itself in this lawsuit through extra-judicial means and made it clear that Plaintiff could not receive a fair trial in the PRC. *See* Docket Inst. No. 90 (Letter from the PRC Expressing Disapproval of this Court's Jurisdiction).

Under these circumstances and under Ninth Circuit precedent, where a California company was targeted through intellectual property theft (and in particular copyright infringement), this Court has specific jurisdiction over Haier. *Brayton Purcell LLP*, 606 F.3d 1124 (9th Cir. 2010).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

PLAINTIFF'S OPPOSITION TO HAIER'S MTD
FOR LACK OF PERSONAL JURISDICTION

FAYER GIPSON LLP
A LIMITED LIABILITY PARTNERSHIP

# V.  CONCLUSION

Plaintiff respectfully requests that Haier's motion to dismiss based on a lack of personal jurisdiction be denied.    Alternatively, should the Court find that personal jurisdiction is not supported by the pleadings and facts in evidence, Plaintiff respectfully requests that it be allowed to take jurisdictional discovery on Haier.

Respectfully submitted,

DATED: June 27, 2011                           FAYER GIPSON LLP
                                               Gregory A. Fayer
                                               Elliot B. Gipson


                                               By:_____/s/_____
                                                      Elliot B. Gipson
                                                      Attorneys for Plaintiff
                                                      CYBERSITTER, LLC D/B/A
                                                      SOLID OAK SOFTWARE

FAYER GIPSON LLP
A LIMITED LIABILITY PARTNERSHIP

PLAINTIFF'S OPPOSITION TO HAIER'S MTD
FOR LACK OF PERSONAL JURISDICTION