1  FAYER GIPSON LLP
   Gregory A. Fayer (SBN 232303)
2  GFayer@fayergipson.com
   Elliot B. Gipson (State Bar No. 234020)
3  EGipson@fayergipson.com
   2029 Century Park East, Suite 3535
4  Los Angeles, California 90067
   Telephone: 310.557.3550
5  Facsimile:  310.557.3559

6  Attorneys for Plaintiff
   CYBERsitter, LLC d/b/a Solid Oak Software
7

8              UNITED STATES DISTRICT COURT

9       CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

10

11 | CYBERsitter, LLC, a California limited liability company, d/b/a Solid Oak Software, | CASE NO. CV 10-00038 JST(SHx)
12 | | 
13 |            Plaintiff, | **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO HAIER'S MOTION TO DISMISS FOR FAILURE TO JOIN A NECESSARY INDISPENSABLE PARTY**
14 |    v. | 
15 | The People's Republic of China, a foreign state; Zhengzhou Jinhui Computer System Engineering Ltd., a Chinese corporation; Beijing Dazheng Human Language Technology Academy Ltd., a Chinese corporation; Sony Corporation, a Japanese corporation; Lenovo Group Limited, a Chinese corporation; Toshiba Corporation, a Japanese corporation; ACER Incorporated, a Taiwanese corporation; ASUSTeK Computer Inc., a Taiwanese corporation; BenQ Corporation, a Taiwanese corporation; Haier Group Corporation, a Chinese corporation; DOES 1-10, inclusive, |
16 | | Judge:  Hon. Josephine Staton Tucker
17 | | Ctrm:   10A
18 | | 
19 | | Hearing Date:        July 18, 2011
20 | | Hearing Time:        10:00 a.m.
21 | | 
22 |            Defendants. | Discovery Cutoff:   Dec. 2, 2011
   | | Pretrial Conference: Feb. 27, 2012
   | | Trial Date:          Mar. 27, 2012
23
24
25
26
27
28

# TABLE OF CONTENTS

**MEMORANDUM OF POINTS AND AUTHORITIES** ........................................... 1

I.      INTRODUCTION .................................................................................. 1

II.     LEGAL STANDARDS ........................................................................... 2

III.    ARGUMENT ......................................................................................... 3

    A.      The PRC Is Not Entitled to Sovereign Immunity and Has Already Been Properly Joined ................................................................. 3

        1.      Commercial Activity Exception ...................................... 5

        2.      Tortious Conduct Exception .......................................... 8

    B.      The PRC Is Not an Indispensible Party ...................................... 9

    C.      The Rule 19 Equitable Factors Do Not Militate in Favor of Dismissal of Plaintiff's Claims ............................................... 14

IV.     CONCLUSION .................................................................................. 19

1

# TABLE OF AUTHORITIES

2

**Federal Cases**

3

*Adler v. Fed. Republic of Nigeria,*
107 F.3d 720 (9th Cir. 1997)......................................................6

4

*Antares Aircraft, L.P. v. Fed. Republic of Nigeria,*
999 F.2d 33 (2d Cir. 1993)..........................................................6

5

6

*Argentine Republic v. Amerada Hess Shipping Corp.,*
488 U.S. 428 (1989).....................................................................9

7

8

*Asociacion de Reclamantes v. United Mexican States,*
735 F.2d 1517 (D.C. Cir. 1984)...................................................8

9

*Big Sky Network Canada, Ltd. v. Sichuan Provincial Gov't,*
553 F.3d 1183 (10th Cir. 2008)...................................................6

10

11

*Federal Ins. Co. v. Richard I. Rubin & Co.*
12 F.3d 1270 (3d Cir. 1993).........................................................7

12

*Joseph v. Office of Consulate Gen. of Nigeria,*
830 F.2d 1018 (9th Cir. 1987)..................................................4, 7

13

14

*Makah Indian Tribe v. Verity,*
910 F.2d 555 (9th Cir. 1990).......................................................3

15

*Milgard Tempering v. Selas Corp. of Am.,*
902 F.2d 703 (9th Cir. 1990)..............................................2, 3, 4

16

17

*Morris v. People's Republic of China,*
478 F. Supp. 2d 561 (S.D.N.Y. 2007).........................................6

18

*Northrop Corp. v. McDonnell Douglas Corp.,*
705 F.2d 1030 (9th Cir. 1983)...........................................9, 11, 15

19

20

*Olsen v. Government of Mexico,*
729 F.2d 641 (9th Cir. 1984).......................................................8

21

*Panavision Int'l, L.P. v. Toeppen,*
141 F.3d 1316 (9th Cir. 1988)..............................................5, 6, 7

22

23

*Pons v. People's Republic of China,*
666 F. Supp. 2d 406 (S.D.N.Y. 2009).........................................6

24

*Provident Tradesmens Bank & Trust Co. v. Patterson,*
390 U.S. 102, 88 S. Ct. 733, 19 L. Ed. 2d 936 (1968)...............15

25

26

*Republic of Argentina v. Weltover, Inc.,*
504 U.S. 607, 112 S. Ct. 2160 119 L. Ed. 2d 394 (1992).........4, 6

27

*Sun v. Taiwan,*
201 F.3d 1105 (9th Cir. 2000).....................................................4

28

ii

*United States v. Bowen,*
   172 F.3d 682 (9th Cir.1999)..................................................................11

*United States v. White,*
   893 F. Supp. 1423  (C.D. Cal. 1995) ..................................................2, 3

*Virtual Countries, Inc. v. Republic of South Africa,*
   300 F.3d 230 (2d Cir. 2002)...................................................................6

**Statutes**

28 U.S.C. § 1605 (a)(2)...........................................................................5

28 U.S.C. §§ 1330(a)-(b) .......................................................................10

**Rules**

Fed. R. Civ. P. 12(b) ................................................................................2

Fed. R. Civ. P. 19(a) ..............................................................9, 10, 11, 12

Fed. R. Civ. P. 19(b) ................................................12, 14, 15, 19

Fed. R. Civ. P. 45 ..................................................................................16

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO HAIER MOTION
TO DISMISS FOR FAILURE TO JOIN INDISPENSABLE PARTY

FAYER GIPSON LLP

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff CYBERsitter, LLC d/b/a Solid Oak Software ("CYBERsitter" or "Plaintiff") hereby submits this memorandum of points and authorities in opposition to the Motion to Dismiss for Failure to Join a Necessary Indispensable Party ("Motion") of Haier Group Corporation ("Haier") and the joinder of defendant Beijing Dazheng Human Language Technology Academy Ltd. In Haier's Motion.

## I.    INTRODUCTION

In order for Haier to prevail on its motion, it must show: (1) that the PRC is entitled to sovereign immunity in this action and thus cannot be joined; (2) that the presence of the PRC is indispensable for a decision on the claims against Haier in this action; and (3) that the Rule 19 equitable factors that courts must consider in determining whether an action should be dismissed for failure to join an indispensable party militate so heavily in favor of dismissal as to make dismissal – an extreme remedy – the appropriate course here.  Haier cannot even come close to clearing these hurdles.  Haier's motion misstates the facts and the claims at issue in this case and simply ignores the applicable legal standards under Rule 19 of the Federal Rules of Civil Procedure.  Haier's motion should be denied.

Haier spends the majority of its brief arguing that the Court wrongly determined that the PRC was presumptively not entitled to sovereign immunity in this suit, as was implicit in the Court's dismissal of its Order to Show Cause as to why the PRC is not immune from this suit under FSIA ("OSC") and its subsequent entry of default as to the PRC.  Dkt. #102 (Dismissal of OSC); Dkt. #103 (Order Entering Default of PRC). For the reasons stated in Plaintiff's prior briefing on this issue, and as explained more fully below, Haier's arguments that the Court was wrong in its preliminary determination that the PRC is not immune from this suit under FSIA are misplaced. Haier's arguments mostly just rehash issues already considered by the Court in the context of Plaintiff's Motion for Entry of Default as to the PRC.  As explained below,

1   the Court's prior determination that the PRC is not entitled to sovereign immunity –

2   which follows "by necessary implication" from its prior orders – is law of the case and

3   should not be disturbed.  *See Milgard Tempering v. Selas Corp. of Am.*, 902 F.2d 703,

4   715 (9th Cir. 1990) (internal quotations omitted).

5        But even if the PRC were entitled to sovereign immunity, Haier falls far short

6   of making the necessary showing on the other two issues that it must establish in order

7   to be entitled to relief.  Indeed, Haier's brief barely even addresses the other two

8   matters.  With respect to (2), Haier simply states in conclusory fashion that the PRC is

9   an indispensable party because it is "expected" to have "documents and testimony" in

10  its possession that "may" be relevant to Haier's claims or defenses.  Haier

11  Memorandum in Support of Motion to Dismiss for Lack of Personal Jurisdiction and

12  Failure to Join a Necessary Indispensable Party ("Haier Bf.") at 1, 9.  As explained

13  below, this is patently insufficient to meet the requirements of Rule 19.  With respect

14  to (3), Haier never even discusses the Rule 19 equitable factors that courts must

15  consider in determining whether a plaintiff's claims should be dismissed for an

16  alleged failure to join an indispensable party – rather, Haier merely asserts (again in

17  conclusory fashion) that it would be prejudiced by having the claims against it

18  litigated without the unidentified "documents and testimony" allegedly in the

19  possession of the PRC.  Haier does not discuss any of the other Rule 19 factors.  This

20  is manifestly insufficient to meet its burden of showing that Plaintiff's claims should

21  be dismissed due to the PRC's refusal to appear.

22       For these reasons and as explained more fully below, Haier's motion should be

23  denied.

24  **II.    LEGAL STANDARDS**

25       Rule 12(b)(7) provides a vehicle "to challenge ... the complaint's failure to join

26  'persons whose presence is needed for a just adjudication' under FRCP 19."  *United*

27  *States v. White*, 893 F. Supp. 1423, 1428 (C.D. Cal. 1995) (citations omitted).  "To

28

1   determine whether a party is indispensable, courts consider whether a valid reason
2   exists for joining the absent party, whether joinder is feasible, and whether it is fair to
3   proceed if the party cannot be joined." *Id.*

4          Under Rule 19, "a court must undertake a two-part analysis: it must first
5   determine if an absent party is 'necessary' to the suit" and, if so, "the court must
6   determine whether the party is 'indispensable' so that in 'equity and good conscience'
7   the suit should be dismissed." *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th
8   Cir. 1990) (citations omitted).  "The inquiry is a practical one and fact specific, and is
9   designed to avoid the harsh results of rigid application." *Id.* (citation omitted).  "The
10   moving party has the burden of persuasion in arguing for dismissal." *Id.* (citation
11   omitted).

12   **III.    ARGUMENT**

13          **A.      The PRC Is Not Entitled to Sovereign Immunity and Has Already**
14                    **Been Properly Joined**

15          A fundamental premise of Haier's motion is that the PRC cannot be joined
16   because it is immune from suit under the FSIA.  This premise is incorrect and has
17   already been implicitly rejected by this Court in dismissing its Order to Show Cause
18   as to why the PRC is not immune from this suit under FSIA and entering the PRC's
19   default.

20          As an initial matter, this issue has already been decided by the Court and should
21   not be disturbed under law of the case doctrine.  Under law of the case doctrine "a
22   court is generally precluded from reconsidering an issue previously decided by the
23   same court ... in the identical case ..." where the issue was "decided explicitly or by
24   necessary implication in [the] previous disposition." *Milgard*, 902 F.2d at 715
25   (internal quotations omitted).  Reconsideration of an issue previously decided is
26   appropriate "in only three instances: (1) the first decision was clearly erroneous and
27   would result in manifest injustice; (2) an intervening change in the law has occurred;
28

1  or (3) the evidence on remand was substantially different." *Id.*  That the PRC is not

2  entitled to immunity under the FSIA was decided by this Court "by necessary

3  implication" in its dismissal of its Order to Show Cause as to why the PRC is not

4  immune from this suit under FSIA and its entry of default as to the PRC.  None of the

5  circumstances conditions for reconsideration applies here.  As a result, the Court's

6  prior determination that the PRC is not entitled to immunity (a necessary implication

7  of its prior orders) should not be disturbed.

8       Even setting aside law of the case barriers, as explained at length in Plaintiff's

9  brief in response to the Court's OSC, the PRC is not immune from suit under the

10  FSIA, because it falls under at least two statutory exceptions to immunity: the

11  "commercial activity" exception and the "tortious conduct" exception.  Notably, Haier

12  makes no serious attempt to distinguish the central cases discussed at length in

13  Plaintiff's response to the Court's OSC – cases that, unlike Haier's cases, are directly

14  on point and factually analogous to this case. *See Joseph v. Office of Consulate Gen.*

15  *of Nigeria*, 830 F.2d 1018, 1022-24 (9th Cir. 1987) (cited at pp. 19 and 21 of Haier's

16  brief, noting Plaintiff's "heavy reliance" on *Joseph*, but failing to distinguish

17  Plaintiff's application of the case); *Republic of Argentina v. Weltover, Inc.*, 504 U.S.

18  607, 616, 112 S. Ct. 2160, 2167, 119 L. Ed. 2d 394 (1992) (cited at Haier Bf. 15-16,

19  20, failing to distinguish the case except to attempt to create its own dicta out of whole

20  cloth, speculating irrelevantly that "if the place of payment in *Weltover* had been

21  outside the United States … 'direct effects' jurisdiction would not have existed…");

22  *Sun v. Taiwan*, 201 F.3d 1105, 1108 (9th Cir. 2000) (not cited or distinguished in

23  Haier's brief).  Plaintiff will not re-hash the arguments in its Response to the OSC

24  here, but Plaintiff urges the Court to consider those cases and Plaintiff's prior briefing

25  on this issue in the event that the Court has any doubt about the continuing validity of

26  its preliminary determination that the PRC is not entitled to immunity here.  Below,

27  Plaintiff confines itself to addressing the major issues raised in Haier's moving papers.

28

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO HAIER MOTION
TO DISMISS FOR FAILURE TO JOIN INDISPENSABLE PARTY
FAYER GIPSON LLP

1              1.      Commercial Activity Exception

2      Section 1605(a)(2) of the FSIA provides:

3              A foreign state shall not be immune from the jurisdiction of courts of the

4              United States or of the States in any case in which the action is based …

5              upon an act outside the territory of the United States in connection with a

6              commercial activity of the foreign state elsewhere and that act causes a

7              direct effect in the United States.

8      28 U.S.C. § 1605 (a)(2).  As demonstrated in Plaintiff's Memorandum in Response to

9      the Court's OSC, the PRC's acts alleged in this suit fall squarely within the

10     "commercial activities" exception of Section 1605(a)(2).  Haier nevertheless advances

11     two arguments that the exception does not apply.

12            First, Haier argues that "indirect financial effects" in the United States standing

13     alone may in some circumstances be insufficient to meet the "direct effect" prong of

14     the FSIA "commercial activities" exception.  *See* Haier Bf. at 16.  This argument is

15     unavailing.  As stated in Plaintiff's prior briefing, the Ninth Circuit has held that in

16     cases involving theft of intellectual property, the locus of the injury is where the

17     holder of the IP resides – and where the IP holder is a company, the injury occurs at

18     the company's principal place of business.  *Panavision Int'l, L.P. v. Toeppen*, 141

19     F.3d 1316, 1322 n.2 (9th Cir. 1988).  What the *Panavision* Court refers to as the

20     "brunt of the injury" to Plaintiff – which includes not merely financial injury, but

21     injury to Plaintiff's intellectual property interests and other potentially unquantifiable

22     injury – is "legally significant" and is clearly sufficient to meet the direct effects

23     prong.  Moreover, the "financial effects" on Plaintiff arising from the PRC's activities

24     are neither indirect nor remote, as in Haier's cases, but are the direct result of the

25     PRC's unlawful conduct complained of herein.[1]

26

27     _____
       [1] The vast majority of cases cited by Haier are readily distinguishable because
       they are contract cases that merely establish that in contract cases courts should
28     consider where the payment is to be made and that nonpayment of funds contractually

1    Furthermore, Plaintiff has not merely alleged injury occurring in the United

2    States, Plaintiff has alleged that the PRC and software developers directly targeted end

3    users in the United States by including links on the official Green Dam website

4    tailored to end users in New York and San Francisco.  Complaint ¶ 34.  The

5    Complaint further alleges that hundreds of downloads occurred in the United States as

6    a result of the PRC and software developers' efforts.  *Id.* ¶ 46.  The "direct effects"

7    prong of the commercial activities exception has clearly been met, as the Court

8    correctly determined in entering the PRC's default.

9        Haier's attempt to distinguish *Panavision* (Haier Bf. at 17 n.3) is unavailing.

10   After quoting *Panavision*'s language regarding the location of "the brunt of the harm"

11   in IP cases, Haier inexplicably re-characterizes *Panavision* as dealing merely with "an

12

13   obligated to be paid *abroad* is not in itself sufficient to establish a "direct effect" in the
     United States. *See Republic of Argentina v. Weltover, Inc.,* 504 U.S. 607, 608, 619
14   (1992) (expressly rejecting the contention that the "direct effect" requirement could
     not be satisfied where plaintiffs are all foreign corporations with no ties to the United
15   States, and finding that the direct effects requirement was satisfied where New York
     was the place of performance for Argentina's contractual obligations); *Adler v. Fed.*
16   *Republic of Nigeria,* 107 F.3d 720, 726-27 (9th Cir. 1997) (finding a contractual
     obligation to make payment to a U.S. bank gave rise to a direct effect in the United
17   States upon nonpayment); *Big Sky Network Canada, Ltd. v. Sichuan Provincial Gov't,*
     553 F.3d 1183, 1191 (10th Cir. 2008) (holding that where a defendant is obligated to
18   make payments abroad, the failure to make those payments is a "direct effect" that
     occurs abroad, not in the U.S.); *Morris v. People's Republic of China,* 478 F. Supp. 2d
19   561, 570 (S.D.N.Y. 2007) (finding that "plaintiff has presented no evidence showing
     any loss in this case," but even assuming a loss, the purchase of bonds as nostalgia
20   collectables "over sixty years after the PRC's predecessor government defaulted in
     1939 and forty years after the bonds matured" did not meet the direct effects prong
21   and finding that "plaintiffs act of purchasing the bonds many decades after default
     likewise is an intervening act breaking the causal relationship"); *Pons v. People's*
22   *Republic of China,* 666 F. Supp. 2d 406, 413 (S.D.N.Y. 2009) (holding that where
     payment on a contract can be and is demanded in the United States, non-payment
23   constitutes a direct effect in the United States).  This is, of course, not a contract case.
     Haier's tort cases are also inapposite. *See Virtual Countries, Inc. v. Republic of South*
24   *Africa,* 300 F.3d 230, 240 (2d Cir. 2002) (holding merely that a foreign company's
     press release stating its intent to use the domain name southafrica.com did not have a
25   direct effect in the United States merely because of the incidental and speculative
     effect of the press release on U.S. investors); *Antares Aircraft, L.P. v. Fed. Republic of*
26   *Nigeria,* 999 F.2d 33, 36 (2d Cir. 1993) (stating that a tort committed abroad "may
     have had sufficient contacts with the United States to establish the requisite 'direct
27   effect' in this country," but finding that "the sole act connected to the United States in
     the instant matter, the drawing of a check on a bank in New York, was entirely
28   fortuitous and entirely unrelated to the liability of the appellees").

1   indirect effect" involving only financial harm.  *Id.*  Haier then twists the *Panavision*

2   Court's commonsense suggestion that simply posting something on a website cannot

3   subject a party to jurisdiction everywhere, into a blanket exculpation of anyone who

4   posts anything on the Internet – even a party, such as the PRC, that *directly targets*

5   *users in a specific jurisdiction* on its website – suggesting that "[a] contrary result

6   would create jurisdiction all over the world for causes based on material available on

7   the Internet."  *Id.*  Plaintiff does not claim that the PRC is subject to jurisdiction "all

8   over the world," but it is subject to jurisdiction in the United States where it has

9   directly targeted and solicited users.

10          Second, Haier argues that the "in connection with" condition of the commercial

11  activity exception has not been met.  This argument is tortured and cannot be squared

12  with controlling caselaw.  Significantly, Haier does not dispute that the PRC has

13  engaged in "commercial activity" within the meaning of Section 1605(a)(2).  *See*

14  *Joseph*, 830 F.2d at 1022-24.  It nevertheless argues that the "connection" between

15  Plaintiff's allegations and the PRC's commercial activities is not tight enough to fall

16  within the FSIA commercial activities exception.

17          This case is unlike the lone case relied upon by Haier, *Federal Ins. Co. v.*

18  *Richard I. Rubin & Co.* 12 F.3d 1270 (3d Cir. 1993), in which the Third Circuit found

19  no connection at all between the plaintiff's allegations and the commercial activity of

20  the instrumentalities of the foreign sovereign.  *Id.* at 1291 (holding merely that the

21  commercial act of registering the instrumentalities of the foreign government in the

22  United States had an inadequate connection with plaintiffs' tort claims, which arose

23  from a fire that destroyed a building that was owned in part by a subsidiary of the

24  instrumentality of the foreign sovereign).  Here, Plaintiff alleges that the PRC played a

25  direct role in the theft, licensing and distribution of Plaintiff's intellectual property, in

26  conjunction with the government-backed software developers.  Furthermore,

27  Plaintiff's allegations are of illegal copying and distribution which took place pursuant

28

1  to the master one-year distribution license between the PRC and defendant Jinhui and

2  Dazheng, and pursuant to sub-distribution licenses between those parties and the

3  defendant computer manufacturers (including Haier).  These allegations are not

4  merely "connected" with the PRC's "commercial activities" – including the copying,

5  distribution, licensing, and sub-licensing of the illegal Green Dam program – the acts

6  alleged are one and the same as the commercial activities at issue (and the licensing

7  agreements between the PRC and other parties were the asserted legal basis for the

8  copying and distribution at issue here).

9              2.       Tortious Conduct Exception

10      Haier asserts that the "tortious conduct" exception is inapplicable here because

11  it applies exclusively to tortious conduct occurring in the United States.  Haier Bf. at

12  20-21.  Here, Plaintiff does in fact allege that the PRC committed acts in the United

13  States by specifically targeting users in the United States on the official Green Dam

14  website.  Complaint ¶ 34, 46.  Contrary to Haier's contention, the cases cited by Haier

15  do not stand for the proposition that the tortious conduct exception requires that all

16  tortious conduct occur wholly within the United States, but only that the tortious

17  conduct alleged must constitute a single tort that occurs at least in part in the United

18  States.  *See Olsen v. Government of Mexico*, 729 F.2d 641, 646 (9th Cir. 1984)

19  (holding that the plaintiffs adequately alleged conduct that constituted a single tort

20  (negligent piloting of an aircraft) that brought the case within the tortious conduct

21  exception).  Indeed, the Ninth Circuit in *Olsen* expressly stated that "requiring every

22  aspect of the tortious conduct to occur in the United States . . . would encourage

23  foreign states to allege that some tortious conduct occurred outside the United States.

24  The foreign state would thus be able to establish immunity and diminish the rights of

25  injured persons seeking recovery.  Such a result contradicts the purpose of the FSIA."

26  *Id.*; *see also Asociacion de Reclamantes v. United Mexican States*, 735 F.2d 1517,

27  1524 (D.C. Cir. 1984) (stating "[i]t is not contended in the present case that *any* of

28

1   Mexico's acts that could conceivably be regarded as having been committed on

2   United States soil") (emphasis added); *cf. Argentine Republic v. Amerada Hess*

3   *Shipping Corp.*, 488 U.S. 428, 441 (1989) (holding only that Section 1605(a)(5) did

4   not apply to Liberian corporation's attempt to sue Argentinian government for

5   destruction of its oil tanker in international waters).

6        In short, the Court's preliminary determination that the PRC is not entitled to

7   immunity under FSIA for purposes of this suit was correct and there is nothing in

8   Haier's brief that casts doubt on this fact.  This being so, the PRC is not incapable of

9   joinder in this action, as Haier wrongly asserts.  Indeed, the PRC has already been

10  joined as a party in this action, and there is nothing preventing the PRC from

11  participating in the proceedings.

12       **B.    The PRC Is Not an Indispensable Party**

13       Even if the PRC were entitled to sovereign immunity, in order for Haier to be

14  entitled to relief under Rule 19, Haier must further establish both that the PRC is an

15  indispensable party *and* that the Rule 19 equitable factors militate heavily in favor of

16  dismissal.  *See* Fed. R. Civ. P. 19(a), (b); *Northrop Corp. v. McDonnell Douglas*

17  *Corp.*, 705 F.2d 1030, 1042 (9th Cir. 1983) ("Joinder under Fed. R. Civ. P. 19 entails

18  a practical two-step inquiry.  First, a court must determine whether an absent party

19  should be joined as a 'necessary party' under subsection (a). Second, if the court

20  concludes that the nonparty is necessary and cannot be joined for practical or

21  jurisdictional reasons, it must then determine under subsection (b) whether in "equity

22  and good conscience" the action should be dismissed because the nonparty is

23  "indispensable.").  Haier has failed to make the requisite showing on either of these

24  issues.

25       With respect to the first, the claims against Haier are self-standing and the PRC

26  is not an indispensable party with respect to any of the claims against Haier or any of

27  the other Defendants in this lawsuit.  Haier's memorandum barely touches upon this

28

1   issue and fails to even cite the standards set forth in Rule 19 (presumably because it

2   cannot meet them).  What Haier does say on this issue blatantly misstates the relevant

3   facts and law, as well as the nature of Plaintiff's claims against Haier.

4          To begin with, in order to fall within the Rule 19 definition of "required party"

5   – *i.e.*, a "person required to be joined if feasible" – a party must be one "who is

6   subject to service of process and whose joinder will not deprive the court of subject-

7   matter jurisdiction."  Fed. R. Civ. P. 19(a) (1).  The PRC is subject to service of

8   process (indeed, the PRC has been served and has failed to respond).  However, Haier

9   argues throughout its brief that joinder of the PRC would deprive the Court of subject

10  matter jurisdiction.  *See, e.g.*, Haier Bf. at 11 (stating, "[t]he court has subject matter

11  jurisdiction and personal jurisdiction only if the foreign state lacks immunity.  28

12  U.S.C. §§ 1330(a)-(b).  Thus, if a foreign state is immune because the claim brought

13  against it does not fit within one of the FSIA's specified exceptions to immunity, the

14  court will lack both subject matter jurisdiction and personal jurisdiction, and must

15  dismiss the case.").  Haier misconstrues the import of the FSIA provisions it cites –

16  the immunity of a foreign state deprives a court of subject matter jurisdiction only

17  with respect to the foreign state, not as to the other parties, and does not require the

18  court to "dismiss the case," as Haier wrongly states.  But taking Haier's own argument

19  at face value, joinder of the PRC would deprive the Court of subject matter

20  jurisdiction.  If that is so, then the PRC cannot be a "required party" under Rule 19

21  because its joinder would destroy subject matter jurisdiction.  Thus, by Haier's own

22  arguments, Rule 19 is inapplicable and Haier's motion fails on its own terms.

23         If, however, Haier is wrong and the PRC is both "subject to service of process"

24  and its "joinder will not deprive the court of subject-matter jurisdiction," then in order

25  to qualify as a "person required to be joined if feasible" one of the following two

26  criteria must be met, either:

27         (A) in that person's absence, the court cannot accord complete relief among

28

1   existing parties; or

2   (B) that person claims an interest relating to the subject of the action and is so

3   situated that disposing of the action in the person's absence may:

4       (i) as a practical matter impair or impede the person's ability to protect

5       the interest; or

6       (ii) leave an existing party subject to a substantial risk of incurring

7       double, multiple, or otherwise inconsistent obligations because of the

8       interest.

9   Fed. R. Civ. P. 19(a) (1)(A), (B).  The Ninth Circuit has stated that "a party is

10   'necessary' [under Rule 19(a)] in two circumstances:  (1) when complete relief is not

11   possible without the absent party's presence, or (2) when the absent party claims a

12   legally protected interest in the action."  *United States v. Bowen*, 172 F.3d 682, 688

13   (9th Cir.1999).

14       Here, the PRC has not claimed an interest in these proceedings.  Rather, the

15   PRC has been served pursuant to the procedures provided under the FSIA and has

16   defaulted in this action.  Under these circumstances, the Ninth Circuit has stated that

17   the Court need not proceed further with the analysis because "[w]here a party is aware

18   of an action and chooses not to claim an interest, the district court does not err by

19   holding that joinder was 'unnecessary.'"  *Id.* at 689.  Joinder under Rule 19 is

20   "contingent ... upon an initial requirement that the absent party *claim* a legally

21   protected interest relating to the subject matter of the action."  *Northrop*, 705 F.2d at

22   1043 (emphasis added).  Because the PRC has been joined and has defaulted in this

23   action, refusing to participate, the Court should deem the PRC not a required party for

24   this reason alone.[2]

25       If for any reason the Court chooses to continue with the analysis, because Rule

26

27       [2] Nor is there any assertion (must less a "substantial risk") that the absence of
the PRC would expose any existing party to double, multiple or inconsistent liability

28   because of the PRC's interest (and no such interest has been asserted).

1   19 (a)(1)(B) is not applicable, the PRC could, at most, be deemed a "required party"

2   if, in its absence, "the court cannot accord complete relief among existing parties."

3   Fed. R. Civ. P. 19(a) (1)(A).  Haier has not even begun to explain why "complete

4   relief among existing parties" could not be accorded in the PRC's absence.  Haier

5   does claim that it would be "prejudiced" by the PRC's absence due to lack of access to

6   unidentified "documents and testimony" allegedly in possession of the PRC.  But even

7   if true, this does not speak to the narrower and different issue of whether "complete

8   relief among existing parties" could be accorded in the PRC's absence – it goes at

9   most to the equitable analysis under Rule 19(b) that is required only if it is determined

10  under Rule 19(a) that there is in fact a "required party" that cannot feasibly be joined.

11       Here, the claims against Haier stand on their own and do not require the

12  participation of the PRC in order to accord "complete relief."  All of Plaintiff's claims

13  against Haier stem from Haier's own copying and distribution of the illegal Green

14  Dam program – not that of the PRC or of any of the other parties herein.[3]  As alleged

15  in the Complaint, Haier, like the other defendant computer manufacturers named

16  herein, persisted in its copying and distribution of the Green Dam program long after

17  Plaintiff had given Haier notice that the heart of the Green Dam program had been

18  stolen from Plaintiff's software program and that any copying or distribution of the

19  Green Dam program by Haier was legally actionable.  *See, e.g.*, Complaint ¶ 56.[4]

20

21       [3] While Plaintiff alleges joint and several liability amongst the Defendants for
their tortious conduct, the advisory committee notes to Rule 19 make clear that joint
22  and several tortfeasors are not necessary parties, but permissive parties, and Rule 19 is
inapplicable to them: "It should be noted particularly, however, that the description is
23  not at variance with the settled authorities holding that a tortfeasor with the usual
'joint-and-several' liability is merely a permissive party to an action against another
24  with like liability.  Joinder of these tortfeasors continues to be regulated by Rule 20;
compare Rule 14 on third-party practice."  Fed. R. Civ. P. 19 (1966 adv. cmt. note)
25  (citations omitted).
      [4] As stated in the Complaint, Plaintiff did not merely notify Haier of the illegal
26  nature of the Green Dam program, it disclosed to Haier the scientific reports that had
independently discovered the copying at issue and provided Haier with copies of the
27  "smoking gun" files (the files inadvertently copied into the Green Dam program
which expressly refer to "CYBERsitter" and whose sole purpose is to provide
28  information to CYBERsitter customers) that definitively demonstrate the copying at

12

1   Haier is responsible for its own copying and distribution of the illegal Green Dam

2   program regardless of the PRC's actions.  There is thus no reason why "complete

3   relief" cannot be accorded as between Plaintiff and Haier (or any of the other

4   Defendants) without the PRC's participation.  Haier's motion thus fails.

5          Further compounding these fatal errors, the fundamental premise of Haier's

6   argument is false: namely, its contention that "[Haier's] alleged involvement with any

7   aspect of the underlying facts of this suit was merely following the mandate of the

8   PRC."  Haier Bf. at 1; *see also id.* at 9 (same); *cf. id.* at 2 (stating that "[Haier] fully

9   expects the PRC to confirm that disobeying the PRC issued mandate was not an

10  option for [Haier]").  Haier's assertion is both wrong and blatantly mischaracterizes

11  the allegations in the Complaint.  As clearly stated in the Complaint, *the PRC's Green*

12  *Dam Mandate never went into effect.*  Complaint ¶ 38.  The mandate was withdrawn

13  prior to its implementation under pressure from international human rights

14  organizations and a coalition of governments, including the U.S. government.  *Id.*

15  Thus, *none* of the acts alleged against Haier in this suit was taken pursuant to the PRC

16  Mandate.  Haier is correct that "disobeying the PRC issued mandate was not an

17  option," but only because a mandate that never takes effect can neither be obeyed nor

18  disobeyed.  But by the same token, reliance upon a mandate that was never

19  implemented cannot provide an exculpatory basis for Haier's own wrongful actions.

20         It is thus disingenuous at best for Haier to argue that all of its conduct at issue

21  here was required (or excused) by the PRC's Mandate.  In fact, none of it was.

22  Moreover, as alleged in the Complaint, Haier – along with each of the other

23  defendants herein – continued to distribute the illegal product long after the PRC's

24  mandate was withdrawn.  *See, e.g.*, Complaint ¶ 76.  The PRC cannot be used as a

25  scapegoat for Haier's own wrongful conduct and nothing about the PRC's relation to

26  Haier's own wrongful acts makes it such that "complete relief" cannot be accorded as

27

28  issue.

13

1   between Plaintiff and Haier in absence of participation by the PRC.

2        In sum, there is no basis to conclude that "complete relief" cannot be accorded

3   as between Plaintiff and Haier absent participation of the PRC – and Haier has not

4   even attempted to meet its burden of explaining why complete relief could not be so-

5   accorded.  Because the PRC is not an indispensable party with respect to any of the

6   claims against Haier (or the other Defendants) at issue in this lawsuit, Haier's motion

7   should be denied.

8       **C.**    **The Rule 19 Equitable Factors Do Not Militate in Favor of Dismissal**

9             **of Plaintiff's Claims**

10       One important purpose of the modern amendments to Rule 19 was to make

11  clear that "the absence from the lawsuit of a person who was 'indispensable' or 'who

12  ought to be a party'" does not "deprive[] the court of the power to adjudicate as

13  between the parties already joined." Fed. R. Civ. P. 19 (1966 adv. cmt. note).  Rule

14  19(b) states that, in the event that the Court concludes that "a person who is required if

15  feasible cannot be joined, the court must determine whether, in equity and good

16  conscience, the action should proceed among the existing parties or should be

17  dismissed." Fed. R. Civ. P. 19(b) Among the factors that the Court should consider

18  are:

19      (1) the extent to which a judgment rendered in the person's absence might

20      prejudice that person or the existing parties;

21      (2) the extent to which any prejudice could be lessened or avoided by:

22          (A) protective provisions in the judgment;

23          (B) shaping the relief; or

24          (C) other measures;

25      (3) whether a judgment rendered in the person's absence would be adequate;

26      and

27      (4) whether the plaintiff would have an adequate remedy if the action were

28

1     dismissed for nonjoinder.

2     *Id.*; *see also Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 109,

3     88 S. Ct. 733, 19 L. Ed. 2d 936 (1968) (stating that "Rule 19(b) suggests four

4     'interests' that must be examined in each case to determine whether, in equity and

5     good conscience, the court should proceed without a party whose absence from the

6     litigation is compelled."); *Northrop*, 705 F.2d at 1042.

7         As stated above, Haier does not address any of the equitable factors in its brief

8     apart from making conclusory statements about prejudice to itself.[5]  Such assertions,

9     even if true (which they are not), are manifestly insufficient to make the necessary

10    showing under Rule 19.  As explained below, each of the Rule 19(b) factors militates

11    against dismissal and "equity and good conscience" certainly do not militate in favor

12    of dismissal of Plaintiff's claims due to the PRC's refusal to appear.

13        With respect to (1), the advisory committee notes on Rule 19 make clear that

14    the primary consideration under subsection (b)(1) is for the Court to weigh and

15    consider prejudice *to the absentee.*  Fed. R. Civ. P. 19 (1966 adv. cmt. note) (stating

16    "[t]he first factor brings in a consideration of what a judgment in the action would

17    mean to the absentee.").  Because any conceivable prejudice to the PRC here is the

18    result of its own failure and refusal to participate in this litigation after being served

19    with process, this equitable factor weighs against dismissal.  The committee also says

20    that the possible "collateral consequences" of non-joinder upon the parties already

21    joined are "also to be appraised." *Id.*  However, the *only* consideration mentioned by

22    the committee in this regard is for the Court to ask "[w]ould any party be exposed to a

23    fresh action by the absentee, and if so, how serious is the threat?" *Id.*  Here, Haier

24    claims no threat of a fresh action against it by the PRC.

25        The only prejudice that Haier claims stemming from the absence of the PRC is

26

27    ――――――――
      [5] This fact alone merits denial of Haier's motion.  Haier's moving papers do not
28    address any equitable factors other than prejudice to itself, and it would be improper
      for it to now put in new evidence and arguments in the context of a reply.

15

1   its vague suggestion that the PRC is "expected" to have "documents and testimonial
2   evidence" in its possession that Haier believes to be relevant somehow to the claims
3   against it.  Haier Bf. at 1, 9.  Haier never gives any indication what those documents
4   and testimony might be, what information they might contain, or how this information
5   might "prove or disprove, Plaintiff's allegations." *Id.*

6       Moreover, neither Rule 19 nor the committee notes discuss or contemplate a
7   court's consideration of prejudice deriving from an alleged *lack of access to evidence*
8   purportedly in the possession of the party to be joined.  The analysis under the Rule
9   19(b) factors concerns only *the nature of the claims and relief* at issue – *i.e.*, whether
10  complete relief could be accorded to the plaintiff, and whether other parties would
11  face duplicative claims or be subjected to duplicative judgments if the party is not
12  joined.

13      Indeed, the Federal Rules provide independent procedures for taking discovery
14  from third parties that may have evidence bearing on the claims between the parties to
15  the action.  *See, e.g.*, Fed. R. Civ. P. 45.  Haier's suggestion that if a third party *merely*
16  *possesses potentially relevant evidence* its joinder is required by Rule 19, is contrary
17  to common sense and to the standards set forth in Rule 19.  In fact, it is not the
18  exception but the rule in civil litigation that there are third parties (in most cases many
19  of them) that may have potentially relevant evidence bearing on the claims at issue.
20  *Clearly, the mere possession of potentially relevant evidence by a third party does not*
21  *and cannot make that party an indispensable party under Rule 19.*  To hold that it
22  does would result in the absurdity that a very large number of third parties –
23  potentially tens or hundreds of parties, depending on the suit – would be required to
24  be dragged into every federal civil action pursuant to Rule 19.  This cannot be the
25  case.  Assuming it is not, the kind of evidentiary prejudice that Haier complains of
26  here cannot be the kind of prejudice that is cognizable under Rule 19.

27      Haier's assertions of prejudice, like its argument that the PRC is an

28

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO HAIER MOTION
TO DISMISS FOR FAILURE TO JOIN INDISPENSABLE PARTY
FAYER GIPSON LLP

1    indispensable party, are also premised on a fundamental mischaracterization of

2    Plaintiff's allegations against Haier.  Based on the false premise that all of Haier's

3    actions were "merely following the mandate of the PRC" (Haier Bf. at 1), Haier

4    argues that it may be prejudiced if the PRC is not present to confirm that "disobeying

5    the PRC issued mandate was not an option for [Haier]" because the PRC's

6    confirmation "may be relevant to the defense of Plaintiff's Fourth Claim against

7    [Haier] under PRC's Copyright Laws."  *Id.* at 2 (stating that "[Haier] fully expects the

8    PRC to confirm that disobeying the PRC issued mandate was not an option for

9    [Haier]").  Even if the PRC were to provide the hoped for confirmation, it would have

10   no bearing upon the claims against Haier because, as explained above, the Green Dam

11   Mandate never took effect and thus none of the copying or distribution alleged herein

12   was required by the PRC's Green Dam Mandate.  Moreover, as stated above, there are

13   procedures for obtaining this information in third party discovery if Haier believes it

14   to be relevant to its defenses in this action.

15        Thus, the first Rule 19 factor – the only one that Haier even attempts to address

16   – does not militate in favor of dismissal.  Not only is Haier's asserted prejudice not the

17   type of prejudice contemplated by Rule 19, Haier's suggestions of prejudice are

18   wholly speculative, non-specific, unsupported by any evidence, and rely on a

19   mischaracterization of the allegations in the Complaint.

20        Factors (2), (3) and (4) likewise do not militate in favor of dismissal.  With

21   respect to (2) – "the extent to which any prejudice could be lessened or avoided by:

22   (A) protective provisions in the judgment; (B) shaping the relief; or (C) other

23   measures" – Haier's failure to identify any cognizable prejudice makes it difficult to

24   assess what protective measures might be taken to lessen or avoid such prejudice.  But

25   as stated above, the only prejudice that Haier has identified could be addressed by

26   using the third party discovery devices provided by the Federal Rules.

27        With respect to (3) – "whether a judgment rendered in the person's absence

28

17

1   would be adequate" – Haier has given no indication why a judgment rendered against

2   it in the PRC's absence would be in any way inadequate or incomplete.  Plaintiff has

3   explained above why complete relief could be according in absence of the PRC.  This

4   factor weighs against dismissal.

5           Finally, the fourth factor – "whether the plaintiff would have an adequate

6   remedy if the action were dismissed for nonjoinder" – weighs heavily against

7   dismissal.  It is doubtful that Plaintiff would have any adequate remedy if the action

8   were dismissed.  This fact is underscored by the PRC's letter that it filed in this action

9   in November 2010, asserting that Plaintiff's substantive allegations herein are without

10  merit and demanding that the Court dismiss this "uncalled for," "unwarranted" and

11  "danger[ous]" lawsuit.  Letter from Embassy of the People's Republic of China dated

12  November 29, 2010, Dkt. #90 (stating that "[f]or the US Company to sue China as a

13  State, it is nothing but an uncalled for and unwarranted lawsuit," asserting that "there

14  is no such action of 'civil conspiracy' with relevant companies, or of

15  'misappropriation of trade secrets' and 'copyright infringement', and least of all the

16  so-called 'unfair competition,'" requesting the U.S. to "recognize the seriousness and

17  danger of this case" and "urg[ing] the US court to dismiss the case").  This Court

18  declined to dismiss the case sua sponte, but there is a substantial likelihood that a

19  Chinese court would comply with the PRC's demand.  Regardless of whether the

20  Court finds that an "alternative forum" is available to Plaintiff for purposes of *forum*

21  *non conveniens* analysis, as a practical and "pragmatic" matter, it is a virtual certainty

22  that Plaintiff would have no adequate remedy if its claims were to be dismissed by this

23  Court.  As the committee explains, "[t]he fourth factor, looking to the practical effects

24  of a dismissal, indicates that the court should consider whether there is any assurance

25  that the plaintiff, if dismissed, could sue effectively in another forum where better

26  joinder would be possible."  Fed. R. Civ. P. 19 (1966 adv. cmt. note).  There is clearly

27  no such "assurance" here, and the tremendous prejudice to Plaintiff that would result

28

1   from dismissal of its claims by this Court clearly outweighs any possible prejudice

2   identified by Haier under the Rule 19(b) equitable analysis.

3        In sum, "equity and good conscience" and each of the Rule 19(b) factors

4   militate against dismissal of Plaintiff's claims.

5   **IV.   CONCLUSION**

6        For the reasons stated herein, Plaintiff respectfully requests that the Court deny

7   Haier's motion.

8

9   DATED:  June 27, 2011            FAYER GIPSON LLP
                                    GREGORY A. FAYER

10                                     ELLIOT B. GIPSON

11

12                             By_____/s/_____

13                                     GREGORY A. FAYER
                            Attorneys for Plaintiff CYBERsitter, LLC

14                               d/b/a Solid Oak Software

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO HAIER MOTION
TO DISMISS FOR FAILURE TO JOIN INDISPENSABLE PARTY

FAYER GIPSON LLP