FAYER GIPSON LLP
A Limited Liability Partnership
GREGORY A. FAYER (State Bar No. 232303)
gfayer@fayergipson.com
ELLIOT B. GIPSON (State Bar No. 234020)
egipson@fayergipson.com
2029 Century Park East, Suite 3535
Los Angeles, California 90067
Telephone: (310) 557-3558
Facsimile: (310) 557-3589

Attorneys for Plaintiff
CYBERsitter, LLC d/b/a Solid Oak Software

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| CYBERsitter, LLC, a California limited liability company, d/b/a Solid Oak Software,<br><br>Plaintiff,<br><br>v.<br><br>The People's Republic of China, a foreign state; Zhengzhou Jinhui Computer System Engineering Ltd., a Chinese corporation; Beijing Dazheng Human Language Technology Academy Ltd., a Chinese corporation; Sony Corporation, a Japanese corporation; Lenovo Group Limited, a Chinese corporation; ASUSTeK Computer Inc., a Taiwanese corporation; BenQ Corporation, a Taiwanese corporation; Haier Group Corporation, a Chinese corporation; DOES 1-10, inclusive,<br><br>Defendants. | CASE NO. CV 10-00038 JST(SHx)<br><br>PLAINTIFF'S RESPONSE TO HAIER GROUP CORPORATION'S AND ZHENGZHOU JINHUI COMPUTER SYSTEM ENGINEERING LTD.'S OPPOSITION AND OBJECTIONS TO PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE<br><br>Judge: Hon. Josephine Staton Tucker<br>Ctrm: 10A<br><br>Hearing Date: July 18, 2011<br>Hearing Time: 10:00 a.m. |

## I. INTRODUCTION

Plaintiff CYBERsitter, LLC d/b/a Solid Oak Software ("Plaintiff") hereby respectfully responds to Haier Group Corporation's ("Haier") and Zhengzhou Jinhui Computer System Engineering Ltd.'s ("Jinhui") respective opposition (Ct. Docket Inst. No. 177) and objections (Ct. Docket Inst. No. 169) to Plaintiff's Request for Judicial Notice (Ct. Docket Inst. No. 163) as follows:

## II. PLAINTIFF'S RESPONSE TO HAIER'S OBJECTIONS

***A.*** Haier's First Objection: *Paragraphs 1-6; Exhibit (sic) 7-11: Web pages from the USPTO website showing [Haier]'s patent and trademark registrations*

Haier does not object that the United States Patent and Trademark Office website documents are somehow inaccurate or unreliable. (Ct. Docket Inst. No. 177, p. 2:26 – 3:7). Indeed, Haier's lack of objection as to the accuracy and reliability of the USPTO's documents is an admission that such documents are in fact accurate and reliable.

Instead, Haier objects that the USPTO web pages showing Haier's patent and trademark registrations are irrelevant as to whether Haier is subject to personal jurisdiction in California courts. First, the subject registrations are relevant as they tend to show that Haier is engaged in nation-wide commerce, including California. Second, even if the registrations were not relevant as to whether California courts had jurisdiction under California law, this objection completely ignores the fact that Haier's patent and trademark registrations are relevant as to whether the Court has general jurisdiction over Haier under the nation-wide federal long-arm statute of Fed. Civ. P. R. 4(k)(2). Therefore, these documents are probative both as to whether the Court has general jurisdiction under California law and whether the Court has nation-wide jurisdiction under Fed. Civ. P. R. 4(k)(2).

***B.*** Haier's Second Objection: *Paragraph 7, Exhibit 12*

Haier does not appear to object to the relevance of the fact that there is a "Haier" design center in Los Angeles. Haier also does not directly challenge the



FAYER GIPSON LLP

accuracy of the information on the website. Instead, Haier appears to object to Plaintiff's request that the Court take judicial notice of the facts on the web page showing a Haier design center in Los Angeles because Haier claims that: a) a web page is not reliable when it comes from a private website and b) that such design center is not a subsidiary of Haier. Haier's objection lacks credibility. First, the private web page that the objected to information comes from purports to be from a "Haier" entity. Second, the USPTO registrations establish, and Haier does not deny, that Haier owns the rights to the Haier name in the United States. Therefore, unless Haier is failing to police the use of its own name by a website incorporating the Haier name in its web address, one can infer that the information on the website is either explicitly or implicitly endorsed or adopted by Haier.[1] It's simply not fair or credible for Haier to object to information on the website of its own affiliate as being inaccurate.

***C.*** Haier's Third Objection: *Paragraphs 8-9, Exhibits 13-14: Haier entities in New York and Delaware*

Haier does not dispute the accuracy of New York and Delaware records. Instead, Haier disputes whether the New York and Delaware records are relevant to as to whether the Court has jurisdiction. Whether Haier systematically establishes and maintains subsidiaries and affiliates bearing the Haier name is directly relevant as to whether the Court has jurisdiction pursuant to the nation-wide jurisdiction federal long arm statute under Fed. R. Civ. Proc. 4(k)(2).

***D.*** Haier's Fourth Objection: *Paragraph 10, Exhibits (sic) 15: Haier's advertising presence and sponsorship of the NBA as shown on the NBA's website*

Haier does not dispute the accuracy of whether entity purporting to be Haier is the official sponsor of the NBA. Haier likewise does not dispute that it owns the

[1] As such, even if not judicially noticeable, the statements on the website are admissible as an admission against interest and in the alternative, Plaintiff respectfully requests that they be admitted as such. Fed. R. Civ. P. 801(d)(2) (Admission by a party-opponent).



FAYER GIPSON LLP

Haier name in the United States. Instead, Haier disputes whether a Haier entity's nationwide sponsorship and advertising are relevant to as to whether the Court has jurisdiction. However, whether Haier systematically markets, advertises and accumulates the goodwill for advertising bearing the Haier name is directly relevant as to whether the Court has jurisdiction pursuant to the nation-wide jurisdiction federal long-arm statute under Fed. R. Civ. P. 4(k)(2).

**E.** Haier's Fifth Objection: *Paragraph 11, Exhibits (sic) 16: Numbers of NBA teams in California*

Haier does not dispute the accuracy of whether entity purporting to be Haier is the official sponsor of the NBA. Haier likewise does not dispute that it owns the Haier name in the United States. Instead, Haier disputes whether a Haier entity's sponsorship and advertising in California, which can be reasonably inferred by the fact that Haier is the official NBA sponsor and there are four NBA teams in California, are relevant to as to whether the Court has jurisdiction. However, whether Haier systematically markets, advertises and accumulates the goodwill for advertising bearing the Haier name during NBA games in California is directly relevant as to whether the Court has general jurisdiction over Haier.

***F.*** Haier's Sixth Objection: *Paragraphs 12-16, Exhibits 12, 17-20: Haier products are sold thoughout the Central District and the United States*

i) Exhibit 12 Which States that Haier Products Are Sold in Best Buy and Walmart Comes from a "Haier" Website and is Relevant as to General Jurisdiction

Haier's objection that the "Haier" webpage stating that Haier products are sold in Walmart and Best Buy lacks accuracy is without merit. First, the private web page that the objected to information comes from purports to be from a "Haier" entity. Second, the USPTO registrations establish, and Haier does not deny, that Haier owns the rights to the Haier name in the United States. Therefore, unless Haier is failing to police the use of its own name by a website incorporating the Haier name in its web

address, one can infer that the information on the website is either explicitly or implicitly endorsed or adopted by Haier.[2] It's simply neither fair nor credible for Haier to object to information on the website of its own affiliate as being inaccurate.

ii) Exhibits 17-20 Which State that Best Buy and Walmart have Stores throughout California and the United States is Relevant as to General Jurisdiction

Haier does not appear to object to the information regarding the number of Walmart and Best Buy stores in California and the United States on any basis except relevance. However, as Haier owns the Haier name in the United States, and Haier products are sold in Best Buy and Walmart according to a "Haier" entity, and Best Buy and Walmart both have numerous stores in the Unites States and the Central District, this information is directly relevant as to the Court's basis for general jurisdiction both in California pursuant to traditional general jurisdiction analysis and under nation-wide jurisidicition pursuant to the federal long-arm statute of Fed. R. Civ. P. 4(k)(2).

***G.*** Haier's Seventh Objection: *Paragraphs (sic) 17, Exhibit 21: [Haier]'s hiring of Alston & Bird LLP as its counsel to defend this case*

Haier's hiring of Alston & Bird is relevant to the financial burdens the defendants face in litigating in California. One of the factors to be weighed in the forum non conveniens analysis is the relative burden on the moving party to litigating the action in the present forum. Likewise, the defendants' hiring of AmLaw 100 firms is relevant to the reasonableness of the Court asserting jurisdiction. *See Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000) (listing the burden on the defendant in defending in the forum as one of the factors for the court to consider in whether asserting jurisdiction would be unreasonable). The moving defendants' hiring of AmLaw 100 firms show the substantial resources the defendants

[2] Likewise, even if not judicially noticeable, the statements on the website are admissible as an admission against interest and in the alternative, Plaintiff respectfully requests that they be admitted as such. F. Civ. P. R. 801(d)(2) (Admission by a party-opponent).



FAYER GIPSON LLP

have to defend the instant case. *See* Plaintiff's Opposition to Haier's Motion to Dismiss Based on Personal Jurisdiction at p. 16 ("The Developer Defendants and Haier are able to mount a vigorous defense in California, as evidence by their choice of lead counsel – both AmLaw 100 firms.") (Ct. Docket No. 156 ). This is directly relevant to the potential burden litigating the case in the Unites States presents to Haier, and tends to show that Haier would not be unduly burdened or prejudiced by defending this action in the United States.

**H.** Haier's Eighth Objection: *Paragraphs (sic) 18: "Plaintiff requests that the Court take notice of the fact that California is the center of the U.S. software industry. See Fed. R. Evid. 201(b)(2)."*[3]

Haier's knowledge of whether CYBERsitter was a California company is directly relevant to the *Calder* effects test for specific jurisdiction as interpreted under Ninth Circuit precedent. *See Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010) (the effects test requires (1) intentional actions (2) expressly aimed at the forum state (3) causing harm which the defendant knows is likely to be suffered-in the forum state. ). As such, California being the center of the U.S. software industry is relevant to specific jurisdiction insofar as it tends to show that if Haier targeted CYBERsitter, a U.S. software company, it knew that it was targeting California. *Panavision Int'l, L.P. v. Toeppen*, 938 F. Supp. 616, 621-22 (C.D. Cal. 1996) aff'd, 141 F.3d 1316 (9th Cir. 1998) ("Toeppen has harmed Panavision, the brunt of which Panavision has borne in California, which Toeppen knew would likely happen because Panavision's principal place of business and the heart of the theatrical motion picture and television camera and photographic equipment business are in California.") (affirmed by Ninth Circuit); Fed. R. Civ. P.

[3] To the extent the Haier's argument is based on the fact that Plaintiff cited to Fed. R. Evid. 201(b)(2), Plaintiff respectfully requests that the Court consider Plaintiff's request under Fed. R. Evid. 201(b)(1). In any event, the Court has the power to judicially notice any generally known fact regardless of how it was mentioned in the Request for Judicial Notice, or even if it was mentioned in the Request for Judicial Notice. *See* Fed. R. Evid. 201 (c) ("A court may take judicial notice, whether requested or not") and Fed. R. Evid. 201(d) ("A court shall take judicial notice if requested by a party and supplied with the necessary information.").

201(b)(1). Moreover, this fact is generally known, just as it is generally known that California is the center of the U.S. film-making industry. See *Panavision at 621-22; see also* Fed. R. Civ. P. 201(b)(1).

## III. PLAINTIFF'S RESPONSE TO JINHUI'S OBJECTIONS

### A. Jinhui's First Objection: Objection to Paragraph 17

The defendants' hiring of AmLaw 100 firms is relevant to the financial burdens the defendants face in litigating in California. One of the factors to be weighed in the forum non conveniens analysis is the relative burden on the moving party to litigating the action in the present forum. The defendants made this an issue by arguing that litigating in California would be a financial burden. *See* Plaintiff's Opposition to Defendants' Motion to Dismiss Based on Forum Non Conveniens at p. 20 ("…Dazheng and Jinhui's claims of 'huge expenses' are entitled to minimal weight given that a cursory review of their litigation counsel shows that Dazheng and Jinhui have a very large and perhaps unlimited litigation budget.") (Ct. Docket No. 158); Likewise, the defendants' hiring of AmLaw 100 firms is relevant to the reasonableness of the Court asserting jurisdiction. *See Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000) (listing the burden on the defendant in defending in the forum as one of the factors for the court to consider in whether asserting jurisdiction would be unreasonable). The moving defendants' hiring of AmLaw 100 firms show the substantial resources the defendants have to defend the instant case. *See* Plaintiff's Opposition to Haier's Motion to Dismiss Based on Personal Jurisdiction at p. 16 ("The Developer Defendants and Haier are able to mount a vigorous defense in California, as evidence by their choice of lead counsel – both AmLaw 100 firms.") (Ct. Docket No. 156 ). This is directly relevant to the potential burden litigating the case in the Unites States presents to the defendants, including Jinhui, and tends to show that Jinhui would not be unduly burdened or prejudiced by defending this action in the United States.

**B.** Jinhui's Second Objection: Objection to Paragraph 18

Jinhui's knowledge of whether CYBERsitter was a California company is directly relevant to the *Calder* effects test for specific jurisdiction under Ninth Circuit precedent. *See Brayton Purcell LLP at* 1128 (the effects test requires (1) intentional actions (2) expressly aimed at the forum state (3) causing harm which the defendant knows is likely to be suffered-in the forum state. ). As such, California being the center of the U.S. software industry is relevant to specific jurisdiction insofar as it tends to show that if Haier targeted CYBERsitter, a U.S. software company, it knew that it was targeting California. *See Panavision* at 621-22; Fed. R. Civ. P. 201(b)(1). Moreover, this fact is generally known, just as it is generally known that California is the center of the U.S. film-making industry. *Panavision at 621-22; see also* Fed. R. Civ. Proc. 201(b)(1).

Defendant Jinhui disputes the fact is generally known and gives two examples of software companies that are based outside of California (Microsoft and NetNanny) to support its assertion that California being the software industry capital of the U.S. is vague and subject to reasonable dispute. However, the fact that two companies reside outside of Califoria does not mean it is subject to reasonable dispute. Google (Mountain View,), Oracle (Redwood City), Adobe (San Jose), HP (Palo Alto), Yahoo (Sunnyvale), Symantec (Mountain View), and Electronic Arts (Redwood City), all have their principal place of business is in California - not to mention Apple (Cupertino), Facebook (Palo Alto/Menlo Park), and Twitter (San Francisco) which though are not primarily thought of as software companies, create software used by millions the world over. Clearly, it is "generally known within the territorial jurisdiction of the trial court" and "not subject to reasonable dispute" that California is the capital of the U.S. software industry.

DATED: July 12, 2011

FAYER GIPSON LLP
GREGORY A. FAYER
ELLIOT B. GIPSON

By: /Elliot B. Gipson /
ELLIOT B. GIPSON
Attorneys for Plaintiff CYBERsitter, LLC d/b/a Solid Oak Software

FAYER GIPSON LLP