O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYBERsitter, LLC, d/b/a Solid Oak Software<br><br>Plaintiff,<br><br>vs.<br><br>The People's Republic of China, Zhengzhou Jinhui Computer System Engineering Ltd., Beijing Dazheng Human Language Technology Academy, Ltd., Lenovo Group Limited, ASUSteK Computer, Inc., Benq Corportation, Haier Group Corporation<br><br>Defendants. | CASE NO. CV 10-00038-JST (SHx)<br><br>**ORDER DENYING: (1) HAIER GROUP CORPORATION'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO JOIN A NECESSARY AND INDISPENSABLE PARTY (Doc. 139); (2) BEIJING DAZHENG HUMAN LANGUAGE TECHNOLOGY ACADEMY, LTD.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION (Doc. 143); (3) BEIJING DAZHENG HUMAN LANGUAGE TECHNOLOGY ACADEMY, LTD.'S MOTION TO DISMISS OR STAY CASE FOR FORUM NON CONVENIENS (Doc. 144); AND (4) ZHENGZHOU JINHUI COMPUTER SYSTEM ENGINEERING, LTD.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION (Doc. 150)** |

## I.  INTRODUCTION AND BACKGROUND

This case concerns the alleged intentional misappropriation of computer software code belonging to Plaintiff CYBERsitter, LLC, d/b/a Solid Oak Software, by numerous Defendants in China and Taiwan.  Before the Court are five separate motions: three motions to dismiss for lack of personal jurisdiction filed individually by Defendants Haier Group Corporation ("Haier"), Beijing Dazheng Human Language Technology Academy, Ltd. ("Dazheng"), and Zhengzhou Jinhui Computer System Engineering Ltd. ("Jinhui"), (Docs. 139, 143, 150); a motion to dismiss for forum non conveniens filed by Dazheng and joined by Jinhui, (Docs. 144, 151); and a motion to dismiss for failure to join a necessary and indispensable party filed by Haier (Doc. 139).  Plaintiff has opposed each of the motions.  Having considered the parties' briefs and heard oral argument, the Court DENIES each of the motions.

## II. PRELIMINARY MATTERS

### A.  Evidentiary Objections

The parties have filed multiple evidentiary objections to numerous declarations submitted by the opposing side on various grounds, including relevancy, lack of foundation, and lack of personal knowledge.  (Docs. 166, 170, 175, 185.)  To the extent the Court relies on any evidence, it relies only on admissible, relevant evidence.  Thus, the objections are OVERRULED.

### B.  Request for Judicial Notice

Plaintiff requests that the Court take judicial notice of several facts.  First, as related to Defendant Haier, Plaintiff seeks judicial notice of Haier's registered patents and trademarks in the United States, the fact that Haier allegedly has a design center located in Los Angeles and subsidiaries in New York and Delaware, the fact that Haier allegedly is an official sponsor of the National Basketball Association ("NBA"), and the fact that Haier allegedly sells its products in the Central District of California and throughout the United

States at Best Buy and Wal-Mart retail stores.  (Doc. 163.)  Plaintiff also requests that the Court take judicial notice of such related facts as the number of teams in the NBA and the number of Best Buy and Wal-Mart stores in the United States.  Second, Plaintiff requests judicial notice of the fact that Defendants' counsel, Alston & Bird LLP, Cadwalader, Wickersham & Taft LLP, and Reed Smith LLP, each appear on the AmLaw 100 2010 list of the highest grossing revenue law firms in the United States.  Finally, Plaintiff requests that the Court take judicial notice of the supposed fact that "California is the center of the U.S. software industry."  (*Id.* ¶ 18.)

Defendant Jinhui objects to Plaintiff's requests for judicial notice regarding both the financial standing of their aforementioned counsel and the purported fact that California is the center of the U.S. software industry because the former is irrelevant and the latter is subject to reasonable dispute.  (Doc. 169.)  Defendant Haier objects to Plaintiff's request, echoing Jinhui's concerns and arguing that Plaintiff misguidedly asks the Court to take judicial notice of statements appearing on corporate websites that are irrelevant, subject to reasonable dispute, or both.  (Doc. 177.)

Under Federal Rule of Evidence 201(b), a court may only take judicial notice of a fact "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).   The Court takes judicial notice of Haier's trademark and patent applications and registrations in the United States and the fact that Haier has subsidiaries located in New York and Delaware, as Haier does not dispute the existence or veracity of those facts.  (*See* Doc. 163 ¶¶ 1, 3, 5, 6, 8, 9.)  As to the remaining facts, however, the Court denies Plaintiff's request.  For many of the facts for which Plaintiff requests judicial notice, Plaintiff submits statements or images appearing on undated, unverified websites without an accompanying declaration as to when, where, and how such images or statements were obtained.  Thus, whether Haier is an official sponsor of the NBA, has a design center in Los Angeles, or sells its products in the Central District of California and throughout the

1   United States at Best Buy and Wal-Mart retail stores is subject to reasonable dispute.

2   Moreover, whether Defendants' counsel appeared in the AmLaw 100 2010 list of the

3   highest grossing revenue law firms in the United States is irrelevant to the instant motions,

4   so the Court declines to take judicial notice of such fact.  (*See* Forum Non Conveniens

5   Order ("FNC Order"), Doc. 88, at 4 n.3 (explaining that the Court takes judicial notice

6   only of *relevant* facts).)  Finally, Plaintiff fails to provide any basis for the purported fact

7   that "California is the center of the U.S. software industry."  Accordingly, Plaintiff's

8   request for judicial notice is GRANTED in part and DENIED in part.

9

10        C.  Request for Leave to Submit Sur-Reply and Motion to Strike

11        Plaintiff requests leave to file a sur-reply alleging that Defendants submitted new

12   evidence and relied on new legal authorities in their reply papers.  (Doc. 183.)

13   Specifically, Plaintiff asserts that Jinhui submitted new evidence in the Declaration of

14   Jerry Liao and the attachments thereto (Doc. 168-1) and that Haier and Dazheng cited and

15   relied heavily upon two United States Supreme Court decisions that were issued on June

16   27, 2011, the same day Plaintiff filed its opposition papers.  (*See* Docs. 172, 178.)

17   Alternatively, Plaintiff requests the Court strike the Liao Declaration.  (Doc. 185.)  The

18   Liao Declaration, however, merely rebuts evidence proffered by Plaintiff in Jenna

19   DiPasquale's declaration.  (*See* DiPasquale Decl., Doc. 160.)  Plaintiff's Motion to Strike

20   the Liao Declaration is therefore DENIED.  Nonetheless, because Defendants relied on

21   new legal authority in their reply papers, the Court GRANTS in part and DENIES in part

22   Plaintiff's request and admits its sur-reply in part.  *See Zamani v. Carnes*, 491 F.3d 990,

23   997 (9th Cir. 2007) (A "district court need not consider arguments raised for the first time

24   in a reply brief."); C.D. Cal. R. 7-10 ("Absent prior written order of the Court, the

25   opposing party shall not file a response to the reply.").  To the extent the sur-reply

26   addresses the Liao Declaration and attempts to submit additional evidence in that regard,

27   (*see* Supplemental Milburn Decl., Doc. 184,) such arguments and evidence are struck and

28

1  not considered by the Court.  To the extent the sur-reply addresses the newly cited legal

2  authority and related arguments, (Doc. 183-1 at 4-6), the Court considers the sur-reply.

3

4  **III.    DISCUSSION**

5      A.   Forum Non Conveniens

6      Dazheng and Jinhui move to dismiss the action for forum non conveniens arguing

7  that California is an inconvenient forum and the dispute should be heard in China.

8  (Dazheng FNC Mot., Doc. 144; Jinhui's FNC Mot., Doc. 151.)  On November 18, 2010,

9  the Court denied a motion to dismiss for forum non conveniens brought by since-dismissed

10  Defendants Sony Corporation and Acer, Inc., and Defendants BenQ Corporation and

11  ASUSTeK Computer, Inc. ("Sony et al."), which asserted largely the same arguments that

12  Dazheng and Jinhui assert here.[1]  (*See* FNC Order.)  "Under the 'law of the case' doctrine,

13  a court is ordinarily precluded from reexamining an issue previously decided by the same

14  court, or a higher court, in the same case."  *Richardson v. United States*, 841 F.2d 993, 996

15  (9th Cir. 1988).  Application of the doctrine is discretionary and for it to apply, "the issue

16  in question must have been 'decided explicitly or by necessary implication in [the]

17  previous disposition.'"  *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir.

18  2000) (quoting *Liberty Mutual Ins. Co. v. EEOC*, 691 F.2d 438, 441 (9th Cir. 1982))

19  (alteration in original).  A district court's decision to apply the doctrine will be an abuse of

20  discretion if "(1) the first decision was clearly erroneous; (2) an intervening change in the

21  law occurred; (3) the evidence on remand was substantially different; (4) other changed

22  circumstances exist; or (5) a manifest injustice would otherwise result."  *Id.* at 452-53.

23      None of the five exceptions to law of the case doctrine arise here.  Dazheng

24  maintains, however, that notwithstanding the Court's previous decision to retain this case

25  in lieu of dismissing it for adjudication in China, its motion "demonstrates each of the

26  _____

27      [1] Indeed, Dazheng submitted the same declarations from expert Jacques deLisle in support of
its motion that accompanied Sony et al.'s motion.  (Docs. 51, 72-1, 145.)

28

1   points that the Court found wanting on [sic] Sony's motion."  (Dazheng FNC Mot. at 1.)
2   Dazheng asserts that, unlike Sony et al.'s motion, it has demonstrated that (1) all parties
3   would be severely inconvenienced by trial in California because most of the Defendants'
4   evidence and witnesses are located in China; (2) Dazheng would suffer prejudice because
5   it no longer employs "many" of its "crucial" witnesses and cannot compel those witnesses
6   to testify at trial, and because having Chinese witnesses provide testimony through a
7   translator "is *vastly* inferior to having a fact-finder familiar with the language," and (3) the
8   public's interest would be harmed if this Court exercised jurisdiction over an intellectual
9   property dispute that is premised on the distribution in China of software designed solely
10  for the Chinese market.  (*Id.* at 2-3.)  What Dazheng and Jinhui fail to do, however, is offer
11  any new arguments that the Court did not already consider in denying Sony et al.'s motion
12  to dismiss for forum non conveniens.

13       As the Court previously noted:  "Forum non conveniens is an exceptional tool to be
14  employed sparingly, not a doctrine that compels plaintiffs to choose the optimal forum for
15  their claim."  (FNC Order at 5 (quoting *Boston Telecomm. Grp., Inc. v. Wood*, 588 F.3d
16  1201, 1206 (9th Cir. 2009)).)  "Ordinarily, a plaintiff's choice of forum will not be
17  disturbed unless the 'private interest' and the 'public interest' factors strongly favor trial in
18  a foreign country."  (*Id.* (quoting *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1145 (9th Cir.
19  2001)).)  The private interest factors are:

20       (1) the residence of the parties and the witnesses; (2) the forum's
21       convenience to the litigants; (3) access to physical evidence and other
22       sources of proof; (4) whether unwilling witnesses can be compelled to
23       testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of
24       the judgment; and (7) all other practical problems that make trial of a case
25       easy, expeditious and inexpensive.

26  (*Id.* at 8 (quoting *Boston Telecomm.*, 588 F.3d at 1206-07).  The public interest factors are:
27  "(1) the local interest in the lawsuit, (2) the court's familiarity with the
28  governing law, (3) the burden on local courts and juries, (4) congestion in the court, and

1  (5) the costs of resolving a dispute unrelated to a particular forum." (*Id.* at 12 (quoting

2  *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1181 (9th Cir. 2006).)  The Court

3  also considers whether there exists an alternative forum.

4       The essence of the instant motion is that because Dazheng and Jinhui, their

5  witnesses, and their evidence are located in China, they would be severely burdened if the

6  case were to be litigated in California rather than China due to the difficulty of compelling

7  third-party witnesses to testify in California and the substantial cost of transporting

8  witnesses and evidence to California and translating documents from Chinese to English.

9  (*See generally* Dazheng FNC Mot. 8-13; Jinhui FNC Mot. 8-12.)  However, the Court

10  rejected those arguments when it denied Sony et al.'s motion to dismiss.  (*Compare* Docs.

11  49, 88, *with* Docs. 144, 151.)  Although in doing so the Court did note that Sony et al. did

12  not reside in China, the fact that Dazheng and Jinhui reside in China does not change the

13  outcome because the private and public factors still weigh in favor of the Court retaining

14  the case.

15       As to the private factors, the Court explained, "'this is a case in which witnesses are

16  scattered around the globe' and whether the case is tried in China or California, the parties

17  will likely be forced to depend on deposition testimony in lieu of live testimony for at least

18  some witnesses.'" (FNC Order at 10 (quoting *Boston Telecomm.*, 588 F.3d at 1210).)

19  Although Dazheng and Jinhui identify numerous potential witnesses who are located in

20  China, such as engineers and programmers who worked on the Green Dam Youth Escort

21  program, (*see* Xiaomeng Decl., Doc. 146; Jinhui FNC Mot. at 5-6,) like Sony et al.,

22  Dazheng and Jinhui fail to meet their burden in showing that their alleged inability to

23  compel witnesses to testify in California, the costs they would incur in transporting

24  witnesses and evidence to California, or any other factor would result in "oppressiveness

25  and vexation" to them "out of all proportion to [Plaintiff's] convenience."  (FNC Order at

26  11 (quoting *Piper Aircraft v. Reyno*, 454 U.S. 235, 241 (1981).)  The Court is keenly aware

27  that witnesses and evidence are located in China and that Defendants will incur costs and

28  other non-financial burdens in transporting them to California for trial, if the case proceeds

to that end.  The Court is also cognizant that witnesses for Defendants may be forced to testify with the assistance of a translator.  If that alone were sufficient to dismiss a case for forum non conveniens, American plaintiffs rarely would have the opportunity to prosecute claims against foreign defendants in American courts.  Thus, as the Court previously held, the private factors weigh in favor of the Court hearing the case.  As to the public factors, Dazheng and Jinhui merely re-assert the same arguments proffered by Sony et al. and fail to provide any new evidence that convinces the Court to overturn its previous decision.

Because Dazheng and Jinhui neither offer any reason for the Court to overturn its previous decision to retain this case, nor show that the private and public factors strongly favor trial in China, the Court does not disturb Plaintiff's choice of forum and DENIES the motion to dismiss for forum non conveniens.

### B. Personal Jurisdiction

Dazheng, Haier, and Jinhui individually have moved to dismiss the action as to each of them for lack of personal jurisdiction.  (Dazheng Mot., Doc. 143; Haier Mot., Doc. 141; Jinhui Mot., Doc. 150.)

#### 1. Legal Standard

Rule 12(b)(2) allows a party to assert lack of personal jurisdiction as a defense by motion. Fed. R. Civ. P. (12)(b)(2).  "Although the defendant is the moving party on a motion to dismiss [for lack of personal jurisdiction], the plaintiff bears the burden of establishing that jurisdiction exists." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).  "[I]n the absence of an evidentiary hearing, the plaintiff need only make 'a prima facie showing of jurisdictional facts to withstand the motion to dismiss.'" *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010) (quoting *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006)).  The "uncontroverted allegations in [the plaintiff's] complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [the

1    plaintiff's] favor." *Rio Props.*, 284 F.3d at 1019.  In other words, "for the purpose of this

2    [prima facie] demonstration, the court resolves all disputed facts in favor of the plaintiff."

3    *Pebble Beach*, 453 F.3d at 1154.

4         "In evaluating the appropriateness of personal jurisdiction over a nonresident

5    defendant, [courts] ordinarily examine whether such jurisdiction satisfies the 'requirements

6    of the applicable state long-arm statute' and 'comports with federal due process.'"

7    *Bauman v. DaimlerChrysler Corp.*, --- F.3d ----, 2011 WL 1879210, at *7 (9th Cir. May

8    18, 2011) (quoting *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1404–05 (9th Cir.

9    1994)).  "Because California permits the exercise of personal jurisdiction to the full extent

10   permitted by due process, [courts] need only determine whether jurisdiction over [a

11   defendant] comports with due process."  *Id.* (internal citation and quotation marks

12   omitted); *see* Cal. Code Civ. P. § 410.10 ("A court of this state may exercise jurisdiction

13   on any basis not inconsistent with the Constitution of this state or of the United States.").

14   "For due process to be satisfied, a defendant, if not present in the forum, must have

15   'minimum contacts' with the forum state such that the assertion of jurisdiction 'does not

16   offend traditional notions of fair play and substantial justice.'"  *Pebble Beach*, 453 F.3d at

17   1155 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 315 (1945)).

18        "There are two types of personal jurisdiction: general and specific."  *Ziegler v.*

19   *Indian River Cnty.*, 64 F.3d 470, 473 (9th Cir. 1995).  "Specific jurisdiction is only

20   relevant if the defendant's 'contacts with the forum give rise to the cause of action before

21   the court.'"  *Bauman*, 2011 WL 1879210 at *7 (quoting *Doe v. Unocal*, 248 F.3d 915, 923

22   (9th Cir. 2001).  "By contrast, 'when the cause of action does not arise out of or relate to

23   the foreign corporation's activities in the forum State,' the State is exercising 'general

24   jurisdiction over the defendant.'"  *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A.*

25   *v. Hall*, 466 U.S. 408, 414, 415 n.9 (1984)).

26

27

28

2.   Analysis

Plaintiff argues that the Court has specific and general jurisdiction over Haier, but concedes that the Court cannot exercise general jurisdiction over Dazheng and Jinhui. (Pl.'s Opp'n, Doc. 159, at 5.)  Because Plaintiff alleges specific jurisdiction over all three Defendants, the Court first addresses specific jurisdiction.

The Ninth Circuit applies a three-part test to determine whether a district court can exercise specific personal jurisdiction over a nonresident defendant:

> (1) The nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).  "The plaintiff bears the burden of satisfying the first two prongs of the test." *Id.*  "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

a.   Purposeful Availment or Direction

"The purposeful availment requirement ensures that a nonresident defendant will not be haled into court based upon 'random, fortuitous or attenuated' contacts with the forum state." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998) (quoting *Burger King*, 471 U.S. at 475).  The phrase "purposeful availment" includes both

10

purposeful availment and purposeful direction, which are distinct concepts. *Schwarzenegger*, 374 F.3d at 802. While a purposeful availment analysis is used in suits sounding in contract, a purposeful direction analysis is used in suits sounding in tort. *Id.* "Here, the underlying action is copyright infringement, [among other claims,] which is often characterized as a tort." *Brayton*, 606 F.3d at 1128. "Purposeful direction is therefore the proper analytical framework in this case." *Id.*

The Ninth Circuit "evaluates purposeful direction using the three-part 'Calder-effects' test, taken from the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984)." *Id.* "Under this test, 'the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Id.* (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc)).

### i. Factual Allegations

Plaintiff alleges that Dazheng and Jinhui targeted Plaintiff by "obtain[ing] Plaintiff's Trade Secrets through improper means" when they co-developed the Green Dam Youth Escort program (FAC, Doc. 56, ¶ 60) and that both Dazheng and Jinhui "possessed knowledge that Plaintiff is and was a United States company and that [Defendants'] illegal acts would therefore cause injury within the United States and within California." (*Id.* ¶ 62.) Plaintiff further alleges that Dazheng and Jinhui "directly infringed Plaintiff's copyrights . . . by reproducing, adapting, and/or distributing works embodying the Copyrighted Works without authorization . . . ." (*Id.* ¶ 79.) Plaintiff has submitted evidence supporting the allegation that Dazheng and Jinhui copied its works. (Halderman Decl., Doc. 62, ¶ 24.) Moreover, Plaintiff claims that Jinhui and Dazheng made available the infringing Green Dam Youth Escort program for download to individuals in the United States. (FAC ¶ 46.) Plaintiff has produced evidence that Plaintiff's code for CYBERsitter

1   was publicly available on Jinhui's servers at www.zzjinhui.com on or about July 2009. [2]

2   (Milburn Decl., Doc. 158-1, ¶ 3.)  These actions were taken by Dazheng and Jinhui,

3   according to Plaintiff, as part of a conspiracy "to steal [Plaintiff's] proprietary software,

4   and to disseminate the illegal product to tens of millions of end users in China and

5   elsewhere."  (*Id.* ¶ 5.)

6        Plaintiff similarly alleges that Haier "infringed Plaintiff's copyrights in the

7   Copyrighted Works."  (FAC ¶ 92.)  Plaintiff claims that Haier "conspired" with other

8   Defendants in misappropriating Plaintiff's intellectual property by manufacturing and

9   selling computers containing the Green Dam software in China.  (FAC ¶¶ 58, 66, 67.)

10  Plaintiff argues that Haier "targeted" Plaintiff through the "misappropriation and

11  distribution of software code."  (Pl.'s Haier Opp'n, Doc. 156, at 14.)  Plaintiff asserts that

12  because "misappropriation and distribution of software code is an intentional act[,] it is by

13  definition specifically targeted to the victim as it is impossible to steal software code

14  without knowing whom you are stealing it from [sic]."  (Pl.'s Haier Opp'n at 14.)  Plaintiff

15  does not allege that Haier stole the code, but that it knowingly distributed computers in

16  China containing the alleged stolen code.  Plaintiff specifically alleges that "Defendant

17  _____

18      [2] Jinhui argues that it never made the Green Dam Youth Escort program available for
19  download on its websites.  (Jinhui Reply, Doc. 168, at 6; Zhao Decl., Doc. 150-1, ¶ 6.)  However,
    Plaintiff has provided a declaration from Brian Milburn, Plaintiff's President and Chief Executive
20  Officer, stating that he discovered CYBERsitter code on Jinhui's website at www.zzjinhui.com in
    July 2009.  (Milburn Decl., Doc. ¶ 3.)  The parties also dispute whether a website,
21  www.lssw365.net, belonged to Jinhui and whether it contained links to download the Green Dam
    program entitled "New York" and "San Francisco."  (*See* DiPasquale Decl., Doc. 160, ¶ 4; *see*
22  *generally* Liao Decl., Doc. 168-1.)  Because the "conflicts between the facts contained in the
    parties' affidavits must be resolved in [the plaintiff's] favor," *Rio Props.*, 284 F.3d at 1019, the
23  Court assumes for this analysis that the websites in question contained the Green Dam program
    and said links.  However, DiPasquale states only that "on information and belief, this website
24  belonged to Jinhui."  (DiPasquale Decl. ¶ 4.)  Jinhui maintains that it "does not own or operate this
    website."  (Jinhui's Reply at 4; Zhao Decl. ¶ 7.)  It also points out that Plaintiff refers to the
25  website containing links targeting users in San Francisco and New York as the "Chinese
    government's official Green Dam site" in the First Amended Complaint.  (FAC ¶ 34.)  Thus,
26  Plaintiff has failed to provide sufficient evidence to make a prima facie showing that
27  www.lssw365.net belongs to Jinhui.

28

1  Manufacturers," such as Haier, "willingly participated in the PRC and Defendant

2  Developers' [Dazheng and Jinhui] scheme to proliferate the illegal software throughout

3  China." (FAC ¶ 52.)  Plaintiff alleges that "[a]t the time that each Defendant Manufacturer

4  distributed the Green Dam software, it knew or had reason to know that the Trade Secrets

5  were obtained through unauthorized decryption of the CYBERsitter program." (*Id.* ¶ 61.)

6  As to Haier's knowledge, Plaintiff provides proof that it sent a cease-and-desist letter to

7  Haier on August 11, 2009 informing Haier of its alleged unauthorized distribution of

8  Plaintiff's software code. (Fayer Decl., Doc. 161, Ex. 2.)  In response to Plaintiff's letter,

9  Haier, through its counsel, sent an email stating:  "Haier has been manufacturing computers

10  in strict accordance with laws and policies of China.  The Green Dam Youth Escort

11  [program] that we installed (or packaged) in some of Haier's computers is legitimately

12  acquired.  Essentially, Haier Group is not the party of legal relations with regard to the

13  copyright dispute over CYBERsitter . . . ." (*Id.*, Ex. 6.)

14

15            *ii.    Intentional Act*

16            Plaintiff clearly satisfies the intentional act requirement as to Dazheng, Haier, and

17  Jinhui.  Courts "construe 'intent' in the context of the 'intentional act' test as referring to an

18  intent to perform an actual, physical act in the real world, rather than an intent to

19  accomplish a result or consequence of that act." *Schwarzenegger*, 374 F.3d at 806.  Any

20  one of several acts connected to the alleged theft, misappropriation, and subsequent

21  distribution of Plaintiff's code by Dazheng, Haier, and Jinhui is "an actual, physical act in

22  the real world." *Id.* (holding that placing a newspaper advertisement was an intentional

23  act); *see, e.g.*, *Bancroft & Masters, Inc., v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1088 (9th

24  Cir. 2000) (concluding that sending a letter was an intentional act); *Brayton*, 606 F.3d at

25  1128 (holding that reproducing copyrighted material was an intentional act); *Rio Props.*,

26  284 F.3d at 1156 (concluding that operating a passive website was an intentional act).

27

28

1
           *iii.*     *Expressly Aimed at the Forum State*

2
       As a general principle, express aiming requires more than "'untargeted negligence'

3
that merely happened to cause harm to [a plaintiff]." *Schwarzenegger*, 374 F.3d at 807

4
(quoting *Calder*, 465 U.S. at 789). In general, the "requirement is satisfied 'when the

5
defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the

6
defendant knows to be a resident of the forum state.'" *Menken v. Emm*, 503 F.3d 1050,

7
1059 (9th Cir. 2007) (quoting *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir.

8
2002)); *see Bancroft & Masters*, 223 F.3d at 1087 (concluding that "'express aiming'

9
encompasses wrongful conduct individually targeting a known forum resident").

10
       Dazheng, Haier, and Jinhui assert similar arguments as to why Plaintiff has not

11
satisfied the express aiming prong. Dazheng argues that it designed and manufactured the

12
alleged infringing software for a Chinese market, only targeted the product to a Chinese

13
audience, and never had a physical presence in California.[3] (Dazheng Mot. at 7-9.) While

14
denying that it manufactured or distributed the computers in question, Haier similarly

15
argues that even if it had conducted such activity, it would have occurred only in China.

16
(Haier Mot. at 6.) Jinhui likewise asserts that it did not perform any of the alleged acts in

17
California, nor did it target Plaintiff in California. (Jinhui Mot. at 10, 12.) Relying on

18
*Schwarzenegger* and *Brayton*, Jinhui also argues that express aiming requires more than

19
individualized targeting at Plaintiff and knowledge of Plaintiff's residence. (Jinhui Reply,

20
Doc. 168, at 8.)

21
       Taking these arguments together and focusing on Jinhui's reliance on

22
*Schwarzenegger* and *Brayton*, Defendants converge on the position that express aiming did

23
not occur because, even if Plaintiff's allegations are true, Defendants did nothing above

24
and beyond willfully infringing Plaintiff's copyright with the knowledge that Plaintiff

25
resided in California. Defendants contend that they did not distribute or market their

26
_____

27
     [3] In its motion, Dazheng fails to apply the *Calder* effects test, and instead argues why it did not

28
"purposely avail" itself of the privilege of conducting business in California.

allegedly infringing products in California, *see Schwarzenegger*, 374 F.3d at 807, or otherwise compete with Plaintiff in California, *see Brayton*, 606 F.3d at 1129.  That position, however, runs afoul of *Calder* and fails to acknowledge the critical distinctions between this case and *Schwarzenegger* and *Brayton*.  Defendants' position also disregards the Ninth Circuit's holding in *Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.*, 106 F.3d 284 (9th Cir. 1997), *rev'd on other grounds*, 523 U.S. 340 (1998), that an allegation of a defendant's willful copyright infringement against a plaintiff with knowledge of plaintiff's principal place of business satisfies the *Calder* effects test. *Id.* at 289 (citing *Calder*, and stating that "[plaintiff] alleged, and the district court found, that [defendant] willfully infringed copyrights owned by [plaintiff], which, as [defendant] knew, had its principal place of business in the Central District.  This fact alone is sufficient to satisfy the 'purposeful availment' requirement.").

   As the Ninth Circuit has recognized, "*Calder* stands for the proposition that purposeful availment is satisfied even by a defendant whose only 'contact' with the forum state is the 'purposeful direction' of a *foreign* act having *effect* in the forum state."  *Dole Food Co.*, 303 F.3d at 1111 (quoting *Haisten v. Grass Valley Med. Reimbursement Fund*, 784 F.2d 1392, 1397 (9th Cir. 1986)) (emphasis added); *Bancroft & Masters*, 223 F.3d at 1087 ("In *Calder*, the Supreme Court held that a foreign act that is both aimed at and has effect in the forum state satisfies the purposeful availment prong of the specific jurisdiction analysis.").  While courts have "struggled somewhat with *Calder*'s import, recognizing that the case cannot stand for the broad proposition that a foreign act with foreseeable effects in the forum state always gives rise to specific jurisdiction," the Ninth Circuit has concluded that when "something more" occurs in the form of "express aiming at the forum state," personal jurisdiction is properly found.  *Yahoo! Inc.*, 379 F.3d at 1124 (quoting *Bancroft & Masters*, 223 F.3d at 1087).  The Ninth Circuit also consistently has held that "the express aiming requirement of *Calder* [is] 'satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state.'"  *Id.* (quoting *Bancroft & Masters*, 223 F.3d at 1087).  Indeed, the

Supreme Court in *Calder* held that defendants' actions were "expressly aimed at California" because defendants wrote and edited an article "that they knew would have a potentially devastating impact upon [plaintiff]" and "they knew the *brunt of that injury* would be felt by [plaintiff] in the State in which she lives and works and in which the *National Enquirer* has its largest circulation." *Calder*, 465 U.S. at 789-90 (emphasis added). Under those circumstances, the Supreme Court held that defendants must "reasonably anticipate being haled into court there." *Id.* at 790 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)); *see, e.g., Bancroft & Masters*, 223 F.3d at 1087 (concluding that defendant expressly aimed at plaintiff in California by sending a letter to Virginia with the alleged intent and result of disrupting the plaintiff's California business).

Moreover, the facts in *Schwarzenneger* and *Brayton* are readily distinguishable from the facts in the present case. In *Schwarzenneger*, a car dealership in Ohio placed an advertisement in a local newspaper featuring the image of a famous movie character whose owner happened to reside in California. Here, a software developer alleges that foreign software developers and computer manufacturers intentionally stole its copyrighted software – the very basis of its business – and conspired to distribute it to Chinese-speaking customers throughout China and the United States. In the former case, it may "offend traditional notions of fair play and substantial justice" to hale the Ohio car dealership into a California court to answer for its alleged wrongs in Ohio, considering the scope of the defendant's conduct and the perceived harm to plaintiff. *Int'l Shoe*, 326 U.S. at 315. Indeed, the car dealership's actions in *Schwarzenneger* may have constituted just the type of "random," "fortuitous," and/or "attenuated" contacts with California against which the purposeful availment requirement protects. *Burger King*, 471 U.S. at 475 (internal quotations omitted). When Defendants commit intentional copyright infringement with knowledge of plaintiff's residency, however, they "should reasonably anticipate being haled into court" in the forum in which Plaintiff resides, as the brunt of the injury takes place there. *World-Wide Volkswagen*, 444 U.S., at 297; *see Panavision*, 141 F.3d at 1322

n.2 (holding that the "brunt of the harm" suffered by plaintiff from defendant's intellectual property theft "was in the state where [plaintiff] maintained its principal place of business").  Defendants' willful copyright infringement is not "'untargeted negligence' that merely happened to cause harm" to Plaintiff, *Schwarzenegger*, 374 F.3d at 807 (quoting *Calder*, 465 U.S. at 789), and Defendants are not equivalent "to a welder employed in Florida who works on a boiler which subsequently explodes in California." *Calder*, 465 U.S. at 789.   On the contrary, Defendants' alleged actions were intentional, tortious, and aimed at Plaintiff in California.  *Id.*

Furthermore, the alleged conduct in *Brayton* centered on defendant's maintenance of a passive website, which the Ninth Circuit has treated differently for purposes of personal jurisdiction.  *Brayton*, 606 F.3d at 1129 ("It is beyond dispute in this circuit that maintenance of a passive website alone cannot satisfy the express aiming prong" (citing *Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007), *Pebble Beach*, 453 F.3d at 1158, and *Rio Props.*, 284 F.3d at 1020).  Although Plaintiff does allege that Jinhui distributed its copyrighted software through its website, this case, unlike *Brayton*, does not hinge on Defendants' maintenance of passive websites because Plaintiff alleges that Defendants conspired to distribute the software through other channels, such as personal computers.  *See Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 426 (9th Cir. 1977) (holding that questions of personal jurisdiction "must be decided on a case-by-case basis"); *Schwarzenegger*, 374 F.3d at 807 ("The 'express aiming' analysis depends, to a significant degree, on the specific type of tort or other wrongful conduct at issue."); *Attachmate Corp. v. Pub. Health Trust*, 686 F. Supp. 2d 1140, 1147 (W.D. Wash. 2010) ("One clear import of the Ninth Circuit's case law regarding express aiming is that the district court's inquiry on this score must be grounded squarely in the facts of the particular case.").

Moreover, the Ninth Circuit in *Columbia Pictures* relied on *Calder* to hold that an allegation of willful copyright infringement knowingly directed at a forum resident "alone" is sufficient to satisfy purposeful availment.  *Columbia Pictures*, 106 F.3d at 289.

Defendants fail to address *Columbia Pictures* or explain why this case does not fall squarely within its holding.  District courts in the Ninth Circuit consistently have applied *Columbia Pictures* to confer personal jurisdiction over foreign defendants.  *See Righthaven, LLC v. Va. Citizens Def. League, Inc.*, No. 2:10-CV-01683, 2011 WL 2550627, at *3 (D. Nev. June 23, 2011) (recognizing the "the tension between *Columbia Pictures* and the Ninth Circuit's jurisprudence following *Schwarzenegger*," but concluding that "unless and until the Ninth Circuit overrules *Columbia Pictures*, this court remains bound by its express holding that where the defendant willfully infringed copyrights owned by the plaintiff, which, as the defendant knew, had its principal place of business in the forum, this fact alone is sufficient to satisfy the *Calder* effects test.") (internal citation and quotation marks omitted); *Corbis Corp. v. Integrity Wealth Mgmt., Inc.*, No. C09-708, 2009 WL 2486163, at *2 (W.D. Wash. Aug. 12, 2009) ("Plaintiff has satisfied the effects-purposeful direction test by making a prima facie showing that Defendant willfully infringed copyrights owned by plaintiff and alleging that defendant knew plaintiff's headquarters was in Washington."); *Amini Innovation Corp. v. Cosmos Furniture, Ltd.*, No. CV 08-7855, 2009 WL 806603, at *3 (C.D. Cal. Mar. 16, 2009) (concluding that, based on plaintiff's allegations of willful copyright and design patent infringement, defendant satisfied the *Calder*-effects test because defendant "[did] not deny that it knew that [plaintiff] [was] located in and operates out of this judicial district" and "kn[ew] the brunt of the harm would be suffered in California"); *Amini Innovation Corp. v. JS Imports, Inc.*, 497 F. Supp. 2d 1093, 1105 (C.D. Cal. 2007) (noting that "[f]ollowing *Columbia Pictures* and *Panavision*, numerous courts within the Ninth Circuit have found specific jurisdiction in cases where a plaintiff brings suit in its home forum against an out-of-state defendant, alleging that the defendant engaged in infringing activities knowing that plaintiff was located in the forum.").

Taking Plaintiff's allegations as true and resolving conflicts between declarations in Plaintiff's favor, Plaintiff has stated facts sufficient to make a prima facie showing that Dazheng, Haier, and Jinhui expressly aimed their conduct at Plaintiff knowing that it

resided in California.  *See Panavision Int'l, L.P. v. Toeppen*, 938 F. Supp. 616, 621-22 (C.D. Cal. 1996), *aff'd*, 141 F.3d 1316 (9th Cir. 1998) ("[Defendant] has harmed [plaintiff], the brunt of which [plaintiff] has borne in California, which [defendant] knew would likely happen because [plaintiff's] principal place of business and the heart of the theatrical motion picture and television camera and photographic equipment business are in California.").  Thus, Plaintiff satisfies the express aiming prong for Dazheng, Haier, and Jinhui.

### iv.    Harm Likely To Be Suffered In the Forum State

To satisfy this prong, "the 'brunt' of the harm need not be suffered in the forum state," but only "a jurisdictionally sufficient amount of harm."  *Yahoo! Inc.*, 433 F.3d at 1207.  "This element is satisfied when defendant's intentional act has 'foreseeable effects' in the forum."  *Brayton*, 606 F.3d at 1131.  As the Ninth Circuit held in *Brayton*: "In this case, it was foreseeable that [plaintiff] would be harmed by infringement of its copyright, including harm to its business reputation and goodwill, and decreased business and profits. It was also foreseeable that some of this harm would occur in the Forum, where [plaintiff] was known to reside."  *Id.*  The same rationale applies here.  It was foreseeable that Haier's alleged misappropriation of Plaintiff's copyrighted material would cause harm to Plaintiff in California.  As noted above, Plaintiff has alleged that Dazheng, Jinhui, and Haier knew Plaintiff was an American company and that their actions would cause injury to Plaintiff within California.  (FAC ¶ 62.)  Accordingly, Plaintiff has satisfied the third and final element of the *Calder*-effects test and therefore has demonstrated purposeful direction as to Dazheng, Haier, and Jinhui.

### b.   Arising Out Of Forum-Related Activities

The second requirement for specific personal jurisdiction is that plaintiff's action arises out of or relates to the defendant's forum-related activities.  *Schwarzenegger*, 374

F.3d at 802.  In this analysis, a court "must determine if the [plaintiff] would not have been injured 'but for' the [defendant's] conduct directed toward [plaintiff] in California." *Panavision*, 141 F.3d at 1322.  Assuming the truth of the allegations set forth in the First Amended Complaint, it is clear that "but for" the alleged copying of Plaintiff's copyrighted software program and distributing of the Green Dam Youth Escort program by Dazheng, Haier, Jinhui, Plaintiff would not have been injured.  Thus, Plaintiff has satisfied this element as to all three Defendants.

### c.  Reasonableness

Because Plaintiff satisfied the first two elements for specific jurisdiction, the burden shifts to Dazheng, Haier, and Jinhui to "'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802 (quoting *Burger King*, 471 U.S. at 477).  "The exercise of jurisdiction is reasonable if it comports with traditional notions of fair play and substantial justice." *Rio Props.*, 284 F.3d at 1021.  The Court considers seven factors in making this determination:

> (1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Id.* (citing *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487-88 (9th Cir. 1993)).  "As no single factor is dispositive, a court must balance all seven." *Id.*

Haier does not address reasonableness.  As to Dazheng and Jinhui, the above-referenced factors overlap substantially with the factors the Court already considered in denying Dazheng's and Jinhui's motion to dismiss for forum non conveniens and Sony et al.'s prior motion to dismiss for forum non conveniens.  Indeed, to the extent that Dazheng

20

and Jinhui argue that the exercise of personal jurisdiction over them would be unreasonable, they assert the same arguments that appear in their motion to dismiss for forum non conveniens.  (*Compare* Docs. 144, 151, *with* Doc. 143 at 10-12 and Doc. 150 at 14-1.)  The only new factor is that of "purposeful interjection," which "is analogous to the purposeful direction analysis discussed above."  *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988); *see Corporate Inv. Bus. Brokers v. Melcher*, 824 F.2d 786, 790 (9th Cir. 1987) (noting that "Ninth Circuit cases give the 'purposeful interjectment' factor no weight once it is shown that the defendant purposefully directed its activities to the forum state" and that "the Supreme Court does not include this factor in its list of relevant factors at all").  The Court need not retrace its steps.  For the reasons stated above in Parts III.A and III.B.2.a and the FNC Order, the Court concludes that, based on the balance of the relevant factors, the exercise of personal jurisdiction over Dazheng, Haier, and Jinhui is reasonable.  Because the Court has specific jurisdiction over Haier, it need not address whether general jurisdiction over Haier exists.  Accordingly, the motions to dismiss for lack of personal jurisdiction are DENIED.

### C.  Failure to Join a Necessary Indispensable Party / Sovereign Immunity

Haier moves to dismiss the action in its entirety because a necessary and indispensable party – the People's Republic of China ("PRC") – is immune from this suit. (Haier Mot. at 1, 8-21.)  Assuming without deciding that the PRC is a necessary and indispensable party, the PRC is not immune from this suit, and is thus properly joined, because the commercial activity exception to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605(a)(2), applies.

On December 13, 2010, Plaintiff filed a motion for entry of default against the PRC. (Doc. 93.)  In response, the Court stayed the motion and ordered Plaintiff to show cause as to why the PRC is not immune from this action under the FSIA.  (Doc. 96.)  Plaintiff subsequently filed a response to the OSC, arguing that the commercial activity and tortious conduct exceptions to the FSIA applied to the PRC's actions.  (Doc. 100.)  Satisfied that

the PRC actions fell within the commercial activity exception, the Court entered default against the PRC, but did not explain its reasoning.  (Doc. 103.)  Here, Plaintiff again contends that the PRC's alleged acts fall within commercial activity and tortious conduct exceptions to the FSIA.  Because the Court concludes that the commercial activity exception applies, it need not address whether the tortious conduct exception does as well.

The FSIA "provides the sole basis for federal jurisdiction" over claims against a foreign state and its instrumentalities, and "creates a statutory presumption that a foreign state and its instrumentalities are immune from suit unless one of the specific exceptions enumerated in sections 1605 through 1607 of the Act applies."  *Exp. Grp. v. Reef Indus., Inc.*, 54 F.3d 1466, 1469 (9th Cir. 1995) (citations and internal quotation marks omitted); *see* 28 U.S.C. § 1330(c) ("[A]n appearance by a foreign state does not confer personal jurisdiction with respect to any claim for relief not arising out of any transaction or occurrence enumerated in sections 1605–1607 of this title.").  The commercial activity exception is codified in § 1605(a)(2):

> A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2).  As it did in its response to the OSC, Plaintiff relies on the third clause of § 1605(a)(2) – "an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States" – in arguing that the commercial activities exception applies.  This requires the Court to find that Plaintiff's action is (1) based upon an act that occurred outside the United States; (2) that was taken "in connection with a commercial activity" of

the PRC outside this country; and (3) that "cause[d] a direct effect in the United States." *Adler v. Fed. Rep. of Nigeria*, 107 F.3d 720, 724 (9th Cir. 1997). The parties do not dispute that the PRC committed acts outside the United States. Haier argues, however, that the PRC's acts upon which Plaintiff bases its allegations were not conducted "in connection" with a commercial activity, nor did they have direct effects in the United States. (Haier Mot. at 13-20.)

      1.   In Connection with a Commercial Activity

      The "in connection with a commercial activity" prong requires the Court "to make two distinct inquiries: (1) whether [the PRC] engaged in a commercial activity; and (2) whether the acts complained of were made 'in connection with' that activity." *Adler*, 107 F.3d at 724. As to whether the PRC engaged in commercial activity, the FSIA defines commercial activity as "either a regular course of commercial conduct or a particular commercial transaction or act." 28 U.S.C. § 1603(d). In determining whether the activity is commercial, the "FSIA directs courts to look to the nature of the activity in question, rather than to its purpose." *Park v. Shin*, 313 F.3d 1138, 1145 (9th Cir. 2002); *see Rep. of Argentina v. Weltover, Inc.*, 504 U.S.C. 607, 614 (1992) (instructing that "the question is not whether the foreign government is acting with a profit motive or instead with the aim of fulfilling uniquely sovereign objectives. Rather, the issue is whether the particular actions that the foreign state performs (whatever the motive behind them) are the type of actions by which a private party engages in trade and traffic or commerce.") (internal citation and quotation marks omitted). "Even if performed with a public purpose in mind, acts by governmental entities are considered commercial in nature if the role of the sovereign is one that could be played by a private actor." *Park*, 313 F.3d at 1145. As a result, "an activity is commercial unless it is one that only a sovereign state could perform." *Id.*

      Plaintiff alleges that the PRC "engaged in the purely economic conduct of licensing, sublicensing, distributing, and promoting the software program known as Green Dam at

1   issue in this litigation."  (FAC ¶ 13.)  Specifically, the PRC allegedly paid Jinhui and

2   Dazheng approximately $6.9 million for a one-year license to distribute the Green Dam

3   program, and then charged licensing fees to computer manufacturers and others for their

4   use of the Green Dam program.  (*Id.* ¶ 33.)  Plaintiff alleges that pursuant to its license

5   from Jinhui and Dazheng, the PRC "has made the Green Dam program available for free

6   downloading worldwide on the Internet, including on its own official site, as well as on

7   many other privately owned Internet sites," and that the "PRC has encouraged

8   downloading of the program by Chinese speakers worldwide, including through

9   propaganda."  (*Id.* ¶ 34.)

10       Taking Plaintiff's allegations as true, the PRC's purchase of the licensing and

11   distribution rights to the Green Dam program and subsequent sublicensing of the program

12   to manufactures were commercial acts.  *See* 28 U.S.C. § 1603(d).  Clearly, entities other

13   than a sovereign state can purchase licenses for software programs and, in turn, sublicense

14   such programs to other actors.  Whether the PRC conducted this business for a

15   governmental purpose is irrelevant.  *Weltover*, 504 U.S. at 617 (holding that Argentina's

16   issuance of certain bonds was a commercial activity under FSIA because "it is irrelevant

17   why Argentina participated in the bond market in the manner of a private actor; it matters

18   only that it did so.").  Thus, the PRC engaged in commercial activity.

19       Further, Plaintiff's claims are based upon acts "in connection with" the PRC's

20   commercial activity.  "To satisfy the 'in connection with' requirement, the acts complained

21   of must have some 'substantive connection' or a 'causal link' to the commercial activity."

22   *Adler*, 107 F.3d at 726 (quoting *Fed. Ins. Co. v. Richard I. Rubin & Co.*, 12 F.3d 1270,

23   1289-91 (3rd Cir. 1993)).  Plaintiff bases its claims of misappropriation of trade secrets,

24   copyright infringement, unfair competition, and civil conspiracy, in part, on the PRC's

25   licensing of the Green Dam program and subsequent sublicensing and distribution of the

26   program through manufacturers and various websites without Plaintiff's consent.  This

27   establishes a causal link between the PRC's activity and Plaintiff's claim.  Plaintiff has

28   therefore satisfied the "in connection with a commercial activity" prong.

1

2          2.  Direct Effects

3          "A foreign state that engages in commercial activity may still be immune unless the

4  action had a direct effect on a plaintiff . . . occur[ing] in the United States."  *Meadows v.*

5  *Dom. Rep.*, 817 F.2d 517, 523 (9th Cir. 1987) (internal citations omitted).  "[A]n effect is

6  'direct' if it follows as an immediate consequence of the defendant's . . . activity."

7  *Weltover*, 504 U.S. at 618 (internal citation and quotation marks omitted); *United States v.*

8  *LSL Biotechnologies*, 379 F.3d 672, 680 (9th Cir. 2004) (recognizing *Weltover*'s definition

9  of direct effects).  Although the "mere financial loss by a person – individual or corporate

10  – in the [United States] is not, in itself, sufficient to constitute a 'direct effect,'" if a

11  "legally significant act giving rise to the claim occurred" in the United States, then a direct

12  effect exists.  *Adler*, 107 F.3d at 726-27 (internal citation and quotation marks omitted).

13          Here, Plaintiff alleges that the PRC intentionally misappropriated Plaintiff's

14  copyrighted software by licensing, sublicensing, and distributing the Green Dam program.

15  Because the locus of that injury occurred at Plaintiff's principal place of business in

16  California, the PRC's actions had a direct effect in the United States.  *See Panavision*, 141

17  F.3d at 1322 n.2.  Accordingly, the FSIA's commercial exception applies to the PRC and

18  the PRC is properly joined in this action.  The Court therefore DENIES Haier's motion.

19

20     **IV. CONCLUSION**

21          For the aforementioned reasons, the Court DENIES the motion to dismiss for forum

22  non conveniens filed by Dazheng and joined by Jinhui; DENIES the motions to dismiss for

23  lack of personal jurisdiction filed individually by Haier, Dazheng, and Jinhui; and DENIES

24  the motion to dismiss for failure to join a necessary and indispensable party filed by Haier.

25

26  DATED: August 1, 2011

27                                     **JOSEPHINE STATON TUCKER**
                                       JOSEPHINE STATON TUCKER
28                                     UNITED STATES DISTRICT JUDGE

                                            25